# EXHIBIT G

IN THE MATTER OF AN ARBITRATION UNDER
THE UNCITRAL ARBITRATION RULES BETWEEN:

TELENOR MOBILE COMMUNICATIONS AS,

        Claimant,

        Snarøyveien 30
        N-1331 Fornebu
        Norway

-and-

STORM LLC,

        Respondent,

        1 Narodnogo Opolchennya Street
        Kyiv 03151
        Ukraine

---

**BRIEF ON THE EVIDENTIARY STANDARD FOR STORM LLC'S
MOTION TO DISMISS AMENDED STATEMENT OF CLAIM**

---

        Joe Cyr
        Pieter Van Tol
        Lisa Fried
        Eric Z. Chang

        590 Madison Avenue
        New York, New York 10022
        Telephone: (212) 909-0600
        Facsimile: (212) 909-0660

        Attorneys for Storm LLC

## Table of Contents

|  |  | **Page** |
|---|---|---|
| Summary | | 1 |
| I. | *SPHERE DRAKE* SETS A VERY LOW THRESHOLD FOR MOTIONS TO DISMISS BASED ON CHALLENGES TO AN AGREEMENT'S EXISTENCE | 4 |
| II. | STORM HAS SATISFED THE "SOME EVIDENCE" STANDARD | 6 |
| | A. The Courts in the Second Circuit Have Required Only a Minimal Level of Evidence to Meet the "Some Evidence" Prong | 6 |
| | B. The Evidence Here Far Exceeds the Level Required Under the "Some Evidence" Prong | 10 |
| III. | STORM HAS ALSO SATISFIED THE "UNEQUIVOCAL DENIAL" STANDARD | 12 |
| IV. | TELENOR MOBILE CANNOT MEET THE SUMMARY JUDGMENT STANDARD FOR MOTIONS TO COMPEL ARBITRATION | 12 |
| Conclusion | | 13 |

## Table of Authorities

**Page**

**Cases**

*Almacenes Fernandez, S.A. v. Golodetz,*
 148 F.2d 625 (2d Cir. 1945) ..................................................................................1, 5, 7, 13

*Bank of America v. Diamond State Ins. Co.,*
 No. 01 CIV. 0645 (LMM), 38 Fed. Appx. 687,
 2002 WL 1378683 (2d Cir. June 26, 2002) ..............................................................6, 7, 10

*Bank of America v. Diamond State Ins. Co.,*
 No. 01 CIV. 0645 (LMM), 2001 WL 1029410,
 (S.D.N.Y. Sep. 7, 2001) ............................................................................................6, 7, 10

*Becker v. DPC Acquisition Corp.,*
 No. 00 Civ. 1035 (WK), 2002 WL 1144066
 (S.D.N.Y. May 30, 2002) ..........................................................................................9, 10, 11

*Benckiser Consumer Prods., Inc. v. Kasday,*
 No. 97 Civ. 5389, 1998 WL 677631
 (S.D.N.Y. Sept. 30, 1998) ....................................................................................................13

*Bensadoun v. Jobe-Riat,*
 316 F.3d 171 (2d Cir. 2003) .................................................................................................12

*In re Azores Int'l Shipping, Inc.,*
 No. 99 Civ. 850 (JSM), 1999 WL 493380
 (S.D.N.Y. July 9, 1999) ..........................................................................................2, 7, 10, 11

*In re Herlofson Mgmt.,*
 No. 88 CIV. 7542 (RLC), 1989 WL 111083
 (S.D.N.Y. Sept. 19, 1989) ....................................................................................8, 10, 11, 12, 13

*Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.,*
 462 F.2d 673 (2d Cir. 1972) ...........................................................................................passim

*Lasry v. Lasry,*
 579 N.Y.S.2d 393 (1st Dep't 1992) ....................................................................................11

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Company,*
 636 F.2d 51 (3d Cir. 1980) .................................................................................................13

*S.C. Chimexim v. Velco Enters. Ltd.,*
 36 F. Supp. 2d 206 (S.D.N.Y. 1999) ..................................................................................11

*Sphere Drake v. Clarendon Nat'l Ins. Co.,*
 263 F.3d 26 (2d Cir. 2001) ..........................................................................................passim

As ordered by the Tribunal at the hearing held on June 29, 2006, and in connection with the upcoming evidentiary hearing set for August 14, 2006, respondent Storm LLC ("Storm") respectfully submits (a) this brief, which discusses the relevant standard established in *Sphere Drake v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26 (2d Cir. 2001), and applies it to the facts here; and (b) the accompanying affidavits of Vadim Klymenko and Marta Khomyak as well as the expert opinion of Professor Lyubov Logush. These materials are submitted in support of Storm's motion to dismiss the claims alleged in the Amended Statement of Claim by claimant Telenor Mobile Communications AS ("Telenor Mobile").[1]

### Summary

An application of the evidence in this matter to the standard articulated by the Second Circuit in *Sphere Drake* demonstrates that Telenor Mobile's claims must be dismissed.

At the June 29 hearing on Storm's motion to dismiss, the Tribunal ordered the parties to provide further evidence regarding the question of the validity of the Shareholders Agreement. (*See* Transcript ("Tr.") at 77.) The Tribunal ruled that Storm's motion should be evaluated under the *Sphere Drake* test. (*See* Tr. at 62-63.)

The *Sphere Drake* court held that where, as in this case, a party alleges an arbitration should be dismissed because the underlying contract is void, the party "must present 'some evidence' in support of its claim." *Sphere Drake*, 263 F.3d at 30. The court also noted that there must be an "'unequivocal denial [by the party opposing arbitration] that the agreement had been made.'" *Id.* (quoting *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945)). The Second Circuit established this very low standard for dismissal because of the well-

---

[1] Any capitalized terms that are not defined below shall have the same meaning as in Telenor Mobile's Amended Statement of Claim and Storm's Statement of Defense.

established principle that an arbitration may proceed only if the validity of the agreement containing the arbitration clause is evident. *See Sphere Drake*, 263 F.3d at 30.

Storm clearly has met the "unequivocal denial" prong by consistently taking the position that this arbitration cannot go forward because the Shareholders Agreement is void. At the upcoming hearing, Telenor Mobile will no doubt focus instead on the "some evidence" prong of the *Sphere Drake* standard, but Storm easily satisfies that test as well.

As discussed below, the "some evidence" standard has been met through mere statements in a brief or the submission of a single affidavit by a party claiming that the subject agreement is void. (*See infra* at II.A.) In this matter, Storm has repeatedly stated in its submissions and other statements before the Tribunal that the Shareholders Agreement is void. Those statements, by themselves, should lead to the dismissal of Telenor Mobile's claims.

In another case on point, the court found that the "some evidence" requirement was satisfied where a shareholder claimed in an affidavit that the general manager of the company lacked authority to enter into an agreement. *See In re Azores Int'l Shipping, Inc.*, No. 99 Civ. 850 (JSM), 1999 WL 493380 (S.D.N.Y. July 9, 1999). Here, there is far more. The basis of Storm's motion to dismiss is that the General Director, Valeriy Nilov, lacked the authority under Storm's charter to enter into the Shareholders Agreement because there was no Meeting of Participants authorizing him to sign the Agreement. Alpren, as a shareholder of Storm, did not just submit an affidavit asserting that Nilov lacked authority (as in *Azores*). Alpren actually moved to have the Shareholders Agreement invalidated by the Ukrainian courts on the grounds that it was entered into without the authorization required under the charter. Alpren's application led to a court order, which was upheld on appeal, invalidating the Shareholders Agreement on the grounds that there is no evidence of the requisite Meeting of Participants. This finding, by courts of competent jurisdiction that followed Ukrainian laws and rules of procedure, exceeds the evidence that has been accepted by a number of courts as satisfying the "some evidence" standard. Unless

2

the Tribunal finds that there are compelling reasons to disregard the rulings of the Ukrainian courts, it must follow those decisions.

Telenor Mobile has tried to argue that the Ukrainian litigation was somehow collusive or otherwise improper, but it cannot prevail on that argument. The record produced by Storm, as supported by the Klymenko Affidavit and the expert opinion of Professor Logush, shows that the proceedings were conducted properly and that Storm defended against Alpren's application, even taking an appeal from the lower court's judgment. One argument that Storm did not make in the Ukrainian proceedings — and could not make because of the absence of evidence — is that there was in fact a Meeting of Participants granting Nilov the authority to enter into the Shareholders Agreement. (*See* Klymenko Aff. at ¶ 8.) If Telenor Mobile had information to the contrary, it should have made the evidence available to the Ukrainian courts during the proceedings regarding the Agreement's validity. Telenor Mobile had the opportunity to intervene in those proceedings, but deliberately chose not to. Telenor Mobile cannot argue that it shied away from the Ukrainian courts out of any concern for fairness or due process because it recently invoked the very same legal system in a related litigation.[2]

Even more critically, the issue currently before the Tribunal is not whether the Ukrainian courts were correct or the Shareholders Agreement is valid. As the cases have noted, at this stage the court (here, the Tribunal) does not decide the ultimate issue of the validity or enforceability of the contract. The threshold question is whether "the making of the agreement to arbitrate is placed in issue." *Sphere Drake*, 263 F.3d at 30. Therefore, so long as Storm shows that there is "some evidence" in support of its position that Nilov lacked the requisite authority to enter into the Shareholders Agreement, the Tribunal must dismiss the arbitration. *See id.* The case law is unequivocal on this point.

---

[2] The Tribunal will recall that Telenor Mobile recently obtained a reversal from the appellate court of its earlier December 22 Order. Storm believes the reversal was procedurally improper and substantively unwarranted, and it has taken an appeal the Supreme Court of Ukraine.

3

Finally, while *Sphere Drake* requires Storm to come forward with "some evidence," Telenor Mobile has its own burden as the party seeking to compel arbitration. In cases involving motions to compel, the Second Circuit and other courts have applied the summary judgment standard and required a showing by the moving party that there are no genuine issues of material fact. (*See infra* at IV.) Telenor Mobile cannot carry its burden of showing that there is no issue of fact on whether Nilov had the authority, granted by a Meeting of Participants, to execute the Shareholders Agreement, especially since all doubts on that question must be resolved in Storm's favor. Any evidence that Telenor Mobile submits to the Tribunal on this issue will be contradicted by the Ukrainian courts' finding of fact. At a minimum, Storm has demonstrated there are genuine issues of fact.

Accordingly, the Tribunal must dismiss Telenor Mobile's Amended Statement of Claim in its entirety.

## I. *SPHERE DRAKE* SETS A VERY LOW THRESHOLD FOR MOTIONS TO DISMISS BASED ON CHALLENGES TO AN AGREEMENT'S EXISTENCE

The standard set forth in *Sphere Drake* and related cases is straightforward. In *Sphere Drake*, the reinsurer, Sphere Drake Insurance Limited ("Sphere Drake), brought a declaratory judgment action against the cedent, Clarendon National Insurance Company ("Clarendon"), seeking to have the reinsurance contracts (and hence their arbitration clauses) declared void. Clarendon moved to compel arbitration on the grounds that the contracts' validity should be resolved in arbitration. 263 F.3d at 27-28. The district court granted the motion compelling arbitration. *Id.* at 28. On appeal, Sphere Drake argued that the district court erred because the contracts were unenforceable. *Id.* at 29. Sphere Drake's theory was that the contracts never came into existence because the agent charged with negotiating the contracts had acted outside of the scope of its agency. *Id.* at 32.

In determining the standard to be applied, the Second Circuit began with several general principles regarding arbitrability. The court stated that, under the Convention on the Recognitoon and Enforcement of Foreign Arbitral Awards ("CREFAA"), arbitration is appropriate "only if the agreement is not 'null and void, inoperative or incapable of being performed.'" *Id.* at 30 (citing CREFAA, art. 2, para. 3). The *Sphere Drake* court also cited the Federal Arbitration Act, which states that court compelling arbitration must be "'satisfied that the making of the agreement for arbitration ... is not in issue.'" *Id.* at 30 n.2 (citing 9 U.S.C. § 4). In light of those principles, the Second Circuit held that:

> If the making of the agreement to arbitrate is placed in issue — as Sphere Drake attempts to do by alleging that the contracts in which the arbitration provisions are found never came into existence — the courts must set the issue for trial. However, the party putting the agreement to arbitrate in issue must present "some evidence" in support of its claim before a trial is warranted.

*Id.* at 30; *see also id.* at 32 (stating that Sphere Drake "must produce some evidence substantiating its claim").

*Sphere Drake* cited two other cases, *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) and *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945), where the Second Circuit had articulated the "some evidence" rule. Those cases noted that the party opposing arbitration must also present "an unequivocal denial that the agreement had been made." *Interocean Shipping*, 462 F.2d at 676 (citing *Almacenes*); *Almacenes*, 148 F.2d at 628. Therefore, this matter should be dismissed if Storm unequivocally denies that the Shareholders Agreement exists and presents "some evidence" in support of its claim.

Telenor Mobile incorrectly stated this rule in its Supplemental Submission dated June 27, 2006, by subtly changing the terms of the two-pronged test: "Storm ... would be entitled to a hearing in court only if (a) it could raise a <u>genuine claim</u> that the agreement is void, and (b) provided <u>evidence</u> in support of that claim." (Supp. Submission at 3; emphasis added). By

5

stating that there is must be a "genuine claim," Telenor Mobile is clearly attempting to link the *Sphere Drake* test to Telenor Mobile's unsupported argument that there was collusion in the Ukrainian litigation. The "unequivocal denial" prong is a much lower standard than the "genuine claim" test alleged by Telenor Mobile and, as discussed below, it is satisfied here. Similarly, there is a clear distinction between "some evidence," as stated in *Sphere Drake*, and the unqualified "evidence" referred to in Telenor Mobile's Supplemental Submission.

In questioning the Ukrainian court decisions, Telenor Mobile seems to be suggesting that Storm must now present evidence to support those rulings. That is not what *Sphere Drake* requires (although Storm has shown that the Ukrainian courts acted in accordance with their laws and procedures). *Sphere Drake* states that Storm merely has to provide "some evidence" in support of its assertion that the Shareholders Agreement is void. The Ukrainian court findings, among other things, constitute the required evidence. If Telenor Mobile objected to those rulings, it should have exercised its right to challenge the decisions in the Ukrainian courts rather than pursuing a collateral attack before the Tribunal. Telenor Mobile has not provided a sufficient explanation for why it sat on its rights and, in light of Telenor Mobile's participation in recent Ukrainian court proceedings, it cannot claim that the Ukrainian system is unfair or biased.

## II.  STORM HAS SATISIFED THE "SOME EVIDENCE" STANDARD

### A.  The Courts in the Second Circuit Have Required Only a Minimal Level of Evidence to Meet the "Some Evidence" Prong

The courts have set a very low bar for what constitutes "some evidence" under the Second Circuit's standard.

For example, in *Bank of America v. Diamond State Ins. Co.*, No. 01 CIV. 0645 (LMM), 2001 WL 1029410, at *2 (S.D.N.Y. Sep. 7, 2001) ("*Diamond State I*"), *aff'd*, 38 Fed. Appx. 687, 2002 WL 1378683 (2d Cir. June 26, 2002) ("*Diamond State II*"), the reinsurer moved to compel arbitration under a reinsurance contract. The court denied the motion under the "some evidence"

6

standard because the reinsurer had argued in a brief that its agent lacked the authority to enter into the agreement. *See* 2001 WL 1029410 at *2. Thus, the district court in *Diamond State I* did not require the submission of affidavits or other sworn testimony.

The Second Circuit affirmed on appeal. The court noted that parties are not required to arbitrate until "the question of the very existence" of the contract containing the arbitration clause is resolved. *Diamond State II*, 38 Fed. Appx. at 689, 2002 WL 1378683, at *1 (quoting *Interocean Shipping*, 462 F.2d at 676). Citing *Sphere Drake*, the Second Circuit stated that the court must decide the question "if the making of the agreement to arbitrate is placed in issue." *Diamond State II*, 38 Fed. Appx. at 689, 2002 WL 1378683, at *1. The court reviewed the record and held:

> [S]ufficient evidence has been produced substantiating an unequivocal denial that the agreement was made and thereby warranting a trial. *See Sphere Drake*, 263 F.3d at 30; *Interocean Shipping*, 462 F.2d at 676; *Almacenes*, [148 F.2d at 628]. Here, defendant had repeatedly and unambiguously asserted that the reinsurance contracts are void because its agent had no authority to form those contracts. *See* Def's Arbitration Demand Letter of 3/16/01 at 1; Def.'s Not. of Mot. To Stay Action and Compel Arbitration at 1; Def.'s Mem. of Law in Supp. of Mot. To Stay Action and Compel Arbitration at 2.

*Id.*, 38 Fed. Appx. at 690, 2002 WL 1378683, at *1. Like the lower court, the Second Circuit based its decision on statements in briefs and other submissions alone.

There was only slightly more evidence before the court in *In re Azores Int'l Shipping, Inc.*, No. 99 Civ. 850 (JSM), 1999 WL 493380 (S.D.N.Y. July 9, 1999). In *Azores*, one of the parties to a time charter agreement, Panamanian Carriers Corporation ("PCC"), argued that it was not required to arbitrate because its general manager, Moises Sarabia, did not have the authority to enter into the agreement. *Id.* at *1. The party seeking to arbitrate argued that PCC had not put any facts in issue concerning the validity of the time charter agreement. The court disagreed, noting that a 50% shareholder of PCC had submitted an affidavit stating that Sarabia did not have authority to bind PCC. *Id.* at *2. On that basis, the *Azores* court held that the dispute would not be heard in arbitration. The court did not cite to any other evidence in reaching its conclusion.

7

In *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972), a case cited in *Sphere Drake*, the Second Circuit relied on similarly sparse evidence in holding that arbitration of the dispute was not appropriate. There were three issues before the *Interocean Shipping* court. The first issue was whether there was a meeting of the minds with regard to the alleged charter agreement among the parties, Interocean Shipping Company ("Interocean") and National Shipping and Trading Corporation ("National") and Hellenic International Shipping, S.A. ("Hellenic") *Id.* at 675. The second issue was whether the charter broker had authority to act on behalf of National and Hellenic. *Id.* at 677. The third issue was whether National was a party to the charter agreement. *Id.*

As to the first issue, the court stated that "while [National and Hellenic] might be faulted for not presenting their arguments to the district court in a more coherent fashion, [the] affidavits and exhibits attached to the petition and answer did <u>tend</u> to substantiate [their] denial of the existence of contractual relations." *Id.* at 676 (emphasis added); *see also id.* at 677 (exhibits "<u>tend</u> to show that Interocean and Hellenic had failed to reach agreement"). As to the second issue, the court noted that the documents "<u>lend some support</u> to [National and Hellenic's] denial that [the broker] was authorized to act for them." *Id.* at 677 (emphasis added). As to the third issue, the court concluded that "while it is impossible to determine National's status [as a party to the agreement] on the basis of this confused record, there was sufficient uncertainty to entitle National to a trial on this issue." *Id.* at 678. In other words, faced with minimal evidence and an uncertain record, the court held that the matter could not be arbitrated. *Id.*; *see also In re Herlofson Mgmt.*, No. 88 CIV. 7542 (RLC), 1989 WL 111083, at *3 (S.D.N.Y. Sept. 19, 1989) (holding that party opposing arbitration, which submitted a single affidavit, had come forward with "some evidence" because "it was not clear" whether its agent had binding authority).

The *Interocean Shipping* court expressly noted that it was making only a threshold determination of whether the matter should go to arbitration:

8

> We emphasize that we do not decide today whether a valid charter agreement existed and whether National was a party to that agreement. We merely hold that appellants have shown enough to entitle them to a trial of these issues .... .

462 F.2d at 678.

*Becker v. DPC Acquisition Corp.*, No. 00 Civ. 1035 (WK), 2002 WL 1144066 (S.D.N.Y. May 30, 2002), provides another illustration of the low level of evidence the courts require. In that case, the party seeking arbitration under an employment agreement argued that the signature of Terry M. Theodore, the chairman of the board of one company, Renaissance Cosmetics, Inc. ("Renaissance"), also bound Renaissance's subsidiaries. *Id.* at *1. The defendant subsidiaries resisted arbitration on the grounds that, among other things, Theodore lack actual or apparent authority to bind them. *Id.* at *6. The court held that the defendants had presented "some evidence" on the agency issue by submitting deposition testimony from Theodore to the effect that he never considered whether he had binding authority and had not performed any investigation into the issue. The testimony also indicated that Theodore relied on Renaissance's in-house counsel, John Jackson, in signing on behalf of the subsidiaries because he believed Jackson would not have asked him to execute a document unless he had authority to do so. *Id.* at *7. The defendants submitted testimony from Jackson that he never considered whether Renaissance's officers could bind the subsidiaries to an employment agreement and was not asked to look at the issue. *Id.* The *Becker* court noted that this evidence "conflicts with Plaintiff's contentions" that Theodore was an agent of the subsidiaries, which meant that the issue must be litigated rather than arbitrated. *Id.* at *8.[3]

---

[3] In *Sphere Drake*, a single affidavit also sufficed to support the Second Circuit's conclusion that there had to be a trial on whether the arbitration clause in one of the contracts was enforceable. 263 F.3d at 33. By contrast, the Second Circuit held that Sphere Drake had not presented sufficient evidence with regard the other contracts because it did not submit a single relevant affidavit. *Id.*

While *Sphere Drake* illustrates the type of evidence required for the "some evidence" standard, it does not provide the substantive law to be applied to the question of whether Nilov had the authority to execute the Shareholders Agreement. The *Sphere Drake* court discussed the standard, under New York law, for an agent's actual or apparent authority. 263 F.3d at 32. That standard does not apply here because Nilov was

9

In sum, the courts have held that an agreement's validity must be decided outside of arbitration where (i) one of the parties stated in its brief and other submissions that the agent lacked authority to sign the agreement (*Diamond State I and II*); (ii) the party opposing arbitration submitted a single affidavit stating that a corporate official or agent was not authorized to enter into the subject agreement (*Azores, Herlofson, Sphere Drake*); (iii) the evidence tended to support the opposing party's position or, at a minimum, created uncertainty about the validity of the agreement (*Interocean Shipping, Herlofson*); or (iv) the opposing party submitted evidence from the individuals involved in the transaction that showed they simply assumed the person executing the subject document had authority to do so (*Becker*).

### B. The Evidence Here Far Exceeds the Level Required Under the "Some Evidence" Prong

This case may be disposed of simply by reference to the *Diamond State* decisions at the trial court and appellate levels. In *Diamond State*, the courts required nothing more than statements in the written submissions questioning the agent's authority to enter into the subject agreement. In this case, Storm has similarly and consistently taken the position in the motion to dismiss and other written submissions that the Shareholders Agreement is unenforceable for lack of authority. (*See, e.g.*, Statement of Defense at 3-4.) Under the law of the Second Circuit, nothing more is required.

The *Azores* case is also instructive. Both *Azores* and this case involve the issue of whether the actions of a company official, as opposed to an outside agent, were within the scope of that official's authority. In both cases, a shareholder of the company opposing arbitration argued that the official lacked authority to enter into the subject agreement. Here, however, the evidence is even stronger than the evidence accepted by the *Azores* court because, in this case, Alpren made an application based on its belief that Nilov acted outside of his authority in

---

one of Storm's officers, not its agent. Moreover, the issue of Nilov's authority needs to be decided — and was already decided — by reference to Ukrainian law.

10

entering into the Shareholders Agreement. The fact that the Ukrainian courts — in proceedings that were entirely proper and regular — have agreed with Alpren's position shows that there is more than "some evidence" to support Storm's argument. It is difficult to envision better evidence than a finding by a court of competent jurisdiction.

It is well settled that courts applying New York law "generally will accord recognition to the judgments rendered in a foreign country under the doctrine of comity absent a showing of fraud in the procurement of the foreign judgment or unless recognition of the foreign judgment would offend a strong policy of New York." *S.C. Chimexim v. Velco Enters. Ltd.*, 36 F. Supp. 2d 206, 211 (S.D.N.Y. 1999). This rule is not restricted to money judgments. *See, e.g., Lasry v. Lasry*, 579 N.Y.S.2d 393, 393-94 (1st Dep't 1992). The courts will also examine whether there were any procedural irregularities in the original jurisdiction. *See S.C. Chimexim*, 36 F. Supp. 2d at 211-12. The court file, along with the Klymenko Affidavit and Professor Logush's expert opinion, conclusively demonstrate that the Ukrainian courts had jurisdiction and the conduct of the proceedings was entirely proper. There has been no allegation of fraud and recognition of the Ukrainian judgments would not offend any New York public policy. In short, it is clear that a New York court would recognize the Ukrainian judgments. The Tribunal, which applies New York law to such procedural issues, should recognize the judgments as well.

The evidence here also exceeds what the courts accepted in *Interocean Shipping, Herlofson, Becker* and *Sphere Drake*. The *Interocean Shipping* and *Herlofson* courts held that the party opposing arbitration met the "some evidence" standard by submitting affidavits and documents that merely suggested the contract was unenforceable or, at least, muddied the waters. Storm certainly satisfies that requirement because its evidence does far more than suggest the Shareholders Agreement is unenforceable or creates confusion; Storm has established that a court of competent jurisdiction found that the Agreement is void.

11

Therefore, the record in this case compels one conclusion: that Telenor Mobile's claims must be dismissed in their entirety because there is ample evidence to support Storm's position.

### III.    STORM HAS ALSO SATISFIED THE "UNEQUIVOCAL DENIAL" STANDARD

Storm has argued unequivocally that the Shareholders Agreement was not authorized. Storm raised the issue as a defense to the Statement of Claim (*see* Statement of Defense at 3-4), and the lack of authority for the Agreement is one of the main arguments in Storm's pending motion to dismiss. Accordingly, Storm has met the "unequivocal denial" standard that was referred to in *Sphere Drake* and established by prior precedent. *See, e.g., Interocean Shipping*, 462 F.2d at 676 (stating that National and Hellenic's "answer to Interocean's petition categorically denied entering into a charter party with Interocean"); *Herlofson*, 1989 WL 111083, at *3 (noting that, in reply to petition, "the Jordan Ministry unequivocally denies having entered into a charter").

### IV.    TELENOR MOBILE CANNOT MEET THE SUMMARY JUDGMENT STANDARD FOR MOTIONS TO COMPEL ARBITRATION

At the June 29 Hearing, the Tribunal instructed both parties to "fully understand" the *Sphere Drake* decision, and further instructed both parties to "provide evidence on the question of the alleged invalidity of the shareholder agreement, consistent with the language in *Sphere Drake Insurance*." (Tr. at 77.) A close analysis of *Sphere Drake* and the related case law shows that the "some evidence" standard applies to Storm <u>only</u>. Telenor Mobile, as the party effectively making a motion to compel arbitration, must meet the standard for summary judgment motions by showing there is no genuine issue of fact regarding Nilov's authority to enter into the Agreement. *See, e.g., Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (noting that "the court applies a standard [on motions to compel] similar to that applicable for a motion for summary judgment" and that "[i]f there is an issue of fact as to the making of the agreement for arbitration,

then a trial is necessary"); *Benckiser Consumer Prods., Inc. v. Kasday*, No. 97 Civ. 5389, 1998 WL 677631, at *2 (S.D.N.Y. Sept. 30, 1998) (standard for evaluating a motion to compel arbitration is the same as that for summary judgment) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Company*, 636 F.2d 51, 54 (3d Cir. 1980)).[4]

Telenor Mobile fails to meet this standard. Telenor Mobile cannot show that there are <u>no</u> genuine issues of fact regarding Nilov's authority to execute the Shareholders Agreement because Storm has submitted evidence (especially the finding of the Ukrainian courts) regarding Nilov's lack of authority. At a minimum, this casts doubt on whether there was a Meeting of Participants, which is all that *Sphere Drake* and other cases require. Furthermore, the case law indicates that, as with a motion for summary judgment, any evidence should be viewed in the light most favorable to the party opposing arbitration. *Par-Knit Mills*, 636 F.2d at 54; *Benckiser*, 1998 WL 677631 at *2. When the evidence is viewed in the light most favorable to Storm, it is clear that Telenor Mobile has not carried its burden on the application to compel arbitration.

## Conclusion

For the reasons set forth above, Storm respectfully requests that the Tribunal rule that it lacks jurisdiction to hear Telenor Mobile's claims and, accordingly, dismisses this arbitration in its entirety.

Storm also respectfully requests that the Tribunal (a) award Storm its costs and disbursements incurred in this proceeding, including its reasonable attorneys' fees and costs,

---

[4] In the context of arbitrations, the Second Circuit is using a hybrid of the summary judgment standard. The party seeking to compel arbitration must show that there is no issue of fact regarding the validity of the underlying contract. The other party, however, is not bound by the usual rules for a party opposing summary judgment. As the above cases illustrate, the "some evidence" standard is less than what a party must usually show in opposition to a summary judgment motion. *See, e.g., Interocean Shipping*, 462 F.2d at 676 ("To make a genuine issue entitling the plaintiff to trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial.") (quoting *Almacenes*, 148 F.2d at 628).

including expert fees, in accordance with Article 38 of the UNCITRAL arbitration rules; and (b) award Storm such other and further relief as the Panel deems just and proper.

Dated: August 9, 2006

                                    LOVELLS

By: *Pieter Van Tol* (signature)

Joe Cyr
Pieter Van Tol
Lisa Fried
Eric Z. Chang

590 Madison Avenue
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0660

Attorneys for Storm LLC

14