# EXHIBIT H

IN THE MATTER OF AN ARBITRATION UNDER
THE UNCITRAL ARBITRATION RULES BETWEEN:

**TELENOR MOBILE COMMUNICATIONS AS,**
Claimant,

-and-

**STORM LLC,**
Respondent

## PARTIAL FINAL AWARD REGARDING JURISDICTION

We, the undersigned Arbitrators, having been designated in accordance with

the January 30, 2004 arbitration agreement between the above-named Parties,

having been duly sworn, and having heard the allegations, arguments and proofs of

the Parties regarding Respondent Storm LLC's Motion to Dismiss on the ground

that this Tribunal does not have jurisdiction to hear and decide this Arbitration, do

hereby make this Partial Final Award.  We conclude that this Tribunal does have

jurisdiction to hear the above-captioned Arbitration.

## A.     The Parties and the Background of This Arbitration

This Arbitration involves disputes between the majority and minority

shareholders of CJSC "Kyivstar G.S.M." ("Kyivstar"), a Ukrainian closed joint stock

company and the largest mobile telecommunications company in Ukraine, over the

governance and operation of that company.  Claimant Telenor Mobile

Communications AS ("Telenor") is a Norwegian corporation headquartered in

Fornebu, Norway.  It is a subsidiary of Telenor ASA, the largest provider of

telecommunications services in Norway and the provider of such services in 12 other countries. Claimant owns approximately 56.5 % of the issued and outstanding stock of Kyivstar.

Respondent Storm LLC ("Storm") is a Ukrainian limited liability company headquartered in Kyiv, Ukraine. Storm owns the remaining approximately 43.5 % of Kyivstar shares. At the times relevant to this Arbitration, Storm was, in turn, owned 50.1% by Altimo Holdings & Investment Limited ("Altimo"), and 49.9% by Altimo's subsidiary, Alpren Limited ("Alpren"). Storm, Altimo and Alpren are all part of a large Russian financial-industrial conglomerate known as the Alfa Group Consortium ("Alfa").

The interest of Telenor and Storm in Kyivstar dates back to 1998 when Storm held a much smaller minority interest in Kyivstar. At that time Telenor, Storm and Kyivstar, along with three other minority shareholders in Kyivstar, entered into a March 26, 1998 Shareholders Agreement concerning the corporate governance and management of Kyivstar. In 2002, Telenor and Storm worked out an arrangement whereby Storm would take over the position of the other minority shareholders and increase its percentage holdings to its present 43.5 %. As part of this arrangement, the parties agreed that a new form of Shareholders Agreement would replace the 1998 agreement. Between March 2002 and August 25, 2002, the parties negotiated the terms of the new Shareholders Agreement.

When it appeared that it would not be possible for Storm immediately to purchase the shares from one of the other minority owners, the parties agreed to

enter into a Voting Agreement that would govern their relationship until the purchase could take place. The Voting Agreement provided that, following Storm's purchase of the shares, the parties would enter into the new Shareholders Agreement. The text of that agreement was annexed to the Voting Agreement. The parties signed the Voting Agreement on September 2, 2002. Due to delays in Storm's ability to acquire the shares of the minority shareholder, the parties did not sign the new Shareholders Agreement until January 30, 2004.

As signed, the text of the January 30, 2004 Shareholders Agreement differed in only one respect from the form of new Shareholders Agreement that had been attached to the Voting Agreement. The January 2004 Agreement contained a modification – requested by Storm – in the section of the September 2002 form Agreement that dealt with the definition of a material breach. Otherwise, the January 30, 2004 Shareholders Agreement remained identical in all respects to the 2002 form Agreement. Of particular importance, the arbitration provision in the January 30, 2004 Shareholders Agreement was precisely the same as the arbitration provision in the earlier form Agreement that had been fully approved as an annex to the September 2, 2002 Voting Agreement. The arbitration provision, contained in Section 12.01 of the January 20, 2004 Shareholders Agreement, states in pertinent part:

12.01  Arbitration:  Consent to Jurisdiction

(a)    Any and all disputes and controversies arising under, relating to or in connection with this Agreement shall be settled by arbitration by a Panel of three (3) arbitrators under the United Nations Commission on International

Trade Law (UNCITRAL) Arbitration Rules then in force (the "UNCITRAL Rules") in accordance with the following terms and conditions:

> (i)    In the event of any conflict between the UNCITRAL Rules and the provisions of this Agreement, the provisions of this Agreement shall prevail.

> (ii)   The place of the arbitration shall be New York, New York, United States of America.

Telenor and Storm performed their respective obligations under the January 30, 2004 Shareholders Agreement for over a year. At the annual meeting of Kyivstar shareholders on April 27, 2004, for example, the two parties voted in favor of an amended Kyivstar charter that brought Kyivstar's charter into compliance with the January 2004 Shareholders Agreement. This charter was duly registered with the appropriate Ukrainian authorities. During 2005, however, increasing friction developed between the parties. In March 2005, Storm and its designated representatives stopped attending Kyivstar shareholder and general board meetings. Thereafter, Storm and other affiliates in the Alfa consortium commenced several lawsuits in the Ukrainian courts challenging the Telenor relationship.

**B.    The Commencement of This Arbitration and Storm's Motion to Dismiss**

On February 7, 2006, Telenor commenced this Arbitration against Storm pursuant to Section 12.01 of the January 30, 2004 Shareholders Agreement. In brief, Telenor's Notice of Arbitration and its Statement of Claim seek a declaration that Storm is in breach of the January 2004 Shareholders Agreement by reason of: (a) its failure to attend annual and extraordinary shareholder meetings, its failure

to appoint candidates for election to the Kyivstar board, and its failure to attend

board meetings and participate in the management of Kyivstar, (b) its ownership of

more than 5 % in a competitive telecommunications company, and (c) its violation of

the dispute resolution procedures. Telenor also seeks an order requiring Storm to

comply with the Shareholders Agreement in the future and to make certain

amendments to the Kyivstar charter. Finally, Telenor seeks an award of damages

for Storm's violations of the Agreement, plus attorney's fees and costs.

     Telenor selected William R. Jentes as its arbitrator to serve on the Tribunal,

and Storm selected Gregory B. Craig. On March 31, 2006, the two party-appointed

arbitrators selected Kenneth R. Feinberg to serve as Chair. All of the arbitrators

agreed that they would serve as neutral members of the Tribunal. The Tribunal's

first order of business was to ask the parties to supply names of all affiliates,

parents and subsidiaries related to the parties, along with the names of all officers

and executives who were likely to be mentioned in the proceeding, to be certain

there would be no disabling relationships with the Tribunal members. Both parties

complied with that request, the Tribunal disclosed no conflicts, and its members

were accepted.

     On April 14, 2006, the Tribunal held its initial pre-hearing conference with

the parties to consider the parties' views on the schedule and to discuss what pre-

hearing procedures would be followed. During the conference, Storm notified the

Tribunal that it intended to file a motion to dismiss asserting that the Shareholders

Agreement was invalid, and that the Tribunal accordingly lacked jurisdiction to

decide Telenor's claim. The parties agreed to a schedule, which was approved by the Tribunal, for briefing and hearing Storm's motion. Storm was given until June 5, 2006 to file its motion, along with any material it wanted to submit in support.

On May 30, 2006, Storm filed a Statement of Defense to Telenor's claim, which included as "an alternative ground" that the Kyiv Commercial Court had declared on April 25, 2006 that "the entire Shareholders Agreement is invalid because it was entered into without the requisite authority and fails to comply with the registration and execution requirements of Ukrainian law." Storm Statement of Defense at p. 3. Storm also pointed out that, "An appellate court recently upheld the April 25 Order." *Id.* at p. 6. This was the first notice given to the Tribunal that Storm had been in litigation in Ukraine challenging the validity of the underlying Shareholders Agreement.

On June 7, 2006, Storm filed its Motion to Dismiss in which it amplified on its Statement of Defense, contending that the Tribunal had "no authority to decide the merits of Telenor's claim because the Ukrainian courts had ruled, among other things, that the January 30, 2004 Shareholders Agreement was 'null and void in full, including the arbitration clause.'" Decision of Kyiv Commercial Court, April 25, 2006 (translation, p. 3); aff'd Kyiv Appellate Commercial Court, May 25, 2006 (translation, p. 3). Storm filed English translations of the two decisions as attachments to its Motion and argued that the arbitration should be dismissed in its entirety for lack of jurisdiction.

Telenor filed its Opposition to Storm's Motion on June 23, 2006, with exhibits, in which it contended that the Ukrainian litigation was "collusive", having been brought against Storm by one of its own affiliates, Alpren; that Telenor was not notified of, or made a party to, the Ukrainian litigation; and, therefore, that Telenor was not bound by the Ukrainian decisions.   Telenor asserted that it first learned of the Alpren litigation from a press report *after* the Kyiv Appellate Commerial Court had already issued its decision.   Telenor further argued that New York law, not Ukrainian law, governed the issue of whether the Shareholders Agreement was valid.

On June 29, 2006, the Tribunal held the first of three hearings on Storm's Motion to Dismiss.   The first hearing consisted largely of oral argument by the parties' counsel with reference to the two Ukrainian decisions and the background of the Voting Agreement of September 2, 2002, the attached form of Shareholders Agreement and the January 30, 2004 Shareholders Agreement.   At the conclusion of the argument, it was clear to the Tribunal that it needed the parties to make further evidentiary submissions regarding both the background of the January 30, 2004 Shareholders Agreement and what evidence and arguments had been presented to the Ukrainian courts concerning its validity, including the arbitration provision.   Accordingly, the Tribunal ordered such submissions and scheduled a second hearing for August 14, 2006.   At the conclusion of the August 14 hearing, the Tribunal held a third hearing on September 5, 2006, in response to Storm's concerns about the unavailability of certain of its witnesses for the August 14 hearing.

In the course of the three separate hearings, the Tribunal received extensive evidence regarding the background, negotiation, approval and execution of the July 30, 2006 Shareholders Agreement and its predecessors, and about what of this evidence was presented to the Ukrainian courts. The evidence presented to the Tribunal consisted of live testimony and declarations from Telenor and Storm officials and counsel, documents relating to the negotiation, approval and signing of the relevant corporate documents, including emails and letters exchanged between the parties and their representatives, and the official court records from the Ukrainian courts and English translations of those records. The evidence also included affidavits and supporting documents submitted by Ukrainian legal experts.

With regard to the proceedings in the Ukrainian courts, the evidence submitted to this Tribunal established that on April 17, 2006, Alpren brought suit against Storm in the Kyiv Commercial Court, claiming among other things that Storm's January 30, 2004 Shareholders Agreement with Telenor had not been executed by a duly authorized representative and was accordingly invalid. As previously noted, Alpren owned 49.9% of Storm, with the rest owned by Alpren's parent, both of which were affiliates of Storm and under the overall control of the Alfa Group. It was undisputed that Telenor received no notice of this proceeding or of the subsequent appeal until after the Commercial Appellate Court had rendered its decision.

On April 21, 2006, the Kyiv Commercial Court held a hearing at which Storm submitted no statement of defense. Its representative did advise the Court of the arbitration clause and of the existence of this arbitration, but made no argument that the arbitration clause submits "any and all disputes" to the arbitral tribunal for resolution and that the governing UNCITRAL Rules provide for the severability of the arbitration clause from the Shareholders Agreement. Storm's representative also made no attempt to present to the Ukrainian court the extensive evidence received by this Tribunal regarding the background, approval and affirmation of the July 30, 2004 Shareholders Agreement, including its arbitration provision.

On April 25, 2006, the Kyiv Commercial Court rendered its decision in which it concluded that Storm's participating shareholders had not properly approved the January 30, 2004 Shareholders Agreement; that Storm's Director General, Mr. Nilov, had "acted unlawfully and in excess of [his] powers"; and that the Shareholders Agreement and the arbitration clause were null and void.

Storm filed an appeal, repeating that the dispute was currently in arbitration in New York and was not "examinable" by the Kyiv Commercial Court. Oral argument before the Kyiv Appellate Commercial Court took place on May 25, 2006, and that court issued its decision the same day. The Appellate Commercial Court agreed with the lower court that Storm's General Director had "acted unlawfully" and "in excess of his authority" in signing the January 30, 2004 Shareholders Agreement, and that the Agreement, including its arbitration provision, was null

and void.  The Court further ruled that the lower court had jurisdiction to proceed because any arbitration agreement was not between Alpren and Storm.

As Storm had failed to do during the initial court proceeding, it made no effort to present to the Ukrainian Appellate Commercial Court any of the extensive evidence presented to this Tribunal concerning the background, negotiation and execution of the January 30, 2004 Shareholder Agreement, nor regarding the affirmation by Storm officials on repeated occasions of the authority of Storm's General Director to sign the Agreement on its behalf.  Storm also made no argument regarding the severability of the arbitration clause, nor did it supply the evidence heard by this Tribunal of Storm's clear intent to submit any and all disputes with Telenor to arbitration.

**C.    The Tribunal's Jurisdiction To Hear This Arbitration**

In light of the evidence and argument presented to the Tribunal, it is apparent that Storm's Motion to Dismiss presents two issues for resolution by the Tribunal:  First, does the Tribunal have jurisdiction to decide the question of whether it has jurisdiction to hear this Arbitration, or is that a decision for a court?  Second, assuming the Tribunal has jurisdiction to decide this first issue, does it, in fact, have authority to proceed to hear the issues raised by Claimant's Amended Notice of Arbitration and Statement of Claim?  For the following reasons, the Tribunal unanimously answers both questions in the affirmative.

As to the first question, it should be emphasized that the Respondent, itself, has repeatedly conceded that this Tribunal does, in fact, have authority to decide the issue of its own jurisdiction. As Respondent's counsel stated at the June 29, 2006 Hearing:

> Now, [Claimant] spend[s] a lot of time saying that this panel has the jurisdiction to determine whether it has jurisdiction, or has the power to determine whether it has jurisdiction. Storm does not disagree with that proposition . . . . We believe that you do have the power to decide whether you have jurisdiction. That's why we made the motion to you and are here today. Hearing on 6/29/06; Tr. at p. 23, 13-23.

Respondent repeatedly confirmed this position in appearing before the Tribunal, expressly asserting that the Tribunal has "the authority under the UNCITRAL rules to decide your jurisdiction." Hearing on 9/5/06; Tr. at p. 62, 2-9; see, also, other similar references at Hearing on 8/14/06; Tr. at p. 257, 10-16; Tr. at p. 263, 4-12; Tr. at pp. 266-267, 1-3, 24-25.

Respondent's concession is consistent with the law. The Tribunal points in particular to *Shaw Group, Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 123 (2d Cir. 2003), which stands for the proposition that where, as here, the question of jurisdiction to arbitrate is delegated in clear and unmistakable language to the Tribunal, it is the Tribunal – not a court – that has the authority to decide its jurisdiction to proceed. In this matter, Section 12.01 of the Shareholders Agreement clearly and unmistakably states that "any and all disputes and controversies arising under, relating to or in connection with this Agreement shall

be settled by arbitration." Equally pertinent is Article 21 of the UNCITRAL Rules,

which Section 12.01 expressly adopts and which provides:

1.   The arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause or of the separate arbitration agreement.

2.   The arbitral tribunal shall have the power to determine the existence or the validity of the contract of which an arbitration clause forms a part. For the purposes of Article 21, an arbitration clause which forms part of a contract and which provides for arbitration under these Rules shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitral tribunal that the contract is null and void shall not entail ipso jure the invalidity of the arbitration clause.

Thus, this matter precisely parallels *Shaw* in that there is an express

agreement to arbitrate "any and all disputes" in the Shareholders Agreement; and

Article 21 of the UNCITRAL Rules makes clear both that the issue of the Tribunal's

jurisdiction is arbitrable and that the arbitration clause is severable from any

question concerning the validity of the Shareholders Agreement, itself.

Accordingly, the clear language of Section 12.01 of the Shareholders Agreement and

Article 21 of the UNCITRAL rules, coupled with the repeated concessions on the

issue by Respondent, lead to the unanimous conclusion of the Tribunal that it has

jurisdiction to decide its jurisdiction to proceed with this Arbitration.

Nothing in *Sphere Drake Ins. v. Clarendon National Ins.*, 263 F.3d 26 (2d Cir.

2001), compels a different conclusion. That case did not deal with the situation we

have here, where both the contract in dispute and the UNCITRAL Rules clearly

-12-

point to arbitration as the vehicle for resolving disputed issues, including jurisdiction. *Sphere Drake* did not involve an arbitration clause incorporating rules similar to the UNCITRAL Rules, which expressly confer power on the Tribunal to decide questions concerning its own jurisdiction. Accordingly, the present matter is not one where the issue of jurisdiction must be referred to a court for resolution, as the concessions of Respondent recognize.

The Tribunal, having concluded it has jurisdiction to decide its own jurisdiction, further unanimously decides that it does have jurisdiction to proceed with this Arbitration. It does so notwithstanding the decisions of the Ukrainian courts declaring the Shareholders Agreement to be "null and void". Our principal reason for doing so is that the Ukrainian courts never addressed the severability of the arbitration clause from the rest of the Shareholders Agreement. In fact, those courts never referenced Article 21 of the UNCITRAL Rules at all. That Article expressly provides for the severability of the arbitration clause and further provides that a decision that the underlying Shareholders Agreement is invalid "shall not entail ipso jure the invalidity of the arbitration clause".

As a result, the Ukrainian courts never addressed whether Mr. Nilov, for Storm, had authority to agree to the arbitration clause and the UNCITRAL Rules quite apart from his authority to agree to the Shareholders Agreement. Having heard a full record on this point, this Tribunal expressly finds that Storm and Telenor had a clear intent to have their disputes resolved through arbitration; that Mr. Nilov confirmed that intention by executing agreements that contained a broad

-13-

arbitration clause incorporating the UNCITRAL Rules; and that none of the reasons assigned by the Ukrainian courts for invalidating the Shareholders Agreement applies to the arbitration clause. Indeed, there is nothing in those decisions to suggest that the General Director of a Ukrainian company could not enter into a binding agreement to arbitrate.

It is understandable that the Ukrainian courts never addressed the severability issue or considered that the parties' agreement to refer disputes to arbitration – embodied in Section 12.01 – might be something separate and apart from the Shareholders Agreement. Neither Alpren nor Storm presented these issues to those courts. Telenor had no ability to do so because it was never notified of, or made a party to, the Ukrainian proceedings. In some respects, this is not surprising since, as already indicated, the parties clearly intended that any and all disputes should be resolved through arbitration.

In the latter regard, the Tribunal finds it significant that this arbitration was initiated in February 2006, two months before Alpren commenced its Ukrainian litigation. The Tribunal was fully constituted by the end of March and held its first pre-hearing conference prior to the initiation of the Ukrainian litigation. It is noteworthy that, despite the existence of this Tribunal and the nature of this proceeding – which involved *Storm's* challenge to the validity of the underlying Shareholders Agreement – Storm never notified this Tribunal about the Ukrainian litigation until after both Ukrainian courts had ruled that the Shareholders Agreement was invalid. It is beyond dispute that Storm was aware of the Alpren

challenge to the validity of the Shareholders Agreement on or before April 17, 2006 when Alpren filed it is claim in the Kyiv Commercial Court. Storm did not inform the Tribunal about that litigation, however, until it submitted its Statement of Defense on May 30, 2006 six weeks later. To repeat, this was after both the initial Ukrainian proceeding and the appeal in the Ukraine had been completed. The Tribunal also finds it significant that neither during the course of the Ukrainian litigation nor since has Storm made any attempt to seek an order from any court staying this Arbitration. Instead, Storm has been steadfast in its effort to secure from this Tribunal a ruling on its Motion to Dismiss.

The Tribunal emphasizes that it is not deciding at this point whether the Shareholders Agreement, as opposed to the arbitration clause, is valid or not. That decision must await the arbitration hearing scheduled in New York City on December 7 and 8, 2006. Respondent will continue to have every opportunity to present additional evidence on that issue at that time. While Storm has recently sought to continue the December hearing, the Tribunal believes that it should go forward as scheduled. The parties will have had three months to prepare since the September 5 hearing, and over a month remains for them to complete any remaining discovery they require.

Finally, the Tribunal's present Partial Final Award does not ignore in any respect the decisions of the Ukrainian courts. Nor does it impugn in any way the integrity of those courts or their decisions. To the contrary, the Tribunal finds no evidence of any impropriety or violations of any Ukrainian procedures. The

-15-

Tribunal rests its decision on the fact that the Ukraine courts lacked the full record presented to this Tribunal on the issues of arbitrability and the validity of the arbitration clause. Unlike the court proceedings in Ukraine, both the Claimant and Respondent in this Arbitration have been afforded a full and complete opportunity to present their evidence and arguments on those issues. Indeed, Claimant and Respondent have expressly stated that there is no further evidence or legal argument they wish to present to the Tribunal on those issues.

In sum, the Tribunal has considered all decisions of the Ukrainian courts, but has unanimously concluded that the Ukrainian courts lacked the full record before this Tribunal. It is this full record that leads us to conclude that this Tribunal does have jurisdiction to proceed with this Arbitration, and that the Arbitration should proceed on December 7 and 8, 2006.

**D.    Conclusions and Partial Final Award**

A unanimous Tribunal in the above-captioned matter hereby issues the following Partial Final Award:

1.    Respondent Storm LLC's Motion to Dismiss on the ground that this Tribunal does not have jurisdiction to hear and decide this Arbitration is denied.

2.    The Tribunal does have jurisdiction to proceed with the resolution of the claims raised by Claimant's Amended Notice of Arbitration and Statement of Claim.

3.    Respondent's request for a continuance is denied, and this Arbitration shall proceed as scheduled on December 7 and 8, 2006 in New York, New York.

01/02/2007  17:11     13126430024                    JENTES                                    PAGE   03/03

4.      The Tribunal directs the Parties to meet and confer on a proposed Order covering any remaining pre-hearing matters.

SO ORDERED this 22nd day of October, 2006.

_____/s/_____
Gregory B. Craig

William R. Jentes

Kenneth R. Feinberg, Chair

4.     The Tribunal directs the Parties to meet and confer on a proposed Order covering any remaining pre-hearing matters.

SO ORDERED this 22nd day of October, 2006.

Gregory B. Craig

/s/

_____
William R. Jentes

Kenneth R. Feinberg, Chair

-17-