# EXHIBIT M

Lovells

590 Madison Avenue
New York NY 10022
Tel:  +1 212 909 0600
Fax:  +1 212 909 0660

**By E-mail and Overnight Mail**

March 14, 2007

Direct line (212) 909-0661
pieter.vantol@lovells.com
Direct fax (212) 909-0660

Our ref NYPT/115078.01
Matter ref V2336/00016

Kenneth R. Feinberg, Esq.
The Feinberg Group LLP
The Willard Office Building
1455 Pennsylvania Ave., NW
Suite 390
Washington, DC 20004

William R. Jentes, Esq.
1500 North Lake Shore Drive
Suite 4C
Chicago, IL 60610

Gregory B. Craig, Esq.
Williams & Connolly LLP
725 Twelfth St., NW
Washington, DC 20005

RE:    TELENOR MOBILE COMMUNICATIONS AS V. STORM LLC

Dear Messrs Feinberg, Jentes and Craig:

As counsel for Storm LLC ("Storm"), we write in response to the Tribunal's Interim Order Directing
Further Briefing (the "Interim Order") in the above arbitration.

In accordance with the Tribunal's order of February 27, 2007, we approached the Ukrainian court
for leave to file the further briefing referred to in the Interim Order. On March 13, 2007, the
Golosiyiv District Court of Kyiv (the "Kyiv Court") entered a clarification order (the "Clarification
Order") (enclosed as Exhibit A) in which it held that Storm may not respond to the Interim Order in
the manner set forth by the Tribunal, *i.e.*, Storm may not provide extensive briefing in response to
the Tribunal's questions. The Kyiv Court expressly pointed out that the December 1, 2006 Ruling
and the underlying rulings of the Ukrainian courts remain in full force and effect.

However, it is important to note that the Kyiv Court held that Storm may submit the Clarification
Order to the Tribunal and make reference to the points of Ukrainian law that are germane here,
which we have done below. Also, it is our position that Storm may refer back to or amplify (where
necessary) the pre-December 1, 2006 submissions, issues and arguments that we believe will
assist the Tribunal in its resolution of this matter. For the Tribunal's convenience, we have briefly
set forth those arguments below rather than merely cross-referencing our earlier submissions.

Alicante  Amsterdam  Beijing  Brussels  Chicago  Dusseldorf  Frankfurt  Hamburg  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow
Munich  New York  Paris  Prague  Rome  Shanghai  Singapore  Tokyo  Warsaw   Associated offices:  Budapest  Zagreb

Lawyers (USA)  Solicitors  Rechtsanwälte  Avocats  Advocaten  Notarissen  Avvocati  Abogados

- 2 -                                                   March 14, 2007

**Issues Pertaining the Tribunal's First Question**

1.    *Assuming New York law applies as an initial matter to this Arbitration pursuant to the parties' choice of that law in the Shareholders Agreement, and pursuant to Article 33 of the UNCITRAL Rules, do New York choice of law rules nonetheless direct this Tribunal to apply Ukrainian law to disputes affecting the governance of a Ukrainian corporation, like Storm, including disputes over the authority to contractually bind the corporation? (See Storm brief, Paragraphs 33-37.)*

Storm demonstrated, in its Pre-Hearing Brief, that New York law directs the application of Ukrainian law to the issues of both actual and apparent authority.[1]

The rule was clearly set forth by Judge Cote in *Lehman Bros. Inc., v. Tutelar, CIA Financiera S.A.*, No. 95 CIV 3772, 1997 WL 403463 (S.D.N.Y. July 17, 1997), which is a case that Telenor Mobile has not distinguished (and, indeed, cannot distinguish) from this matter. In *Tutelar*, Lehman Brothers, Inc. ("Lehman") sought to recover on a contract which, it alleged, provided a guarantee for a trading account maintained by a Uruguayan corporation. The guarantee was signed by the "Individual Defendants," who were officers and directors of Tutelar CIA Financiera S.A. ("Tutelar"), an Argentinean financial corporation. *Id.* at *1. Tutelar argued — just as Storm argues here — that the Individual Defendants did not have the actual or apparent authority to bind the company. *Id.* at *3. On the question of what law applied to those arguments, the court stated that:

> Because the issue of the <u>actual</u> authority of the Individual Defendants to bind Tutelar turns on Tutelar's internal corporate organization, … the law of the place of incorporation, here Argentina, would govern. *See Lee v. Jenkins Bros.*, 268 F.2d 357, 363 (2d Cir. 1959). *See also Scottish Air Int'l, Inc. v. British Cale[d]onian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996) ("questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation"). The issue of <u>apparent</u> authority, however, is governed by the law where Lehman "relied upon such apparent authority." *Lee*, 268 F.2d at 363.

*Id.* n.4 (emphasis in original).[2]

The Tribunal should apply the same analysis from *Tutelar* to the actual and apparent authority issues here.

---

[1]    The parties have agreed, by citing to New York cases on choice of law, that as an initial matter New York conflicts principles govern here (assuming the requirements for the applicability of those principles have been met). It is Storm's view that an application of those principles leads to the conclusion that Ukrainian law controls on the issues discussed below.

[2]    As noted by the *Tutelar* court, the rule for actual authority is based on the long held "internal affairs" doctrine. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) ("As a general matter, the law of the state of incorporation normally determines issues relating to the <u>internal</u> affairs of a corporation. Application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation.") (emphasis in original); *U.S. v. Funds Held in the Name of or for the Benefit of Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000) ("Questions relating to the internal affairs of corporations — for profit or not-for-profit — are generally decided in accordance with the law of the place of incorporation.").

- 3 -                                                                    March 14, 2007

(a)    *Nilov's Actual Authority*

Storm is a Ukrainian corporation, so the question of whether Valeriy Nilov had the actual authority to bind Storm to the Shareholders Agreement must be resolved by reference to Ukrainian law. Such a result is in accord with the jurisprudential basis for the internal affairs doctrine, which is to protect the reasonable expectations of all parties with a legitimate interest in the corporation — not just shareholders, but other parties as well, including officers, directors, consumers, and even competitors. There is no evidence that the governing body of Storm, a Ukrainian company, understood that New York law applied to the matter of Mr. Nilov's authority to bind Storm to the Shareholders Agreement. Nor, for that matter, did Telenor, which in 2002 correctly demanded the requisite documentation <u>under Ukrainian law</u> to establish that Mr. Nilov had actual authority to contractually bind Storm. Telenor cannot now try to circumvent Ukrainian law in an effort to avoid the consequences of its failure to properly obtain the same authority in 2004.[3]

An application of the *Tutelar* rule on actual authority is also consistent with the mandatory provisions of Ukrainian law relating to the internal corporate governance of domestic corporations, as described by the Clarification Order:

> <u>Issues emerging from the relations between the shareholders and the company, or between the shareholders, are the subjects of internal corporate management and governed exclusively by the laws of the place of registration of the company.</u> Determination of the rights and obligations of a shareholder of a Ukrainian company is the matter of exclusive competence of Ukrainian law. According to the Article 14 of the Law of Ukraine On the Business Entities and the Article 81 of the Civil Code of Ukraine, the issues related to the legal status and activity of the Ukrainian company are governed exclusively by the Ukrainian law. Moreover, the Article 46 of the Law of Ukraine On the International Private Law stipulates that the Founding Agreement, being a statutory document of a legal entity with the foreign participation, is governed by the law of the state where such legal entity is founded.

(Ex. A at p.3; emphasis added.)

For these reasons, the Tribunal should apply Ukrainian law to the issue of actual authority and conclude, as did the Ukrainian courts, that Mr. Nilov lacked the requisite authority.

---

[3]    Telenor Mobile has misleadingly cited an e-mail, dated August 23, 2002, from David Wack, an attorney involved in the negotiations for the 2002 agreements, to suggest that Ukrainian law is not applicable. (*See* Ex. B, Claimant's Proposed Findings of Fact and Conclusions of Law, dated January 19, 2007, at ¶ 56.) First of all, Mr. Wack is clearly referring to the Share Purchase and Option Agreements, and he was assuming that Swedish law applied. He is also discussing the "second signature" requirement, not whether Mr. Nilov needed authority from a meeting of participants. Moreover, the e-mail was several months before the parties determined that Mr. Nilov in fact needed approval from a meeting of participants to execute the 2002 Voting Agreement. Clearly, Mr. Wack or someone reached the conclusion prior to the execution of the 2002 Voting Agreement (and well after the Wack e-mail) that Storm Charter and the governing Ukrainian law required such a meeting and approval. If Ukrainian law were not applicable, the meeting of participants would not have been necessary.

### (b)    Nilov's Apparent Authority

The *Tutelar* court explained that "[t]he issue of <u>apparent</u> authority ... is governed by the law where [plaintiff] relied upon such apparent authority." 1997 WL 403463 at *3 (citations and internal quotations omitted; emphasis in original).[4]  In *Tutelar*, the court found that because (1) the contract was addressed to a plaintiff in New York, (2) plaintiff was a New York-based corporation, and (3) payments made pursuant to the contract were to be made in New York, New York law should apply to the question of apparent authority. *See Tutelar*, 1997 WL 403463 at *3 n.4.  No such ties to New York exist here.

In this case, the Shareholders Agreement purports to bind a Ukrainian corporation and a Norwegian corporation in connection with the corporate governance of Kyivstar, another Ukrainian company. The contract was negotiated and executed in Ukraine, and both parties were represented by Ukrainian counsel. (*See* Ex. C., Storm Pre-Hearing Br., at ¶ 40.)  The evidence shows that, during the formation of the Shareholders Agreement, there was no nexus whatsoever to New York. Considering, by contrast, the overwhelming number of connections to Ukraine, it is wholly implausible to suggest that Telenor Mobile was relying on principles of New York law in relation to Mr. Nilov's execution of the Shareholders Agreement. Indeed, even Telenor Mobile's expert witness, Mr. Rabij, stated that Telenor Mobile must have been relying on Mr. Nilov's apparent authority under Ukrainian law. (*See* Ex. D, Rabij Op., at ¶ 30; Ex. C at ¶ 41.)  Therefore, under the *Tutelar* test, Ukrainian law must be applied to the issue of apparent authority.

As Storm has pointed out in its submissions, Article 92(3) of the Ukrainian Civil Code provides that a party's reliance on another party's apparent authority must be reasonable under the circumstances and the relying party cannot cite to apparent authority it knew, or should have known, about limitations on that authority. (*E.g.*, Ex. D, Rabij Op., at ¶ 31.)[5]  New York law is to the same effect. For example, in *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26 (2d Cir. 2001), the Second Circuit noted that the doctrine of apparent authority does not apply where the relying party "knew, or should have known" of limitations on the agent's authority. *Id.* at 33. *See also Scientific Holding Co. Ltd. v. Plessey Inc.*, 510 F.2d 15, 24 (2d Cir. 1974) ("It is an accepted principle of the law of agency that a person with notice of a limitation which has been placed on an agent's authority cannot subject the principal to liability upon a transaction with the agent if he knows or should know that it is outside the scope of the agent's authority.") (cited in *Sphere Drake*).[6]  Thus, there is a "false conflict" between Ukrainian and New York on the issue of

---

[4]     *Tutelar*'s focus on where the other party relied on the apparent authority is consistent with the general conflicts rule set forth in *Indosuez Int'l Finance B.V. v. Nat'l Reserve Bank*, 98 N.Y.2d 238, 245-46, 774 N.E.2d 696, 700-01 (2002), which is that the New York courts will apply the law of the state with the most significant relationship to the issue. Despite the presence of choice of law clauses in the contracts before it, the *Indosuez* court determined the applicable law for the issue of apparent authority based on an evaluation of which state had the most significant contacts. *See id.*  The *Indosuez* court did not simply defer to the choice of law provisions in the contracts, as Telenor Mobile would have the Tribunal do in this case.

[5]     Storm has demonstrated in its submissions that Article 92(3) does not apply under the circumstances of this case, which means that the issue of contract formation turns on actual authority alone. (*See, e.g.*, Ex, C at ¶ 41 (citing Ex. E, Maydanyk Op., at ¶¶ 31-32, 35-38).)  For the sake of argument, however, we have assumed below that Article 92(3) applies here.

[6]     Telenor Mobile cannot now dispute this aspect of New York law. It has frequently cited *Indosuez Int'l Finance B.V. v. Nat'l Reserve Bank*, 98 N.Y.2d 238, 246, 774 N.E.2d 696, 700 (2002), in which the New York Court of Appeals stated that a party may rely on an agent's apparent authority "only to the

March 14, 2007

apparent authority (assuming, *arguendo*, Article 92(3) of the Ukrainian Civil Code applies). In short, the Tribunal does not need to resort to New York's conflicts principles because the outcome is the same under either law.

By now, the Tribunal is very familiar with Storm's arguments on apparent authority from its earlier submissions, so for convenience we will simply summarize what was stated previously. The evidence clearly demonstrates that Telenor Mobile knew, as early as 2002, that Mr. Nilov required authorization from a meeting of participants in order to bind Storm to agreements involving the transfer or disposition of Kyivstar shares. Armed with such knowledge, Telenor Mobile requested proof of Storm's authorization in connection with the execution of several contracts in 2002. It received proof in a written confirmation specifically spelling out that Mr. Nilov had been granted the authority to sign the 2002 agreements at a special meeting of participants.[7] Thus, Telenor Mobile cannot reasonably claim that it was unaware of such express limitations on Mr. Nilov's authority. The 2004 Shareholders Agreement, like the 2002 Voting Agreement, involved the disposition of Kyivstar shares and, accordingly, required specific authority from a meeting of participants.[8] Storm has also shown that the 2004 Shareholders Agreement was materially different, and Telenor Mobile could not have reasonably relied on the earlier authorization. Telenor Mobile had to make sure there was actual authority for Mr. Nilov from a meeting of participants, just as it had done two years earlier for the 2002 Voting Agreement. The consequences of Telenor Mobile's failure to follow corporate formalities properly in the 2004 transaction must rest with Telenor Mobile, not Storm.

**Issues Pertaining to the Tribunal's Second Question**

2.      *Making the same initial assumption, do New York choice of law rules nonetheless hold that the parties' choice of law is not binding where, among other factors, another state has more significant contacts with the transaction in question? Would application of New York law to the issue at bar be contrary to fundamental policy of that other state? Do these or other exceptions apply so that the parties' choice of New York law should be rejected in favor of Ukrainian law? (See Storm brief, Paragraphs 56-61.)*

The Tribunal's first question is answered by the *Indosuez* case. Citing, among other things, the RESTATEMENT (SECOND) OF CONFLICT OF LAWS, the Court of Appeals stated in *Indosuez* that "New York choice of law principles require a court to apply the law of the state with the most significant relationship with the particular issue in conflict." 98 N.Y.2d at 245, 774 N.E.2d at 700. Thus, New

---

extent that such reliance is reasonable." Also, at the August 14, 2006 hearing, Mr. Sills conceded that Ukrainian law and New York law on apparent authority are the same. (*See* Ex. F, 8/14 Tr., at 28:3-5.)

[7]      Moreover, Telenor Mobile has acknowledged, both in its submissions and in the testimony of its witnesses, that it received a copy of Storm's charter well in advance of the parties' execution of the Shareholders Agreement. (*See* Ex. G, Telenor Mobile Evidentiary Br., at 10-11; Ex. F, Test. of Sigmund Ekhougen, 8/14 Tr., at 91:11-96:13, 97:5-10.)

[8]      Telenor Mobile argues that the Shareholders Agreement cannot be read as "a disposition or encumbrance of shares." (*See* Ex. B at ¶ 101.) This contention is directly contradicted by Telenor Mobile's own witness, Mr. Ekhougen, who admitted under oath that the Shareholders Agreement does indeed involve the disposition of Kyivstar shares: "Q. Okay. So, we have established so far that the voting agreement and whatever shareholders' agreement that is going to be entered into later has to do with the disposition of shares in Kyivstar; right? A. Not surprisingly, yes." (Ex. F at 98:10-15; *see also* Ex. E, Maydanyk Op., at ¶ 14 ("[I]t is my opinion that [Storm's Charter] expressly limits the power of the General Director to enter into the Shareholders Agreement precisely because it entails the disposal of Kyivstar Shares.").)

York follows the rule of RESTATEMENT (SECOND) CONFLICTS OF LAW § 187.  Under that rule, a court will enforce a contractual choice of law provision only where the state whose law is selected "has sufficient contacts with the transaction in question and the application of that state's law would not be contrary to any fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue at bar, and which would be the state of the applicable law in the absence of an effective choice of law by the parties." *Business Incentives Co., Inc. v. Sony Corp. of Am.*, 397 F. Supp. 63, 67 (S.D.N.Y. 1975).  *See also Indosuez*, 98 N.Y.2d at 245-46, 774 N.E.2d at 700-01 (examining parties' contacts with New York despite presence of choice of law provisions selecting New York law).

Here, the main issues to be decided (other than whether a contract was formed) include (a) whether Storm breached the Shareholders Agreement when its representatives did not attend Kyivstar shareholder or board meetings and when it did not appoint candidates for election to the Kyivstar board on the grounds that the corporate governances set forth in the Shareholders Agreement violate Ukrainian law; (b) whether Storm's initiation of litigation in Ukraine — in which it argued that the Kyivstar Charter and parallel provisions in the Shareholders Agreement violate Ukrainian law — constitute a breach of the Shareholders Agreement; (c) whether Storm may be ordered to amend the Kyivstar Charter — a foundational document governed by Ukrainian law — to conform to the Shareholders Agreement; and (d) whether Storm's business activities in Ukraine violate the terms of the non-competition provision in the Shareholders Agreement, which in turn raises issues under Ukrainian competition law.  As Storm explained in its Pre-Hearing Brief, none of foregoing issues implicates New York's laws or New York's interests.  Moreover, the "transactions" involved — *i.e.*, the negotiation of the Shareholders Agreement, the establishment of Kyivstar under its Charter, Storm's actions in Ukraine on corporate governance issues and Storm's business activity in Ukraine — have absolutely nothing to do with New York.  Those events simply cannot be deemed "sufficient contacts" with New York under the conflicts of law analysis.

The Tribunal has also asked whether an application of New York law would violate any fundamental policy of Ukraine.  It is clear that it would.  Storm has shown in its Pre-Hearing Brief and other submissions that Ukraine has a paramount interest in the regulation of the various corporate governance issues that are at the heart of this arbitration.  The Clarification Order underscores that point because the Kyiv Court repeatedly stated that issues relating to Kyivstar Charter and shareholders' rights must be determined under Ukrainian law.  (*See* Ex. A at 2-3.)  Ukraine has a similar paramount interest in the regulation of companies doing business there, so Ukrainian law also governs any issues arising out of the non-competition provision.  Finally, an application of Ukrainian law (and the concomitant recognition of the Ukrainian courts' orders in this matter) serves Ukraine's strong interest in protecting the integrity of its judicial system.

Telenor Mobile has attempted to evade the conflicts principles set forth in *Indosuez* (a case that Telenor Mobile repeatedly cites in its submissions) by arguing that the parties have the autonomy to choose New York law notwithstanding the lack of contacts with the forum.  Telenor Mobile, for example, cites Section 5-1401 of New York's General Obligation Law, which, under certain circumstances, allows contracting parties to choose New York law "whether or not such contract … bears a reasonable relation to this state."  As an initial matter, Section 5-1401 only applies to contracts for transactions greater than $250,000.  Telenor Mobile, however, has admitted that "nothing in the Shareholders Agreement amounts to a transactional document."  (Ex. B at ¶ 101.)

March 14, 2007

Therefore, by Telenor Mobile's own admission, Section 5-1401 cannot apply to the Shareholders Agreement.[9]

Even assuming Telenor Mobile could rely on Section 5-1401, that provision is still limited by constitutional due process and public policy concerns. For example, in *Von Hundertmark v. Boston Professional Hockey Ass'n Inc.*, 1996 WL 118538 (E.D.N.Y. March 7, 1996), the court stated that choice of law provisions under Section 5-1401 are enforced "so long as there is a reasonable basis for the choice or the state whose law is selected has sufficient contacts with the transaction." *Id.* at *4. *See also In re Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. 710, 886 (E. & S.D.N.Y. 1991) (same), *vacated on other grounds*, 982 F.2d 721 (2d Cir. 1992). Likewise, in *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118 (S.D.N.Y. 2000), the court pointed out that Section 5-1401 "is not without limits" and the parties' choice of law "must still remain within constitutional bounds." *Id.* at 137; *see also id.* at 135 (stating that "[t]he power of courts to enforce [a New York choice of law provision] remains restricted within constitutional bounds"). "A court's power to apply its own state's law in a case that affects another U.S. state is limited by both due process and the Full Faith and Credit Clause. … It remains to be seen … whether a state with <u>no</u> connection to either the parties or the transactions could apply its own law, consonant with the Full Faith and Credit Clause, when doing so would violate an important public policy of a more-interested state." *Id.* at 137 (emphasis in original). The *Minmetals* court went on to note that the constitutional limits in cases involving the laws of foreign nations derive from the concept of comity rather than the U.S. Constitution. *Id.* In that case, however, the court found that there were no constitutional restrictions because the transaction and one of the parties had contacts with New York. *Id.* Moreover, the party opposing New York law had not raised any constitutional restrictions. *See id.* at 137-38.[10]

In this matter, by contrast, neither the parties nor the transaction has <u>any</u> connection with New York. In addition, the application of New York law (as shown above) would intrude on Ukrainian laws regarding the governance of its domestic corporations. Under New York conflicts rules and the doctrine of comity, the Tribunal should apply the law of Ukraine to the relevant issues.

---

[9]    As discussed above, Telenor Mobile also maintains that the Shareholders Agreement does not involve the disposition of Kyivstar shares. While the Shareholders Agreement is not the transactional document under which the shares are transferred, its express terms require the subsequent disposition of shares. The Ukrainian courts cited these provisions in holding that a meeting of participants for Storm was required and the presence of the same provisions in the 2002 Voting Agreement caused the parties to obtain authorization from a meeting of participants at that time.

[10]    Many commentators have similarly recognized that the mandatory rules and public policies of another jurisdiction act as a significant limit on the ability of arbitrators in international cases to apply the law chosen by the parties. *See, e.g.*, N. Voser, "Mandatory Rules of Law as a Limitation on the Law Applicable in International Commercial Arbitration," 7 AM. REV. OF INT'L ARB. 319, 356 (1996) ("[A]rbitrators not only can, but also should apply mandatory rules even if they are not part of the chosen law or the proper law of the contract. The parties have an interest in an award which is not challengeable and can be enforced. This interest may lead to the application of the state(s) where the award can be challenged and where it is likely to be enforced.").

March 14, 2007

**Issues Pertaining the Tribunal's Third Question**

3.      *If Ukrainian law must be applied by this Tribunal under either of the preceding two assumptions, does Ukrainian law provide that matters of corporate governance in a corporation's constituent documents cannot be modified by private contract?  (See Storm brief, Paragraphs 56-61.)*

The Clarification Order directly addresses this question, noting that "Ukraine law does not provide for the possibility of regulating the formation, purview and decision-making procedures of an entity's bodies by any other documents, including private agreements such as the Shareholders Agreement." (Ex. A at 3.) This confirms the opinion of Storm's expert, Peter Magnus, who stated that matters relating to corporate governance could not be modified by private agreements. (*See* Ex. H, Legal Opinion of Peter Magnus, at ¶¶ 21-22.)

**Issues Pertaining the Tribunal's Fourth Question**

4.      *Making the same initial assumption as in paragraph 1, above, do New York choice of law rules require that conclusive effect be given by this Tribunal to the various decisions of the Ukrainian courts relied upon by Respondent, unless (a) the Ukrainian courts lack subject-matter or personal jurisdiction; (b) the judgments were fraudulently obtained; or (c) enforcement would offend New York public policy.  Has Claimant established any of these purported grounds?  (See Storm brief, Paragraphs 48-53).*

As established in our prior submissions, there is no question that a New York court would be required, under the doctrine of comity, to recognize the various decisions of the Ukrainian courts relied upon by Storm.  New York courts have long adhered to the principle that "a final judgment obtained through sound procedures in a foreign country is generally conclusive as to its merits <u>unless</u>: (1) the foreign court lacked jurisdiction over the subject matter or the person of the defendant; (2) the judgment was fraudulently obtained; or (3) enforcement of the judgment would offend the public policy of the state in which enforcement is sought." *Ackerman v. Levine*, 788 F.2d 830, 837-38 (2d Cir. 1986) (emphasis in original).  (*See also* Ex. C at ¶ 49 *et seq.* (citing further cases).)  None of the three exceptions articulated by *Ackerman* is present here.

Only one of the exceptions — for fraudulent judgments — has even been raised. Telenor Mobile, however, put forward no evidence whatsoever, beyond its *ipse dixit*, that the judgments entered by the Ukrainian courts were the product of collusion.  Thus, Telenor Mobile falls well short of the standard articulated in *Sea Dragon, Inc. v. Gebr. Van Weelde Scheepvaarkantoor B.V.*, 574 F. Supp. 367 (S.D.N.Y. 1983), where the court held that allegations of fraud, without the requisite evidentiary support, could not form the basis for finding that the rulings of a Dutch court had been fraudulently obtained. *Id.* at 372.  It is significant, moreover, that the *Sea Dragon* court held that the proper forum for testing a claim of a fraudulent judgment was the Dutch judicial system. *Id.* Telenor Mobile has refused to challenge the April and May 2006 decisions in the Ukrainian courts, despite its frequent forays into the Ukrainian judicial system. In the Clarification Order, the Kyiv Court expressly confirmed that the earlier decisions followed Ukrainian law and proper procedures. (Ex. A at 2-3.)  This finding is in accord with the Tribunal's own statement that there was "no evidence of any impropriety or violations of any Ukrainian procedures." (Ex. I, Oct. 22 Award, at 15.)  In short, Telenor Mobile has not met — and cannot meet — its heavy burden of establishing <u>through evidence</u> that the Ukrainian judgments were obtained by fraud. As stated by the *Sea Dragon* court, "[a]bsent any evidence to the contrary, it is the firm and established policy of American courts to respect a valid foreign decree." 574 F. Supp. at 372.

March 14, 2007

The weight that Telenor Mobile places on the preliminary findings of Judge Lynch in the various applications for emergency relief is unfounded.  Those findings were rendered solely for the purposes of determining the emergency motions before the Court and, as recognized by Judge Lynch, they would not even be binding on him in later proceedings (or any other court).  (See Ex. J, Tr. for December 11, 2006 Hearing, at 35:1-13.)[11]  Findings of fact made by a court granting a preliminary injunction are not binding in later proceedings because "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."  RxUSA Wholesale, Inc. v. Dep't of Health and Human Serv., 467 F. Supp. 2d 285, 291 (E.D.N.Y. 2006), citing University of Texas v. Camenisch, 451 U.S. 390, 395 (1981); see also Bristol—Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1049 (2d Cir. 1992) (findings of fact at the preliminary injunction stage are not binding at trial on the merits).  As such, the Tribunal is not bound by what Judge Lynch found, especially in light of its own conclusion that there were no irregularities associated with the Ukrainian decisions and the Kyiv Court's recent statement to the same effect.  The Tribunal, in determining that the Ukrainian court decisions were not the product of collusion, had before it a wealth of evidence, including the expert opinions offered by Storm and the affidavit of Mr. Klymenko in which he explicitly stated that he had not been in contact with Alpren or any other related party in connection with the April and May 2006 decisions.  Telenor Mobile offered the Tribunal no evidence of collusion, other than its rank speculation, and it similarly failed to present a shred of evidence in the proceedings before Judge Lynch.  There is no reason for the Tribunal to alter its earlier finding on the propriety of the Ukrainian proceedings and judgments.

Without question, the Ukrainian courts are the most competent bodies to determine whether the Shareholders Agreement comports with Ukrainian law.  Those courts have repeatedly held that the Shareholders Agreement violates Ukrainian law and is a nullity in its entirety.  Under New York law, the Tribunal must give conclusive effect to the Ukrainian decisions.  However, even if the Tribunal were to decide that it is not bound by the Ukrainian decisions, it should, at a minimum, accept those orders as strong evidence of Ukrainian law on the relevant issues.  The various decisions of the Ukrainian courts further demonstrate that the opinions of Storm's experts on Ukrainian law are correct and, by contrast, that Mr. Rabij has misapprehended Ukrainian law.

**Issues Relating to Relief Claimed in Paragraph E of Telenor Mobile's Proposed Findings and Conclusions/Alternatives to December 22, 2005 Order**

The Tribunal has requested further discussion on whether it has the authority to order Storm to amend the Charter to conform to the Shareholders Agreement, as requested by Telenor Mobile in Paragraph E of its Proposed Findings and Conclusions.  As Storm has stated previously, the Tribunal does not have that power.  The Kyivstar Charter is governed by Ukrainian law and it does not contain any arbitration provisions.  The Ukrainian courts have the exclusive authority to determine the issues relating to the Charter.  Because the courts have determined, in the December 22, 2005 Order and thereafter, that the Charter violates Ukrainian law, it cannot be "conformed" to the Shareholders Agreement (especially since the similar provisions in the Shareholders Agreement were effectively invalidated by the same order).

---

[11]     Alpren has appealed the rulings of Judge Lynch regarding the anti-suit injunction requested by Telenor Mobile.  Among other things, Alpren has pointed out that Judge Lynch lacked subject matter jurisdiction over the proceedings.  (See Ex. K, Alpren Appellate Br., at 22-27.)  This provides another basis for the Tribunal to stand by its earlier conclusion rather than accepting the preliminary findings of Judge Lynch in a separate matter and on a different issue.

- 10 -                                                    March 14, 2007

Storm remains willing to discuss whether there are any alternatives to accomplishing the objectives articulated in the December 22, 2005 Order, but it must receive Telenor Mobile's commitment that it will not misconstrue any proposals made by Storm nor will it divulge confidential settlement discussions (both of which Telenor Mobile has done already in this arbitration). Telenor Mobile's lack of good faith with respect to those earlier discussions has impeded any further progress. Telenor Mobile must re-establish its good faith before Storm will agree to additional talks.

**Conclusion**

Storm regrets that due to the strictures of the Ukrainian injunction, it is unable to fully brief the issues put forward by the Tribunal. Nevertheless, even limited to the arguments previously articulated by the parties, Storm believes that the facts and law already put forward in this case overwhelmingly show that Telenor Mobile's claims in this arbitration should be denied.

Respectfully,

Pieter Van Tol

Enc.

cc:     Robert L. Sills, Esq.

# EXHIBIT A

[stamp:] **COPY**

### Ruling
### In the name of Ukraine

On March 13, 2007, Judge Goshko O.M. of the Golosiyiv District Court of Kyiv having considered the application of Storm Limited Liability Company on clarification of the Ruling of Holosiyiv District Court of Kyiv dated December 01, 2006 in the matter of Alpren Limited against V.V. Klymenko on declaring actions invalid and requiring actions,

### HAS DETERMINED:

That the Ruling of Golosiyiv District Court of Kyiv dated December 01, 2006 granted injunctive relief in the matter of Alpren Limited v. V.V. Klymenko on declaring actions invalid and requiring actions; enjoined, until the judgment on the merits of this case is rendered, Mr. V.V. Klymenko in his capacity of the Director General of Storm LLC, and any other persons authorized by him from performing any actions aimed at execution of the Shareholders Agreement dated January 30, 2004, and also enjoined them from submitting on behalf of Storm LLC any explanations, statements, statements of defense and motions, participating in arbitration proceedings, hearings, sittings of the tribunal (arbitrators Gregory B. Craig, William R. Jentes, Presiding Arbitrator Kenneth R. Feinberg) held under the UNCITRAL Arbitration Rules upon a claim by Telenor Mobile Communications AS against Storm LLC in New York City; enjoined, until the judgment on the merits of this case is rendered, Storm LLC and any persons authorized by it from performing any actions aimed at execution of the Shareholders Agreement dated January 30, 2004, including submitting any explanations, statements, statements of defense and motions, participating in arbitration proceedings, hearings, sittings of the tribunal (arbitrators Gregory B. Craig, William R. Jentes, Presiding Arbitrator Kenneth R. Feinberg) held under the UNCITRAL Arbitration Rules upon a claim by Telenor Mobile Communications AS against Storm LLC in New York City; and enjoined, until the judgment on the merits of this case is rendered, Telenor Mobile Communications AS and any persons authorized by it from performing any actions aimed at execution of the Shareholders Agreement dated January 30, 2004, including submitting any explanations, statements, statements of defense and motions, participating in arbitration proceedings, hearings, sittings of the tribunal (arbitrators Gregory B. Craig, William R. Jentes, Presiding Arbitrator Kenneth R. Feinberg) held under the UNCITRAL Arbitration Rules upon a claim by Telenor Mobile Communications AS against Storm LLC in New York City.

Storm LLC petitioned this court requesting clarification of the Ruling of the court, referring to the fact that on February 12, 2007 Storm LLC received an inquiry from the arbitral tribunal sitting in New York to provide the answers to the following questions:

1. Considering that the law of New York is the main law chosen by the parties in the Shareholders Agreement and according to Art.33 of UNCITRAL Rules, do the regulations for selecting the law of New York require the application of Ukrainian law to the disputes that involve the activities of Ukrainian companies, such as Storm LLC, including disputes with respect to the right of the executives to conclude the agreements on behalf of the company?

2. Taking this into account, is the choice of New York law by the parties mandatory where the law of another country has closer connection to the matter in dispute? Does the application of New York law violate the public order of such country? Do these or other exceptions apply in such a way that the choice of New York law will be substituted in favor of Ukrainian law?

3. If Ukrainian law may nevertheless be applicable to the dispute, does Ukraine law allow amendments to the constituent documents of the company through execution of ordinary contracts?

4. Making the same initial assumption as in paragraph 1, above, do New York choice of law rules require that conclusive effect be given by this Tribunal to the various decisions of the Ukrainian courts relied upon by Respondent, unless (a) the Ukrainian courts lack subject-matter or personal

jurisdiction; (b) the judgments were fraudulently obtained; or (c) enforcement would offend New York public policy. Has Claimant established any of these purported grounds?

Storm LLC requests the Court to clarify whether the company is entitled to reply to these questions of the New York arbitration and whether such reply will amount to violation of the Ruling of the Court.

According to part 1 of Art. 221 of the Code of Civil Procedure of Ukraine, if a court decision is unclear to persons who participated in the case or to the state enforcement officer, the court, at their petition, delivers a ruling clarifying the decision but not altering its substance.

The questions posed in the request of the New York arbitration tribunal, relate to the applicable law, in particular, to activities of Ukrainian companies.

At the same time, in the case file there is evidence that on April 25, 2006 the Kyiv Commercial Court delivered the decision in the case based on the claim of Alpren Limited against Storm LLC, which applied consequences of invalidity of the void transaction—the Shareholders Agreement, dated January 30, 2004, to which Storm LLC is party—and terminated the actions of the Storm LLC relating to performance of the mentioned Shareholders Agreement. By the decision of the Kyiv Commercial Court dated April 25, 2006, the Shareholders Agreement was rendered invalid, including the arbitration clause and the provision regarding applicability of the law of the City of New York. Storm LLC appealed the decision of the Kyiv Commercial Court, dated April 25, 2006, but the Kyiv Appellate Commercial Court upheld the lower court decision by its Resolution dated May 25, 2006. The decision dated April 25, 2006 was not appealed by other persons who might have considered their rights violated by such decision, although, according to Ukrainian law, any persons whose rights and obligations are affected by the decision, regardless whether they are the parties to the procedure, have the right to submit an appeal. The Resolution of the Kyiv Appellate Commercial Court dated May 25, 2006 was appealed neither by Storm LLC nor by any other persons.

According to order of the Kyiv Appellate Commercial Court dated November 8, 2006 clarifying the court ruling dated May 25, 2006, Storm LLC had to adjust its actions in such a way, as if it was acting in the absence of the Shareholders Agreement, including the settlement of disputes with its participation. This ruling was not appealed by the parties and/or persons who might have considered their rights violated by such ruling, although, according to Ukrainian law, any persons whose rights and obligations are affected by the decision, regardless of whether they are the parties to the procedure, have the right to submit an appeal.

The Constitutional Court of Ukraine in Para 3 of the Decision dated December 25, 1997, No.9-zp, in the case concerning the constitutional petition of citizens R. M. Protsenko, P. P. Yaroshenko et al., regarding the official interpretation of Articles 55, 64, 124 of the Constitution of Ukraine (case on the constitutional petition of residents of Zhovti Vody), determined that part two of Article 124 of the Constitution of Ukraine should be interpreted to mean that the jurisdiction of the courts, namely their competence to resolve disputes with respect to the law and other legal issues, extends to all legal relations that arise in the country, including, those related to a legal entity registered in Ukraine.

According to part 5 of Article 124 of the Constitution of Ukraine, court decisions are made by the courts in the name of Ukraine and are binding. Para 3 of Article 11 of the Law of Ukraine On the Judicial System in Ukraine stipulates that court decisions that have entered into force are binding on all government bodies, local governments, their officials, public associations and other organizations, citizens and legal entities. Failure to execute a court decision entails the liability stipulated by law (Para 4 of the above stated article).

Considering these provisions and the fact that the Decision of the Kyiv Commercial Court was upheld by the appellate court, was not overturned, and entered into legal force, on the basis of part 3 of Article 61 of the Code of Civil Procedure of Ukraine, there are no grounds not to accept the conclusions determined by these Decision in consideration of this case.

Issues emerging from the relations between the shareholders and the company or between shareholders, are the subjects of internal corporate management and are governed exclusively by the laws of the place of registration of the company. Determination of the rights and obligations of a shareholder of a Ukrainian company is the matter of exclusive jurisdiction of Ukrainian law. According to Article 14 of the Law of Ukraine On Businesses and Article 81 of the Civil Code of Ukraine, the issues related to the legal status and activity of a Ukrainian company are governed exclusively by Ukrainian law. Moreover, Article 46 of the Law of Ukraine On the International Private Law stipulates that the Founding Agreement, which is a statutory document of a legal entity with the foreign participation, is governed by the law of the state where such legal entity is founded.

According to Article 4 of the Law of Ukraine On Businesses the statutory documents of the company define the composition and competence of the company's bodies and their decision-making procedures, including the list of issues that require a qualified majority of votes, and the procedure for amending statutory documents. Articles 116 and 117 of the Civil Code of Ukraine determine the rights and obligations of the shareholders of the business, noting that the shareholders of a business may also have other rights and obligations stipulated by the statutory document of the legal entity and the law. Ukraine law does not provide for the possibility of regulating the formation, purview and decision-making procedures of an entity's bodies by any other documents, including private agreements such as the Shareholders Agreement.

Taking into account the fact that the inquiry of the New York Arbitration pertains to the request by Storm LLC for an explanation on the case, the fact that, according to the court Ruling of December 01, 2006 Storm LLC is enjoined from submitting any explanations, statements, statements of defense, motions, participating in arbitration proceedings, hearings, sittings of the tribunal held upon a claim by Telenor Mobile Communications AS against Storm LLC in New York City, the submission of a reply by Storm LLC and/or Telenor Mobile Communications AS to the inquiry of the New York arbitration shall be considered as the direct violation of the Ruling of the court dated December 01, 2006 on granting the injunctive relief. At the same time, submission of this clarification to all interested persons shall not be considered as a violation of the court prohibition.

On the basis of Article 221 of the Code of Civil Procedure of Ukraine, the court,

### HAS HELD:

to clarify the Ruling of the Golosiyiv District Court of Kyiv dated December 01, 2006, explaining that Storm LLC is not allowed to reply to the inquiry of the New York Arbitration dated February 12, 2007, except by submitting this Ruling.

This Ruling may be appealed to the Kyiv Appellate Court through the Golosiyiv District Court of Kyiv within ten days after the date of submission of the petition for appeal, which shall be submitted within five days from the date of announcement of this Ruling.

Judge

[stamp:]  Conforms to the Original
          Judge of the Holosiyiv District Court of the City of Kyiv
          Goshko O.M. [signature]
          Secretary [signature]

Bound, numbered and bearing an official stamp _3_ pages. Original is kept at the Holosiyiv District Court of the City of Kyiv No. 2 – the decision has entered into legal force.
Judge [signature]
Secretary [signature]



**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK          )
                                                )    ss
COUNTY OF NEW YORK    )


## CERTIFICATION


This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Ukrainian into English of the attached Ruling, dated

March 13, 2007.



V. Burda

Valbona Burda, Assistant Project Manager
Geotext Translations, Inc.




Sworn to and subscribed before me

this 14 day of March 20 07.


Robert A. Adler Jr.
Notary Public, State of New York
No.01AD6097048
Qualified in Kings County
Commission Expires August 18, 2007

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. **tel** 212.631.7432 **fax** 212.631.7778
San Francisco  220 Montgomery Street, 3rd Floor, San Francisco, CA 94104, U.S.A. **tel** 415.576.9500 **fax** 415.520.0525
London  107-111 Fleet Street, London EC4A 2AB, United Kingdom **tel** +44.(0)20.7936.9002 **fax** +44.(0)20.7990.9909
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong **tel** +852.2159.9143 **fax** +852.3010.0082
translations@geotext.com  |  www.geotext.com



**Ухвала**
**Іменем України**

13 березня 2007 р. суддя Голосіївського районного суду м. Києва Гошко О.М., розглянувши заяву Товариства з обмеженої відповідальністю «Сторм» про роз'яснення ухвали Голосіївського районного суду м. Києва від 01.12.2006 р. у справі за позовом «Альпрен Лімітед» до Клименка В.В. про визнання дій незаконними та зобов'язання вчинити дії,

в с т а н о в и в :

Ухвалою Голосіївського районного суду м. Києва від 01.12.2006 р. було вжито заходів для забезпечення позову у справі за позовом «Альпрен Лімітед» до Клименка В.В. про визнання дій незаконними та зобов'язання вчинити дії, заборонено до вирішення справи по суті Клименку В.В., як генеральному директору ТОВ «Сторм», та будь-яким уповноваженим ним особам вчиняти будь-які дії по виконанню Акціонерної угоди, датованої 30.01.2004 р., в тому числі заборонено подавати від імені ТОВ «Сторм» будь-які пояснення, заяви, відзиви на позовні заяви, клопотання, приймати участь у арбітражному процесі, слуханнях, засіданнях арбітражу (арбітри Григорі Бі. Крейг (Gregory B. Craig), Вільям Р. Дженетс (William R. Jentes), головуючий Кеннет Р. Фейнберг (Kenneth R. Feinberg), який відбувається згідно з арбітражними правилами UNCITRAL, за позовом Теленор мобайл комьюнікейшнз АС (Telenor Mobile Communications AS) до ТОВ «Сторм» в місті Нью-Йорк; заборонено до вирішення цієї справи по суті ТОВ «Сторм» та будь-яким уповноваженим ним особам вчиняти будь-які дії по виконанню Акціонерної угоди, датованої 30.01.2004 р., в тому числі заборонено подавати будь-які пояснення, заяви, відзиви на позовні заяви, клопотання, приймати участь у арбітражному процесі, слуханнях, засіданнях арбітражу (арбітри Григорі Бі. Крейг (Gregory B. Craig), Вільям Р. Дженетс (William R. Jentes), головуючий Кеннет Р. Фейнберг (Kenneth R. Feinberg), який відбувається згідно з арбітражними правилами UNCITRAL, за позовом Теленор мобайл комьюнікейшнз АС (Telenor Mobile Communications AS) до ТОВ «Сторм» в місті Нью-Йорк; заборонено до вирішення цієї справи по суті Теленор мобайл комьюнікейшнз (Telenor Mobile Communications) та будь-яким уповноваженим нею особам вчиняти будь-які дії по виконанню Акціонерної угоди, датованої 30.01.2004 р., в тому числі заборонено подавати будь-які пояснення, заяви, відзиви на позовні заяви, клопотання, приймати участь у арбітражному процесі, слуханнях, засіданнях арбітражу (арбітри Григорі Бі. Крейг (Gregory B. Craig), Вільям Р. Дженетс (William R. Jentes), головуючий Кеннет Р. Фейнберг (Kenneth R. Feinberg), який відбувається згідно з арбітражними правилами UNCITRAL, за позовом Теленор мобайл комьюнікейшнз АС (Telenor Mobile Communications AS) до ТОВ «Сторм» в місті Нью-Йорк.

ТОВ «Сторм» звернулось до суду з заявою про роз'яснення ухвали суду, посилаючись на те, що 12.02.2007 р. на адресу ТОВ «Сторм» надійшов запит Нью-Йоркського арбітражу з вимогою надати відповідь на наступні питання:

1. Враховуючи, що право Нью-Йорка є основним правом, обраним сторонами в Угоді акціонерів та відповідно до ст. 33 Правил ЮНСІТРАЛ, чи вимагають правила вибору права Нью-Йорка застосовувати українське право до спорів, що стосуються діяльності українських компаній, таких як ТОВ «Сторм», в тому числі спорів щодо права посадових осіб укладати договори від імені компанії?

2. Беручи до уваги наведене вище, чи є вибір сторонами нью-йоркського права обов'язковим, якщо право іншої держави має більш тісний зв'язок з предметом спору? Чи буде застосування нью-йоркського права суперечити публічному порядку такої держави? Чи можуть ці чи інші виключення застосуватись таким чином, що вибір нью-йоркського права буде на користь українського права?

3. Якщо українське право все ж таки може застосовуватись при розгляді спору, чи дозволяє українське законодавство, щоб в установчі документи компанії вносились зміни шляхом укладення звичайних договорів?

4.     Беручи до уваги викладене в питанні 1, чи вибір нью-йоркського права зобов'язує Арбітраж виконувати рішення українських судів, на які посилається Відповідач, за винятком випадків, коли українські суди не мали відповідних повноважень, рішення були отримані незаконним шляхом, або примусове виконання таких рішень порушило б публічний порядок Нью-Йорка? Чи встановив Позивач якісь з наведених підстав?

ТОВ «Сторм» просить суд надати роз'яснення, чи має воно право надавати відповідь на вищенаведені питання Нью-Йоркського арбітражу і чи буде надання таких відповідей порушенням ухвали суду.

Згідно ч. 1 ст. 221 ЦПК України, якщо рішення суду є незрозумілим для осіб, які брали участь у справі або для державного виконавця, суд за їхньою заявою постановляє ухвалу, в якій роз'яснює рішення, не змінюючи при цьому його змісту.

Наведені в запиті Нью-Йоркського арбітражу запитання стосуються права застосування, зокрема, стосовно діяльності українських компаній.

В той же час, в матеріалах справи знаходяться матеріали стосовно того, що 25.04.2006 р. Господарським судом м. Києва було прийнято рішення у справі за позовом «Альрен Лімітед» до ТОВ «Сторм», яким було застосовано наслідки недійсності нікчемного правочину – Акціонерної угоди від 30.01.2004 р. за участю ТОВ «Сторм» та припинено дії ТОВ «Сторм» по виконанню вказаної Акціонерної угоди. Рішенням Господарського суду м. Києва від 25.04.2006 р. Акціонерну угоду було визнано недійсною, в тому числі арбітражне застереження та положення стосовно вибору для застосування права міста Нью-Йорк. ТОВ «Сторм» подало апеляційну скаргу на рішення господарського суду від 25.04.2006 р., по якій 25.05.2006 р. Київським апеляційним господарським судом було прийнято постанову про залишення без змін рішення суду першої інстанції. Рішення від 25.04.2006 р. не було оскаржено іншими особами, які б вважали, що їх права порушені таким рішенням, хоча відповідно до законодавства України, особи, прав та обов'язків яких стосується рішення, без огляду на те, чи є вони сторонами процесу, мають право на подачу скарги. Постанову Київського апеляційного господарського суду від 25.05.2006 р. не було оскаржено ані ТОВ «Сторм», ані іншими особами.

Згідно ухвали Київського апеляційного господарського суду від 08.11.2006 р. про роз'яснення постанови суду від 25.05.2006 р. ТОВ «Сторм» повинно було відкоригувати поведінку товариства таким чином, як воно поводилось би за відсутності Акціонерної угоди, в тому числі щодо вирішення спорів за його участю. Вказану ухвалу не було оскаржено сторонами та/або особами, які б вважали, що їх права порушені такою ухвалою, хоча відповідно до законодавства України, особи, прав та обов'язків яких стосується рішення, без огляду на те, чи є вони сторонами процесу, мають право на подачу скарги.

В п.3 рішення Конституційного Суду України у справі за конституційним зверненням громадян Проценко Р.М., Ярошенко П.П. та інших громадян щодо офіційного тлумачення статей 55, 64, 124 Конституції України (справа за зверненнями жителів міста Жовті Води) від 25.12.1997 р. № 9-зп встановлено, що частину 2 статті 124 Конституції України необхідно розуміти так, що юрисдикція судів, тобто їх повноваження вирішувати спори про право та інші правові питання, поширюється на всі правовідносини, що виникають у державі, в т.ч. відповідно, і щодо відносин навколо юридичної особи, зареєстрованої в Україні.

Згідно з ч.5 ст.124 Конституції України, судові рішення ухвалюються судами іменем України і є обов'язковими до виконання. Пунктом 3 ст.11 Закону України «Про судоустрій України» передбачає, що судові рішення, що набрали законної сили, є обов'язковими до виконання усіма органами державної влади, органами місцевого самоврядування, їх посадовими особами, об'єднаннями громадян та іншими організаціями, громадянами та юридичними особами. Невиконання судових рішень тягне передбачену законом відповідальність (п.4 вказаної статті).

Враховуючи вищенаведені норми та те, що вказане рішення господарського суду м. Києва залишено без змін апеляційною інстанцією і не скасовано, набрало законної сили, в силу ч.3 ст. 61 ЦПК України відсутні підстави для неврахування положень, встановлених вказаним рішенням, при розгляді даної справи.

Питання, які виникають з відносин між акціонерами та товариством або між акціонерами є питаннями внутрішнього корпоративного управління і регулюються виключно законами [для реєстрації] компанії. Визначення прав та обов'язків акціонера української компанії є предметом виключної компетенції українського законодавства. Згідно ст. 14 Закону України «Про господарські товариства» і ст. 81 ЦК України питання, які відносяться до правового статусу та діяльності української компанії, регулюються виключно українським правом. Крім того, ст. 46 Закону України «Про міжнародне приватне право» встановлено, що до засновницького договору, що є установчим документом юридичної особи з іноземною участю, застосовується право держави, у якій буде створена юридична особа.

Відповідно до ст. 4 Закону України «Про господарські товариства» установчі документи товариства визначають склад і компетенцію органів товариства та порядок прийняття ними рішень, включаючи перелік питань, по яких необхідна кваліфікована більшість голосів, порядок внесення змін до установчих документів. Статті 116 та 117 ЦК України визначають права та обов'язки учасників господарського товариства, зазначаючи, що учасники господарського товариства можуть також мати інші права та обов'язки, встановлені установчим документом [товариства] та законом. Законодавство України не дозволяє регулювати якими-небудь іншими документами, в тому числі конфіденційними угодами, такими як Акціонерна угода, питань формування, компетенції та процедури прийняття рішень органами товариства.

Враховуючи те, що запит Нью-Йоркського арбітражу стосується надання ТОВ «Сторм» пояснень по справі, те, що ухвалою суду від 01.12.2006 р. ТОВ «Сторм» заборонено подавати будь-які пояснення, заяви, відзиви на позовні заяви, клопотання, приймати участь у арбітражному процесі, слуханнях, засіданнях арбітражу, який відбувається за позовом Теленор [Мобайл Комьюнікейшнз] АС до ТОВ «Сторм» у м. Нью-Йорк, надання ТОВ «Сторм» та/або Теленор мобайл ком'юнікейшнз АС відповіді на запит Нью-Йоркського арбітражу, слід розглядати як пряме порушення ухвали суду про вжиття заходів забезпечення позову від 01.12.2006 р. При цьому не буде вважатися порушенням заборони суду доведення до відома всіх зацікавлених осіб даного роз'яснення.

Керуючись ст. 221 ЦПК України, суд

**У х в а л и в:**

Роз'яснити ухвалу Голосіївського районного суду м. Києва від 01.12.2006 р., зазначивши, що ТОВ «Сторм» не має права надавати відповідь на запит Нью-Йоркського арбітражу від 12.02.2007 р., окрім як шляхом надання цієї ухвали.

Ухвала може бути оскаржена до Апеляційного суду м. Києва через Голосіївський [районний] суд м. Києва протягом десяти днів після подання заяви про апеляційне оскарження, яка подається протягом п'яти днів з дня проголошення ухвали.

Суддя

З ОРИГІНАЛОМ ЗГІДНО
Суддя Голосіївського
районного суду м. Києва
Гоцюк О.М.
Секретар

прошито, пронумеровано
та скріплено гербовою
печаткою ___3λ___ арк.
Оригінал зберігається в
Голосіївському районному
суді м.Києва № 2-
Рішення набрало законної
сили _____
Суддя:
Секретар:

# EXHIBIT I

IN THE MATTER OF AN ARBITRATION UNDER
THE UNCITRAL ARBITRATION RULES BETWEEN:

**TELENOR MOBILE COMMUNICATIONS AS,**
Claimant,

-and-

**STORM LLC,**
Respondent

## PARTIAL FINAL AWARD REGARDING JURISDICTION

We, the undersigned Arbitrators, having been designated in accordance with the January 30, 2004 arbitration agreement between the above-named Parties, having been duly sworn, and having heard the allegations, arguments and proofs of the Parties regarding Respondent Storm LLC's Motion to Dismiss on the ground that this Tribunal does not have jurisdiction to hear and decide this Arbitration, do hereby make this Partial Final Award. We conclude that this Tribunal does have jurisdiction to hear the above-captioned Arbitration.

## A.    The Parties and the Background of This Arbitration

This Arbitration involves disputes between the majority and minority shareholders of CJSC "Kyivstar G.S.M." ("Kyivstar"), a Ukrainian closed joint stock company and the largest mobile telecommunications company in Ukraine, over the governance and operation of that company. Claimant Telenor Mobile Communications AS ("Telenor") is a Norwegian corporation headquartered in Fornebu, Norway. It is a subsidiary of Telenor ASA, the largest provider of

telecommunications services in Norway and the provider of such services in 12 other countries. Claimant owns approximately 56.5 % of the issued and outstanding stock of Kyivstar.

Respondent Storm LLC ("Storm") is a Ukrainian limited liability company headquartered in Kyiv, Ukraine. Storm owns the remaining approximately 43.5 % of Kyivstar shares. At the times relevant to this Arbitration, Storm was, in turn, owned 50.1% by Altimo Holdings & Investment Limited ("Altimo"), and 49.9% by Altimo's subsidiary, Alpren Limited ("Alpren"). Storm, Altimo and Alpren are all part of a large Russian financial-industrial conglomerate known as the Alfa Group Consortium ("Alfa").

The interest of Telenor and Storm in Kyivstar dates back to 1998 when Storm held a much smaller minority interest in Kyivstar. At that time Telenor, Storm and Kyivstar, along with three other minority shareholders in Kyivstar, entered into a March 26, 1998 Shareholders Agreement concerning the corporate governance and management of Kyivstar. In 2002, Telenor and Storm worked out an arrangement whereby Storm would take over the position of the other minority shareholders and increase its percentage holdings to its present 43.5 %. As part of this arrangement, the parties agreed that a new form of Shareholders Agreement would replace the 1998 agreement. Between March 2002 and August 25, 2002, the parties negotiated the terms of the new Shareholders Agreement.

When it appeared that it would not be possible for Storm immediately to purchase the shares from one of the other minority owners, the parties agreed to

enter into a Voting Agreement that would govern their relationship until the purchase could take place. The Voting Agreement provided that, following Storm's purchase of the shares, the parties would enter into the new Shareholders Agreement. The text of that agreement was annexed to the Voting Agreement. The parties signed the Voting Agreement on September 2, 2002. Due to delays in Storm's ability to acquire the shares of the minority shareholder, the parties did not sign the new Shareholders Agreement until January 30, 2004.

As signed, the text of the January 30, 2004 Shareholders Agreement differed in only one respect from the form of new Shareholders Agreement that had been attached to the Voting Agreement. The January 2004 Agreement contained a modification – requested by Storm – in the section of the September 2002 form Agreement that dealt with the definition of a material breach. Otherwise, the January 30, 2004 Shareholders Agreement remained identical in all respects to the 2002 form Agreement. Of particular importance, the arbitration provision in the January 30, 2004 Shareholders Agreement was precisely the same as the arbitration provision in the earlier form Agreement that had been fully approved as an annex to the September 2, 2002 Voting Agreement. The arbitration provision, contained in Section 12.01 of the January 20, 2004 Shareholders Agreement, states in pertinent part:

12.01  <u>Arbitration:  Consent to Jurisdiction</u>

(a)    Any and all disputes and controversies arising under, relating to or in connection with this Agreement shall be settled by arbitration by a Panel of three (3) arbitrators under the United Nations Commission on International

Trade Law (UNCITRAL) Arbitration Rules then in force (the "UNCITRAL Rules") in accordance with the following terms and conditions:

> (i)    In the event of any conflict between the UNCITRAL Rules and the provisions of this Agreement, the provisions of this Agreement shall prevail.

> (ii)    The place of the arbitration shall be New York, New York, United States of America.

Telenor and Storm performed their respective obligations under the January 30, 2004 Shareholders Agreement for over a year. At the annual meeting of Kyivstar shareholders on April 27, 2004, for example, the two parties voted in favor of an amended Kyivstar charter that brought Kyivstar's charter into compliance with the January 2004 Shareholders Agreement. This charter was duly registered with the appropriate Ukrainian authorities. During 2005, however, increasing friction developed between the parties. In March 2005, Storm and its designated representatives stopped attending Kyivstar shareholder and general board meetings. Thereafter, Storm and other affiliates in the Alfa consortium commenced several lawsuits in the Ukrainian courts challenging the Telenor relationship.

**B.    The Commencement of This Arbitration and Storm's Motion to Dismiss**

On February 7, 2006, Telenor commenced this Arbitration against Storm pursuant to Section 12.01 of the January 30, 2004 Shareholders Agreement. In brief, Telenor's Notice of Arbitration and its Statement of Claim seek a declaration that Storm is in breach of the January 2004 Shareholders Agreement by reason of: (a) its failure to attend annual and extraordinary shareholder meetings, its failure

to appoint candidates for election to the Kyivstar board, and its failure to attend board meetings and participate in the management of Kyivstar, (b) its ownership of more than 5 % in a competitive telecommunications company, and (c) its violation of the dispute resolution procedures. Telenor also seeks an order requiring Storm to comply with the Shareholders Agreement in the future and to make certain amendments to the Kyivstar charter. Finally, Telenor seeks an award of damages for Storm's violations of the Agreement, plus attorney's fees and costs.

Telenor selected William R. Jentes as its arbitrator to serve on the Tribunal, and Storm selected Gregory B. Craig. On March 31, 2006, the two party-appointed arbitrators selected Kenneth R. Feinberg to serve as Chair. All of the arbitrators agreed that they would serve as neutral members of the Tribunal. The Tribunal's first order of business was to ask the parties to supply names of all affiliates, parents and subsidiaries related to the parties, along with the names of all officers and executives who were likely to be mentioned in the proceeding, to be certain there would be no disabling relationships with the Tribunal members. Both parties complied with that request, the Tribunal disclosed no conflicts, and its members were accepted.

On April 14, 2006, the Tribunal held its initial pre-hearing conference with the parties to consider the parties' views on the schedule and to discuss what pre-hearing procedures would be followed. During the conference, Storm notified the Tribunal that it intended to file a motion to dismiss asserting that the Shareholders Agreement was invalid, and that the Tribunal accordingly lacked jurisdiction to

decide Telenor's claim.  The parties agreed to a schedule, which was approved by

the Tribunal, for briefing and hearing Storm's motion.  Storm was given until June

5, 2006 to file its motion, along with any material it wanted to submit in support.

On May 30, 2006, Storm filed a Statement of Defense to Telenor's claim,

which included as "an alternative ground" that the Kyiv Commercial Court had

declared on April 25, 2006 that "the entire Shareholders Agreement is invalid

because it was entered into without the requisite authority and fails to comply with

the registration and execution requirements of Ukrainian law."  Storm Statement of

Defense at p. 3.  Storm also pointed out that, "An appellate court recently upheld

the April 25 Order."  *Id.* at p. 6.  This was the first notice given to the Tribunal that

Storm had been in litigation in Ukraine challenging the validity of the underlying

Shareholders Agreement.

On June 7, 2006, Storm filed  its Motion to Dismiss in which it  amplified on

its Statement of Defense, contending that the Tribunal had "no authority to decide

the merits of Telenor's claim because the Ukrainian courts had ruled, among other

things, that the January 30, 2004 Shareholders Agreement was 'null and void in

full, including the arbitration clause.'"  Decision of Kyiv Commercial Court, April

25, 2006 (translation, p. 3); aff'd Kyiv Appellate Commercial Court, May 25, 2006

(translation, p. 3).  Storm filed English translations of the two decisions as

attachments to its Motion and argued that the arbitration should be dismissed in its

entirety for lack of jurisdiction.

Telenor filed its Opposition to Storm's Motion on June 23, 2006, with exhibits, in which it contended that the Ukrainian litigation was "collusive", having been brought against Storm by one of its own affiliates, Alpren; that Telenor was not notified of, or made a party to, the Ukrainian litigation; and, therefore, that Telenor was not bound by the Ukrainian decisions. Telenor asserted that it first learned of the Alpren litigation from a press report *after* the Kyiv Appellate Commerial Court had already issued its decision. Telenor further argued that New York law, not Ukrainian law, governed the issue of whether the Shareholders Agreement was valid.

On June 29, 2006, the Tribunal held the first of three hearings on Storm's Motion to Dismiss. The first hearing consisted largely of oral argument by the parties' counsel with reference to the two Ukrainian decisions and the background of the Voting Agreement of September 2, 2002, the attached form of Shareholders Agreement and the January 30, 2004 Shareholders Agreement. At the conclusion of the argument, it was clear to the Tribunal that it needed the parties to make further evidentiary submissions regarding both the background of the January 30, 2004 Shareholders Agreement and what evidence and arguments had been presented to the Ukrainian courts concerning its validity, including the arbitration provision. Accordingly, the Tribunal ordered such submissions and scheduled a second hearing for August 14, 2006. At the conclusion of the August 14 hearing, the Tribunal held a third hearing on September 5, 2006, in response to Storm's concerns about the unavailability of certain of its witnesses for the August 14 hearing.

-7-

In the course of the three separate hearings, the Tribunal received extensive evidence regarding the background, negotiation, approval and execution of the July 30, 2006 Shareholders Agreement and its predecessors, and about what of this evidence was presented to the Ukrainian courts. The evidence presented to the Tribunal consisted of live testimony and declarations from Telenor and Storm officials and counsel, documents relating to the negotiation, approval and signing of the relevant corporate documents, including emails and letters exchanged between the parties and their representatives, and the official court records from the Ukrainian courts and English translations of those records. The evidence also included affidavits and supporting documents submitted by Ukrainian legal experts.

With regard to the proceedings in the Ukrainian courts, the evidence submitted to this Tribunal established that on April 17, 2006, Alpren brought suit against Storm in the Kyiv Commercial Court, claiming among other things that Storm's January 30, 2004 Shareholders Agreement with Telenor had not been executed by a duly authorized representative and was accordingly invalid. As previously noted, Alpren owned 49.9% of Storm, with the rest owned by Alpren's parent, both of which were affiliates of Storm and under the overall control of the Alfa Group. It was undisputed that Telenor received no notice of this proceeding or of the subsequent appeal until after the Commercial Appellate Court had rendered its decision.

On April 21, 2006, the Kyiv Commercial Court held a hearing at which Storm submitted no statement of defense. Its representative did advise the Court of the arbitration clause and of the existence of this arbitration, but made no argument that the arbitration clause submits "any and all disputes" to the arbitral tribunal for resolution and that the governing UNCITRAL Rules provide for the severability of the arbitration clause from the Shareholders Agreement. Storm's representative also made no attempt to present to the Ukrainian court the extensive evidence received by this Tribunal regarding the background, approval and affirmation of the July 30, 2004 Shareholders Agreement, including its arbitration provision.

On April 25, 2006, the Kyiv Commercial Court rendered its decision in which it concluded that Storm's participating shareholders had not properly approved the January 30, 2004 Shareholders Agreement; that Storm's Director General, Mr. Nilov, had "acted unlawfully and in excess of [his] powers"; and that the Shareholders Agreement and the arbitration clause were null and void.

Storm filed an appeal, repeating that the dispute was currently in arbitration in New York and was not "examinable" by the Kyiv Commercial Court. Oral argument before the Kyiv Appellate Commercial Court took place on May 25, 2006, and that court issued its decision the same day. The Appellate Commercial Court agreed with the lower court that Storm's General Director had "acted unlawfully" and "in excess of his authority" in signing the January 30, 2004 Shareholders Agreement, and that the Agreement, including its arbitration provision, was null

and void. The Court further ruled that the lower court had jurisdiction to proceed because any arbitration agreement was not between Alpren and Storm.

As Storm had failed to do during the initial court proceeding, it made no effort to present to the Ukrainian Appellate Commercial Court any of the extensive evidence presented to this Tribunal concerning the background, negotiation and execution of the January 30, 2004 Shareholder Agreement, nor regarding the affirmation by Storm officials on repeated occasions of the authority of Storm's General Director to sign the Agreement on its behalf. Storm also made no argument regarding the severability of the arbitration clause, nor did it supply the evidence heard by this Tribunal of Storm's clear intent to submit any and all disputes with Telenor to arbitration.

C.    **The Tribunal's Jurisdiction To Hear This Arbitration**

In light of the evidence and argument presented to the Tribunal, it is apparent that Storm's Motion to Dismiss presents two issues for resolution by the Tribunal: <u>First</u>, does the Tribunal have jurisdiction to decide the question of whether it has jurisdiction to hear this Arbitration, or is that a decision for a court? <u>Second</u>, assuming the Tribunal has jurisdiction to decide this first issue, does it, in fact, have authority to proceed to hear the issues raised by Claimant's Amended Notice of Arbitration and Statement of Claim? For the following reasons, the Tribunal unanimously answers both questions in the affirmative.

As to the first question, it should be emphasized that the Respondent, itself, has repeatedly conceded that this Tribunal does, in fact, have authority to decide the issue of its own jurisdiction. As Respondent's counsel stated at the June 29, 2006 Hearing:

> Now, [Claimant] spend[s] a lot of time saying that this panel has the jurisdiction to determine whether it has jurisdiction, or has the power to determine whether it has jurisdiction. Storm does not disagree with that proposition . . . . We believe that you do have the power to decide whether you have jurisdiction. That's why we made the motion to you and are here today. Hearing on 6/29/06; Tr. at p. 23, 13-23.

Respondent repeatedly confirmed this position in appearing before the Tribunal, expressly asserting that the Tribunal has "the authority under the UNCITRAL rules to decide your jurisdiction." Hearing on 9/5/06; Tr. at p. 62, 2-9; see, also, other similar references at Hearing on 8/14/06; Tr. at p. 257, 10-16; Tr. at p. 263, 4-12; Tr. at pp. 266-267, 1-3, 24-25.

Respondent's concession is consistent with the law. The Tribunal points in particular to *Shaw Group, Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 123 (2d Cir. 2003), which stands for the proposition that where, as here, the question of jurisdiction to arbitrate is delegated in clear and unmistakable language to the Tribunal, it is the Tribunal – not a court – that has the authority to decide its jurisdiction to proceed. In this matter, Section 12.01 of the Shareholders Agreement clearly and unmistakably states that "any and all disputes and controversies arising under, relating to or in connection with this Agreement shall

be settled by arbitration." Equally pertinent is Article 21 of the UNCITRAL Rules,

which Section 12.01 expressly adopts and which provides:

1. The arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause or of the separate arbitration agreement.

2. The arbitral tribunal shall have the power to determine the existence or the validity of the contract of which an arbitration clause forms a part. For the purposes of Article 21, an arbitration clause which forms part of a contract and which provides for arbitration under these Rules shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitral tribunal that the contract is null and void shall not entail ipso jure the invalidity of the arbitration clause.

Thus, this matter precisely parallels *Shaw* in that there is an express

agreement to arbitrate "any and all disputes" in the Shareholders Agreement; and

Article 21 of the UNCITRAL Rules makes clear both that the issue of the Tribunal's

jurisdiction is arbitrable and that the arbitration clause is severable from any

question concerning the validity of the Shareholders Agreement, itself.

Accordingly, the clear language of Section 12.01 of the Shareholders Agreement and

Article 21 of the UNCITRAL rules, coupled with the repeated concessions on the

issue by Respondent, lead to the unanimous conclusion of the Tribunal that it has

jurisdiction to decide its jurisdiction to proceed with this Arbitration.

Nothing in *Sphere Drake Ins. v. Clarendon National Ins.*, 263 F.3d 26 (2d Cir.

2001), compels a different conclusion. That case did not deal with the situation we

have here, where both the contract in dispute and the UNCITRAL Rules clearly

point to arbitration as the vehicle for resolving disputed issues, including jurisdiction. *Sphere Drake* did not involve an arbitration clause incorporating rules similar to the UNCITRAL Rules, which expressly confer power on the Tribunal to decide questions concerning its own jurisdiction. Accordingly, the present matter is not one where the issue of jurisdiction must be referred to a court for resolution, as the concessions of Respondent recognize.

The Tribunal, having concluded it has jurisdiction to decide its own jurisdiction, further unanimously decides that it does have jurisdiction to proceed with this Arbitration. It does so notwithstanding the decisions of the Ukrainian courts declaring the Shareholders Agreement to be "null and void". Our principal reason for doing so is that the Ukrainian courts never addressed the severability of the arbitration clause from the rest of the Shareholders Agreement. In fact, those courts never referenced Article 21 of the UNCITRAL Rules at all. That Article expressly provides for the severability of the arbitration clause and further provides that a decision that the underlying Shareholders Agreement is invalid "shall not entail ipso jure the invalidity of the arbitration clause".

As a result, the Ukrainian courts never addressed whether Mr. Nilov, for Storm, had authority to agree to the arbitration clause and the UNCITRAL Rules quite apart from his authority to agree to the Shareholders Agreement. Having heard a full record on this point, this Tribunal expressly finds that Storm and Telenor had a clear intent to have their disputes resolved through arbitration; that Mr. Nilov confirmed that intention by executing agreements that contained a broad

arbitration clause incorporating the UNCITRAL Rules; and that none of the reasons assigned by the Ukrainian courts for invalidating the Shareholders Agreement applies to the arbitration clause. Indeed, there is nothing in those decisions to suggest that the General Director of a Ukrainian company could not enter into a binding agreement to arbitrate.

It is understandable that the Ukrainian courts never addressed the severability issue or considered that the parties' agreement to refer disputes to arbitration – embodied in Section 12.01 – might be something separate and apart from the Shareholders Agreement. Neither Alpren nor Storm presented these issues to those courts. Telenor had no ability to do so because it was never notified of, or made a party to, the Ukrainian proceedings. In some respects, this is not surprising since, as already indicated, the parties clearly intended that any and all disputes should be resolved through arbitration.

In the latter regard, the Tribunal finds it significant that this arbitration was initiated in February 2006, two months before Alpren commenced its Ukrainian litigation. The Tribunal was fully constituted by the end of March and held its first pre-hearing conference prior to the initiation of the Ukrainian litigation. It is noteworthy that, despite the existence of this Tribunal and the nature of this proceeding – which involved *Storm's* challenge to the validity of the underlying Shareholders Agreement – Storm never notified this Tribunal about the Ukrainian litigation until after both Ukrainian courts had ruled that the Shareholders Agreement was invalid. It is beyond dispute that Storm was aware of the Alpren

challenge to the validity of the Shareholders Agreement on or before April 17, 2006 when Alpren filed it is claim in the Kyiv Commercial Court. Storm did not inform the Tribunal about that litigation, however, until it submitted its Statement of Defense on May 30, 2006 six weeks later. To repeat, this was after both the initial Ukrainian proceeding and the appeal in the Ukraine had been completed. The Tribunal also finds it significant that neither during the course of the Ukrainian litigation nor since has Storm made any attempt to seek an order from any court staying this Arbitration. Instead, Storm has been steadfast in its effort to secure from this Tribunal a ruling on its Motion to Dismiss.

The Tribunal emphasizes that it is not deciding at this point whether the Shareholders Agreement, as opposed to the arbitration clause, is valid or not. That decision must await the arbitration hearing scheduled in New York City on December 7 and 8, 2006. Respondent will continue to have every opportunity to present additional evidence on that issue at that time. While Storm has recently sought to continue the December hearing, the Tribunal believes that it should go forward as scheduled. The parties will have had three months to prepare since the September 5 hearing, and over a month remains for them to complete any remaining discovery they require.

Finally, the Tribunal's present Partial Final Award does not ignore in any respect the decisions of the Ukrainian courts. Nor does it impugn in any way the integrity of those courts or their decisions. To the contrary, the Tribunal finds no evidence of any impropriety or violations of any Ukrainian procedures. The

-15-

Tribunal rests its decision on the fact that the Ukraine courts lacked the full record presented to this Tribunal on the issues of arbitrability and the validity of the arbitration clause. Unlike the court proceedings in Ukraine, both the Claimant and Respondent in this Arbitration have been afforded a full and complete opportunity to present their evidence and arguments on those issues. Indeed, Claimant and Respondent have expressly stated that there is no further evidence or legal argument they wish to present to the Tribunal on those issues.

In sum, the Tribunal has considered all decisions of the Ukrainian courts, but has unanimously concluded that the Ukrainian courts lacked the full record before this Tribunal. It is this full record that leads us to conclude that this Tribunal does have jurisdiction to proceed with this Arbitration, and that the Arbitration should proceed on December 7 and 8, 2006.

### D.    Conclusions and Partial Final Award

A unanimous Tribunal in the above-captioned matter hereby issues the following Partial Final Award:

1.    Respondent Storm LLC's Motion to Dismiss on the ground that this Tribunal does not have jurisdiction to hear and decide this Arbitration is denied.

2.    The Tribunal does have jurisdiction to proceed with the resolution of the claims raised by Claimant's Amended Notice of Arbitration and Statement of Claim.

3.    Respondent's request for a continuance is denied, and this Arbitration shall proceed as scheduled on December 7 and 8, 2006 in New York, New York.

01/02/2007  17:11    13126430024              JENTES                    PAGE  03/03

4.    The Tribunal directs the Parties to meet and confer on a proposed

Order covering any remaining pre-hearing matters.

SO ORDERED this 22nd day of October, 2006.

_____/s/_____
Gregory B. Craig

_____
William R. Jentes

_____
Kenneth R. Feinberg, Chair

4.     The Tribunal directs the Parties to meet and confer on a proposed Order covering any remaining pre-hearing matters.

SO ORDERED this 22nd day of October, 2006.

Gregory B. Craig

/s/
William R. Jentes

Kenneth R. Feinberg, Chair

-17-

# EXHIBIT J

# In The Matter Of:

## *STORM LLC v.*
## *TELENOR MOBILE COMMUNICATIONS*

---

*VOLUME 1*
*December  11 , 2006*

---

*TRIAL*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 6CBFSTOF.txt, Pages 1-95

**Word Index included with this Min-U-Script®**

**STORM LLC v.**
**TELENOR MOBILE COMMUNICATIONS**

Page 33

[1] **THE COURT:** What we don't have any record on this, as
[2] Mr. Rolfe was reminding us, is what really happened in Ukraine.
[3] I am acutely conscious of the fact that if we're going to go
[4] hurling antisuit injunctions at people, there are certain
[5] candidates to have such injunctions entered against them.
[6] Mr. Rolfe's clients are candidates, but they contest the
[7] jurisdiction of the Court for all the reasons that he's
[8] outlined. Your clients are in the peculiar position of being
[9] defendants in litigation whom Telenor is seeking to enjoin from
[10] bringing the litigation in which they are defendants.
[11] Now of course Mr. Sills' position is, no, you're not,
[12] you're actually the instigators of this litigation; you are the
[13] alteregos of the people who are suing you, and therefore, you
[14] are really responsible for this litigation and can and should
[15] be enjoined to stop it, and in principle, I don't have any
[16] problem with that. That's a perfectly viable legal theory.
[17] But that, I take it, is the thing that Mr. Sills needs to prove
[18] and that's something on which I think we don't have much of the
[19] background record anywhere else. So it is largely on that
[20] issue that I would anticipate any taking of evidence here would
[21] be.
[22] Now I'm aware also you had another point that you
[23] wanted to get to and we'll get to it, but --
[24] **MR. VAN TOL:** You've covered it, your Honor.
[25] **THE COURT:** Oh, did I? Because what I wanted to do,

Page 34

[1] what stimulated me was your suggestion that, you know, he has
[2] to prove the underlying merits of the arbitration anyway,
[3] notwithstanding that I've decoupled the motion to compel, that
[4] those issues remain relevant for purposes of the antisuit
[5] portion of the relief that he seeks. I understand that remains
[6] relevant. But again, my thought was, I didn't think we needed
[7] a lot more facts on that, though there's legal argument to be
[8] had. And I wondered if you and ultimately Mr. Sills agreed
[9] that what we really need to be trying here has to do with the
[10] alleged elusiveness of these suits because it's only if that is
[11] established that it makes any sense to imagine that your
[12] clients can be enjoined from bringing the litigation in which
[13] nominally they're the defendants.
[14] **MR. VAN TOL:** That was my point, your Honor. I just
[15] wanted to make sure that the testimony we're about to hear goes
[16] to the antisuit injunction because I haven't seen anything in
[17] the witness statements that have been submitted by Mr. Sills
[18] for Mr. Ekhougen or Mr. Moland that touches at all on what my
[19] client knew, but I'm happy to address that question in
[20] cross-examination.
[21] **THE COURT:** Oh, yes. What there is, there is, in
[22] terms of the factual records that we're going to develop. I'm
[23] just trying to, again, figure out what we're going to -- now
[24] that we have some picture of what conceptually we're doing, the
[25] next order of business is to figure out how we operationalize

Page 35

[1] that and what the hearing is going to look like. And I guess
[2] what I'm hearing -- I don't want to put words in anybody's
[3] mouth -- is that no one objects to, in effect, a stipulation
[4] that all of the -- you'll be able to formulate it better than
[5] I, but that the record before the arbitrators, which is before
[6] me in the form of all the affidavits and materials that were
[7] put before me with your proceeding, is stuff that
[8] I can rely on.
[9] **MR. VAN TOL:** Your Honor, I have no problem with that,
[10] as long as it is what it is, which is a limited purpose for a
[11] preliminary injunction and is not deciding the issue of fact of
[12] whether there are --
[13] **THE COURT:** I think that's where we now are. I'm not,
[14] I should say, very moved by the arguments that you presented
[15] with respect to discovery because I think there has been
[16] discovery in this matter and certainly in the arbitration
[17] there's been plenty of time for the parties to develop facts,
[18] again, especially relating to the underlying issues about the
[19] shareholders agreement and the arbitration clause and that has
[20] been actively litigated, and it would astound me if the
[21] parties -- well, it wouldn't because nothing astounds me when
[22] sophisticated lawyers get together and figure out what
[23] discovery they might want to have. But it would surprise me if
[24] I thought that, at the end of some set of issues about what
[25] further discovery needs to be had, there could be anything that

Page 36

[1] needs to delay the proceeding on that ground.
[2] But at the same time it seems to me that my notion to
[3] consolidate everything and have the ultimate trial on the
[4] merits was, again, stimulated in part, Mr. Van Tol, by your
[5] suggesting that somehow, if we're going to go forward with the
[6] motion to compel, that that couldn't be done on a preliminary
[7] basis and that seemed to me, well, so then why not just do it
[8] all at once and get the whole case resolved and not just deal
[9] with the preliminary issues. But now that we've confined the
[10] issues to what are essentially collateral matters -- I mean,
[11] the proceeding before the Court, remember, is Storm's original
[12] lawsuit to vacate the arbitral partial award on jurisdiction
[13] and enjoin the arbitration proceedings. There is a pending
[14] counterclaim, effectively -- one can quibble exactly how it's
[15] brought, but there is effectively a counterclaim to compel
[16] arbitration, which I've indicated, as a preliminary matter,
[17] anyway, I have my doubts about, but it's pending. And just as
[18] it might be premature to decide the merits of other things
[19] finally, it is probably premature to decide that too.
[20] So what we've got is the counterclaimant's demand for
[21] an antisuit injunction, which I take it is effectively based on
[22] a counterclaim seeking final relief in the form of such an
[23] injunction, and we are here I think now, it's fair to say,
[24] limited to whether a preliminary injunction of some sort with
[25] respect to antisuit issues are entered. And for today,