# EXHIBIT P

ДОГОВІР 9331 ; ...  |  AGREEMENT

Про надання професійних послуг | On Provision of Professional Service

« 6 » січня 2006 р.    м. Київ, Україна | " 6 " January, 2006    Kyiv, Ukraine

Закрите акціонерне товариство "Київстар Дж.Ес.Ем.", що є юридичною особою за законодавством України, юридична адреса якої Україна, 03110, Червонозоряний пр., 51 в особі пана _____, який діє на підставі _____ (надалі іменується "Замовник"), | Close Joint-Stock Company Kyivstar G.S.M., a legal entity under the laws of Ukraine, having its legal address at 51 Chervonozorianyi avenue, 03110, Kyiv, Ukraine, represented by _____, acting based on the _____ (hereinafter the "Client"),

та | and

Товариство з обмеженою відповідальністю "Ернст енд Янг Аудиторські Послуги", що є юридичною особою за законодавством України, юридична адреса якої Україна, 01001, м. Київ, вул. Хрещатик, 19а, в особі Генерального директора пана Олександра Світича, який діє на підставі Статуту (надалі іменується "Ернст енд Янг Аудиторські послуги") та Товариство з обмеженою відповідальністю "Ернст енд Янг", що є юридичною особою за законодавством України, юридична адреса якої Україна, 01001, м. Київ, вул. Хрещатик, 19а, в особі Генерального директора Олексія Кредісова, який діє на підставі Статуту, (надалі іменується "Ернст енд Янг") і які надалі разом іменуються "Виконавці", | Limited Liability Company "Ernst & Young Audit Services", a legal entity under the laws of Ukraine, having its address at 19a, Khreschatyk Street, Kyiv, 01001, Ukraine, represented by General director Mr. Oleksandr Svistich, acting based on the Charter (herein referred to as "Ernst & Young Audit Services") and Limited Liability Company "Ernst & Young", a legal entity under the laws of Ukraine, having its address at 19a, Khreschatyk Street, Kyiv, 01001, Ukraine, represented by its General director Mr. Alexei Kredisov, acting based on the Charter (hereinafter referred to as "Ernst & Young") and hereinafter collectively referred to as the "Contractors",

які надалі разом іменуються як "Сторони" та кожна окремо як "Сторона", | hereinafter individually referred to as the "Party" and together collectively referred to as the "Parties",

уклали цей Договір про надання професійних послуг (надалі "Договір") про наступне: | have entered into this Agreement on Provision of Professional Services (the "Agreement") in respect of the following.

I.   Предмет Договору | I.   Subject of the Agreement

1.1. "Ернст енд Янг" надасть Замовнику професійні послуги у підготовці до проведення аудиту "Ернст енд Янг Аудиторські послуги". | 1.1. "Ernst & Young" shall provide professional services to the Client in preparation for the conduct of the audit by Ernst & Young Audit Services.

1.2. "Ернст енд Янг" також надасть Замовнику професійні послуги, пов'язані з допомогою керівництву у аналізі достовірності квартальної фінансової інформації, що базується на облікових та прогнозних даних. Така допомога буде надана за квартали, визначені Замовником. | 1.2. Ernst & Young also shall provide professional services in connection with the assistance to management in analysis of reliability of the quarterly financial information, which is based on accounting data and forecasts. Such assistance will be provided for the quarters determined by the Client.

1

1.3. "Ернст енд Янг Аудиторські послуги" проведе аудит фінансової звітності Замовника, складеної у відповідності до Загальноприйнятих стандартів бухгалтерського обліку США ("US GAAP"). Фінансова звітність, складена у відповідності до US GAAP, має бути підготовлена станом на 31 грудня 2005 року та за рік, що закінчився зазначеною датою. "Ернст енд Янг Аудиторські послуги" проведе аудит у відповідності до стандартів, прийнятих Американським Інститутом дипломованих бухгалтерів ("АІДБ").

1.3. Ernst & Young Audit Services will audit the Client's financial statements prepared in accordance with accounting principles generally accepted in United States of America ("US GAAP"). The US GAAP financial statements will be prepared as of and for the year ended 31 December 2005. Ernst & Young Audit Services will conduct the audit in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA").

1.4. Сторони погодились, що Виконавці мають право надавати аудиторам акціонерів Замовника у відповідь на їхні запити будь-яку інформацію, яка стала відома Виконавцям у ході проведення річного аудиту фінансової звітності, або при проведенні проміжних квартальних процедур по відношенню до фінансової інформації. У разі, якщо аудиторська компанія, яка надсилає такий запит, не є компанією глобальної мережі Ернст енд Янг, Виконавці отримають письмовий дозвіл від Замовника стосовно надання інформації такому аудитору.

1.4. The Parties agreed that the Contractors retain the right to communicate to the auditors of Kyivstar's shareholders at their requests any matters they became aware of in the course of the annual audit or interim quarterly procedures performed on the financial information. Should the requesting auditors not be a member of EY global network, the Contractors will obtain a written permission from the Client allowing to provide information to such auditors.

1.5. Аудит включає проведення такого обсягу тестів облікових операцій та тестів наявності, прав власності і оцінки вартості активів та пасивів, який "Ернст енд Янг Аудиторські послуги" вважає доцільними для виконання ним своїх обов'язків.

1.5. The audit will be conducted in such a manner Ernst & Young Audit Services considers necessary to fulfil its responsibilities and will include such tests of transactions and of the existence, ownership and valuation of assets and liabilities as Ernst & Young Audit Services considers necessary.

1.6. Результат проведення робіт відповідно до статті 1.3. цього Договору ("Послуги") має включати аудиторський висновок ("**Аудиторський висновок**") "Ернст енд Янг Аудиторські послуги" щодо фінансової звітності за рік, що закінчився 31 грудня 2005 р., складеної згідно US GAAP. Додатково до вищезазначеного може надаватися інша письмова інформація (звіти та інші документи, а також поради, письмові або усні) (надалі разом визначаються як "**Результати Послуг**").

1.6. Deliverables from the provision of the services stated in Section 1.3. of this Agreement (the "**Services**") will include Ernst & Young Audit Services' audit report (the "**Audit Report**") on the financial statements for the year ending December 31, 2005 prepared in accordance with US GAAP. In addition to the above, the deliverables may include other written information (reports and other documents, as well as advice, whether oral or written) (jointly referred to as "**Deliverables**").

1.7. Аудиторський висновок "Ернст енд Янг Аудиторські послуги", складений відповідно до стандартів, прийнятих АІДБ, ґрунтуватиметься на результатах виконаних робіт та буде містити висновок про те, чи представлена фінансова звітність Замовника достовірно, в усіх істотних аспектах, у відповідності до US GAAP.

1.7. Ernst & Young Audit Services' Audit Report will be prepared in accordance with standards established by the AICPA and will be based on the results of the services performed. It will contain an opinion as to whether or not the Client's financial statements are presented fairly, in all material aspects, in accordance with US GAAP.

1.8. Існує ймовірність того, що "Ернст енд Янг Аудиторські послуги" не зможе скласти позитивний Аудиторський висновок.

1.8. No assurances can be provided that an unqualified Audit Report (without any qualifications) will be issued by the Ernst & Young Audit Services.

2

Будь-який Аудиторський висновок стосовно фінансової звітності, підготовленої відповідно до US GAAP, складений "Ернст енд Янг Аудиторські послуги", що містить застереження, обмеження щодо обсягу перевірки, негативний висновок або відмову від надання висновку щодо фінансової звітності Замовника, складеної у відповідності до US GAAP, не звільняє останнього від зобов'язань, які виникають з статті 3.3., а також Розділу VI цього Договору.

1.9. Оскільки послуги "Ернст енд Янг" відповідно до статей 1.1. та 1.2. цього Договору будуть обмежені професійними послугами з метою підготовки до проведення аудиту "Ернст енд Янг Аудиторські послуги", та послугами з допомоги керівництву у аналізі достовірності квартальної фінансової інформації, "Ернст енд Янг" не складатиме будь-якого офіційного письмового звіту про виконану роботу, окрім актів виконаних робіт.

**II.     Умови надання Послуг**

2.1. Замовник у випадку перекладу Аудиторського Висновку, Результатів Послуг чи інших Послуг передбачених Договором з української або англійської мови на будь-яку іншу мову, повинен узгодити тексти таких перекладів з Виконавцем, що підготував Аудиторський Висновок чи надав Послуги. При відсутності такого узгодження Замовник повністю звільняє Виконавців від відповідальності за достовірність їх перекладів.

2.2. Робочі документи, підготовлені Виконавцями у зв'язку з наданням Послуг, є власністю Виконавців, носять конфіденційний характер та залишаються у власності Виконавців відповідно до їх внутрішніх процедур.

2.3. Сторони мають право вести листування та пересилати документацію електронною поштою через мережу Інтернет, факсом або поштою. Жодна з Сторін не несе відповідальності за будь-який збиток, шкоду, видатки або незручність, що виникли в результаті втрати, затримки, перехоплення або викривлення того, що передається електронною поштою через мережу Інтернет, факсом або поштою, через причини, що знаходяться поза розумним контролем відповідної Сторони.

**III. Права та обов'язки Сторін**

3.1.     Виконавці та їх представники мають право:

Any Audit Report on US GAAP financial statements issued by the Ernst & Young Audit Services, which contains qualifications, scope limitations, an adverse opinion or a disclaimer of opinion on the financial statements shall not release the Client from its obligations under Section 3.3. and Article VI of this Agreement.

1.9.     As Ernst & Young's services under the Sections 1.1. and 1.2. of this Agreement will be limited to professional services in preparation for the audit by Ernst & Young Audit Services and assistance to management in analysis of reliability of the quarterly financial information, no formal written report will be issued by Ernst & Young, beyond acts of acceptance for services provided.

**II.     Terms and Conditions of the Services**

2.1.     Should the Client translate of Audit Report, Deliverables and other Services of the Agreement hereunder to another language than Ukrainian or English he must agreed the text of that translation with Contractors. Contractors shall be free of the responsibility for faithfulness of translation if Client does not agree such translation with Contractors.

2.2. The working papers prepared in conjunction with the Services are the property of the Contractors, constitute confidential information and will be retained by the Contractors in accordance with their policies and procedures.

2.3. The Parties may correspond or convey documentation and information via Internet e-mail, fax or mail. Neither Party shall be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail, fax, or mail due to any reason beyond the relevant Party's reasonable control.

**III. Rights and Obligations of the Parties**

3.1.     The Contractors and their representatives will have the right:

| | |
|---|---|
| (а) проводити комплексну перевірку документації Замовника про його фінансово-господарську діяльність, наявність грошових сум, цінних паперів, матеріальних цінностей; отримувати роз'яснення з питань, що можуть виникнути в ході виконання робіт; | (a) to carry out a full audit of the Client's documents relating to its financial and economic activities, availability of monetary amounts, securities and material valuables; and to obtain explanations on issues which could arise during the audit; |
| (б) отримувати та перевіряти документи, які включають, зокрема, фінансові облікові реєстри та пов'язану з ними інформацію, протоколи засідань керівних та спостережних органів, акти про результати податкових перевірок, договори та кредитні угоди, нотаріальні акти та документи, пов'язані з капіталом тощо. | (b) to obtain and review the documents which include, but are not limited to, financial records and related data, minutes of the meetings of the management and supervisory boards, protocols of tax audits, contracts and loan agreements, notarial acts and capital-related documents. |
| В багатьох випадках копії зазначених документів можуть вимагатися для робочих файлів Виконавців за попереднім узгодженням з Замовником. | In many instances, photocopies of such documents may be requested for the Contractors' files subject to the Client's approval. |
| (в) Виконавці нададуть Послуги Замовникові за умови вчасного надання Замовником відповідно до графіку, який буде узгоджено окремо, документів та пояснень, які вказано вище. | (c) the Contractors will provide the Services to the Client under the condition of timely provision by the Client within the timetable agreed upon separately, of requested documentation and explanations as specified above. |
| (г) в разі необхідності Виконавці можуть залучити до надання Послуг або найняти будь-якого співробітника, афілійовану або незалежну особу, яку Виконавці вважатимуть необхідною для проведення робіт з надання Послуг, без проведення додаткового узгодження із Замовником. В такому випадку Виконавці несуть відповідальність за дії таких осіб як за свої власні. | (d) as appropriate, the Contractors may engage or employ for the Services any employee, affiliate or independent person or entity it deems necessary to undertake and complete the Services, without obtaining additional approval of the Client. In this case the Contractors are liable for the activities of such employee, affiliate or independent person or entity, as if they were in all respects its own activities. |
| 3.2. Виконавці зобов'язані: | 3.2. The Contractors shall be obliged: |
| (а) забезпечити проведення робіт у встановлені строки, на професійному рівні і у діловий спосіб, з дотриманням відповідних професійних і етичних стандартів, умов та положень цього Договору; | (a) to perform the work within the time-frame set forth hereunder in a professional and businesslike manner, in accordance with applicable professional and ethical standards and in compliance with the terms and conditions of this Agreement; |
| (б) своєчасно повідомляти Замовника про виявлені факти недостовірності або неповноти фінансової звітності і бухгалтерських записів, та про будь-які інші недоліки у веденні бухгалтерського обліку і звітності; | (b) to bring to the Client's attention on a timely basis any identified misstatements or inadequacies of the financial statements, accounting records and any other irregularities of accounting and reporting; |
| (в) негайно повідомити Замовника про наявність підстав для надання аудиторського висновку іншого, ніж позитивний. | (c) to inform the Client about reasons for providing an audit opinion other than positive as soon as those reasons become apparent. |
| 3.3. Замовник зобов'язується: | 3.3. The Client shall be obliged: |

4

(а) своєчасно сприяти Виконавцям у реалізації їх прав та виконанні їх обов'язків, викладених в пунктах 3.1. та 3.2. цього Договору;

(a) to assist the Contractors in exercising their rights and performing their obligations which are set in Sections 3.1. and 3.2. of this Agreement on a timely basis;

(б) у випадку наявності у Замовника фактичних відомих судових позовів, претензій чи інших вимог або потенційних зобов'язань, детально інформувати Виконавців про ці випадки. За наявності таких питань, та у випадку залучення Замовником професійних юристів для надання допомоги, консультування або захисту Замовника в цих питаннях, Виконавці можуть попросити Замовника направити таким юристам відповідного листа.

(b) to, if the Client is subject to actual known instances of litigation, claims, assessments or contingent liabilities, inform the Contractors about the details of such matters. If such matters exist and the Client has engaged external lawyers to assist, advise or defend the Client in these matters, the Contractors may ask the Client to send a related letter to its external lawyers.

Такий лист міститиме прохання надати безпосередньо Виконавцям письмові роз'яснення стосовно зазначених судових позовів, претензій або потенційних фінансових зобов'язань, а також оцінити суму таких зобов'язань та ймовірність їх вирішення на користь протилежної Сторони.

This letter will ask the external lawyers to send a letter directly to the Contractors that will elaborate the details of such litigation, claims, assessments or contingent financial liabilities and evaluate the value of the results of such matters and the probability of an unfavourable outcome.

Виконавці можуть також звернутись до внутрішнього юриста (співробітника) Замовника з проханням надати такого листа;

The Contractors may also request such a letter from the Client's internal (employee) lawyer;

(в) своєчасно надати, за окремо погодженим графіком та відповідно до Пакету Допомоги Замовника (ПДЗ), всю інформацію, включаючи документи та вичерпні роз'яснення, що обґрунтовано були замовлені Виконавцями у зв'язку з наданням Послуг. Надана інформація повинна бути повною, не застарілою, точною та достовірною у всіх суттєвих аспектах; зазначений ПДЗ буде наданий Виконавцями до початку надання Послуг;

(c) timely provision by the Client in accordance with the Client Assistance Package within the time-frame agreed upon separately, of any and all information, including documentation and comprehensive explanations, reasonably requested by the Contractors in connection with the Services. The information so provided shall be complete, up to date, and true and accurate in all material respects; the Client Assistance Package shall be submitted by the Contractors prior to commencement of the final audit procedures;

(г) на вимогу Виконавців забезпечити їх робітників належним приміщенням та обладнанням, що є необхідним для належного надання Послуг;

(d) upon the Contractors' request, to furnish the Contractors' personnel with a suitable office and adequate resources and suppliers, as needed for the successful rendering of the Services;

(д) при завершенні аудиту надати Виконавцям листи-представлення керівництва, які підтверджують що Замовник надав Виконавцям (1) повну та достовірну інформацію стосовно участі Замовника у правовідносинах (включаючи спори), наслідки яких можуть суттєво вплинути на фінансову звітність Замовника чи Пакет Звітності Замовника (лист-представлення з юридичних питань); (2) повні та достовірні дані, які складають та включаються до фінансової звітності та Пакету Звітності Замовника і підтверджують, що вплив будь-яких невиправлених помилок та невідповідностей як окремо, так і в сукупності, не є суттєвим для фінансової звітності та Пакету

(e) during the course of the audit to provide the Contractors with management representation letters, which affirm, *inter alia*, that the Client supplied the Contractors with (1) complete and reliable information regarding Client's participation in legal relationships (including disputes), the outcome of which may materially affect the Client's financial statements or Client's Reporting Package (legal representation letter); (2) complete and reliable data underlying information in financial statements and Clients' Reporting Package and affirming that the effects of any uncorrected misstatements are, both individually and in the aggregate, immaterial to the financial statements and Client's Reporting Package

5


Звітності Замовника в цілому (загальний лист-представлення аудитору); (3) копії протоколів всіх засідань органів управління та контролю (лист-представлення щодо протоколів).

(е) здійснювати оплату послуг Виконавців у порядку, встановленому у Розділі VI цього Договору.

(є) не подавати на публікацію фінансову звітність та/або Аудиторський Висновок та/або будь-який інший документ, який містить посилання на Виконавців, в повному або частковому обсязі, без попередньої перевірки та погодження Виконавцями форми та змісту публікації. Виконавці не будуть безпідставно утримуватись від такого погодження.

3.4. Жодна зі Сторін не використовуватиме найменування і знаки для товарів і послуг іншої Сторони без попередньої письмової згоди такої Сторони. При цьому Виконавці мають право посилатися або наводити найменування Замовника, та/або загальний опис Послуг, наданих згідно умов цього Договору, у пропозиціях і аналогічних матеріалах з маркетингу.

IV. **Відповідальність Сторін**

4.1. Відповідальність за ведення бухгалтерського обліку та повне і достовірне представлення як української законодавчо встановленої фінансової звітності, так і фінансової звітності відповідно до US GAAP, покладається на керівництво Замовника. Це включає належне ведення облікових реєстрів, забезпечення відповідності операцій, обліку та звітності вимогам українського законодавства, встановлення та підтримку системи внутрішнього контролю, послідовне застосування облікової політики та забезпечення збереження майна Замовника.

4.2. Попередження та виявлення порушень і шахрайства є обов'язком Замовника. Наявність ефективної системи внутрішнього контролю знижує ймовірність скоєння та невиявлення помилок і порушень, але не виключає у повному обсязі такої ймовірності.

4.3. Керівництво Замовника несе відповідальність за коригування фінансової звітності для виправлення суттєвих помилок та за підтвердження у листі-представленні "Ернст енд Янг Аудиторські послуги" того, що вплив невиправлених помилок, які були виявлені Виконавцями під час їх роботи, не є суттєвим по відношенню до фінансової звітності в цілому незалежно від того, розглядати ці помилки окремо

taken as a whole (general audit representation letter); (3) copies of minutes of all meetings of management committees (minutes representation letter);

(f) to pay for Contractors' Services according to the procedure prescribed in Article VI of this Agreement;

(j) in the event the Client intends to publish or otherwise reproduce the financial statements and/or Audit Report (or otherwise make reference to the Contractors) to provide the Contractors with a draft of the document for review and approval before it is printed and distributed. The Contractors will not unnecessarily withhold their consent.

3.4. Neither Party shall use the other Party's name and trademarks without such Party's prior written consent. Notwithstanding the Contractors may refer to or list Client's name, trademark and/or a general description of the Services rendered under conditions of the present Agreement in proposals and similar marketing materials.

IV. **Responsibilities of the Parties**

4.1. The responsibility for maintaining accounting records and for completion and fair presentation of both US GAAP and Ukrainian statutory financial statements shall rest with the management of the Client. This includes the diligent maintenance of accounting ledgers, securing compliance of operations and accounting and reporting practices with the relevant Ukrainian legislation, establishing and maintaining an internal control system, consistent application of the accounting policies and safeguarding the Client's assets.

4.2. The responsibility for the prevention and detection of irregularities and fraud rests with the Client. An effective system of internal accounting control reduces the probability that errors or irregularities will occur and remain undetected; however, it does not eliminate that possibility.

4.3. The management of the Client is responsible for adjusting the financial statements to correct material misstatements and for affirming to Ernst & Young Audit Services in the representation letter that the effects of any unrecorded misstatements aggregated by the Contactors during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a

чи разом.

4.4. Виконавці несуть відповідальність за достовірність та своєчасність надання Результатів Послуг. Проте, Виконавці звільняються від такої відповідальності в тій мірі, в якій неналежне виконання ними своїх обов'язків мало місце внаслідок неточної або хибної інформації та / або представлень, наданих йому Замовником.

V.    Строки виконання робіт

5.1. Виконавці розпочинають роботу відразу після підписання цього Договору та отримання першої попередньої оплати, як це зазначено у пункті 7.1. цього Договору.

5.2.    "Ернст енд Янг Аудиторські послуги" надає проект Аудиторського Звіту стосовно фінансової звітності, складеної у відповідності до US GAAP до 15 березня 2006 року. У випадку виникнення затримок у наданні "Ернст енд Янг Аудиторські послуги" Аудиторського Звіту у зв'язку з затримкою Замовника у наданні необхідної інформації або документів, строки надання проекту Аудиторського Звіту продовжуються відповідно на строк існування таких затримок з боку Замовника.

5.3. Можливість дотримання цього графіка "Ернст енд Янг Аудиторські послуги" залежатиме від повноти, точності та своєчасності надання інформації Замовником та загального стану бухгалтерських записів. Будь-які зміни до встановленого графіка обговорюватимуться Сторонами та не впливатимуть на відповідальність Сторін згідно Розділу VI цього Договору.

5.4.    Датою завершення надання Послуг за цим Договором є дата підписання акту здачі–приймання робіт ("Акт"). Складений і підписаний Виконавцем Акт у 2 (двох) примірниках передається разом з відповідними матеріалами Замовникові, який має прийняти Послуги шляхом підписання Акту та повернення 2 (двох) примірників підписаного Акту Виконавцю протягом 5 робочих днів з дати отримання Акту. Акт, який підписаний обома Сторонами, має засвідчувати, що Послуги надані у повному обсязі та Замовник не має зауважень до Послуг.

whole.

4.4. The Contractors shall be liable for reliability and timeliness of providing the Services. However, the Contractors shall be free of such responsibility to the extent the improper fulfilment of his obligations has resulted from inaccurate or misleading information and/or representations provided to him by the Client.

V.    The Service Timetable

5.1. Contractors shall start rendering of Services after signing of this Agreement and receiving the first advance payment as set forth in Section 7.1. of this Agreement.

5.2.    Ernst & Young Audit Services shall provide the ▓▓▓ Audit Report on the financial statements, prepared in accordance with US GAAP, by March 15, 2006. In case of delays in providing the draft Audit Report by "Ernst & Young Audit Services" because of the Client's fault to submit necessary information or documents in time, the terms of submitting of draft Audit Report shall be postponed for the term of existing of such delays from the Client side.

5.3. Ernst & Young Audit Services' ability to adhere to this timetable will be dependent upon the completeness, accuracy and timeliness of information provided by the Client along with the general conditions of the accounting records. Any revisions to aforementioned timing will be verbally discussed between the Parties, and shall not influence the Parties' responsibility under Article VI of this Agreement.

5.4.    The date of completion of rendering the Services under this Agreement shall be the date of signing a transfer acceptance act (the "**Act**"). The Act drawn up and signed by the Contractor in 2 (two) copies shall be submitted together with the relevant materials to the Client who shall accept the Services by signing the Act and returning 2 (two) copies of the signed Act to the Contractor within 5 working days from the date of its receipt. The Act signed by both Parties shall certify that the Services under this Agreement have been rendered in full, and the Client does not have any claims with respect to the Services.

5.5. Якщо Замовник не має наміру підписувати Акт протягом 15 (п'ятнадцяти) робочих днів з дати отримання Акту, він має надати Виконавцям 2 (два) примірники листа-претензії ("Претензія"), в якому мають бути вказані зауваження Замовника, послуги, необхідні для задоволення таких зауважень, та строки надання таких послуг.

5.6. Після завершення надання послуг за Претензією, Сторони мають підписати акт здачі-приймання робіт як наведено вище.

VI. Оплата Послуг

6.1. Винагорода Виконавцям за Послуги має складатися з професійної винагороди ("Винагорода") та відшкодування обґрунтованих прямих витрат. Такі витрати включають витрати, пов'язані із залученням спеціалістів інших офісів "Ернст енд Янг", витрати на відрядження (проїзд, проживання та харчування), витрати на зв'язок та будь-які інші витрати, пов'язані із наданням Послуг. При цьому витрати, що пов'язані із залученням спеціалістів інших офісів "Ернст енд Янг", повинні заздалегідь бути узгоджені з Замовником.

6.2. Загальна сума Винагороди розраховується на основі фактичних трудовитрат та посадового рівня відповідних працівників Виконавців, які будуть залучені до надання Послуг. Виходячи з наявного досвіду проведення аналогічних робіт, оцінена Сторонами Винагорода, обчислена на основі чинних тарифних ставок Виконавців, за проведення робіт, які обумовлені пунктами 1.1 та 1.3. цього Договору, становить 1 230 246 (один мільйон двісті тридцять тисяч двісті сорок шість) гривень.

Загальна сума Винагороди складається з наступного:

1 168 732 (один мільйон сто шістдесят вісім тисяч сімсот тридцять дві) гривні – Винагорода за послуги «Ернст енд Янг», визначені пунктом 1.1 даного Договору;

61 514 (шістдесят одна тисяча п'ятсот чотирнадцять) гривень – Винагорода за послуги «Ернст енд Янг Аудиторські послуги», визначені пунктом 1.3. даного Договору.

5.5. If the Client does not intend to sign the Act then, within 15 (fifteen) working days from a receipt of the Act, he shall provide the Contractors with 2 (two) copies of the claim act (the "**Claim Act**") stating his claims, required Services to cure the Client's claims and deadlines for their rendering.

5.6. Upon the completion of rendering the services under the Claim Act, the Parties shall sign the transfer-acceptance act as specified hereof.

VI. **Fees for the Services**

6.1. Compensation due to the Contractors for the Services shall consist of a professional fee (the "Fee") and reimbursement of reasonable direct expenses. Such expenses include expenses related to involvement of specialists from other offices of Ernst & Young, travel expenses (such as airfare, lodging and meals), telecommunication expenses and any other expenses directly related to the Services, provided that expenses related to involvement of specialists from other offices of Ernst & Young shall be agreed in advance with the Client.

6.2.    The total amount of the Fee shall be estimated on the basis of actual labour input and the respective grade of the relevant employees of the Contractors performing the Services hereunder. Based upon the experience in performing similar services, the estimated Fee for the Services agreed by the Parties and described in Sections 1.1 and 1.3 of this Agreement, calculated on the basis of standard rates of the Contractors shall be UAH 1,230,246 (one million two hundred thirty thousand two hundred forty six).

The total amount of the Fee includes:

UAH 1,168,732 (one million one hundred sixty eight thousand seven hundred thirty two) – for services rendered by Ernst & Young described in the Section 1.1. of this Agreement;

UAH 61,514 (sixty one thousand five hundred fourteen) – for services rendered by Ernst & Young Audit Services described in the Section 1.3. of this Agreement.

| | |
|---|---|
| 6.3. Вартість послуг, зазначених у пункті 1.2., обчислюватиметься ґрунтуючись на погодинних ставках працівників "Ернст енд Янг", що діють в періоді надання послуг, із застосуванням коефіцієнту 0.7 та сплачується додатково до суми Винагороди, зазначеної в цьому Договорі. Погодинні ставки станом на дату даного Договору становлять: | 6.3. The professional fee for the procedures described in the Section 1.2. will be based on Ernst & Young hourly rates effective during the period the services are rendered, after applying 0.7 ratio and will be payable in addition to the amount of Fee stated in this Agreement. Hourly rates effective as at the date of this Agreements are as follows: |
| Технічний партнер та незалежний партнер – 3282,50 грн. | Technical partner and independent partner – UAH 3,282.50 |
| Партнер – 2525,00 грн. | Partner – UAH 2,525.00 |
| Менеджер – 1489,75 грн. | Manager – UAH 1,489.75 |
| Старший аудитор – 1010,00 грн. | Senior auditor – UAH 1,010.00 |
| Старший асистент – 555,50 грн. | Advanced assistant – UAH 555.50 |
| Асистент – 378,75 грн. | Assistant – UAH 378.75 |
| Будь-які зміни до погодинних ставок "Ернст енд Янг" підлягають узгодженню сторонами шляхом підписання додаткової угоди до даного Договору. | Changes to Ernst & Young hourly rates shall be agreed by the Parties by signing addendum to this Agreement. |
| 6.4. Винагорода залежить від отримання необхідної інформації та була визначена за припущення, що фінансова звітність та бухгалтерський облік Замовника знаходиться у прийнятно доброму стані. Виконавці не очікують перевищення вказаної Винагороди, якщо тільки не виникнуть будь-які значні непередбачені проблеми, які вимагатимуть збільшення часу на надання Послуг та про які Виконавці негайно повідомлять Замовника. З іншого боку, якщо Виконавці будуть в змозі надати Послуги з меншими витратами часу, ніж ті, що були враховані при розрахунку Винагороди, що вказана в пункті 6.2. цього Договору, розмір Винагороди за цим Договором може бути зменшений. | 6.4. The Fee is subject to obtaining the appropriate information as specified in this Agreement and the assumption that the Client's financial statements and accounting records are in reasonably good condition. The Contractors do not anticipate exceeding this Fee unless material circumstances occur which will require the Contractors to increase the amount of hours needed to complete the Services, of which the Contractors shall immediately inform the Client. On the other hand if the Contractors manage to complete the Services with lesser professional hours than those, which were used for calculation of Fee specified in Section 6.2. of this Agreement, the Fee under this Agreement may be reduced. |
| 6.5. Сума Винагороди та ставки, вказані у пунктах 6.2 та 6.3 цього Договору, коригуються шляхом її збільшення/(зменшення) пропорційно зміні офіційного обмінного курсу гривні до долару США, який встановлюється Національним банком України, за період від дати укладання цього Договору до дати здійснення відповідного платежу. | 6.5. The amount of fee and rates specified in Sections 6.2 and 6.3 of this Agreement is an estimated one and may be adjusted by its decrease / increase pro rata subject to changes in the official UAH / USD exchange rate fixed by the National Bank of Ukraine ("the NBU") for the period from signing the Agreement until the date of respective payment. |

| | |
|---|---|
| 6.6. Сума Винагороди, яка вказана у цьому Договорі, не враховує податку на додану вартість ("ПДВ"). Суми ПДВ, як того вимагає чинне законодавство, будуть включатись до рахунків Виконавців за ставкою, чинною на момент виставлення рахунків. | 6.6. The amount of the Fee indicated in this Article does not include Value Added Tax ("VAT"). In accordance with Ukrainian legislation, the amount of VAT shall be added to the Fee at the rate effective at the date of issuing of the invoice. |
| 6.7. Виконавці мають статус платників податку на прибуток на загальних умовах, які передбачені Законом України "Про оподаткування прибутку підприємств" від 28 грудня 1994 року за №334/94-ВР (далі – Закон). Зокрема, Виконавці сплачують податок на прибуток згідно пункту 10.1 Закону, та не мають пільг щодо сплати податку на прибуток. | 6.7. The Contractors shall have the status of payers of profits tax on a common conditions provided for by Law of Ukraine No. 334/94-VR "Concerning Tax on Profit of Enterprises" of 28 December 1994 (hereinafter – the "Law"). Specifically, the Contractors shall pay profits tax as per Article 10 of the Law and shall have no privilege with respect to payment of profits tax. |
| **VII. Порядок розрахунків** | **VII. Order of Settlement** |
| 7.1. Замовник має сплачувати Винагороду за Послуги кожного з Виконавців відповідно до пунктів 1.1 та 1.3. даного Договору у відповідності до такого графіку: | 7.1. Fee for services described in the Section 1.1 and 1.3. of this Agreement will be invoiced by each of the Contractors to the Client according to the following payment schedule: |
| 1) Винагорода за послуги "Ернст енд Янг": | 1) Fees for services rendered by Ernst & Young |
| 1-й рахунок (попередня оплата) – (25%) до 08 лютого 2006 року;<br>2-й рахунок – (30%) до 10 лютого 2006 року;<br>3-й рахунок – (30%) до 28 лютого 2006 року;<br>4-й рахунок – (15%) протягом 10 робочих днів з дня підписання Замовником Акту. | 1st (advance) billing – (25%) by February 08, 2006;<br>2nd billing – (30%) by February 10, 2006;<br>3rd billing – (30%) by February 28, 2006;<br>4th billing – (15%) in 10 working days from the signing by the Client the Act. |
| 2) Винагорода за послуги "Ернст енд Янг Аудиторські Послуги": | 2) Fees for services rendered by Ernst & Young Audit Services |
| 1-й рахунок – (100%) протягом 10 робочих днів з дня підписання Замовником Акту. | 1st billing (100%) - in 10 working days from the signing by the Client the Act. |
| **VIII. Обставини непереборної сили** | **VIII. Event of Force Majeure** |
| 8.1. Для цілей цього Договору "Обставини непереборної сили" означають будь-які обставини, в яких знаходиться одна із Сторін, та які не можуть бути зупинені чи подолані цією Стороною не дивлячись на зусилля такої Сторони. Такі обставини включають, зокрема, війну, тероризм, повстання, блискавки, пожежі, вибухи, бурі, паводки, інші стихійні лиха та природні катаклізми, страйки, інші трудові конфлікти або прийняття загальнодержавними або місцевими органами влади рішень, які роблять неможливим виконання Сторонами умов цього Договору. | 8.1. For purposes of this Agreement, "Event of Force Majeure" means any event or events which the Party asserting the same is not, despite all reasonable efforts, able to prevent or overcome including, without limitation, war, terrorism, riots, civil strife, lightning, fires, explosions, storms, floods, other acts of God or nature, strikes, lockouts, other labour disputes, or acts of national or local authorities preventing the Parties from fulfilling their obligations. |

8.2. Якщо будь-яка із Сторін не може виконати будь-які обов'язки за цим Договором через Обставини непереборної сили, така Сторона має бути звільнена від виконання цього Договору на термін дії Обставин непереборної сили за умови, що така Сторона негайно (у будь-якому разі не пізніше однієї доби) письмово повідомить іншу Сторону про наявність Обставин непереборної сили. Факт настання Обставин непереборної сили має бути підтверджено Торгово-Промисловою Палатою України. Якщо Обставини непереборної сили продовжуються більш 3 (трьох) місяців, будь-яка із Сторін може розірвати цей Договір шляхом надіслання письмового повідомлення іншій Стороні.

### IX. Конфіденційність

9.1. У відношенні цього Договору та будь-якої інформації, як надається за цим Договором та розглядається Стороною, яка надає таку інформацію, як конфіденційна, Сторона, яка отримує таку інформацію, зобов'язується:

(а) зберігати конфіденційність інформації у відповідності до професійних норм;

(б) використовувати конфіденційну інформацію лише для виконання зобов'язань за цим Договором, та

(в) відтворювати конфіденційну інформацію лише якщо це необхідно для виконання своїх зобов'язань за цим Договором.

9.2. Цей Розділ не має застосовуватися до інформації, яка:

(а) є загальновідомою,

(б) вже відома одній Стороні на не конфіденційній основі з джерел інших аніж інша Сторона;

(в) розкриваються Стороною третім особам без обмежень;

(г) розроблені однією із Сторін без використання інформації від іншої Сторони, або інформації, яка носить конфіденційний характер;

(д) розкривається у відповідності до вимог законодавства.

8.2   If either Party is prevented from performing any of its obligations under this Agreement by reason of an Event of Force Majeure, such Party shall be excused from performance under this Agreement for so long as the Event of Force Majeure prevents its performance; provided, however, that such Party immediately (in any case not later than in 24 hours) notifies in writing the other Party of the existence of an Event of Force Majeure. The fact of the Event of Force Majeure should be confirmed by the Chamber of Commerce and Trade of Ukraine. Where the Force Majeure lasts more than 3 (three) months, either Party may terminate the Agreement by sending a written notification to the other Party.

### IX. Confidentiality

9.1.   With respect to this Agreement and any information supplied in connection with this Agreement and designated by the disclosing Party as confidential, the recipient agrees to:

(a)   protect the confidential information in a reasonable and appropriate manner and in accordance with applicable professional standards;

(b)   use confidential information only to perform its obligations under this Agreement, and

(c)   reproduce confidential information only as required to perform its obligations under this Agreement.

9.2   This Section shall not apply to information which is:

(a)   generally available to the public;

(b)   available or becomes available to one Party on a non-confidential basis from a source other than the other Party;

(c)   disclosed by the Party to a third party without restriction;

(d)   is developed by one Party independent of any information furnished by the other Party, or of any information furnished on a confidential basis;

(e)   disclosed pursuant to legal requirement.

| | |
|---|---|
| **X. Дія та розірвання Договору** | **X. Term and Termination** |
| 10.1. Цей Договір набуває чинності з дати його підписання обома Сторонами та залишається чинним до моменту виконання ними своїх обов'язків за цим Договором. | 10.1. This Agreement becomes effective from the date of signing by both Parties and shall continue until fulfilment by the Parties of their obligations under this Agreement in full. |
| 10.2. Виконавці можуть призупинити надання Послуг Замовникові та/або розірвати цей Договір за згодою Замовника або через порушення Замовником своїх обов'язків (включаючи оплату Послуг) за цим Договором, відмову Замовника від співпраці з Виконавцями, або через будь-які інші причини, які, за думкою Виконавців, можуть зробити подальше надання Послуг незаконним, неетичним або негативно вплинути на професійну репутацію Виконавців, попередив його про це письмово не менше ніж за 10 робочих днів до такого розірвання. | 10.2. The Contractors may suspend provision of the Services to the Client, and/or terminate this Agreement, with the Client's consent or for a breach by the Client of its obligations (including payment obligation) under the Agreement, the refusal of the Client to cooperate with the Contractors or any other circumstance that would, in the reasonable judgment of the Contractors, make continuing rendering the Services unlawful, unethical or would adversely impact the professional reputation of the Contractors, giving not less than 10 days notice about it to the Client. |
| Замовник має право розірвати/призупинити цей Договір у випадку порушення Виконавцями умов Договору, попередивши їх про це письмово не менше ніж за 10 робочих днів до такого розірвання. | The Client may terminate or suspend this Agreement in case of the breach of the Agreement by Contractors, giving them not less than 10 days written notice about it. |
| 10.3. Вказане вище призупинення/розірвання Договору має бути узгоджено Сторонами шляхом складання двостороннього письмово акту, який має бути основою для розірвання Договору. Однак, таке розірвання не звільняє Замовника від зобов'язання сплатити Винагороду за Послуги, що вже надані. Така Винагорода визначається в двосторонньому письмовому акті та має бути сплачена Змовником протягом 10 робочих днів з дати підписання такого акту. | 10.3. The above suspension/termination and settlement procedures shall be agreed upon by the Parties in a written bilateral act, which shall be the basis to terminate the Agreement. Such termination shall not, however, relieve the Client of its obligations to pay the Fee due for the Services rendered. Such fees shall be specified in a written bilateral act and shall be paid by the Client in 10 working days from the date of signing such an act. |
| 10.4. Сума винагороди, яка має бути сплачена Замовником у відповідності до статті 10.3. цього Договору, має відповідати обсягу Послуг, наданих до дати розірвання Договору. | 10.4. The amount of fee billable to the Client under Section 10.3. of the Agreement shall correspond to scope of the Services rendered up to the date of termination of the Agreement. |
| **XI. Застосовне право і порядок вирішення спорів** | **XI. Governing Law and Dispute Resolution** |
| 11.1. Чинність, тлумачення і виконання Договору регулюються українським правом. | 11.1. Ukrainian law shall govern the validity, interpretation and performance of this Agreement. |
| 11.2. Всі спори та розбіжності, які виникають або можуть виникнути з цього Договору чи у зв'язку з ним, повинні вирішуватись Сторонами шляхом переговорів. У разі неможливості дійти згоди при вирішенні спору чи розбіжностей, Сторони повинні звернутись до компетентного господарського суду у порядку, встановленому чинним законодавством України. | 11.2. All disputes and disagreements, which arise or may arise from this Agreement or in connection therewith shall be settled by the Parties through negotiations. If the Parties are unable to resolve their dispute or disagreement, the Parties shall submit such dispute or disagreement to the competent Ukrainian court. |

| | |
|---|---|
| XII. Заключні положення | XII. Final Provisions |

12.1. Всі зміни та доповнення до цього Договору будуть дійсними лише у випадку, коли вони будуть складені у письмовій формі та підписані уповноваженими особами Сторін.

12.1. All amendments and modifications to this Agreement shall be valid only if they are made in writing and signed by authorized representatives of the Parties.

12.2. Визнання будь-якого з положень цього Договору недійсним або таким, що не відповідає чинному законодавству, не тягне за собою визнання інших положень цього Договору недійсними або ж такими, що не відповідають чинному законодавству. Таке положення буде вилучено та замінено правомірним у порядку, передбаченому пунктом 12.1. цього Договору.

12.2. If any provision of this Agreement is found to be illegal, unenforceable or otherwise invalid, it does not imply that other provisions of this Agreement are not legal or unenforceable That provision will be deemed to be deleted and will be substituted by a valid one in the way prescribed by Section 12.1. of this Agreement.

12.3. У цьому Договорі двома мовами викладено ідентичні умови. У разі наявності розбіжностей в текстах, текст українською мовою матиме переважну силу.

12.3. This Agreement is compiled in two languages in two counterparts in which identical terms are stipulated. In the event of a difference between the texts, the Ukrainian language version shall prevail.

**ВІД ІМЕНІ ЗАТ "КИЇВСТАР ДЖ.ЕС.ЕМ."**

Адреса
03110, м.Київ, Червонозоряний пр., 51

Назва банку    Філія АКІБ "УкрСиббанк"
"Київське регіональне управління"
Номер банківського рахунку 26007011250098
МФО  300733
Код ЄДРПОУ  21673832
Індивідуальний податковий номер    216738326059
Свідоцтво платника ПДВ №   36027360

Тронд Мое
Віце-Президент

**ON BEHALF OF JSC Kyivstar G.S.M.**

Address
51, Chervonozorianyi avenue, Kyiv 03110

Bank Name UKRSIBBANK   Kyiv main Regional
            Department
Bank Account Number 26007011250098
MFO 300733
Code EDRPOU 21673832
Individual taxpayer's number    216738326059
Certificate code of VAT payer 36027360

Trond Moe
Vice-President



13

| | |
|---|---|
| ВІД ІМЕНІ ТОВ "ЕРНСТ ЕНД ЯНГ АУДИТОРСЬКІ ПОСЛУГИ": | ON BEHALF OF LLC "ERNST & YOUNG AUDIT SERVICES": |

Україна, 01001, м. Київ, вул. Хрещатик, 19а

| | |
|---|---|
| Назва банку | Сітібанк (Україна) |
| Номер банківського рахунку | 2600 8 200313 003 |
| МФО | 300584 |
| Код ЄДРПОУ | 33306921 |
| Індивідуальний податковий номер | 333069226592 |
| Свідоцтво платника ПДВ № | 39076513 |

Олександр Свістіч
Генеральний директор

19A, Khreschatyk Street, Kyiv, 01001, Ukraine

| | |
|---|---|
| Bank name | Citibank (Ukraine) |
| Bank account number | 2600 8 200313 003 |
| MFO | 300584 |
| Code EDRPOU | 33306921 |
| Individual taxpayer's number | 333069226592 |
| Certificate code of VAT payer | 39076513 |

Oleksandr Svistich
General Director

| | |
|---|---|
| ВІД ІМЕНІ ТОВ «Ернст енд Янг": | ON BEHALF OF LLC "ERNST & YOUNG": |

Україна, 01001, м. Київ, вул. Хрещатик, 19а

| | |
|---|---|
| Назва банку | Сітібанк (Україна) |
| Номер банківського рахунку | 2600 5 200311 019 |
| МФО | 300584 |
| Код ЄДРПОУ | 33306958 |
| Індивідуальний податковий номер | 333069526597 |
| Свідоцтво платника ПДВ № | 39076492 |

Олексій Кредісов
Генеральний директор

19A, Khreschatyk Street, Kyiv, 01001, Ukraine

| | |
|---|---|
| Bank name | Citibank (Ukraine) |
| Bank account number: | 26005 200311 019 |
| MFO: | 300584 |
| Code EDRPOU | 33306958 |
| Individual taxpayer's number | 333069526597 |
| Certificate code of VAT payer | 39076492 |

Aleksei Kredisov
General director

14