# EXHIBIT Q

*для Д. Егорова*    *78*    *12352*

| | |
|---|---|
| **ДОГОВІР № 12352**<br>Про надання професійних послуг | **AGREEMENT № 12352**<br>On Provision of Professional Service |

**5 травня 2006 р.**          м. Київ, Україна

**5 May 2006**          Kyiv, Ukraine

**Закрите акціонерне товариство "Київстар Дж.Ес.Ем."** (надалі іменується "Замовник"), що є юридичною особою за законодавством України, юридична адреса якої Україна, 03110, Червонозоряний пр., 51 в особі пана Тронда Мое, який діє на підставі довіреності № 57 від 22 серпня 2005 р.,

**Closed Joint Stock Company "Kyivstar G.S.M.",** a legal entity under the laws of Ukraine, having its legal address at 51 Chervonozorianyi avenue, 03110, Kyiv, Ukraine, represented by Mr. Trond Moe, acting based on the power of attorney # 57 issued on 22 August 2005 (hereinafter the "Client")

Та

And

**Товариство з обмеженою відповідальністю "Ернст енд Янг"**, що є юридичною особою за законодавством України та є платником податку на прибуток на загальних умовах передбачених Законом України "Про оподаткування прибутку підприємств", юридична адреса – Україна, 01001, м. Київ, вул. Хрещатик, 19а, в особі Генерального директора пана Олексія Кредісова, який діє на підставі Статуту, (надалі іменується "Ернст енд Янг" або "Виконавець"),

**Limited Liability Company Ernst & Young**, a legal entity under the laws of Ukraine being a corporate profit tax payer on a general basis as prescribed by the Law of Ukraine "On the Taxation of Profit of Enterprises", having its address at 19a, Khreschatyk Street, Kyiv, 01001, Ukraine, represented by General Director Mr. Alexei Kredisov, acting on the basis of the Charter (hereinafter referred to as "Ernst & Young" or the "Contractor")

які надалі разом іменуються як "Сторони" та кожна окремо як "Сторона",

hereinafter collectively referred to as the "Parties" and individually referred to as the "Party",

уклали цей Договір про надання професійних послуг (надалі "Договір") про наступне:

have entered into this Agreement on Provision of Professional Services (the "Agreement") in respect of the following.

**I.     Предмет Договору**

**I.     Subject of the Agreement**

1.1.   "Ернст енд Янг" зобов'язується надати Замовнику професійні послуги з компіляції квартальних фінансових звітів, що базуватимуться на непідданій аудиту чи обмеженій перевірці квартальній фінансовій звітності ("Фінансові Звіти"), та підготовки меморандумів, що міститимуть аналіз та коментарі до фінансової звітності за квартали 2006 року. "Ернст енд Янг " виконає процедури, які включають, але не обмежуються наступним:

1.1.   "Ernst & Young" shall provide professional services in compilation of the quarterly financial reports that will be based on the unaudited and unreviewed quarterly financial information ("Financial Reports"), and preparation of memorandums on management discussions and analysis for the quarters of 2006. "Ernst & Young" shall perform the procedures including, but not limited to:

- надання допомоги у підготовці меморандума, що міститимуть аналіз та коментарі до фінансової звітності за квартали 2006 року;

- надання допомоги у підготовці звіту про рух грошових коштів (якщо буде необхідно Замовнику);

- надання допомоги Замовнику у компіляції Квартальних Фінансових Звітів.

1.2. Результат надання послуг відповідно до п. 1.1. цього Договору ("Послуги") має включати меморандуми, що міститимуть аналіз та коментарі до фінансової звітності у форматі, який відповідає змісту документа, та Квартальні Фінансові Звіти у форматі, визначеному Клієнтом, за період трьох місяців, що закінчились 31 березня 2006 року, шести місяців, що закінчилися 30 червня 2006 року, дев'яти місяців, що закінчились 30 вересня 2006 року та за рік, що закінчився 31 грудня 2006 року (надалі разом визначаються як "Результати Послуг").

## II.  Умови надання Послуг

2.1. Замовник не буде перекладати або залучати професійного перекладача для перекладу меморандума, що містить аналіз та коментарі до фінансової звітності, та Квартальні Фінансові Звіти з мови, якою будуть представлені зазначені документи, на будь-яку іншу мову без консультації з "Ернст енд Янг" щодо точності перекладу.

2.2. Робочі документи, підготовлені Виконавцем у зв'язку з наданням Послуг, є власністю Виконавця, носять конфіденційний характер та залишаються у власності Виконавця відповідно до його внутрішніх процедур.

2.3. Сторони мають право вести листування та пересилати документацію електронною поштою через мережу Інтернет, факсом або поштою. Жодна з Сторін не несе відповідальності за будь-який збиток, шкоду, видатки або незручність, що виникли в результаті втрати, затримки, перехоплення або викривлення того, що передається електронною поштою через мережу Інтернет, факсом або поштою, через причини, що знаходяться поза розумним контролем відповідної Сторони.

## III.  Права та обов'язки Сторін

3.1. Виконавець та його представники мають право:

- Assistance in the preparation of the management discussions and analysis reports for the quarters of the year 2006;

- Assistance in the preparation of the cash flow statements (if required by the Client);

- Assistance to the Client in the compilation of the Quarterly Financial Reports.

1.2. Deliverables from the provision of the services stated in Section 1.1. of this Agreement (the "Services") will include management discussion and analysis report in a format relevant for such a document, and Quarterly Financial Reports in a format defined by the Client for the three month period ended March 31, 2006, six month period ended June 30, 2006, nine month period ended September 30, 2006 and year ended December 31, 2006 (jointly referred to as "Deliverables").

## II.  Terms and Conditions of the Services

2.1. The Client will not translate, or engage a professional translator to translate the management discussion and analysis report and Quarterly Financial Reports from the language they will be presented in into any other language without consulting with "Ernst & Young" as to the accuracy of the translation.

2.2. The working papers prepared in conjunction with the Services are the property of the Contractor, constitute confidential information and will be retained by the Contractor in accordance with his policies and procedures.

2.3. The Parties may correspond or convey documentation and information via Internet e-mail, fax or mail. Neither Party shall be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail, fax, or mail due to any reason beyond the relevant Party's reasonable control.

## III.  Rights and Obligations of the Parties

3.1. The Contractor and its representatives will have the right:

(а) отримувати роз'яснення з питань, що можуть виникнути в ході надання Послуг,

(б) отримувати та перевіряти документи, які включають але не обмежуються, зокрема, фінансові облікові реєстри та пов'язану з ними інформацію,

(в) в разі необхідності Виконавець може залучити до надання Послуг або найняти будь-якого співробітника, афілійовану або незалежну особу, яку Виконавець вважатиме необхідною для надання Послуг, без проведення додаткового узгодження із Замовником. В такому випадку Виконавець несе відповідальність за дії таких осіб як за свої власні.

3.2.    Виконавець зобов'язаний:

(а) належним чином надати Послуги Замовнику за умови надання Замовником протягом 45 днів після закінчення відповідного кварталу, документів та пояснень, які вказано у пунктах 3.1.(а) та 3.1.(б) вище

(б) надати Послуги у встановлені строки, на професійному рівні і у діловий спосіб, з дотриманням відповідних професійних і етичних стандартів, умов та положень цього Договору;

3.3.    Замовник зобов'язується:

(а) своєчасно сприяти Виконавцю у реалізації його прав та виконанні його зобов'язань, викладених в статтях 3.1. та 3.2. цього Договору;

(б) своєчасно надати всю інформацію, включаючи документи та вичерпні роз'яснення, що обґрунтовано були замовлені Виконавцем у зв'язку з наданням Послуг. Надана інформація повинна бути повною, не застарілою, точною та достовірною у всіх суттєвих аспектах;

(в) забезпечити працівників Виконавця належним приміщенням, що є необхідним для належного надання Послуг;

(г) здійснювати оплату послуг Виконавця у порядку, встановленому у Розділі VI цього Договору.

---

(a)    to obtain explanations on issues which could arise during the rendering of Services,

(b)    to obtain and review the documents which include, but are not limited to, financial records and related data,

*affiliate ?*

(c)    as appropriate, the Contractor may engage or employ for the Services any employee, affiliate or independent person or entity it deems necessary to undertake and complete the Services, without obtaining additional approval of the Client. In this case the Contractor is liable for the activities of such employee, affiliate or independent person or entity, as if they were in all respects its own activities.

3.2.    The Contractor shall be obliged:

(a)    the Contractor shall duly provide the Services to the Client under the condition of provision by the Client within 45 day after the end of the respective quarter of requested documentation and explanations as specified above in Sections 3.1(a) and 3.1(b).

(b) to provide the Services within the time-frame set forth hereunder in a professional and businesslike manner, in accordance with applicable professional and ethical standards and in compliance with the terms and conditions of this Agreement;

3.3.    The Client shall be obliged:

(a) to assist the Contractor in exercise of the rights and performing its obligations which are set in Sections 3.1. and 3.2. of this Agreement on a timely basis;

(b)    to provide timely any and all information, including documentation and comprehensive explanations, reasonably requested by the Contractor in connection with the Services. The information so provided shall be complete, up to date, true and accurate in all material respects;

(c)    to furnish the Contractor's personnel with a suitable office, as needed for the successful rendering of the Services;

(d)    to pay for Contractor's Services according to the procedure prescribed in Article VI of this Agreement;

3

IV.    Відповідальність Сторін

4.1.    Відповідальність за ведення бухгалтерського обліку та повне і достовірне представлення як української законодавчо встановленої фінансової звітності, так і Фінансової Звітності відповідно до МСФЗ, покладається на Замовника. Це включає належне ведення облікових реєстрів, забезпечення відповідності операцій, обліку та звітності вимогам українського законодавства, встановлення та підтримку системи внутрішнього контролю, послідовне застосування облікової політики та забезпечення збереження майна Замовника.

4.2.    Попередження та вияв порушень і шахрайства є обов'язком Замовника.

4.3.    Виконавець несе відповідальність за своєчасність надання Результатів Послуг. Проте, Виконавець звільняється від такої відповідальності в тій мірі, в якій несвоєчасне надання Результатів Послуг було спричинене несвоєчасним наданням інформації з боку Замовника.

V.    Строки надання Послуг

5.1.    Виконавець розпочинає надання Послуг відразу після підписання цього Договору.

5.2.    "Ернст енд Янг" планує надання відповідних меморандумів, що містить аналіз та коментарі до фінансової звітності, та Квартальні Фінансові Звіти у терміни до 30 травня 2006 року, 30 серпня 2006 року, 30 листопада 2006 року та 30 квітня 2007 року. У випадку виникнення затримок у наданні Виконавцем Результатів Послуг у зв'язку з затримкою Замовника у наданні необхідної інформації, строки надання Результатів Послуг продовжуються відповідно на строк існування таких затримок з боку Замовника.

5.3.    Можливість дотримання цього графіка "Ернст енд Янг" залежатиме від повноти, точності та своєчасності надання інформації Замовником та загального стану бухгалтерських записів. Будь-які зміни до встановленого графіка обговорюватимуться Сторонами та не впливатимуть на відповідальність Сторін згідно Розділу VI цього Договору.

IV.    Responsibilities of the Parties

4.1.    The responsibility for maintaining accounting records and for completion and fair presentation of both IFRS and Ukrainian statutory financial statements shall rest with the Client. This includes the diligent maintenance of accounting ledgers, securing compliance of operations and accounting and reporting practices with the relevant Ukrainian legislation, establishing and maintaining an internal control system, consistent application of the accounting policies and safeguarding the Client's assets.

4.2.    The responsibility for the prevention and detection of irregularities and fraud rests with the Client.

4.3.    The Contractor shall be liable for timeliness of providing the Deliverables. However, the Contrator shall be free of such responsibility to the extent that untimely provision of Deliverables is caused by delays in provision of information by the Client.

V.    The Service Timetable

5.1.    Contractor shall start rendering of Services after signing of this Agreement.

5.2.    "Ernst & Young" anticipates being able to provide the corresponding drafts of the management discussion and analysis report and Quarterly Financial Reports by May 30, 2006, August 30, 2006, November 30, 2006 and April 30, 2007. In case of delays in providing the Deliverables because of the Client's fault to submit necessary information in time, the terms of submitting the Deliverables shall be extended for the term of delays from the Client's side.

5.3.    "Ernst & Young"'s ability to adhere to this timetable will be dependent upon the completeness, accuracy and timeliness of information provided by the Client along with the general conditions of the accounting records. Any revisions to aforementioned timing will be verbally discussed between the Parties, and shall not influence the Parties' responsibility under Article VI of this Agreement.

11 2006 13:00 FAX 380444941999          Ilyasnev & Partners          @005

5.4.     Датою завершення надання Послуг за цим Договором є дата підписання акту здачі-приймання Послуг ("Акт"). Складений і підписаний Виконавцем Акт у 2 (двох) примірниках передається разом з відповідними матеріалами Замовникові, який має прийняти Послуги шляхом підписання Акту та повернення 1 (одного) примірника підписаного Акту Виконавцю протягом 5 робочих днів з дати отримання Акту. Акт, який підписаний обома Сторонами, має засвідчувати, що Послуги надані у повному обсязі та Замовник не має зауважень до Послуг.

5.5.     Якщо Замовник не приймає Послуги та не має наміру підписувати Акт протягом 15 (п'ятнадцяти) робочих днів з дати отримання Акту, він має надати Виконавцю 2 (два) примірники листа-претензії ("Претензія"), в якому мають бути вказані зауваження Замовника, послуги, необхідні для задоволення таких зауважень, та строки надання таких послуг. Якщо Виконавець погодиться з такою Претензією, він має підписати та повернути 1 (один) примірник Претензії Замовнику.

5.6.     Після завершення надання послуг за Претензією, Сторони мають підписати акт здачі-приймання Послуг як наведено вище.

5.4.     The date of completion of rendering the Services under this Agreement shall be the date of signing a transfer acceptance act (the "Act"). The Act drawn up and signed by the Contractor in 2 (two) copies shall be submitted together with the relevant materials to the Client who shall accept the Services by signing the Act and returning 1 (one) copy of the signed Act to the Contractor within 5 working days from the date of its receipt. The Act signed by both Parties shall certify that the Services under this Agreement have been rendered in full, and the Client does not have any claims with respect to the Services.

5.5.     If the Client does not accept the Services and does not intend to sign the Act then, within 15 (fifteen) working days from a receipt of the Act, he shall provide the Contractor with 2 (two) copies of the claim act (the "Claim Act") stating his claims, required Services to cure the Client's claims and deadlines for their rendering. If the Contractor agrees with the Claim Act, he will return 1 (one) signed copy of the Claim Act to the Client.

5.6.     Upon the completion of rendering the Services under the Claim Act, the Parties shall sign the transfer-acceptance act as specified hereof.

## VI. Оплата Послуг

6.1. Загальна сума Винагороди Виконавця за Послуги ("Винагорода") розраховується на основі фактичних трудовитрат та посадового рівня відповідних працівників Виконавця, які будуть залучені до надання Послуг. Вартість Послуг, зазначених у статті 1.1., обчислюватиметься ґрунтуючись на стандартних погодинних розцінках "Ернст енд Янг" чинних на дату надання Послуг із застосуванням коефіцієнту 0.7 ("Базова Винагорода").

Погодинні ставки станом на дату даного Договору становлять:

Партнер – 2 525 грн.

Менеджер – 1 591 грн.

Старший аудитор – 1 010 грн.

Старший асистент – 555,5 грн.

Асистент – 378,75 грн.

Будь-які зміни до погодинних ставок Виконавця підлятють узгодженню Сторонами шляхом підписання додаткової угоди до даного Договору.

6.2. Сума Базової Винагороди не враховує податку на додану вартість ("ПДВ"). Суми ПДВ, як того вимагає чинне законодавство, будуть включатись до рахунків Виконавця за ставкою, чинною на момент виставлення рахунків.

6.3. Додатково до Базової Винагороди, Замовник має відшкодовувати додаткові документально підтверджені витрати понесені Виконавцем у процесі надання Послуг. Такі витрати включають витрати на зв'язок та будь-які інші витрати, пов'язані із наданням послуг та узгоджуються Сторонами шляхом підписання відповідної додаткової угоди до цього Договору.

## VII. Порядок розрахунків

7.1. Рахунки за професійні послуги, які надаватимуться в рамках цього Договору, будуть виставлятись "Ернст енд Янг" після того, як кожен із Результатів Послуг було надано Клієнту у відповідності до графіку надання Послуг, як визначено у п. 5.2. та прийнято Клієнтом відповідно до п. 5.4. цього Договору.

## VI. Payment of the Services

6.1. The total amount of the compensation due to the Contractor for the Services (the "Fee") shall be estimated on the basis of actual labour input and the respective grade of the relevant employees of the Contractor performing the Services hereunder. The professional fee for the procedures described in the Section 1.1., will be based on "Ernst & Young" regular hourly rates effective at the date of rendering the Services after applying 0.7 coefficient, (the "Base Fee").

Hourly rates effective as at the date of this Agreement are as follows:

Partner – UAH 2,525

Manager – UAH 1,591

Senior auditor – UAH 1,010

Advanced assistant – UAH 555.5

Assistant – UAH 378.75

Changes to the hourly rates of the Contractor shall be agreed by the Parties by signing addendum to this Agreement.

6.2. The amount of the Base Fee does not include Value Added Tax ("VAT"). In accordance with Ukrainian legislation, the amount of VAT shall be added to the Base Fee at the rate effective at the date of issuing of the invoice.

6.3. In addition to the Base Fee, the Client shall be billed for documentary proved out-of-pocket expenses incurred in connection with performing Services for the Client and reimbursable to the Contractor. Such expenses include telecommunication expenses (such as cost of business calls by the mobile phones of the Client's personnel) and any other expenses directly related to the Services and shall be agreed by signing of the corresponding additional agreement to this Agreement.

## VII. Order of Settlement

7.1. Fee under this Agreement will be billed by "Ernst & Young" after each of the Deliverables are presented to Client in compliance with the service timetable set in Section 5.2. and accepted by the Client according to the Section 5.4. hereto.

7.2. Всі рахунки за цим Договором мають сплачуватися протягом 5 (п'яти) банківських днів з дати отримання рахунку.

7.3. Виконавець має право призупинити надання Послуг частково або повністю, в разі несплати Замовником раніше виставлених рахунків.

**VIII. Обставини непереборної сили**

8.1. Для цілей цього Договору "Обставини непереборної сили" означають будь-які обставини, в яких знаходиться одна із Сторін, та які не можуть бути зупинені чи подолані цією Стороною не дивлячись на зусилля такої Сторони. Такі обставини включають, зокрема, війну, тероризм, повстання, громадські заворушення, блискавки, пожежі, вибухи, бурі, паводки, інші стихійні лиха та природні катаклізми, страйки, локаути інші трудові конфлікти або прийняття загальнодержавними або місцевими органами влади рішень, які роблять неможливим виконання Сторонами умов цього Договору.

8.2. Якщо будь-яка із Сторін не може виконати будь-які зобов'язання за цим Договором через Обставини непереборної сили, така Сторона має бути звільнена від виконання цього Договору на термін дії Обставини непереборної сили за умови, що така Сторона вчасно письмово повідомить іншу Сторону про наявність Обставин непереборної сили. Факт настання Обставин непереборної сили має бути підтверджено Торгово-Промисловою Палатою України. Якщо Обставини непереборної сили продовжуються більше 3 (трьох) місяців, будь-яка із Сторін може розірвати цей Договір шляхом надіслання письмового повідомлення іншій Стороні.

**IX. Конфіденційність**

9.1. У відношенні цього Договору та будь-якої інформації, яка надається за цим Договором та розглядається Стороною, яка надає таку інформацію, яка конфіденційна, Сторона, яка отримує таку інформацію, зобов'язується:

(а) зберігати конфіденційність інформації належним чином та у відповідності до професійних норм;

(б) використовувати конфіденційну Інформацію лише для виконання зобов'язань за цим Договором;

(в) відтворювати конфіденційну інформацію лише якщо це необхідно для виконання своїх зобов'язань за цим Договором.

7.2. All the invoices under the Agreement shall be paid within 5 (five) banking days following receipt of the invoice.

7.3. The Contractor shall have the right to suspend rendering any or all of the Services should the Client fail to pay in full for prior invoices submitted to the Client.

**VIII. Event of Force Majeure**

8.1. For purposes of this Agreement, "Event of Force Majeure" means any event or events which the Party asserting the same is not, despite all reasonable efforts, able to prevent or overcome including, without limitation, war, terrorism, riots, civil strife, lightning, fires, explosions, storms, floods, other acts of God or nature, strikes, lockouts, other labour disputes, or acts of national or local authorities preventing the Parties from fulfilling their obligations hereto.

8.2. If either Party is prevented from performing any of its obligations under this Agreement by reason of an Event of Force Majeure, such Party shall be excused from performance under this Agreement for so long as the Event of Force Majeure prevents its performance; provided, however, that such Party promptly notifies in writing the other Party of the existence of an Event of Force Majeure. The fact of the Event of Force Majeure should be confirmed by the Chamber of Commerce and Trade of Ukraine. Where the Force Majeure lasts more than 3 (three) months, either Party may terminate the Agreement by sending a written notification to the other Party.

**IX. Confidentiality**

9.1. With respect to this Agreement and any information supplied in connection with this Agreement and designated by the disclosing Party as confidential, the recipient Party agrees to:

(a) protect the confidential information in a reasonable and appropriate manner and in accordance with applicable professional standards;

(b) use confidential information only to perform its obligations under this Agreement;

(c) reproduce confidential information only as required to perform its obligations under this Agreement.

7

9.2. Цей Розділ не має застосовуватися до інформації, яка:

(а) є загальновідомою;

(б) вже відома одній Стороні на не конфіденційній основі з джерел інших аніж інша Сторона;

(а) розкривається Стороною третім особам без обмежень;

(г) розроблені однією із Сторін без використання інформації від іншої Сторони, або інформації, яка носить конфіденційний характер;

(д) розкривається у відповідності до вимог законодавства.

**Х.    Дія та розірвання Договору**

10.1.    Цей Договір набуває чинності з дати його підписання обома Сторонами та діє до «_01_» _червня_ 2007 року.

10.2.    Виконавець може призупинити надання Послуг Замовнику та/або розірвати цей Договір за згодою Замовника або через невиконання Замовником своїх зобов'язань (включаючи оплату Послуг) за цим Договором, відмову Замовника від співпраці з Виконавцем, або через будь-які інші причини, які, за думкою Виконавця, можуть зробити подальше надання Послуг незаконним, неетичним або негативно вплинути на професійну репутацію Виконавця, попередивши про це Замовника письмово не менше ніж за 10 днів до такого розірвання.

Замовник має право призупинити/розірвати цей Договір у випадку порушення Виконавцем умов Договору, попередивши його про це письмово не менше ніж за 10 робочих днів до такого розірвання.

10.3. Вказане вище призупинення/розірвання Договору має бути узгоджено Сторонами шляхом складання двостороннього письмово акту, який має бути основою для розірвання Договору. Однак, таке розірвання не звільняє Замовника від зобов'язання сплатити Винагороду за Послуги, що вже надані. Така Винагорода визначається у двосторонньому письмовому акті та має бути сплачена Замовником протягом 10 робочих днів з дати підписання такого акту.

10.4. Сума винагороди, яка має бути сплачена Замовником у відповідності до статті 10.3. цього Договору, має відповідати обсягу Послуг, фактично наданих до дати розірвання Договору.

9.2    This Section shall not apply to information which is:

(a)    generally available to the public;

(b)    available or becomes available to one Party on a non-confidential basis from a source other than the other Party;

(c)    disclosed by the Party to a third party without restriction;

(d)    is developed by one Party independent of any information furnished by the other Party, or of any information furnished on a confidential basis;

(e)    disclosed pursuant to legal requirement.

**X.    Term and Termination**

10.1.    This Agreement becomes effective from the date of signing by both Parties and shall stay in force till "_01_" _June_ 2007.

10.2.    The Contractor may suspend provision of the Services to the Client, and/or terminate this Agreement, with the Client's consent or for a breach by the Client of its obligations (including payment obligation) under the Agreement, the refusal of the Client to cooperate with the Contractor or any other circumstance that would, in the reasonable judgment of the Contractor, make continuing rendering the Services unlawful, unethical or would adversely impact the professional reputation of the Contractor, giving not less than 10 days notice about it to the Client.

The Client may terminate or suspend this Agreement in case of the breach of the Agreement by Contractor, giving him not less than 10 days written notice about this.

10.3. The above suspension/termination and settlement procedures shall be agreed upon by the Parties in a written bilateral act, which shall be the basis to terminate the Agreement. Such termination shall not, however, relieve the Client of its obligations to pay the Fee due for the Services rendered. Such fees shall be specified in a written bilateral act and shall be paid by the Client in 10 working days from the date of such act.

10.4.    The amount of fee billable to the Client under Section 10.3. of the Agreement shall correspond to scope of the Services actually rendered up to the date of termination of the Agreement.

8

XI.    Регулююче законодавство та вирішення спорів

11.1.  Чинність, тлумачення та виконання цього Договору регулюється чинним законодавством України.

11.2.  Всі спори та розбіжності, які виникають або можуть виникнути з цього Договору чи у зв'язку з ним, повинні вирішуватись Сторонами шляхом переговорів.  У разі неможливості дійти згоди при вирішенні спору чи розбіжностей, Сторони повинні звернутись до компетентного господарського суду у порядку, встановленому чинним законодавством України.

XII.    Заключні положення

12.1.  Всі зміни та доповнення до цього Договору будуть дійсними лише у випадку, коли вони будуть складені у письмовій формі та підписані уповноваженими особами Сторін.

12.2.  Визнання будь-якого з положень цього Договору недійсним або таким, що не відповідає чинному законодавству, не тягне за собою визнання інших положень цього Договору недійсними або ж такими, що не відповідають чинному законодавству.  Таке положення буде вилучено та замінено правомірним у порядку, передбаченому статтею 12.1. цього Договору.

12.3.  У цьому Договорі двома мовами викладено ідентичні умови.  У разі наявності розбіжностей в текстах, текст українською мовою матиме переважну силу.

XI.    Governing Law and Dispute Settlement

11.1.  Valid laws of Ukraine shall govern the validity, interpretation and performance of this Agreement.

11.2.  All disputes and disagreements, which arise or may arise from this Agreement or in connection therewith shall be settled by the Parties through negotiations.  If the Parties are unable to resolve their dispute or disagreement, the Parties shall submit such dispute or disagreement to the competent Ukrainian court.

XII.    Final Provisions

12.1.  All amendments and modifications to this Agreement shall be valid only if they are made in writing and signed by authorized representatives of the Parties.

12.2.  If any provision of this Agreement is found to be illegal, unenforceable or otherwise invalid, it does not imply that other provisions of this Agreement are not legal or unenforceable.  That provision will be deemed to be deleted and will be substituted by a valid one in the way prescribed by Section 12.1. of this Agreement.

12.3.  This Agreement is compiled in two languages in two counterparts in which identical terms are stipulated.  In the event of a difference between the texts, the Ukrainian language version shall prevail.

9

24/11 2006 15:03 FAX 380444941990    Ilyashev & Partners    ☐010

| | |
|---|---|
| 03110, м.Київ, Червонозоряний пр., 51 | 51, Chervonozorianyi avenue, Kyiv 03110 |

Назва банку   Філія АКІБ «УкрСиббанк»    Bank Name    UKRSIBBANK

«Київське регіональне управління»    Kyiv main Regional Department

Bank Account Number 26007 0 11250 098

Номер банківського рахунку
26007 0 11250 098

МФО 300 733    MFO   300 733

Код ЄДРПОУ 21673832    Code EDRPOU    21673832

Індивідуальний          податковий          номер    Individual
216738326059    taxpayer's number    216738326059

Свідоцтво платника ПДВ № 36027360    Certificate code of VAT payer  No. 36027360

Тріонд Мода    Triond Moda
Віце-президент    Vice-president

**ВІД ІМЕНІ ТОВ "ЕРНСТ ЕНД ЯНГ":**    **ON BEHALF OF ERNST & YOUNG LLC:**

01001, м. Київ, вул. Хрещатик, 19А    19А, Khreshchatyk Street, Kyiv 01001

Назва банку   Сітібанк (Україна)    Bank name    Citibank (Ukraine)

Номер банківського

рахунку    2600 5 200311 019    Bank account number   2600 5 200311 019

МФО  300584    MFO:  300584

Код ЄДРПОУ 33306958    Code EDRPOU    33306958

Індивідуальний    Individual
податковий номер    333069526597    taxpayer's number    333069526597

Свідоцтво № 39076492    Certificate code

Олексій Кредісов    Alexei Kredisov
Генеральний Директор    General Director

10