IN THE MATTER OF AN ARBITRATION UNDER
THE UNCITRAL RULES BETWEEN:

TELENOR MOBILE COMMUNICATIONS AS,

                Claimant,

      -and-

STORM LLC,

                Respondent,

## STATEMENT OF OLEKSIY DIDKOVSKIY

I, OLEKSIY DIDKOVSKIY, declare the following to be true:

1. I have been asked to provide my views regarding the following two questions involving Ukrainian law raised by the Panel in its Interim Order Directing Further Briefing dated February 12, 2007 (the "Order"). My responses are set out below.

2. I am a member of the bar of Ukraine and a founding partner of Shevchenko Didkovskiy & Partners law firm, located in Kyiv, Ukraine. I have practiced for over 12 years in Ukraine. My practice includes telecommunications law, cable communications, antitrust and trade regulation, loan and financial transactions, corporate finance, and foreign investment matters. I also serve as Ukrainian counsel to Claimant Telenor Mobile Communications AS ("Telenor Mobile").

**Question 1**

**If Ukrainian law must be applied by this Tribunal under the assumptions set forth in paragraphs 1 and 2 of the Order, does Ukrainian law provide that matters of corporate governance in a corporation's constituent documents cannot be modified by private contract?**

    A.    <u>Freedom of Contract Under Ukrainian Law</u>

3. Ukrainian law does <u>not</u> provide that matters of corporate governance in a Ukrainian company's constituent documents cannot be modified by private contract.

4. The principle of the freedom of contract is one of the fundamental principles of Ukrainian civil law, and, as such, it permits parties to enter into a contract and determine its terms and conditions at their discretion, regardless of whether the subject matter of such contract is specifically envisaged by Ukrainian law. However, such a contract must be consistent with the other fundamental principles of Ukrainian civil law and must conform to its imperative rules. Accordingly, a company's shareholders may agree on the issues of the company's corporate governance and may embody that agreement in a private contract.

5. Under Article 6 (1) of the Civil Code of Ukraine No. 435-IV, dated January 16, 2003, as amended (the "Civil Code"), parties have the right to enter into a contract that is not specifically envisaged by Ukrainian legislation, so long as such a contract is consistent with the fundamental principles of Ukrainian civil law. Such fundamental principles include, in particular, a prohibition on the

deprivation of ownership (except for cases envisaged by the Ukrainian Constitution and law), fairness, good faith and reasonableness.[1]  Freedom of contract is itself a fundamental principle of Ukrainian civil law.

6.  Pursuant to the principle of the freedom of contract, as embodied in Article 627 of the Civil Code, parties are free to execute a contract, choose the other party to the contract, and settle on terms and conditions of a contract, after taking into account the requirements of the Civil Code, other civil legislation, business custom, and requirements of reasonableness and fairness.  Furthermore, Article 6 (3) of the Civil Code provides that parties to a contract have the right to depart from the provisions of civil law acts and regulate their relations at their own discretion.

### B. Freedom To Designate Non-Ukrainian Law to Govern Private Contracts

7.  There is no civil legislation, business custom or requirement of reasonableness or fairness generally recognized by the courts of Ukraine, which would require the parties to a shareholders agreement concerning a Ukrainian company to choose the law of Ukraine to govern such a shareholders agreement, or which would otherwise require the mandatory application of Ukrainian law to such a shareholders agreement.  Where there is at least one foreign party to a contract, the parties may choose non-Ukrainian law to govern the contract, except for cases where Ukrainian law expressly prohibits a choice of foreign law.[2]  Accordingly, there is no such express prohibition in Ukrainian law applicable here that would prevent Telenor Mobile and Storm LLC ("Storm") from choosing New York law to govern the Shareholders Agreement dated January 30, 2004 (the "Shareholders Agreement") between and among Telenor Mobile, Storm and Closed Joint Stock Company "Kyivstar G.S.M." ("Kyivstar").

8.  Specifically, Article 1 (4) of the Law of Ukraine "On Business Entities" No. 1576-XII, dated September 19, 1991, as amended (the "Business Entities Law"), a copy of which is attached

---

[1] See Art. 3 of the Civil Code.

[2] See Arts. 5, 10 & 43 of the Law of Ukraine "On International Private Law" No. 2709-IV, dated June 23, 2005, effective of September 1, 2005.  The law in effect prior to September 1, 2005 also permitted parties to a cross-border contract (referred to as a "foreign economic contract") to choose the law of a country other than Ukraine to govern their rights and obligations under such contract. See Art. 6 (9) of the Law of Ukraine "On Foreign Economic Activity" No. 959-XII, dated April 16, 1991, amended as of November 4, 2004.

2

hereto as Exhibit A, and Article 81 (3) of the Civil Code, a copy of which is attached hereto as Exhibit B (and which was also referred to in the Legal Opinion of Peter Magnus submitted by the Respondent), does <u>not</u> require parties to agreements concerning the corporate governance of Ukrainian companies to choose Ukrainian law to govern such agreements, nor do such statutes require the mandatory application of Ukrainian law.

9. Article 1 (4) of the Business Entities Law permits business entities to engage in any entrepreneurial activity that does not contradict Ukrainian law. Article 81 (3) of the Civil Code provides that the Civil Code determines the procedure for establishing Ukrainian companies, the relevant organizational and legal forms, and the legal status of such entities. Neither statute prohibits parties from entering into a separate shareholders agreement or from making that agreement subject to foreign law.

### C. Shareholders Agreements in Ukraine

10. Ukrainian law requires that some, but not all, matters relating to a Ukrainian company's corporate governance be included in the corporate charter. These matters are specified in the Civil Code, the Commercial Code of Ukraine and the Business Entities Law and include, *inter alia*, the composition of company's founders and shareholders, the procedure for joining the company and withdrawing from it, rights and obligations of shareholders, composition of the company's governing bodies and their decision-making procedures, and the amount of the company's authorized capital and procedure for its formation.

11. However, there are other rights and obligations of shareholders that are appropriately and commonly reduced to a written agreement, but not set forth in the company's charter. There is no requirement in Ukrainian law that such a shareholders agreement be registered with Ukrainian authorities, or that any of those obligations be set forth in the corporate charter.

12. Attached hereto as Annex C is a publication that appears on the website of the Ukrainian Embassy in the Netherlands, entitled "Registration of a Representative Office of a Foreign Company", and describes the difference between Ukrainian corporate charters and shareholders

3

agreements. In Section II(B) of that document entitled "Drafting Shareholders Agreement and Company Charter," the following statement appears:

> The primary purpose of the charter is to present the rights and obligations of the company and its founders and/or members. Much like by-laws of a U.S. corporation, the Ukrainian company's charter contains the goals, rights and activities of the company, its structure and administrative organs, internal procedures and the structure of the initial capitalization and contributions.
>
> The shareholders agreement, on the other hand, secures the rights and obligations of the shareholders and/or founders amongst each other. A detailed description of the company's structure is not necessary. <u>What is important, however, is a detailed agreement that outlines issues vital to the shareholders; namely, divisions of profits, ownership rights, transferability of shares and assignability, confidentiality, division of assets upon liquidation and of course, dispute resolution and arbitration procedures.</u>[3]

13. Moreover, the right of shareholders to enter into shareholders agreements addressing matters of corporate governance is bolstered by the doctrine of business custom. This doctrine is set forth by Article 7 of the Civil Code and provides that "civil relations may be regulated by a custom, in particular, the business custom." Further, "the custom is a rule of behavior that is not established by acts of civil legislation, but is time-honored in a certain sphere of civil relations."

14. In my experience, shareholders agreements addressing corporate governance issues are regularly made and performed by any number of Ukrainian companies with foreign shareholders, particularly those involving large investment projects. It is my opinion, based on my years of legal work in Ukraine, that shareholders agreements, often governed by foreign law, are customary in Ukraine, and are generally regarded as valid and appropriate.

---

[3] The annexed copy was printed on March 13, 2007 from the website of the Ukrainian Embassy in the Netherlands.

4

**Question 2**

**Are there other alternatives for accomplishing the same objectives as those articulated in the December 22, 2005 Order of the Higher Commercial Court of Ukraine (the "December 22 Order"), apart from the award set out in Paragraph E of the Proposed Relief in Claimant's Proposed Findings and Conclusions?**

15. While there may be alternatives for accomplishing the same objectives as those articulated in the December 22 Order, while at the same time maintaining the parties' basic agreement on governance of Kyivstar, other than the proposed award set out in Paragraph E of the Claimant's Proposed Findings of Fact and Conclusions of Law dated January 19, 2007, none would be as simple or effective.

16. Partly as a result of the litigation initiated by Storm, the Charter of Kyivstar (the "Charter") currently does not contain all the information required to be included in the charter of a joint stock company under Ukrainian law – specifically, information concerning Kyivstar's shareholding structure and the composition of its governing bodies, including the number of directors who will comprise its board (the "Board").[4] The December 22 Order requires Kyivstar's shareholders to bring the Charter into compliance with applicable Ukrainian law; that order does not set out any particular resolution, nor is one specified by Ukrainian law.

17. The only practical way for the shareholders of Kyivstar to comply with the December 22 Order and, at the same time, honor their contractual undertakings in the Shareholders Agreement, is to vote to amend the Charter at a General Meeting of Shareholders of Kyivstar (the "General Meeting"). Under Ukrainian law[5] and Article 8.2 of the Charter, amendment of the Charter is within the exclusive competence of the General Meeting. Under Ukrainian law[6] and Article 8.4 of the Charter, the General Meeting is deemed duly convened if shareholders and/or shareholders' respective proxies holding more than 60% of the voting shares are participating therein in accordance with the Charter. Furthermore, under Ukrainian law[7] and Article 8.5 of the Charter, resolutions on amendment of the Charter must be approved by an affirmative vote of 75% of the shareholders participating in the

---

[4] See Art. 82 (2) of the Commercial Code of Ukraine No. 436-IV, dated January 16, 2003, as amended; see also Art. 154 (2) of the Civil Code; Article 4 (2) of the Business Entities Law.
[5] See Art. 159 (2) of the Civil Code.
[6] See Art. 41 (8) of the Business Entities Law.
[7] See Art. 159 (4) of the Civil Code.

5

General Meeting. By refusing to attend the General Meeting, Storm has frustrated the ability of Kyivstar to make the necessary amendments to the Charter.

18. Specifically, the Charter needs to be amended in the following respects:

(a) to provide for Board composition (in particular that the Board shall be established from among Kyivstar's shareholders), and to specify the number of directors;[8]

(b) to reflect that Telenor Ukraina I AS, Telenor Ukraina II AS, Telenor Ukraina III AS and Telenor Ukraina IV AS (and the three affiliates of Storm contemplated by Paragraph E of the Proposed Relief in Claimant's Proposed Findings of Fact and Conclusions of Law) have become shareholders of Kyivstar; and

(c) to remove the provision of Article 10.3 of the Charter that has been invalidated by the HCC.

19. Telenor Mobile holds approximately 56.5% of the voting shares in Kyivstar, while Storm holds approximately 43.5% of the voting shares in Kyivstar. In light of the foregoing, Telenor Mobile cannot alone secure compliance with the December 22 Order and corresponding amendment of the Charter, without Storm participating in, and voting for such amendment at, the General Meeting.

20. By its October 20, 2006 Decree, the HCC clarified that the obligation of the shareholders to bring Article 9.1 of the Charter into conformity with Ukrainian laws meant the obligation of shareholders to elect to the supervisory board only shareholders of Kyivstar. Accordingly, the amendments proposed by Telenor Mobile are fully consistent with both the December 22 Order, which requires that only shareholders be elected as Board members, and the five–four Board arrangement set forth in Section 2.01(b) of the Shareholders Agreement. So far as I am aware, the only proposal made by Storm, which calls for Telenor Mobile and Storm to nominate three directors each, and for there to be three "independent" non-shareholder directors, would not comply with Ukrainian law or the Shareholders Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Oleksiy Didkovskiy

---

[8] The December 22 Order provides that only shareholders may be elected as chairman and members of the supervisory board.