74KDSTOA.txt

```
 8    and somebody asked them to do something in December and it
 9    takes them a couple of months to get around to writing a
10    letter.  But be that as it may, I think I am ready to rule on a
11    few things.
12              First, the application for an adjudication of contempt
13    is denied.  I think I have already made clear what I think
14    about the Ernst & Young matter.  I don't think that those
15    actions violate the letter or, except in a very attenuated
16    sense, the spirit of the Court's Order.  What the Order
17    enjoined was any effort to hinder or obstruct the arbitration,
18    not, that is, not an anti-suit injunction that prohibits any
19    party here or anybody else from undertaking other litigations.
20    It is directed at efforts to interfere with the arbitration.
21              As to the allegation that Alpren, Altimo or Storm took
22    action after the Court's order that would directly violate that
23    order by taking steps to enforce the anti-arbitration orders of
24    the Ukrainian court, I find that allegation unproven.  There is
25    no affirmative evidence that anyone took such an enforcement
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    51

74kdstoa

```
 1    step after the Court's Order -- and by "anyone," I mean the
 2    counterclaim defendants and relief defendants.  That any of
 3    those parties requested the Ukrainian authorities to take any
 4    enforcement steps after the Court's injunction was entered,
 5    there is nothing affirmative in the record evidencing such a
 6    request.  It is apparently common ground, as Telenor's expert
 7    says, that such enforcement actions are not taken absent a
 8    request, at least in the first instance.
 9              On the other hand, the record does contain evidence
10    that a request was made at an earlier time, before the Court's
11    injunction, and that could account for the actions that were
12    taken by the various state agencies more recently, consistent
13    with the opinions of Telenor's expert that a request is a
14    prerequisite to such action.  And there is certainly nothing
15    strange in my view about state law enforcement agencies taking
16    a while to get around to acting on such a request.  So the
17    timing of the request does not in my mind give rise to a
18    persuasive inference that there must have been some more recent
19    action on the part of Alpren or associated entities that
20    produced this flurry of activity.  So the contempt application
21    is denied.
22              However, the Court has sua sponte raised, and
23    Mr. Sills has endorsed, a question or request stimulated by the
24    Court's suggestion that the original order should be modified
25    to include or add a specific directive to the various enjoined
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    52

74kdstoa

```
 1    parties to withdraw any requests for enforcement that had
 2    previously been made.  I will take that under advisement.
 3              Mr. Rolfe suggested earlier in this proceeding that he
 4    was willing to or would talk to his client, and I suppose that,
 5    you know, I'll leave open whether Mr. Van Tol would do the same
 6    thing over the weekend to see whether they are willing to do
 7    that without a court order.  If they were and if the various
 8    defendants -- I guess I would have to include all of them, the
 9    counterclaim and relief defendants -- if they all were to
10    withdraw any such requests and document that to the Court, it
```
                                Page 25

74KDSTOA.txt

11  would seem to me there is no further need for the Court to
12  order them to do something that they had already done.  If they
13  are unwilling, then I guess I will have to decide whether such
14  a supplementation or modification of the Court's order is
15  required in order to accomplish the goals that the Court
16  aspired to in entering its original application.
17      I don't think that that is precluded by any waiver on
18  the part of Mr. Sills during the prior proceedings.  What I
19  think is at issue, certainly -- I'm sure that many things were
20  said during the course of what were many arguments and a fairly
21  extensive record, but I am very clear in my recollection of at
22  least what the Court thought, perhaps mistakenly.  What I
23  believed was that it would take some affirmative action by one
24  of the various counterclaim and the relief defendants to
25  trigger any further enforcement action.  I believed that that

74kdstoa

1   was the reason why Telenor was not seeking any further relief
2   than a prospective order that the various relief and
3   counterclaim defendants not in the future take such an action.
4       And, you know, I think that one can certainly find in
5   the record references to the fact that such a request may
6   already have been made.  I'm quite sure that anyone looking at
7   the overall record of those proceedings and the overall
8   arguments that were made will confirm my recollection and my
9   conclusion, that that was not the impression that the Court
10  had.  And so it seems to me that if it is necessary to
11  accomplish what the Court set out to accomplish, it would be
12  appropriate for the Court to make that modification.
13      What I will take under advisement and reflect on
14  further, if it is necessary, if the various counterclaim and
15  relief defendants are unwilling to make such a withdrawal
16  request without the compulsion of an order, what I will be
17  reflecting on is whether it is in fact in any way necessary to
18  effectuate anything to make such an order.  It is conceivable,
19  arguments have been made, that it is not necessary because the
20  arbitration has been adequately protected.  There has been at
21  least some suggestion made that the state authorities have done
22  what they're going to do in response to the enforcement request
23  and it's unlikely they'll do anything else absent further
24  requests.
25      I don't know how I can rely on that.  I don't know

74kdstoa

1   that there is any expert testimony to that effect, and
2   certainly if Ukrainian law proceeds like American law, it would
3   be reasonable for prosecutors to do, as Mr. Sills suggests,
4   take a first step of one kind of sanction; if that doesn't
5   work, escalate to other things, so long as the request to
6   enforce has been made.  But I don't know anything about
7   Ukrainian law and I don't know what I can conclude from this
8   record, so I will reflect further on that, if I need to.  If
9   the counterclaim and relief defendants are unwilling to
10  withdraw their requests for enforcement, then I'll have to make
11  a decision about that.
12      So I think the contempt matter is closed.  The matter
13  modifying the injunction remains open.  I take it I will hear

Page 26

74KDSTOA.txt

14  from Mr. Van Tol and Mr. Rolfe on Monday as to whether they
15  think that anything that their clients are prepared to do moots
16  that issue.
17       Now, the one thing that we have neglected is to set a
18  schedule for proceeding with the underlying action in aid of
19  which these various provisional orders -- provisional relief
20  have been entered.  And I remain a little confused about the
21  procedural posture.  I'm sure Mr. Rolfe thinks I'm even more
22  confused than I think I am.  This goes back to a question that
23  Mr. Rolfe raised as an objection to the entry of the relief, of
24  the temporary order back in December.
25       There was originally what brought us here is Storm.
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              55
74kdstoa

1   Storm brought an action in New York State Court seeking to
2   vacate an order of the arbitral or an award of the arbitral
3   tribunal dated whatever it was dated.  All of this is in the
4   form of, in effect, counterclaims and third-party claims made
5   by Telenor in that proceeding.  I, frankly, don't even remember
6   at this point whether I have ruled in some authoritative way --
7   I suspect I could not have ruled in an authoritative way -- on
8   Storm's original application.  Maybe I did.
9        With respect to the counterclaims and third-party
10  claims, there remains, I suppose, some sort of question about
11  whether a proper pleading has been filed.  I think that's
12  relatively technical and can be resolved if it needs to be
13  resolved.
14       But in whatever form, the original defendant in this
15  action, Telenor, has sought an anti-suit injunction, a
16  permanent anti-suit injunction, against all of the parties
17  named by it.  And if I understand that application correctly,
18  it is for different and broader relief than what the temporary
19  preliminary injunction or temporary restraining order, or
20  whatever it is, has granted.
21       The next step in that proceeding, which, as I said,
22  nobody seemed very interested in from January through April, is
23  the defendants to those claims make an answer or a motion or
24  something, if they haven't already done so -- maybe they have.
25  If issue is joined on it, we start with discovery and we
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              56
74kdstoa

1   proceed towards the resolution of that case.  Yes?
2        MR. SILLS:  I think that is exactly right, your Honor,
3   because the permanent injunction is necessary to protect not
4   only the arbitral process but the award and the enforcement.
5   So it doesn't become moot once there is an award.
6        THE COURT:  Right, you are asking for all of these
7   people to be enjoined from filing any lawsuits anywhere on
8   earth, or something like that.  That's a complaint seeking an
9   injunction with equitable relief from this court, and discovery
10  needs to be taken and ultimately a trial had on those requests.
11       MR. ROLFE:  The request, as I understood it, the
12  permanent request, was to withdraw the pending actions.  It
13  wasn't not to do anything anywhere around the world.  That's
14  why I think we need a complaint.
15       THE COURT:  That's probably right.  I think there
16  needs to be a clear document, if there isn't already.  I'm not
                          Page 27

74KDSTOA.txt

17  prejudging this.  I haven't gone back and looked at what
18  exactly was filed.  But it certainly does seem appropriate that
19  there be a clear pleading setting forth the factual basis of
20  what is requested by way of permanent relief and the usual
21  wherefore or whereas or whatever comes at the end that tells
22  you what relief is being sought.  So, you know, maybe,
23  Mr. Sills, you think you have already done that, I don't know.
24  I hope I don't have to adjudicate anything about that.  If
25  something clearer, amended, whatever is desired, I think it

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

57

74kdstoa

1   would be useful to have such a clear document.
2           MR. SILLS:  Your Honor, rather than provoking another
3   round of motion practice before your Honor, we are happy to
4   file a pleading --
5           THE COURT:  They may like motion practice.  Once they
6   see exactly what you are asking, they might move to dismiss, or
7   something like that, when that happens.
8           MR. SILLS:  We are happy to do that, your Honor.
9           THE COURT:  OK.
10          MR. VAN TOL:  Your Honor, on vacatur, I guess there is
11  a bit of procedural confusion because that was vacatur of an
12  interim order.
13          THE COURT:  Yes.
14          MR. VAN TOL:  So I would think that once there is a
15  final order we may be back before your Honor on battling
16  petitions to confirm and vacate.  I think that is over and done
17  with on the interim order.  So I think we are OK proceeding
18  with just that prong of Mr. Sills' request.
19          THE COURT:  I think that's the way I see it because,
20  after all, if I remember correctly, the interim order is now
21  sort of moot.
22          MR. VAN TOL:  It was on jurisdiction, yes, your Honor.
23          THE COURT:  So, yes, some day, I take it -- and God
24  help me, I assume it will be before me as a related case if it
25  is not part of this case by then -- the arbitrators will enter

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

58

74kdstoa

1   some kind of award, and then one of you folks is going to be
2   arguing that I should confirm it and the other that I
3   shouldn't.
4           MR. VAN TOL:  And just so record is clear, your Honor,
5   because the record does get cited back against us, I'm
6   reserving our rights to argue jurisdictional points at that
7   time when there is a final award.  In other words, when I said
8   it's done, in other words, our debate over the interim order is
9   done, but we must reserve our rights to object to jurisdiction.
10          THE COURT:  Right.  I think that is right.
11          MR. VAN TOL:  OK.
12          THE COURT:  I think the thing that is mooted or
13  resolved is the interim award to the extent it is an interim
14  measure, but I don't think at this point that that precludes
15  anybody from making any arguments that are to be made once the
16  arbitrators rule.  Of course, they may rule for you, in which
17  case you may not be so eager to say they didn't have
18  jurisdiction.  Just as you folks might some day, or might not,
19  get on the same page about whether you were wrong to bring this

Page 28

74KDSTOA.txt
```
20  thing here in the first place because Mr. Rolfe thinks that I
21  never had jurisdiction and maybe -- I guess you didn't bring it
22  here in the first place, but at least you didn't argue that it
23  shouldn't be removed.
24          All that stuff is water under the bridge.  We are now
25  going on to deal with the underlying action.
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

74kdstoa
```
1           Mr. Sills, I assume this pleading document is going to
2   be filed reasonably soon.  I don't think I need to worry about
3   what the other side is going to do.  I think we can proceed
4   with any discovery, whether they move to dismiss or answer or
5   do whatever you do with whatever pleading you file.  So I guess
6   what I am thinking is -- I don't know how long it will take to
7   do the discovery on this matter.  Certainly an awful lot of
8   information has been exchanged.  On the other hand, it's also
9   clear that there are deep factual disputes that could be much
10  aided by deposing various parties and trying to find out what
11  people did or didn't do.
12          MR. ROLFE:  A problem that I raise, an issue, is the
13  fact that we still contest personal jurisdiction.
14          THE COURT:  Mm-hmm.
15          MR. ROLFE:  The Court has ruled against us on that,
16  but that issue is now up in the Court of Appeals.
17          THE COURT:  Mm-hmm.
18          MR. ROLFE:  And I don't want to waive my personal
19  jurisdiction argument by participating on the merits in this
20  lawsuit.
21          THE COURT:  Well, Mr. Rolfe, I mean, look, you know,
22  I'm happy, within reason, to do what you want me to do.
23          I'm not trying to put you in a hard place, I
24  appreciate you may be in a hard place.  The Telenor parties
25  might be perfectly, happy having gotten some preliminary
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

74kdstoa
```
1   relief, to just sit on it.  They're, in effect, a plaintiff who
2   has got a useful court order of an interim nature.  I don't
3   know that Mr. Sills is jumping up and down saying let's do
4   discovery and proceed to get me my broader permanent
5   injunction.
6           MR. ROLFE:  Maybe we should talk about it.
7           THE COURT:  But you have a right, it seems to me, to
8   pursue a further adjudication because you presumably don't want
9   to sit forever under a preliminary order of some sort that you
10  think is wrong, and maybe it will be determined to be
11  wrongful when we have a trial on the merits.
12          But I don't think you can have it both ways in the
13  sense that if you want not to go forward because you hope and
14  expect the Court of Appeals to rule in your favor and throw out
15  this action for lack of personal jurisdiction and you fear that
16  proceeding with discovery will somehow compromise that, well, I
17  appreciate the dilemma, but I don't know that you can
18  simultaneously do all these things on all these fronts.
19          You have to decide.  If you want to say please suspend
20  going forward with discovery, please don't make me file an
21  answer or any further motions -- but maybe a further motion
22  would be fine because you will make a personal jurisdiction
```
                              Page 29

74KDSTOA.txt

23  motion -- then if you want to, you know, suspend going forward
24  with discovery while the Court of Appeals acts or while you
25  file a personal jurisdiction motion, I'm not saying you can't
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

61

74kdstoa

1   do that, and I don't hear Mr. Sills saying, my God, we need to
2   move ahead and force this guy to do something.  It is up to
3   you.
4         MR. ROLFE:  Let me consult.  Let me talk to Mr. Sills
5   and see if we can work something out.
6         THE COURT:  OK.  Let's see what you can work out and
7   whether there is indeed a desire to move forward expeditiously.
8   I stand prepared to move forward expeditiously if the parties
9   or, for that matter, if either party wants me to and if it is
10  appropriate to do so, but, you know, we will abide that event.
11        So I will hear from Mr. Rolfe and Mr. Van Tol Monday
12  as to whether I need to think further or not think further
13  about modifying the preliminary order, and I will hear in due
14  course -- presumably later than Monday because it might be a
15  more complicated decision -- whether and on what schedule we're
16  going to proceed with the underlying action.
17        But the one thing that's exempt from that is, so that
18  we don't find ourselves back into this same debate in four
19  weeks or a month or six weeks or two months, Mr. Sills will
20  file a, whatever it will be called, amended counterclaim,
21  pleading, or whatever, to make clear exactly what is being
22  sought and on exactly what basis it has a claim against Alpren,
23  Altimo and Storm.
24        And I think that reaches results, no doubt
25  unsatisfactory to many of you, on everything that is pending
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

62

74kdstoa

1   before me at this moment, and everyone can go forth and have a
2   nice weekend.  Thank you.
3         MR. VAN TOL:  Thank you, your Honor.
4         MR. SILLS:  Thank you, your Honor.
5                           -   -   -
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

                            Page 30

# Tab B



telenor

| About Telenor | Press centre | Investor Relations | Corporate responsibility | Career centre |

**Press releases**

Subscribe

Archive

Press and media contacts

Image gallery

Telektronikk

# Press releases

Telenor, 21 march, 2007

## Accounting treatment of Kyivstar in the 2006 Annual Report

(Fornebu/Norway, 21 March 2007) Telenor's Board of Directors today decided to deconsolidate Kyivstar and to present Telenor's interests in the company in one line, as an investment in the 2006 Annual Report. Telenor owns 56.5 per cent of Kyivstar. The Board will next week consider Telenor's 2006 Annual Report in its entirety.

The Alfa Group affiliate Storm LLC, owning 43.5 per cent of Kyivstar, has persistently boycotted Kyivstar's shareholder and Board meetings for the past two years. As a result, there has not been a valid quorum at either shareholder meetings or Board meetings in Kyivstar for the whole of 2006. Telenor has nevertheless remained in control of the operations in Kyivstar throughout the period up to 29 December 2006.

Alfa Group affiliates, Storm and Alpren, commenced legal actions in Ukrainian courts in late December 2006 and in January and February 2007 disputing Kyivstar's authority to appoint auditors. These actions have led to injunctions purporting to prohibit Kyivstar's management from providing financial information to Kyivstar's international auditors and shareholders, including Telenor. The injunctions also purport to prohibit the use of financial information already provided by Kyivstar, and to prohibit Kyivstar and Telenor's auditors from carrying out any audit work in relation to Kyivstar's year-end IFRS financial statements. A third injunction purports to prohibit Kyivstar from disseminating any financial information that has not been approved by Kyivstar's board or shareholders, and to prohibit anyone from using any such financial information in their consolidated accounts.

Telenor is contesting these actions in the context of its ongoing arbitration proceedings in New York, as well as, to the extent permitted by the Kyivstar shareholders agreement, by seeking alternative legal redress.

Although Telenor is attempting to remedy the situation, the injunctions at present prevent Telenor from controlling or exercising significant influence over Kyivstar. Accordingly, Telenor's Board of Directors has decided to temporarily deconsolidate Kyivstar in Telenor's accounts with effect from 29 December 2006, and present the majority stake in one line as an investment. Kyivstar has been consolidated in the income statement up to 29 December 2006. Telenor's auditor has informed Telenor that, since they have been prevented from

Search

carrying out audit work in relation to Kyivstar's year-end financial information, their audit report for the Telenor Group will contain a scope limitation in respect to Kyivstar's financial information. The entire Annual Report for 2006 will be considered by the Board of Directors next week.

**Adjustment of outlook 2007:**

Assuming that Kyivstar is reported as a deconsolidated operation throughout 2007, we expect reported revenue growth of 0-5 per cent, a reported EBITDA margin before other income and expenses of around 32 per cent and CAPEX/Sales at around 20 per cent.

The reason for lowering the revenue and EBITDA expectations is that Kyivstar is included in the 2006 numbers but not included in the outlook for 2007. For 2006, Kyivstar reported revenues of NOK 10 956 million and an EBITDA margin of 59.5 per cent.

When adjusting for Kyivstar numbers in 2006, the revenue growth is expected to be 15-20%.

For further details related to the outlook for 2007, see Telenor's Q4 report.

**Conference call**
There will be a conference call today, Wednesday 21 March at 18:00 CET . The call will be conducted in English. Participants will be given the opportunity to ask questions after a short introduction by CFO Trond Westlie.

To participate in the conference call, please register well in advance by calling (+47) 800 80 119 (from Norway) or (+47) 23 00 04 00 (from Norway or abroad).

**Contact:**

Media:
Dag Melgaard, Vice President, Corporate Communications, tel +47 901 92 000
Email: dag.melgaard@telenor.com

# Tab C

Yahoo!    My Yahoo!    Mail    More    New Yahoo! Home Page    Make Y! your home page    Help

**YAHOO! FINANCE**    Web Search

Dow ↑ 1.27% Nasdaq ↑ 1.68%    Wednesday, March 21, 2007, 3:45PM ET - U.S. Mark

Enter Symbol(s)    GET QUOTES    Symbol Lookup    Finance Search

# Telenor ASA (TELN)    At 3:29PM ET: 54.34

         

Streaming Quotes:    ?

**TELENOR ASA ADS** (NasdaqGS:TELN) Delayed quote data

| | | | |
|---|---|---|---|
| Last Trade: | **54.34** | Day's Range: | 51.58 - 57.47 |
| Trade Time: | 3:29PM ET | 52wk Range: | 32.26 - 65.75 |
| Change: | ↓ 3.41 (5.90%) | Volume: | 325,153 |
| Prev Close: | 57.75 | Avg Vol (3m): | 107,575 |
| Open: | 57.30 | Market Cap: | 30.44B |
| Bid: | 54.35 x 300 | P/E (ttm): | 11.79 |
| Ask: | 54.41 x 200 | EPS (ttm): | 4.61 |
| 1y Target Est: | 67.25 | Div & Yield: | N/A (N/A) |

New! Try our new Charts in Beta
TELN 21-Mar 3:24pm (C)Yahoo!

1d  5d  3m  6m  1y  2y  5y  max

Market Updates Hourly from Fox
Business Now. Watch.

NEW Add Quotes to Your Web Site    ⬚ Add TELN to Portfolio  ☼ Set Alert  ⬇ Download Data
We can no longer offer real-time ECN data due to pricing changes by the exchanges. For real-time quotes (including real-time pre/post market data), sign up for a free trial of Real-time Quotes.

**HEADLINES**    Change Display [ hide $$  edit ]

- UPDATE - Telenor cuts 2007 outlook due to Kyivstar row
  **at Reuters** (Wed 2:54pm)
- Kyivstar may not meet eurobond convenants - Telenor
  **at Reuters** (Wed 2:00pm)
- Telenor says Kyivstar operations unhurt by row
  **at Reuters** (Wed 1:38pm)
- [SS] Malaysia Telecom Licensing Shuns Big Firms
  **at The Wall Street Journal Online** (Sun, Mar 18)
- [SS] Nordic Telecoms Place Bets On Broadband TV Service
  **at The Wall Street Journal Online** (Tue, Mar 13)
- [SS] Telenor Says Russian Foe Has Run Smear Campaign
  **at The Wall Street Journal Online** (Tue, Mar 13)
- Consortium Wins Montenegro License Bid
  **AP** (Tue, Mar 13)
- Telenor Satellite Services Agrees to Extend Iridium Quality of Service Offer
  **Business Wire** (Tue, Mar 13)
- UPDATE - Alfa raises Vimpelcom stake to almost 40 pct

(Advertisement)



HSBC
Online Saver
5.75% AER

Open your
account today >>

HSBC
The world's local bank

**KEY STATISTICS**

| | |
|---|---|
| Forward P/E (1 yr): | 11.44 |
| P/S (ttm): | 2.18 |
| Dividend Date: | 15-Jun-06 |
| Ex-Dividend Date: | 04-May-04 |

More Key Statistics...

# Tab D



Dresdner Bank Aktiengesellschaft
Theodor-Heuss-Allee 44-46
D-60486 Frankfurt am Main
Germany

Attention: EG Debt Transaction

Fax: 0049 69 713 25002

19 March 2007

**DRESDNER BANK AKTIENGESELLSCHAFT**
**7.75% Loan Participation Notes due 2012 (the "2012 Notes") and 10.375 % Notes due 2009 (the "2009 Notes" and, together with the 2012 Notes, the "Notes") issued for the purpose of funding loans to**
**CLOSED JOINT STOCK COMPANY KYIVSTAR GSM ("Kyivstar")**

Dear Sirs,

Reference is made to the respective loan agreements related to the respective Notes referred to above. We hereby notify you, and request that you notify holders of the Notes, that Kyivstar has been served with an injunction issued by the Kyiv City Commercial Court upon the application of a subsidiary of the Alfa Group, one of the two principal shareholder groups of Kyivstar. Subsidiaries of Telenor S.A. comprise the other principal shareholder group of Kyivstar. Pursuant to the court order, Kyivstar has been enjoined from making available, to any third party in any way whatsoever, any financial or other reports or any information relating to the financial or business activities of Kyivstar. This injunction, which may remain effective until the dispute is resolved, follows another recent injunction obtained by the Alfa Group subsidiary to prevent Kyivstar from entering into any audit services agreements and from re-appointing its independent auditor on the grounds that the Kyivstar Board of Directors had not approved the re-appointment. In order to convene a Board meeting, the attendance by representatives of both shareholder groups is required, and recently, the Alfa Group representatives have not attended Board meetings at which such appointment could be approved.

As a result of these injunctions, Kyivstar currently believes that it may not be able to comply with the covenants relating to the outstanding Notes under which it is obligated to deliver certain annual and quarterly financial information.

Kyivstar is currently undertaking all reasonable measures to resolve the situation

Respectfully,

CLOSED JOINT STOCK COMPANY "KYIVSTAR" G.S.M.

By:_____
Name:  Igor Lytovchenko Title:
President and Chief Executive Officer

Legal address:
51, Chervonozoryanyi Av., Kyiv, 03110
tel.: +380 44 209 00 70
fax: +380 44 232 21 84
www.kyivstar.net
wap.starport.com.

Correspondence address:
53, Degtyarivska St., Kyiv, 03113
tel.: +380 44 209 00 70
fax: +380 44 232 21 84
www.kyivstar.net ua
wap.starport.com.ua

Customer care:
24, Sichnevoro Povstannya St.,
Kyiv, 01010
tel.: + 380 44 466 0 466
www.kyivstar.net
wap.starport.com.ua

# Tab E



## STANDARD &POOR'S

# PRESS RELEASE

# Ratings On Kyivstar Remain Unchanged Despite Ongoing Possibility Of Covenant Breach

**Primary Credit Analysts:**
Michael O'Brien
London
(44) 20-7176-3561
michael_obrien@
standardandpoors.com

**Secondary Credit Analyst:**
Lorenzo Sliusarev
Moscow
(7) 495-783-41-32
lorenzo_sliusarev@
standardandpoors.com

Additional Contact: Industrial
Ratings Europe
CorporateFinanceEurope@
standardandpoors.com

**RatingsDirect
Publication Date**
March 23, 2007

LONDON (Standard & Poor's) March 23, 2007----Standard & Poor's Ratings Services said today that its ratings and outlook on Ukraine-based mobile telecommunications operator CJSC Kyivstar GSM (BB-/Stable/—) remain unchanged despite the ongoing possibility that the company might breach an information covenant of its Eurobonds.

The covenant requires the company to provide full audited results for the previous fiscal year no later than April 30. Kyivstar might be prevented from doing so by a recent court injunction that has been issued by the Kyiv City Commercial Court upon the application of a subsidiary of the Alfa Group, one of the two principal shareholder groups of Kyivstar. The court injunction seeks to prevent Kyivstar from providing further financial information.

A breach of the covenant is defined as an event of default, which would allow bondholders to seek repayment of the bonds and interest following a remedy period of 30 consecutive calendar days. If the covenant was breached, Standard & Poor's considers that investors may not have a strong incentive to force repayment of the bonds, given the level at which the bonds are trading. If the repayment of all or a substantial part of Kyistar's outstanding debt was accelerated by investors, however, we believe Kyivstar's liquidity to be largely sufficient to fund back the debt given on-balance-sheet cash and cash equivalents of $473 million at Sept. 30, 2006, and the company's ongoing free cash flow generation and market performance. The company's management has also indicated its willingness and ability to continue making interest payments. The company had total unadjusted debt of $510 million at Sept. 30, 2006.

We are concerned, however, that the quality of information we receive from Kyivstar will rapidly

*Ratings On Kyivstar Remain Unchanged Despite Ongoing Possibility Of Covenant Breach*

decline due to the court injunction. As a result we will suspend our ratings on Kyivstar if the company cannot provide adequate financial and operating information. This suspension will likely occur by the end of the remedy period.

Published by Standard & Poor's, a Division of The McGraw-Hill Companies, Inc. Executive offices: 1221 Avenue of the Americas, New York, NY 10020. Editorial offices: 55 Water Street, New York, NY 10041. Subscriber services: (1) 212-438-7280. Copyright 2007 by The McGraw-Hill Companies, Inc. Reproduction in whole or in part prohibited except by permission. All rights reserved. Information has been obtained by Standard & Poor's from sources believed to be reliable. However, because of the possibility of human or mechanical error by our sources, Standard & Poor's or others, Standard & Poor's does not guarantee the accuracy, adequacy, or completeness of any information and is not responsible for any errors or omissions or the result obtained from the use of such information. Ratings are statements of opinion, not statements of fact or recommendations to buy, hold, or sell any securities.

Standard & Poor's uses billing and contact data collected from subscribers for billing and order fulfillment purposes, and occasionally to inform subscribers about products or services from Standard & Poor's, our parent, The McGraw-Hill Companies, and reputable third parties that may be of interest to them. All subscriber billing and contact data collected is stored in a secure database in the U.S. and access is limited to authorized persons. If you would prefer not to have your information used as outlined in this notice, if you wish to review your information for accuracy, or for more information on our privacy practices, please call us at (1) 212-438-7280 or write us at: privacy@standardandpoors.com. For more information about The McGraw-Hill Companies Privacy Policy please visit www.mcgraw-hill.com/privacy.html.

Analytic services provided by Standard & Poor's Ratings Services ("Ratings Services") are the result of separate activities designed to preserve the independence and objectivity of ratings opinions. Credit ratings issued by Ratings Services are solely statements of opinion and not statements of fact or recommendations to purchase, hold, or sell any securities or make any other investment decisions. Accordingly, any user of credit ratings issued by Ratings Services should not rely on any such ratings or other opinion issued by Ratings Services in making any investment decision. Ratings are based on information received by Ratings Services. Other divisions of Standard & Poor's may have information that is not available to Ratings Services. Standard & Poor's has established policies and procedures to maintain the confidentiality of non-public information received during the ratings process.

Ratings Services receives compensation for its ratings. Such compensation is normally paid either by the issuers of such securities or by the underwriters participating in the distribution thereof. The fees generally vary from US$2,000 to over US$1,500,000. While Standard & Poor's reserves the right to disseminate the rating, it receives no payment for doing so, except for subscriptions to its publications.

Permissions: To reprint, translate, or quote Standard & Poor's publications, contact: Client Services, 55 Water Street, New York, NY 10041; (1) 212-438-7280; or by e-mail to: research_request@standardandpoors.com.

The McGraw-Hill Companies

# Tab F

6                                                          Equity **CN**

| Search | | GO | Ocdons | Ralatas I-fo | BMP Mar 29 2007 8:01:05 |
|---|---|---|---|---|---|

Moody's puts Kyivstar on review for possible downgrade          Page 1/6

London                          Moscow
David G. Staples                Julia Pribytkova
Managing Director               Asst Vice President - Analyst
Corporate Finance Group         Corporate Finance Group
Moody's Investors Service Ltd.  Moody's Eastern Europe
JOURNALISTS: 44 20 7772 5456    Telephone: +7 495 641-1881
SUBSCRIBERS: 44 20 7772 5454    Facsimile: +7 495 641-1897


Moody's puts Kyivstar on review for possible downgrade due to potential
failure to provide financial information.



London, 29 March 2007 -- Moody's Investors Service today put Kyivstar's
("Ba3" corporate family rating, Positive Outlook) on review for possible
downgrade following the public disclosure of the injunction issued by

Australia 61 2 9777 8600        Brazil 5511 3048 4500        Europe 44 20 7330 7500        Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2007 Bloomberg L.P.
                                                                           G393-661-0 12-Apr-2007 16:09:53

<MENU> to return to headlines.                    47 n **Equity** CN

| Search |  | GO | Options | Related Info |  | BMP Mar 29 2007 8:01:05 |

Moody's puts Kyivstar on review for possible downgrade        Page 2/6
the Kyiv City Commercial Court, prohibiting the company from making any
of its financial or other reports and information relating to the
financial or business activities available to any third parties. The
injunction was made on the application of Storm, the Ukranian subsidiary
of Altimo (Alfa Group), one of the two principal shareholders of the
company. Kyivstar is contesting the actions, however the outcome and its
timing remain uncertain.

While closely monitoring the situation, Moody's is currently assessing
the company's position in light of uncertainty following the injunction
and potential implications of the inadequate presentation of the
information to market participants.

Kyivstar G.S.M. Joint Stock Company is the largest wireless
telecommunication operator in Ukraine with a subscriber share of 44.7% as
at 30 September 2006, US$ 1.234 billion in revenues and US$ 752 million
in reported EBITDA for the first nine months of 2006. Operational since
1997, Kyivstar has focused on Ukraine alone, and had 17.7 million
subscribers and over 97% population network coverage as at 30 September
2006.

&lt;MENU&gt; to return to headlines.                          47 n Equity **CN**

| Search | | GO | Orders | Related Info | | BMP Mar 29 2007 8:01:05 |

Moody's puts Kyivstar on review for possible downgrade          Page 3/6

Copyright 2007, Moody's Investors Service, Inc. and/or its licensors and
affiliates including Moody's Assurance Company, Inc. (together, "MOODY'S").
All rights reserved.

ALL INFORMATION CONTAINED HEREIN IS PROTECTED BY COPYRIGHT LAW AND NONE OF SUCH
INFORMATION MAY BE COPIED OR OTHERWISE REPRODUCED, REPACKAGED, FURTHER
TRANSMITTED, TRANSFERRED, DISSEMINATED, REDISTRIBUTED OR RESOLD, OR STORED FOR
SUBSEQUENT USE FOR ANY SUCH PURPOSE, IN WHOLE OR IN PART, IN ANY FORM OR MANNER
OR BY ANY MEANS WHATSOEVER, BY ANY PERSON WITHOUT MOODY'S PRIOR WRITTEN
CONSENT. All information contained herein is obtained by MOODY'S from sources
believed by it to be accurate and reliable. Because of the possibility of human
or mechanical error as well as other factors, however, such information is
provided "as is" without warranty of any kind and MOODY'S, in particular,
makes no representation or warranty, express or implied, as to the accuracy,
timeliness, completeness, merchantability or fitness for any particular
purpose of any such information. Under no circumstances shall MOODY'S have any
liability to any person or entity for (a) any loss or damage in whole or in

Australia 61 2 9777 8600      Brazil 5511 3048 4500        Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2007 Bloomberg L.P.
                                                                    G393-661-0 12-Apr-2007 16:09:53

<MENU> to return to headlines.                                    47 n **Equity CN**

| Search | | GO | Order | Related Info | BMP Mar 29 2007 8:01:05 |

Moody's puts Kyivstar on review for possible downgrade                Page 4/6
part caused by, resulting from, or relating to, any error (negligent or
otherwise) or other circumstance or contingency within or outside the control
of MOODY'S or any of its directors, officers, employees or agents in
connection with the procurement, collection, compilation, analysis,
interpretation, communication, publication or delivery of any such
information, or (b) any direct, indirect, special, consequential, compensatory
or incidental damages whatsoever (including without limitation, lost profits),
even if MOODY'S is advised in advance of the possibility of such damages,
resulting from the use of or inability to use, any such information. The
credit ratings and financial reporting analysis observations, if any,
constituting part of the information contained herein are, and must be
construed solely as, statements of opinion and not statements of fact or
recommendations to purchase, sell or hold any securities. NO WARRANTY, EXPRESS
OR IMPLIED, AS TO THE ACCURACY, TIMELINESS, COMPLETENESS, MERCHANTABILITY OR
FITNESS FOR ANY PARTICULAR PURPOSE OF ANY SUCH RATING OR OTHER OPINION OR
INFORMATION IS GIVEN OR MADE BY MOODY'S IN ANY FORM OR MANNER WHATSOEVER. Each
rating or other opinion must be weighed solely as one factor in any investment
decision made by or on behalf of any user of the information contained herein,
and each such user must accordingly make its own study and evaluation of each
security and of each issuer and guarantor of, and each provider of credit
support for, each security that it may consider purchasing, holding or
Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2007 Bloomberg L.P.
G393-661-0 12-Apr-2007 16:09:54

<MENU> to return to headlines.                                    47 n Equity **CN**

| Search | | 3C | Orders | Related Info | | BMP Mar 29 2007 8:01:05 |

 Moody's puts Kyivstar on review for possible downgrade          Page 5/6
selling. MOODY'S hereby discloses that most issuers of debt securities
(including corporate and municipal bonds, debentures, notes and commercial
paper) and preferred stock rated by MOODY'S have, prior to assignment of any
rating, agreed to pay to MOODY'S for appraisal and rating services rendered by
it fees ranging from $1,500 to $2,400,000. Moody's Corporation (MCO) and its
wholly-owned credit rating agency subsidiary, Moody's Investors Service (MIS),
also maintain policies and procedures to address the independence of MIS's
ratings and rating processes. Information regarding certain affiliations that
may exist between directors of MCO and rated entities, and between entities
who hold ratings from MIS and have also publicly reported to the SEC an
ownership interest in MCO of more than 5%, is posted annually on Moody's
website at www.moodys.com under the heading "Shareholder Relations - Corporate
Governance - Director and Shareholder Affiliation Policy."
Moody's Investors Service Pty Limited does not hold an Australian financial
services licence under the Corporations Act. This credit rating opinion has
been prepared without taking into account any of your objectives, financial
situation or needs. You should, before acting on the opinion, consider the
appropriateness of the opinion having regard to your own objectives, financial
situation and needs.
                         end

&lt;MENU&gt; to return to headlines.                              47 n Equity **CN**

| Search | | GO | Orders | Related Info | | BMP Mar 29 2007 8:01:05 |

Moody's puts Kyivstar on review for possible downgrade            Page 6/6
Provider ID: 00375961
-0- Mar/29/2007 12:01 GMT
à

Australia 61 2 9777 8600        Brazil 5511 3048 4500        Europe 44 20 7330 7500        Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2007 Bloomberg L.P.
                                                                    G393-661-0 12-Apr-2007 16:09:55

# Tab G

47108

19      meeting, but do you have approval of the

20      a budget for 2007?

21              THE WITNESS:  No.

22              ARBITRATOR JENTES:  And no

23      external financing plan approved for

24      2007?

25              THE WITNESS:  No, no.

134

1               Moland - Direct

2               ARBITRATOR JENTES:  What about

3       the labor contract, is that also not

4       approved or it has been approved?

5               THE WITNESS:  That has created a

6       lot of problems.  Because the expat

7       contracts, the non-Ukrainan part of

8       management, their appointment and

9       contract should be also approved by the

10      board.  And impact also the shareholders

11      meeting.

12  BY MR. MUSOFF:

13      Q.      I think following up or

14  Mr. Jentes' question, what is your

15  understanding of whether Telenor is able to

16  consolidate the finance with Kyivstar?

17      A.      We're able to consolidate.

18      Q.      What is your understanding as to

19  whether there's been a challenge to that by

20  Storm?

21      A.      Yes.  There has been an attempt
                    Page 121

47108

22    where they have argued that we have not -- we

23    are not able to consolidate things.

24         Q.      And you also mentioned earlier, I

25    believe, about the capital structure of

135

1                    Moland - Direct

2    Kyivstar.  Can you explain a little bit more

3    about the issues you see with the capital

4    structure of Kyivstar going forward?

5         A.      Yes.  While the problem back in

6    2002 was that the company needed money to

7    expand the business.  Now, going forward, the

8    company has been a money machine.  They are

9    making a lot of money.  And they have to have

10   the money in Ukrainian banks.  So we believe

11   that there is a huge financial risk attached

12   to this.  And the natural thing -- thing

13   would have been that the owners should have

14   taken the money and given them back to the

15   shareholders.  So we have -- we have a

16   capital structure that is not good.

17                ARBITRATOR JENTES:  If I may, let

18           me continue, just because I want pursue

19           this a little bit further.

20                In terms of complying with United

21           States laws, particularly those relating

22           to the Securities and Exchange

23           Commission, are there impediments to

24           doing that, as a result of this current

                    Page 122

47108
25        blockage by the Storm and the Alfa

136

1                Moland - Direct
2        people?
3                THE WITNESS:  Yes.
4                ARBITRATOR JENTES:  Would you
5        explain what that is?
6                THE WITNESS:  I can explain that.
7        I will mention two things.  One is that
8        Alfa has made an attempt to stop
9        Kyivstar from implementing these
10        procedures set by the American
11        authorities.
12                The second is that when this has
13        been done, to make Kyivstar do all the
14        hard work that it is to implement this
15        new routines has proved to be very
16        difficult.  Telenor has to a great
17        extent had to pay consultants for doing
18        this.  And I'm not sure that Telenor is
19        going to comply fully with -- with
20        requirements set by American
21        authorities, as a result of this -- this
22        problems in Kyivstar.  Of course, that
23        could also harm Telenor's shareholders.
24                ARBITRATOR JENTES:  Right.  And
25        you're listed in the United States?

47108

137

1            Moland - Direct
2        THE WITNESS:  Yes.
3        ARBITRATOR JENTES:  And what's
4    the listing?
5        THE WITNESS:  It's on NASDAQ.
6        ARBITRATOR JENTES:  This is who's
7    listing?
8        THE WITNESS:  Telenor ASA.  ASA.
9        ARBITRATOR CRAIG:  This is
10   Telenor that's being listed, not
11   Kyivstar.
12       ARBITRATOR JENTES:  I know that.
13   I just want to have him state on the
14   record what it is.  So it's Telenor ASA.
15       And what problems do you see that
16   the whole situation with Kyivstar and
17   Storm, et cetera, has for Telenor with
18   NASDAQ?
19       THE WITNESS:  Well, it's not
20   problems with NASDAQ.  It's within the
21   SEC.
22       ARBITRATOR JENTES:  Okay.
23       THE WITNESS:  If it turns out
24   that -- that Kyivstar should not be able
25   to fulfill all the requirements from

138

1            Moland - Direct
                 Page 124

47108

2    SEC, Telenor would have to say to -- to

3    say to the -- to the SEC that we are not

4    able to do that.

5         ARBITRATOR JENTES:  Okay.  And

6    that, in turn, would have impacts on

7    your NASDAQ listing?

8         THE WITNESS:  Yeah.  On the share

9    price, yeah.

10         ARBITRATOR CRAIG:  But when we

11    talk about SEC requirements, are we

12    talking about Sarbanes-Oxley

13    specifically?

14         THE WITNESS:  Yes, it is

15    Sarbanes-Oxley.  That's the part of it

16    that's difficult when it comes to --

17    to -- to have financial control over it

18    and internal control over everything.

19         ARBITRATOR CRAIG:  Right.

20         THE WITNESS:  To do -- to do all

21    the work that this requires is very

22    difficult in Kyivstar because of the

23    present situation.  And for Telenor it's

24    a goal to be -- to be among, so to say,

25    the top ranking list of companies.  And

139

1         Moland - Direct

2    fulfill all requirements.  If Kyivstar

3    should be the thing that -- that makes

4    Telenor not able to fulfill it, it would

Page 125

47108

5    be important.

6         ARBITRATOR CRAIG:  Does Telenor

7    have operations in other countries?

8         THE WITNESS:  Oh, yes.  Many

9    countries.

10        ARBITRATOR CRAIG:  Are there any

11   other countries that you're having

12   difficulty implementing Sarbanes-Oxley?

13        THE WITNESS:  I think it's fair

14   to say that Kyivstar is the country

15   where it is most difficult to do it.

16        ARBITRATOR CRAIG:  Well, my

17   question is, are there other countries,

18   though, where you've had difficulty?

19        THE WITNESS:  Well, we have

20   difficult, yes, but they are much easier

21   to -- to solve.

22        ARBITRATOR JENTES:  To deal with?

23        THE WITNESS:  To deal with than

24   in Kyivstar.  I think it's difficult

25   also in Norway.

140

1              Moland - Direct

2         THE CHAIRMAN:  You mean the

3    United States instead of Kyivstar?  You

4    mean the United States?  It's difficult

5    to deal with the regulatory --

6         THE WITNESS:  No, no.  It's

7    difficult to have Kyivstar implementing

Page 126

47108

8          the American rules.

9                   ARBITRATOR CRAIG:  Some would say

10         it's difficult here, too.

11                  THE CHAIRMAN:  Any other

12         questions?

13                  MR. SILLS:  Yes.  I just want to

14         follow up on that line of questioning,

15         on the consolidation issue.

16    DIRECT EXAMINATION

17    BY MR. SILLS:

18         Q.     Do you know whether or not Alfa

19    has attacked the right of Telenor to

20    consolidate Kyivstar's results on its books?

21         A.     Yes.  I know they have tried to

22    do that.

23         Q.     And do you know whether or not

24    they've communicated directly with Telenor's

25    outside auditors raising this question?

141

1                      Moland - Direct

2          A.     I think they have, yes.

3          Q.     And have they also written to the

4     Telenor board of directors?

5          A.     Yes.  That's right.

6          Q.     And have they issued press

7     releases challenging Telenor's right to

8     consolidate?

9          A.     That's right.

10         Q.     Can you think of any legitimate

47108

11  business reason Alfa would have to be

12  interested in Telenor's accounting practices?

13      A.    NO.   It's part of the same game

14  they are seeking.

15          THE CHAIRMAN:  Okay.  One final

16      question.  Did you say, I believe an

17      hour ago or more, that this dispute has

18      risen to the level of the prime

19      ministers of Norway and the Ukraine

20      discussing this dispute among

21      themselves?

22          THE WITNESS:  NO.  Not this

23      dispute.  But the court order in Ukraine

24      saying that Telenor is forbidden from --

25      from coming here and using this panel.

142

1              Moland - Direct

2  That's a thing that is a potential

3  threat both to Norwegian citizens,

4  Telenor employees in the Ukraine, and

5  also to Telenor's values.

6          THE CHAIRMAN:  And the prime

7  ministers have discussed this?

8          THE WITNESS:  Yes.  The Norwegian

9      prime minister has brought -- brought

10     Ukraine prime minister's attention to

11     this.

12         THE CHAIRMAN:  Thank you very

13     much.  Thank you for coming here today.