# Lovells

590 Madison Avenue
New York NY 10022
Tel:  +1 212 909 0600
Fax:  +1 212 909 0660

Direct line (212) 909-0661
pieter.vantol@lovells.com
Direct fax (212) 909-0660

April 30, 2007

**By email**

Kenneth R. Feinberg, Esq.
The Feinberg Group LLP
The Willard Office Building
1455 Pennsylvania Ave., NW
Suite 390
Washington, DC 20004

William R. Jentes, Esq.
1500 North Lake Shore Drive
Suite 4C
Chicago, IL 60610

Gregory B. Craig, Esq.
Williams & Connolly LLP
725 Twelfth St., NW
Washington, DC 20005

RE:    TELENOR MOBILE COMMUNICATIONS AS V. STORM LLC

Dear Mr. Chairman, Members of the Tribunal:

We write in response to Telenor Mobile's letter to the Tribunal dated April 25, 2007 (the "April 25 Letter"), which purports to (1) correct our description of the April 20, 2007 hearing before Judge Lynch on Telenor Mobile's rejected motion for contempt and (2) bring "recent developments" to the Tribunal's attention concerning the actions in Ukraine relating to third-party agreements (the "E & Y Agreements") between Kyivstar and certain Ernst & Young entities (the "E & Y Actions").  (*See* April 25 Letter at 1.)

With regard to the April 20 hearing, Telenor Mobile cites nothing in support of its assertion that our description is "not accurate."  (*Id.*)  Nor could it.  We invite the Tribunal to review the hearing transcript, which demonstrates that the summary we provided is entirely accurate.

With respect to the E & Y Actions, (1) the Tribunal did not request additional briefing and Telenor Mobile has submitted what is essentially a letter brief without leave of the Tribunal; and (2) although Telenor Mobile claims that its letter provides an "update" on the E & Y Actions (*id.*), there is nothing new in the letter regarding those actions.  Telenor Mobile has already described the E & Y Actions, at length, in numerous submissions to the Tribunal and Judge Lynch.  In the recent proceedings

Alicante  Amsterdam  Beijing  Brussels  Chicago  Dusseldorf  Frankfurt  Hamburg  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow  Munich  New York  Paris  Prague  Rome  Shanghai  Singapore  Tokyo  Warsaw   Associated offices: Budapest Zagreb

Lawyers (USA)  Solicitors  Rechtsanwälte  Avocats  Advocaten  Notarissen  Avvocati  Abogados

April 30, 2007

before Judge Lynch, Telenor Mobile failed in its effort to halt the E & Y Actions through a contempt order.  Indeed, Telenor Mobile's request for relief concerning the E & Y Actions was so bereft of merit that Judge Lynch summarily denied the application without any argument from counsel for Storm, Alpren and Altimo.  (*See* April 20, 2007 Hearing Tr. at 12:2-22:5; 50:12-14.)

As a result, Telenor Mobile has turned to the Tribunal yet again and is asking for the extraordinary remedy of an anti-suit injunction regarding the E & Y Actions, even though:

(a)     Telenor Mobile still has not demonstrated that the issues raised by the E & Y Actions are arbitrable;

(b)     Telenor Mobile was already successful in its application for cancellation of the injunction in the First E & Y Action (the only one of the E & Y Actions that Storm brought) and the Tribunal has no basis for granting relief against Alpren (which is a non-signatory to the Shareholders Agreement); and

(c)     Telenor Mobile has not otherwise satisfied — or even attempted to satisfy — the required factors in the extremely high standard for anti-suit injunctions, which is particularly critical here because the Ukrainian courts have exclusive and mandatory jurisdiction over the E & Y Actions under the relevant E & Y Agreements.

Under the circumstances and for the reasons set forth more fully below, Storm respectfully requests that the Tribunal deny the drastic relief sought by Telenor Mobile.

**Telenor Mobile's Claims Arising Out Of The E & Y Actions Are Not Arbitrable**

Telenor Mobile's arguments on arbitrability (*see* April 25 Letter at 5-8) are a rehash of its earlier positions, and we will not burden the Tribunal with an extensive rebuttal of them.  Our discussion below is limited to Telenor Mobile's unsuccessful effort to change the applicable legal standard and recast the issues in the E & Y Actions as violations of the Shareholders Agreement.

In claiming that *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16 (2d Cir. 1995), does not apply here, Telenor Mobile cites to subsequent Second Circuit authority, *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004).  (April 25 Letter at 5.)  The Second Circuit did not overrule *Collins & Aikman* in *JLM Industries*, nor anywhere else.  Moreover, *JLM Industries* is clearly distinguishable.  In *JLM Industries*, the plaintiff brought antitrust claims in federal court against the defendants, notwithstanding the existence of broad arbitration clauses in a series of shipping contracts among the parties to the lawsuit.  The parties to the federal court proceeding and the arbitration were the same, and the Second Circuit noted that the subject matter of the federal case involved a "core issue of the contracts." 387 F.3d at 176.[1]  Accordingly, it held that the antitrust claims were arbitrable.  The situation here is completely different.  The parties in the arbitration and the E & Y Actions are not the same and the issue in the E & Y Actions — *i.e.*, the validity of the appointment of Kyivstar's auditors under Ukrainian law — does not involve <u>any</u> issue under the Shareholders Agreement (let alone a "core issue" as in *JLM Industries*).

---

[1]     The Second Circuit pointed out that the antitrust claims involved a core issue because the plaintiff was asserting that the price terms in the contracts had been inflated by an alleged price-fixing conspiracy among the defendants.  *Id.*

Telenor Mobile once again tries to bring the unrelated E & Y issues within the scope of the arbitration clause by asserting that the E & Y Actions are a "continuing violation" of Storm's obligations under certain corporate governance provisions of the Shareholders Agreement. (April 25 Letter at 6.)  Telenor Mobile argues that the E & Y Actions do not arise out of the December 22 Order invalidating the Charter provisions, but rather Storm's "longstanding refusal to participate in any way in the necessary amendments to the Charter that will allow the Board to function again." (*Id.*)  The crux of Telenor Mobile's argument is that, in light of the December 22 Order, Section 6.03(b) of the Shareholders Agreement requires Storm to amend the Charter and thereafter reconstitute the Kyivstar Board.  (*See* April 25 Letter at 6 n.7.)

Telenor Mobile's argument rests on a false premise.  Section 6.03(b) applies only where a court, statute or other legal authority mandates inclusion of a provision in, or an amendment to, the Shareholders Agreement or Charter.  It states, in full, as follows:

> To the extent that[,] pursuant to applicable law[,] the legality, validity or enforceability of any provision contained in this Agreement now or at any time hereafter requires that such provision, or reference to such provision, be contained in the Charter, or requires any amendment to the Charter, then the Shareholders shall vote their Voting Securities to approve any such amendments and cause the Company to take such action as may be necessary to register such amendments to the Charter as so required with all appropriate Government or Regulatory Authorities, and each Shareholder hereby consents to such amendment to the fullest extent permitted by law.

The December 22 Order did not require an amendment to the Charter, nor did it require that any provision be contained in the Charter or Shareholders Agreement.  Instead, it simply invalidated the corporate governance provisions that do not comply with Ukrainian law.  Thus, Section 6.03(b) is inapplicable here.

In the past, Telenor Mobile has also referred to Section 6.03(a) of the Shareholders Agreement, which purportedly requires an amendment to the Charter in the event that the Charter is inconsistent or conflicts with the Shareholders Agreement. (*See* Am. Stmt. of Claim at 18-19.)  However, Section 6.03(a) is based on an express — but incorrect — assumption that the Shareholders Agreement trumps the Charter.  As we have demonstrated previously, Ukrainian law is to the opposite effect.  The Charter is governed by Ukrainian law and, as a foundational document, it takes precedence over the Shareholders Agreement.  Thus, Section 6.03(a) is not enforceable because it would lead to a violation of Ukrainian law, *i.e.*, the doctrine that foundational documents control.

In sum, the Tribunal should reject Telenor Mobile's blatant bootstrapping.  It is clear that the E & Y Actions are the result of the December 22 Order, and not Storm's alleged "boycott" or refusal to amend the Charter.  If Telenor Mobile believes that the claims in the E & Y Actions are improper, it should continue to litigate those issues in the Ukrainian courts that have mandatory and exclusive jurisdiction under the terms of the E & Y Agreements.[2]

---

[2]     As in its earlier submissions, Telenor Mobile again argues in the April 25 Letter that Storm has violated Sections 2.05 and 8.07 of the Shareholders Agreement. (*See* April 25 Letter at 6-8.)  But Telenor Mobile still has not submitted any evidence that the parties intended for those clauses to be read as broadly as Telenor Mobile now interprets them.  For example, Telenor Mobile cites the Egil Hansen

- 4 -                                                                April 30, 2007

### The Injunction Obtained By Storm Has Been Lifted And
### There Is No Evidence That Storm Acted In Concert With Alpren

Telenor Mobile continues to rely on the First E & Y Action as one of the bases for its request for relief, even though the injunction obtained by Storm has been vacated.[3]  Telenor Mobile also cites to the other E & Y Actions and is seeking relief based on its allegation that Storm acted in concert with Alpren.  (*See* April 25 Letter at 2, 4, 8-9.)  Telenor Mobile, however, has not presented any evidence to the Tribunal, much less sufficient evidence, to support a finding that Storm and Alpren acted in concert in connection with the E & Y Actions.

Judge Lynch never ruled that Storm acted in concert with Alpren; indeed, the evidence showed the contrary.  The Court based its decision on the concept of "alter ego."  Furthermore, Telenor Mobile cannot rely on Judge Lynch's preliminary findings on the "alter ego" issue in his December 18, 2006 injunction (the "December 18 Injunction").  As Storm pointed out previously, it is well established that findings made for the purpose of granting preliminary relief are not binding — not even on the trial court at a later stage of proceedings.  *See, e.g., RxUSA Wholesale, Inc. v. Dep't of Health and Human Serv.*, 467 F. Supp. 2d 285, 291 (E.D.N.Y. 2006) (findings of fact made by a court granting a preliminary injunction are not binding in later proceedings because "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"), citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir. 1992) (findings of fact at the preliminary injunction stage are not binding at trial on the merits).  Judge Lynch acknowledged the limits of his findings prior to granting the December 18 Injunction; at the April 20 hearing, he similarly noted that a permanent injunction could not be entered until after discovery and a trial.  (*See* Apr. 20, 2007 Hearing Tr. at 56:6-10.)

Moreover, Alpren's appeal from the December 18 Injunction is still pending.  In its appellate papers, Alpren has shown that it was deprived of an evidentiary hearing on the anti-suit injunction.  (*See, e.g.*, Appellants' Initial Br. at 4-6, 17-22, 45-46; Appellants' Reply Br. at 17-20.)[4]  Even on the record that was before Judge Lynch, it is clear that the Court ignored evidence establishing that Alpren, Altimo and Storm were in January 2004, and are today, separate legal entities.  (*See, e.g.*,

---

affidavit dated August 8, 2006 for the proposition that Section 8.07 was intended to prevent "any kind of conduct" that might cut off Kyivstar's access to international capital markets.  (*Id.* at 7; emphasis added.)  Mr. Hansen's affidavit nowhere states that the purpose of Section 8.07 is to prevent the parties from putting a halt to illegal conduct at Kyivstar (such as entering into agreements without the requisite authority) if that action would interfere with Kyivstar's access to capital markets.  Such a construction of Section 8.07 is absurd and contrary to public policy.

Telenor Mobile makes another, new argument that "Storm" has interfered with Telenor Mobile's audit rights under Section 9.02 of the Shareholders Agreement because of the injunction in the Third E & Y Action.  (*See id.*)  Storm, however, did not obtain the injunction in the Third E & Y Action and, as discussed below, there has been absolutely no showing that Storm acted in concert with Alpren.

[3]       In an apparent effort to mislead the Tribunal, Telenor Mobile again states that the decision to vacate the injunction was *sua sponte*.  (April 25 Letter at 3.)  As the documents submitted by the parties clearly show, Telenor Mobile intervened in the First E & Y Action and asked for a reversal.  It has similarly requested — and received — a reversal of the injunction in the Second E & Y Action by the trial court (which is on appeal).  For reasons known only to Telenor Mobile, it has not sought the same relief in the Third E & Y Action.

[4]       Copies of the Appellants' briefs are attached as Exhibits A and B.

Appellants' Initial Br. at 27-42; Appellants' Reply Br. at 11-17.) Under the circumstances and given the fact that Alpren is not a party to the Shareholders Agreement, the Tribunal should reject Telenor Mobile's request for an injunction unless it can come forward with admissible evidence proving that Storm and Alpren acted in concert in bringing the E & Y Actions.

**Telenor Mobile Has Failed To Meet Its Substantial Burden For An Anti-Suit Injunction**

An anti-suit injunction enjoining a foreign proceeding is an extraordinary remedy that may be granted only rarely and under very unusual circumstances. The Second Circuit has emphasized that "principles of comity counsel that injunctions restraining foreign litigation be used sparingly and [should be] granted only with care and great restraint." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 199 (2d Cir. 2004) (citations and internal quotations omitted). "That is because an anti-suit injunction, though directed at litigants, effectively restricts the jurisdiction of the court of a foreign sovereign." *Id.; see also Paramedics Electromedicina Comercial Ltda. v. GE Medical Systems Information Technologies*, 369 F.3d 645, 652 (2d Cir. 2004). Telenor Mobile fails to cite any case where an arbitration tribunal takes the extraordinary step of enjoining a foreign action.

Telenor Mobile also fails to make the requisite showing for an anti-suit injunction. In keeping with the restraint that must be exercised in issuing anti-suit injunction, the Second Circuit has set forth a strict standard with two threshold factors: "An anti-suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in both matters; and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined." *Paramedics*, 369 F.3d at 652 (citing *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987)). Here, the "matters" referred to in the first threshold prong are the arbitration and the E & Y Actions. The arbitration proceeding is between Storm and Telenor Mobile. Although Storm is a party to one of the E & Y Actions and Telenor Mobile has intervened in those actions, the E & Y Actions also involve (among others) Alpren and two Ernst & Young entities. Neither Alpren nor the Ernst & Young entities are parties to the arbitration. Even if Alpren were found to be effectively the same party as Storm (and there is no evidence to support such a finding), the presence of the two Ernst & Young entities in the E & Y Actions makes the granting of an anti-suit injunction impossible.

With respect to the second threshold prong of the *China Trade* standard, the resolution of the arbitration will not dispose of the E & Y Actions. In the arbitration, Telenor Mobile seeks a finding that Storm has violated the Shareholders Agreement by bringing the E & Y Actions. In the E & Y Actions themselves, there is no issue about whether Storm violated the Shareholders Agreement. Those actions involve the completely separate issue of whether the E & Y Agreements were properly entered into under Ukrainian law as of January and May 2006.

Thus, the Tribunal cannot issue an anti-suit injunction because Telenor Mobile has not satisfied — and cannot satisfy — the two threshold factors established in *China Trade*.[5]

---

[5]    In addition to the threshold factors, *China Trade* establishes another five factors that must be taken into account. These include: (1) potential frustration of a policy in the enjoining forum; (2) the vexatiousness of the foreign action; (3) the threat to the issuing court's in rem or quasi in rem jurisdiction (4) whether the proceedings in the other forum prejudice other equitable considerations; or (5) whether an adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment. *China Trade*, 837 F.2d at 35. It is clear that none of the foregoing *China Trade* factors favors the issuance of an anti-suit injunction here. Allowing the E & Y Actions to continue would not frustrate any policy in favor of arbitration because, as noted above, they do not

- 6 -                                                                    April 30, 2007

**Conclusion**

For the above reasons, the Tribunal should hold that the post-hearing issues raised by Telenor Mobile are not arbitrable or (assuming they are arbitrable) that an anti-suit injunction is not warranted. Storm believes that Telenor Mobile's request for relief is facially defective and should be denied on the present record. If, however, the Tribunal is inclined to give any credence to Telenor Mobile's claims, we respectfully request an opportunity to submit additional information and/or participate in a hearing on these matters.[6]

Respectfully yours,

*Pieter Van Tol*

Pieter Van Tol

cc:      Robert L. Sills, Esq.

---

involve the same issues that will be decided by the Tribunal. Judge Lynch specifically found at the April 20 hearing that the ongoing E & Y Actions would not impede, hinder or delay the arbitration. For the same reason, there is no threat to the Tribunal's jurisdiction, nor would an adjudication of the validity of the E & Y Agreements in the E & Y Actions materially affect this arbitration. Furthermore, the E & Y Actions cannot be described as vexatious and there are no other equitable considerations favoring an injunction. To the contrary, the E & Y Actions were properly brought in Ukraine because the E & Y Agreements state that such disputes must be adjudicated in the Ukrainian courts and under Ukrainian law. Thus, even if Telenor Mobile could satisfy the first two prongs of the *China Trade* test — which it cannot — it would still fail to meet the *China Trade* standards for an anti-suit injunction.

[6]      As noted in our letter of April 24, 2007, Storm would need to seek leave of the Ukrainian court in order to submit such information or participate in a hearing.