# REDACTED

| From: | Sills, Robert L. |
|---|---|
| Sent: | Thursday, May 03, 2007 6:46 PM |
| To: | Ken Feinberg; Craig, Gregory; adrjentes@rcn.com |
| Cc: | Van Tol, Pieter |
| Subject: | Telenor Mobile v. Storm |
| Follow Up Flag: | Follow up |
| Flag Status: | Red |

Dear Messrs. Feinberg, Craig and Jentes:

I write to briefly respond to Storm's letter dated April 30, 2007 (the "April 30 Letter"). While Telenor Mobile disputes both the legal and factual statements made in the April 30 Letter, it largely repeats arguments already made by Storm and addressed by Telenor Mobile. In light of the extensive development of the record, Telenor Mobile does not believe there is any need to again address those issues. However, Telenor Mobile responds below to two arguments that the April 30 Letter makes for the first time:

1. On page 3 of the April 30, 2007 letter, Storm asserts that the "December 22 Order did not require an amendment to the Charter, nor did it require that any provision be contained in the Charter or Shareholders Agreement. Instead it simply invalidated the corporate governance provisions that do not comply with Ukrainian law." First, that assertion is entirely at odds with Storm's Statement of Defense, which states, in pertinent part, ". . . The Charter is governed by Ukrainian law and, in the December 22 Order, *the Highest Commercial Court stated that the parties should amend the Charter to comply with the applicable Ukrainian legislation. . .*" Statement of Defense at Paragraph 26 (emphasis added). Second, Storm's strained reading of Section 6.03(b) of the Shareholders Agreement appears to be based on a grammatical mistake. That Section compels Telenor Mobile and Storm to vote to amend the Charter if the "legality, validity or enforceability" of any provision of the Shareholders Agreement (under Ukrainian or any other law) requires that the provision in question be contained in the Charter, rather than in the Shareholders Agreement itself. Telenor Mobile's request for relief would require Storm to, in its own words, "amend the Charter to comply with the applicable Ukrainian legislation", as required by Section 6.03(b), as well as Section 6.03(a), which contractually obligates Storm to amend the Charter so that its substantive provisions are consistent with the Shareholders Agreement.

2. On page 5 of the April 30 Letter, Storm argues, also for the first time, that the standard for obtaining an anti-suit injunction in federal court described in *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F. 2d 33, 35 (2d Cir. 1987), somehow constrains the ability of the Panel to grant Telenor Mobile the equitable relief it seeks with respect to the Ernst & Young litigation. First, Telenor Mobile has requested relief against Storm, together with its affiliates and those acting in concert with it, which is the customary scope of injunctive relief. Here, as well as before Judge Lynch, the record shows that Alpren, a Cyprus shell corporation, is acting in concert with Storm. More important, the April 30 Letter confuses the standard for injunctions entered by courts acting in aid of arbitration or litigation with the substantive relief sought from this Panel by Telenor Mobile. Here, Telenor Mobile has asked that Storm be

8/28/2007

required to specifically perform its obligations under the Shareholders Agreement by withdrawing (or causing the withdrawal of) the Ukrainian actions that threaten Kyivstar's ability to function, and does not seek to compel arbitration of the ostensible claims being pursed by Storm and its affiliates against Ernst & Young. Such relief is clearly available under New York law. *See, e.g., Indosuez International Finance, B.V. v. Nat'l Reserve Bank*, 304 A.D.2d 429, 430-431, 758 N.Y.S.2d 308, 310-311 (2d Dep't 2003) (affirming award of permanent injunction against foreign litigation against plaintiff and others in face of contractual designation of New York law and New York forum). Moreover, it is well settled under New York law that an arbitration panel has powers beyond those of a court to fashion that kind of equitable relief, and that arbitrators may "direct such conduct on the part of the parties as is necessary to the settlement of the matters in dispute." *See* 5 N.Y. Jur. 2d Arbitration and Award § 172 (2007) ("Where an arbitration agreement provides for the granting of equitable relief--as where, for example, the parties agree to arbitration under the rules of a named association and such rules empower the arbitrator to grant any relief which he or she deems just and equitable--an award granting equitable relief has been upheld, even though such relief could not properly, or would not be, granted in litigation before a court.") (citations omitted).

Storm goes on to argue that the Panel should disregard Judge Lynch's findings. While it is correct that, in federal court, findings and conclusions reached in granting a preliminary injunction are, by definition, not final, it is also the rule that "[i]ssues decided by a court at a preliminary injunction hearing are 'open for review, but they should be adhered to, unless it clearly appears that error was committed, or that additional facts were brought out at trial which demand a modification or reversal of the views expressed at the preliminary hearing.' " *Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087, 1090 n.3 (S.D.N.Y. 1989) (citation omitted). More importantly, whatever the rule followed in federal court as to the binding nature of preliminary findings, this Panel is free, under the UNCITRAL Rules and the procedures that it has followed throughout these proceedings, to give that opinion as much or as little weight as it deems appropriate. Storm has not appealed from Judge Lynch's ruling, and his December 15 opinion, which followed five separate hearings, speaks for itself.

Because of the Ernst & Young litigation, Kyivstar was unable to deliver to its lender and bondholders by Monday, April 30, 2007 an auditor's compliance certificate and audited year-end financial statements . Accordingly, as set out in Telenor Mobile's letter dated April 25, 2007 at pages 4-7, Storm has now placed Kyivstar at risk of defaulting on bond obligations that collectively total over $400 million, in further violation of Sections 2.03 and 2.05 of the Shareholders Agreement. In light of the damage that the paralysis of Kyivstar's board has already caused to both Kyivstar and Telenor Mobile, the requested injunction should be entered.

Respectfully,


Robert L. Sills

8/28/2007