UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
:
TELENOR MOBILE COMMUNICATIONS AS,   :
:
                 Petitioner,   :
:
      - against -   :   07 Civ. 6929 (GEL)
:
STORM LLC,   :   ECF Case
:
                 Respondent.   :
:
-------------------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO VACATE ARBITRATION AWARD


LOVELLS LLP

Pieter Van Tol (PVT-2445)
Gonzalo S. Zeballos (GZ-5994)
Johanne Houbouyan (JH-2007)
590 Madison Avenue
New York, New York 10022
Tel: (212) 909-0600
Fax: (212) 909-0660

*Attorneys for Respondent Storm LLC*

# **Table of Contents**

**Page**

Argument ................................................................................................................................. 1

I.    The Tribunal's Failure to Follow the Ukrainian Judgments Mandates Vacatur ............. 1

    A.    Telenor Mobile Has Not Rebutted Storm's Showing that the Tribunal Acted in Manifest Disregard of Controlling Law Regarding Foreign Judgments ................................................................................ 1

    B.    Telenor Mobile's Argument on Public Policy Ignores the Relevant Case Law ............................................................................................... 5

II.    This Court Has an Independent Obligation to Take Evidence and Determine Issues Relating to Contract Formation, Including Issues of Choice of Law .................. 6

III.    The Tribunal's Manifest Disregard of *Sphere Drake* Also Warrants Vacatur ............... 7

IV.    The Tribunal Exceeded Its Powers in Ordering Divestiture ........................................... 8

V.    The Tribunal's Anti-Suit Injunction Was Impermissible ............................................... 9

Conclusion ............................................................................................................................ 10

## Table of Authorities

**Page**

**Cases**

*Ackermann v. Levine,*
 788 F.2d 830 (2d Cir. 1986) ...................................................................................1, 2

*American Const. Machinery & Equip. Corp., Ltd. v. Mechanised Const. of Pakistan Ltd.,*
 659 F. Supp. 426 (S.D.N.Y. 1987) .................................................................................6

*Bridgeway Corp. v. Citibank,*
 201 F.3d 134 (2d Cir. 2000) ......................................................................................2, 3

*China Minmetals Materials Import & Export Co., Ltd. v. Chi Mei Corp.,*
 334 F.3d 274 (3d Cir. 2003) ..................................................................................6, 7, 8

*Clarkson v. Shaheen,*
 544 F.2d 624 (2d Cir. 1976) ............................................................................................5

*Diapulse Corp. of Am. v. Carba, Ltd.,*
 626 F.2d 1108 (2d Cir. 1980) .........................................................................................6

*Encyclopaedia Universalis, S.A. v. Encyclopaedia Britannica, Inc.,*
 No. 03 Civ. 4363 (SAS), 2003 WL 22881820 (S.D.N.Y. Dec. 4, 2003)................7

*Hilton v. Guyot,*
 159 U.S. 113 (1895)........................................................................................................5

*Ibeto Petrochemical Indus., Ltd. v. M/T Beffen,*
 475 F.3d 56 (2d Cir. 2007) ...........................................................................................11

*In re Millenium Seacarriers, Inc.,*
 458 F.3d 92 (2d Cir. 2006) ...........................................................................................11

*Motorola Credit Corp. v. Uzan,*
 No. 02 CIV. 666 (JSR), 2002 WL 1963301 (S.D.N.Y. Aug. 22, 2002)..................2

*Motorola Credit Corp. v. Uzan,*
 274 F. Supp. 2d 481 (S.D.N.Y. 2003) ............................................................................2

*Motorola Credit Corp. v. Uzan,*
 388 F.3d 39 (2d Cir. 2004) .........................................................................................2, 3

*Rintin Corp., S.A. v. Domar, Ltd.,*
 476 F.3d 1254 (11th Cir. 2007) ....................................................................................10

*Sea Dragon, Inc. v. Gebr. Van Weelde Scheepvaartkantoor B.V.,*
 574 F. Supp. 367 (S.D.N.Y. 1983) ......................................................................3, 4, 5, 6

*Shaw Group. Inc. v. Triplefine Int'l Corp.,*
 322 F.3d 115 (2d Cir. 2003) ............................................................................................8

*Sphere Drake v. Clarendon Nat'l Ins. Co.*,
   263 F.3d 26 (2d Cir. 2001) ..........................................................................................1, 8

*Stolt-Nielsen Transp. Group v. Edible Oil Trad. Corp.*,
   No. 06 Civ. 0703 (NRB), 2007 WL 194182 (S.D.N.Y. Jan. 24, 2007)..................................7

Respondent Storm LLC ("Storm") respectfully submits this reply memorandum of law, together with the Declaration of Pieter Van Tol dated September 12, 2007 (the "Van Tol Decl."), in further support of its motion to vacate the final award issued on August 1, 2007 (the "Final Award") by the arbitral tribunal (the "Tribunal") in an arbitration between Storm and petitioner Telenor Mobile Communications AS ("Telenor Mobile").

## Argument

I. **The Tribunal's Failure to Follow the Ukrainian Judgments Mandates Vacatur**

   A. **Telenor Mobile Has Not Rebutted Storm's Showing that the Tribunal Acted in Manifest Disregard of Controlling Law Regarding Foreign Judgments**

In its opposition, Telenor Mobile relies — as it has previously — on cases holding that the doctrine of collateral estoppel does not apply to the April 2006 and May 2006 Orders of the Ukrainian courts (the "Ukrainian Judgments") because Telenor Mobile chose not to participate in the Ukrainian proceedings. (Opp. Br. at 6.) Storm, however, has never argued in the arbitration (or in any of the related Court proceedings) that Telenor Mobile is collaterally estopped from challenging the Ukrainian Judgments. (*See* Declaration of Gonzalo Zeballos, dated August 16, 2007 ("Zeballos Decl."), Ex. N at 21:1-21:9; Van Tol Decl., Ex. A at 41:3-41:6.) Rather, Storm has consistently made an entirely distinct argument, which is that the Tribunal was required to give effect to the Ukrainian Judgments under controlling Second Circuit and New York law regarding the recognition of foreign judgments. (St. Br. at 8-10.)

Storm also does not assert that there is a "*per se* rule" requiring recognition of a foreign judgment, as Telenor Mobile claims. (Opp. Br. at 7.) Instead, Storm relies on cases establishing a presumption in favor of recognition, absent circumstances that are not present here. *See, e.g., Ackermann v. Levine*, 788 F.2d 830, 837-38 (2d Cir. 1986) ("[A] final judgment obtained through sound procedures in a foreign country is generally conclusive as to its merits unless (1) the foreign court lacked jurisdiction over the subject matter or the person of the defendant; (2)

1

the judgment was fraudulently obtained; or (3) enforcement of the judgment would offend the public policy of the state in which enforcement is sought.").

The cases that Telenor Mobile cites — *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) ("*Uzan III*") and *Bridgeway Corp. v. Citibank*, 201 F.3d 134 (2d Cir. 2000) (Opp. Br. at 7) — are both readily distinguishable because they involve the application of the limited exceptions listed in *Ackermann* to facts that are very different from the facts here. In *Uzan*, the district court entered a temporary restraining order on January 28, 2002 that directed the defendants to deposit stock held by one of them, Telsim, into the court registry. *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 512-13 (S.D.N.Y. 2003) ("*Uzan II*"). The district court thereafter conducted a preliminary injunction hearing relating to the same relief, which concluded on April 18, 2002. *See id.* at 513-14. On April 19, 2002 — while the motion for a preliminary injunction was *sub judice* — three Turkish courts issued injunctions prohibiting the transfer of Telsim stock outside of Turkey. *See id.* at 514. The defendants intentionally did not disclose the existence of the injunctions to the district court. *See id.* at 514-15. On May 9, 2002, the district granted the preliminary injunction and ordered the deposit of the Telsim stock. *Id.* at 514. After the May 9 order by the district court, a fourth injunction was issued by the Turkish courts barring the transfer of stock. *Motorola Credit Corp. v. Uzan*, No. 02 CIV. 666 (JSR), 2002 WL 1963301, *4 (S.D.N.Y. Aug. 22, 2002) ("*Uzan I*"). The defendants did not disclose the existence of the first three injunctions until May 28, 2002, after the Court of Appeals had denied a stay of the preliminary injunction. *Id.* at *5, n.3.

The district court rejected the defendants' attempt to rely on the various Turkish injunctions as a defense to compliance with the May 9 order. The district court pointed out that the defendants clearly intended "to use [the injunctions], if all else failed, to subvert the orders of this Court and of the Court of Appeals." *Id.* at *5. The Court of Appeals affirmed, noting that

the orders of foreign courts are not entitled to comity if they have been obtained as an impediment "to the enforcement of a federal court's orders." *Uzan III*, 388 F.3d at 60.

Unlike the Turkish injunctions in *Uzan*, which were obtained to counteract the pending or imminent orders by the district court, the Ukrainian Judgment preceded (by many months) any decision by the Tribunal on contract formation issues or any order of this Court. Also, in contrast to *Uzan*, Storm did not conceal the Ukrainian Judgments until after there was an adverse decision. To the contrary, Storm brought the Ukrainian Judgments to the attention of the Tribunal and based its motions to dismiss on the Ukrainian courts' finding that the Shareholders Agreement is invalid. Thus, unlike the *Uzan* defendants, Storm did not attempt to use the Ukrainian Judgments as a means of subverting the Tribunal's or the Court's orders.

Telenor Mobile's other case, *Bridgeway*, is also distinguishable. In *Bridgeway*, the Second Circuit affirmed the district court's finding that the Liberian court system is fundamentally unfair. *See* 201 F.3d at 141-44. Here, however, the Tribunal emphasized that it was not questioning the fairness of the Ukrainian judicial system. (Zeballos Decl., Ex. A at 25.)

Telenor Mobile contends that *Sea Dragon, Inc. v. Gebr. Van Weelde Scheepvaartkantoor B.V.*, 574 F. Supp. 367, 373 (S.D.N.Y. 1983) — where the court applied the well-established rule on recognition of foreign judgments in the context of an arbitration — does not apply here because it was allegedly "decided on facts that are dramatically and materially different from those present here." (Opp. Br. at 7 n.7.) Telenor Mobile states that in *Sea Dragon* the plaintiff had been given notice and an opportunity to respond to the foreign proceeding, implying that Telenor Mobile lacked such an opportunity here. In *Sea Dragon*, however, the plaintiff found out about the foreign judgment after it had been issued; the court pointed out that the plaintiff could have collaterally attacked the Dutch judgment, but chose not to do so. *See* 574 F. Supp. at 372 n.2. Here, the undisputed evidence demonstrates that Telenor Mobile had the same opportunity to challenge the Ukrainian Judgments, and that it has not hesitated to intervene in

other Ukrainian proceedings after a judgment was entered. (Zeballos Decl., Ex. E at ¶¶ 48-49; Zeballos Decl., Ex. F at ¶¶ 16-19.) What matters is not whether the Tribunal thought Telenor Mobile should have been given notice at the commencement of the Ukrainian proceedings, but whether Ukrainian procedures were properly followed. It is undisputed that they were.

Telenor Mobile further tries to distinguish *Sea Dragon* by noting that the judgment in that case was in compliance with Dutch law and American due process standards. (Opp. Br. at 8 n.7.) In this case, Storm submitted undisputed expert evidence showing that the Ukrainian Judgments fully comply with Ukrainian law. (Van Tol Decl., Ex. B; Zeballos Decl., Ex. F at §§ IV-VIII.) Moreover, the Tribunal concluded in the Final Award that there was "no evidence of any impropriety or violations of any Ukrainian procedures." (Zeballos Decl., Ex. A at 25.)

Telenor Mobile's final basis for distinguishing *Sea Dragon* is equally unavailing. Telenor Mobile claims that, in contrast to the defendants in *Sea Dragon*, Storm has not been ordered to violate any Ukrainian statute or court order. (Opp. Br. at 8 n.7.) As demonstrated in Storm's opening brief, an enforcement of the Final Award would force Storm to violate the Ukrainian Judgments (which in turn rely on several Ukrainian statutes) and would expose Storm to criminal sanctions. (St. Br. at 2, 12-13.)

Telenor Mobile makes two other arguments in support of its claim that the Tribunal was permitted to disregard the Ukrainian Judgments. *First*, Telenor Mobile asserts that the Ukrainian Judgments were not the product of adversarial proceedings and, as a result, the Tribunal did not have to recognize them. Storm has already rebutted the allegations of collusion (St. Br. at 11) and will not revisit those issues in this brief. Moreover, the purportedly non-adversarial nature of a foreign proceeding does <u>not</u> provide a basis for disregarding the resulting judgment. In *Sea Dragon*, the arbitration tribunal found that the foreign judgment had been obtained "with respondent's assistance and cooperation." 574 F. Supp. at 370. The arbitrators, however, did not conclude that fraud was involved and the court emphasized that the lack of fraud was central to

its holding. *See id.* at 370, 372. By the same token, there is no allegation — let alone evidence — of fraud in connection with the Ukrainian proceedings here.

*Second*, Telenor Mobile insists that the Tribunal did not have to recognize the Ukrainian Judgments because the Ukrainian courts failed to consider the question of severability. (Opp. Br. at 8.) As an initial matter, the Tribunal was not permitted to re-examine the Ukrainian Judgments or question whether the Ukrainian courts properly considered the issues before them. *See, e.g., Clarkson v. Shaheen*, 544 F.2d 624, 631 (2d Cir. 1976) ("A foreign judgment may not be collaterally attacked 'upon the mere assertion of the party that the judgment was erroneous in law or in fact.'") (quoting *Hilton v. Guyot*, 159 U.S. 113, 203 (1895)). Furthermore, Telenor Mobile simply ignores the evidence demonstrating that the Ukrainian courts considered — and rejected — the notion that the agreement to arbitrate is severable. As discussed in Storm's opening brief, the questions posed to the Ukrainian court in connection with the Clarification Order and the order itself unambiguously refer to the severability issue. (St. Br. at 6-8, 10 n.6.)

**B.  Telenor Mobile's Argument on Public Policy Ignores the Relevant Case Law**

Telenor Mobile contends that the Final Award does not violate any public policy of New York. Telenor Mobile, however, ignores *Sea Dragon*, where the court found that the award was contrary to "well accepted and deep-rooted public policy" because it directed the respondent to violate the Dutch order. 574 F. Supp. at 372. As explained in Storm's opening brief, compliance with the Final Award would put Storm in a similar position. (St. Br. at 2, 12-13.) The *Sea Dragon* court relied on a long line of cases, including *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980), in which the courts have held that an award will not be enforced if it would compel a violation of law.[1]

---

[1]  Telenor Mobile relies on *American Const. Machinery & Equip. Corp., Ltd. v. Mechanised Const. of Pakistan Ltd.*, 659 F. Supp. 426 (S.D.N.Y. 1987) (Opp. Br. at 11-12), but that case is distinguishable. In *American Construction*, the court found that declining to confirm the arbitral award would violate the forum's "notions of justice" because of the evidence of fraud committed in the proceeding in Pakistan and

-5-                                                                                    Lovells

## II. This Court Has an Independent Obligation to Take Evidence and Determine Issues Relating to Contract Formation, Including Issues of Choice of Law

Even if the Court holds that the Tribunal did not act in manifest disregard of the law or that the Final Award violates public policy, it must independently determine — without any deference to the Tribunal's findings — whether the Shareholders Agreement is a valid contract. *See China Minmetals Materials Import & Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274 (3d Cir. 2003). In *China Minmetals,* the prevailing party in the arbitration (China Minmetals) sought confirmation of an award against a party (Chi Mei) that had unsuccessfully challenged the contract's validity in the arbitration. *See id.* at 276-78. The district court confirmed the award. *Id.* at 278. On appeal, Chi Mei sought vacatur under the New York Convention on the grounds that no valid agreement to arbitrate existed. The Third Circuit considered the issue of whether the district court, on a petition to confirm, should defer to the findings of arbitrators regarding contract formation issues. The court examined the doctrine of "compétence-compétence," which states (as does Article 21 of the UNCITRAL Rules) that the arbitrators will decide issues of contract formation as they relate to jurisdiction, and it specifically asked whether the doctrine imposes limits on the judicial review of the arbitrators' conclusions. *See id.* at 287-89.

The *China Minmetals* concluded that the doctrine of "compétence-compétence" and provisions like Article 21 do not in any way bar judicial review. *See id.* at 289. The Third Circuit held that "a party that opposes enforcement of a foreign arbitration award under the Convention on the grounds that the alleged agreement containing the arbitration clause on which the arbitral panel rested its jurisdiction was void *ab initio* is entitled to present evidence of such invalidity to the district court, which must make an independent determination of the agreement's validity and therefore of the arbitrability of the dispute." *Id.; see also Encyclopaedia*

---

the fact that the foreign judgment was an effort to "circumvent the [arbitral] process." 659 F. Supp. at 429. Thus, the Pakistani order in *American Construction* falls within two of the exceptions for recognition of foreign judgments, neither of which is present here.

*Universalis, S.A. v. Encyclopaedia Britannica, Inc.*, No. 03 Civ. 4363 (SAS), 2003 WL 22881820, *6 n.54 (S.D.N.Y. Dec. 4, 2003) (following *China Minmetals* holding on standard of review for contract validity on motion to confirm), *aff'd in relevant part, rev'd in part on other grounds*, 403 F.3d 85 (2d Cir. 2005). *Cf. Stolt-Nielsen Transp. Group v. Edible Oil Trad. Corp.*, No. 06 Civ. 0703 (NRB), 2007 WL 194182, *5 (S.D.N.Y. Jan. 24, 2007) (ordering discovery and evidentiary hearing on motion to confirm where agreement to arbitrate was at issue).

Storm has similarly argued, under the New York Convention, that the Shareholders Agreement is void *ab initio*. (St. Br. at 12 n. 8.) In accordance with *China Minmetals* and cases from this Circuit, Storm is entitled to present evidence to the Court and obtain an independent determination of the agreement's validity (which includes a finding on whether the Court should recognize the Ukrainian Judgments and what law applies to contract formation issues). Moreover, Telenor Mobile cannot rely on Article 21 of the UNCITRAL Rules to foreclose such a determination.[2]

### III.     The Tribunal's Manifest Disregard of *Sphere Drake* Also Warrants Vacatur

Telenor Mobile raises Article 21 in a different context, arguing that its incorporation in the Shareholders Agreement constitutes a waiver of the protections (such as the right to a jury trial) afforded by *Sphere Drake v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001). (Opp. Br. at 14-16.) Telenor Mobile, however, has not cited any decision holding that the referral of the jurisdictional issue to a tribunal in the first instance (under Article 21 or similar provisions) constitutes a waiver of the right to jury trial.[3] Article 21 simply means that a party

---

[2]     The record that was before the Tribunal is not adequate for the Court's independent assessment. Among other things, Storm was not able to put on evidence, including expert testimony, at the December 2006 hearing nor did it cross-examine Telenor Mobile's witnesses. The foregoing also provides an independent basis for vacatur of the Final Award. (St. Br. at 12 n.8.)

[3]     During the arbitration, the Tribunal recognized that Telenor Mobile's main case on this point, *Shaw Group. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115 (2d Cir. 2003), does not even address the situation where, as in *Sphere Drake*, a party claims the contract is void. (Zeballos Decl., Ex. O at 237:14-238:10.)

raising contract formation as a jurisdictional defense must go to the arbitrators first; the tribunal is then required to follow the applicable law. Here, the applicable law is *Sphere Drake*, which mandates a jury trial on contract formation issues where the party presents "some evidence" that a valid contract does not exist. Storm easily satisfied the "some evidence" standard by relying on (among other things) the Ukrainian Judgments holding that no contract came into being. The Tribunal, however, disregarded the *Sphere Drake* standard by holding — without citing any authority — that Article 21 overrides *Sphere Drake* and Storm's jury trial right.

Telenor Mobile insists that Storm has not met the "some evidence" standard because there is allegedly no dispute about Mr. Nilov's authority to bind Storm to a severable agreement to arbitrate. (Opp. Br. at 17.) As an initial matter, Storm repeatedly argued in the arbitration that, under Ukrainian law, Mr. Nilov did not have the authority to enter into the Shareholders Agreement or any separate agreement to arbitrate. (Zeballos Decl., Ex. I at 98:24-99:10; Ex. E at ¶¶ L-P.) In addition, Telenor Mobile incorrectly assumes that Ukrainian law recognizes the severability of an agreement to arbitrate in an otherwise void contract. The Ukrainian courts expressly rejected such a severability argument here; once it was determined that Mr. Nilov had no authority to enter into the Shareholders Agreement, Ukrainian law dictates that any agreement to arbitrate therein is also invalid. (*See supra* at 5 and St. Br. at 6-8.)

## IV.    The Tribunal Exceeded Its Powers in Ordering Divestiture

The Tribunal's divestiture order is inconsistent with the Shareholders Agreement because Storm's forced sale of its Kyivstar shares would give Telenor Mobile the opportunity to seize total control of Kyivstar. (St. Br. at 19.) The Shareholders Agreement, by contrast, contemplates that both parties will continue to participate in the governance of Kyivstar. Telenor Mobile does not address this point, and instead relies on cases setting forth the general proposition that arbitrators may grant equitable relief within the limits of the underlying agreement. Here, the Shareholders Agreement expressly states that such relief must be "[in]

accordance with the terms of this Agreement." (Opp. Br. at 21.) Allowing Telenor Mobile to take total control of Kyivstar directly contravenes the Shareholders Agreement, which contemplates that both shareholders will share control the company.[4]

Telenor Mobile asserts that the portion of the divestiture order directed concerning Storm's affiliates is within the contemplation of the Shareholders Agreement because of the broad language in the non-competition clause. (Opp. Br. at 19-20.) That language, however, only relates to potential liability. As Telenor Mobile recognized, "[i]t is true that the Panel cannot order an Alfa party other than Storm to divest all or part of a business, but that goes to the remedy for violation of the Shareholders Agreement, rather than liability for the violation itself." (Sills Decl. I, Ex. B, at 155.) Yet the Tribunal effectively did order Storm's affiliates to sell their shares because the supposed "choice" imposed by the draconian divestiture order is no choice at all. Storm cannot reasonably be expected to sell its Kyivstar shares; thus, its affiliates would be forced to divest their holdings. Given that the Tribunal has no power over Storm's affiliates, the only available remedy for any breach was money damages. Because, as the Tribunal found, Telenor Mobile failed to prove damages, the Tribunal was required to deny its claim.

## V.   The Tribunal's Anti-Suit Injunction Was Impermissible

Telenor Mobile never addresses Storm's argument that the injunction is almost exclusively based on Ukrainian actions commenced by <u>other</u> entities. (St. Br. at 23-24.) Absent a conclusion that Storm acted in concert with Alpren in those actions (which the Tribunal did not find), the Tribunal had no grounds for finding that <u>Storm</u> breached the Shareholders Agreement.[5] Finally, with regard to the sole Ukrainian action brought by Storm that is subject of the

---

[4]   This prong of the divestiture order also conflicts with the rest of the Final Award, which is premised on the participation of both Telenor Mobile and Storm in Kyivstar's corporate governance.

[5]   Thus, the case cited by Telenor Mobile, *Rintin Corp., S.A. v. Domar, Ltd.*, 476 F.3d 1254 (11th Cir. 2007), is distinguishable because it involved an injunction against actions brought by one of the

Tribunal's anti-suit injunction, the Tribunal manifestly disregarded the law holding that such injunctions may be issued under very limited circumstances and only after the application of a multi-factored test. *See, e.g.*, *In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 97-98 (2d Cir. 2006) (reversing anti-suit injunction for failure to apply mandatory test). The Tribunal disregarded this controlling law after Storm brought it to the Tribunal's attention.[6]

## Conclusion

For the foregoing reasons, Storm respectfully requests that the Court vacate the Final Award.

Dated: September 12, 2007

                                              LOVELLS LLP

By: *Pieter Van Tol*

                                              Pieter Van Tol (PVT-2455)
                                              Gonzalo S. Zeballos (GZ-5994)
                                              Johanne Houbouyan (JH-2007)

                                              590 Madison Avenue
                                              New York, New York 10022
                                              Telephone: (212) 909-0600
                                              Facsimile: (212) 909-0660

                                              *Attorneys for Respondent Storm LLC*

---

parties to the shareholders agreement. *See id.* at 1256. Here, Alpren brought all but one of the Ukrainian actions that are at issue.

[6] The Tribunal also improperly issued a permanent injunction rather than narrowly tailoring the injunction for the purposes of protecting its jurisdiction. *See Ibeto Petrochemical Indus., Ltd. v. M/T Beffen*, 475 F.3d 56, 65 (2d Cir. 2007) (vacating permanent injunction).

Lovells