# EXHIBIT F

# IN THE MATTER OF AN ARBITRATION UNDER
# THE UNCITRAL ARBITRATION RULES BETWEEN:

**TELENOR MOBILE COMMUNICATIONS AS,**

> Claimant,
>
> Snarøyveien 30
> N-1331 Fornebu
> Norway

-and-

**STORM LLC,**

> Respondent,
>
> 1 Narodnogo Opolchennya Street
> Kyiv 03151
> Ukraine

## STATEMENT OF DEFENSE

Pursuant to Article 19 of the UNCITRAL Arbitration Rules, Respondent Storm LLC ("Storm"), for its defense to the amended claim of Claimant Telenor Mobile Communications AS ("Telenor Mobile"), states as follows:

## PRELIMINARY STATEMENT[1]

This arbitration is yet another proceeding in a barrage of lawsuits and arbitrations that Telenor Mobile and its affiliates have brought against various affiliates and subsidiaries of the Alfa Group ("Alfa"), as well as against an entity in which one of those Alfa affiliates has invested, arising out of VimpelCom's acquisition late last year of Ukrainian Radio Systems ("URS"), a Ukrainian mobile telecommunications company. At bottom, this case has very little to do with the actual allegations that Telenor Mobile sets out in its Amended Statement of Claim. It has *everything* to do with the ongoing campaign by various companies related to Telenor Mobile to somehow "undo" the URS transaction.

Telenor Mobile's parent company, Telenor ASA ("Telenor"), has made no secret of its fear of competition between URS and Kyivstar, a company in which Telenor Mobile holds an approximate 56.5% interest. Telenor Mobile's affiliate, Telenor East Invest AS ("Telenor East"), voiced strident, but ultimately futile, opposition to the URS acquisition. In the months since the URS acquisition was completed, various Telenor-related entities have unleashed a string of actions, including this arbitration, another arbitration against an Alfa affiliate, Eco Telecom Limited (which is the other largest shareholder of VimpelCom), and *three* Moscow actions against VimpelCom itself. The common thread in all of these proceedings is Telenor's desire to disrupt the URS acquisition.

Ironically, in its Amended Statement of Claim, Telenor Mobile alleges that *Storm* has engaged in a "campaign of litigation" in the Ukrainian courts. (Am. Stmt. of Claim at 12.)

---

[1] Unless otherwise defined, the capitalized terms shall have the same meaning assigned to them in Telenor Mobile's Amended Notice of Arbitration and Amended Statement of Claim.

Those actions, however, are part of a perfectly legitimate — and ultimately successful — effort to obtain rulings on certain corporate governance issues under Ukrainian law. The key decisions for purposes of this arbitration are the December 22, 2005 order (the "December 22 Order") from the Highest Commercial Court of Ukraine and the April 25, 2006 order from the Kyiv Commercial Court (the "April 25 Order"), a translated copy of which is attached as Exhibit A. Taken together, these two orders dispose of all of Telenor Mobile's claims here and provide a conclusive basis for dismissing this arbitration in its entirety.

It is undisputed that the December 22 Order nullified (a) Section 9.1 of the Charter regarding the election of members of the Kyivstar Board (and the resolutions regarding such elections); and (b) a provision of Section 10.3 of the Charter regarding the nomination of Kyivstar's President. As a result of the December 22 Order, the parallel provisions in the Shareholders Agreement also ceased to have any legal effect. Thus, the December 22 Order — which, as Telenor Mobile admits, invalidated "key governance provisions" — serves to confirm that Storm was entirely justified in declining to participate in the annual or extraordinary shareholders meetings of Kyivstar and in instructing its nominated directors not to attend the Board meetings. Given that Storm reasonably believed the governing provisions for Kyivstar were invalid as a matter of Ukrainian law and in fact was in the midst of litigating that issue, it had no obligation (as Telenor Mobile alleges) to attend the shareholder and Board meetings. Indeed, the December 22 Order proves that Storm's view regarding the invalidity of the governing provisions was well-founded.

Telenor Mobile alleges that the Ukrainian court actions brought by Storm violate the arbitration clause at Section 12.01 of the Shareholders Agreement, which states that "disputes and controversies arising under, related to or in connection with" the agreement shall be arbitrated. Telenor Mobile, however, did not assert the arbitration clause as a defense in any of the Ukrainian court actions, nor did it seek a stay of litigation in favor of arbitration. Telenor Mobile raised the arbitration issue only <u>after</u> the adverse December 22 Order was

handed down. It is clear that Telenor Mobile, having lost in the Ukrainian courts, now seeks a second bite of the apple in this arbitration. The Panel should rule that Telenor Mobile has waived the right to rely on the arbitration clause here because it participated in the Ukrainian actions, and is estopped from attempting to re-litigate in this matter the corporate governance issues that were properly decided by the Ukrainian courts under Ukrainian law.

Telenor Mobile also seeks an order requiring Storm to accept certain amendments that would allegedly bring the Charter into conformity with the Shareholders Agreement. Any amendments to the Charter would necessarily be within the exclusive jurisdiction of the Ukrainian courts, however, since they already have interpreted the Charter. The Charter is governed by Ukrainian law and, in the December 22 Order, the Highest Commercial Court states that the parties should amend the Charter to comply with the applicable Ukrainian legislation. Any proposed amendments to the Charter or disputes relating to the Charter must therefore be heard by the Ukrainian courts. This Panel, therefore, lacks jurisdiction to compel Storm to agree to any amendment to the Charter.

Telenor Mobile's final allegation is that Storm violated the non-compete clause contained in the Shareholders Agreement. As discussed more fully below, that aspect of Telenor Mobile's claim should be rejected, as a matter of New York law, because the non-compete provision in question is overbroad and unenforceable, in addition to being void as the result of the April 25 Order, as discussed below.

The foregoing discussion is limited to the impact of the December 22 Order. The more recent April 25 Order provides an alternative ground for the Panel to dismiss Telenor Mobile's claim and even the arbitration in its entirety. In that order, the Kyiv Commercial Court held, among other things, that the entire Shareholders Agreement is invalid because it was entered into without the requisite authority and it fails to comply with the registration and execution requirements of Ukrainian law. The April 25 Order, because it nullifies the entire Shareholders Agreement, effectively undermines all of Telenor Mobile's claims. It also calls

the jurisdiction of this Panel into question, an issue that Storm will brief in a motion to dismiss to be filed on or before June 5, 2006.

I.   FACTUAL BACKGROUND

**The Parties**

1.   Telenor Mobile is a corporation duly organized and existing under the laws of the Kingdom of Norway, with its principal place of business in Fornebu, Norway. Telenor Mobile is a subsidiary of Telenor.

2.   Storm is a limited liability company organized and existing under the laws of Ukraine, with its principal address at 1, Narodnogo Opolchennya Street, Kyiv 03151, Ukraine.

3.   Storm is wholly owned by Alfa Telecom, a company organized under the laws of the British Virgin Islands that currently uses the trade name "Altimo." Storm and Alfa Telecom are associated with the Alfa Group, one of Russia's largest privately-owned financial-industrial conglomerates.

4.   Kyivstar is the largest mobile telecommunications company in Ukraine. Telenor Mobile and Storm are the only two shareholders of Kyivstar. Telenor Mobile owns approximately 56.5% of the issued and outstanding shares of Kyivstar, and Storm owns approximately 43.5% of the outstanding shares of the company.

**Relevant Provisions of Ukrainian Law and Decisions from Ukrainian Courts**

5.   Article 46 of the Law of Ukraine "On Commercial Entities" states that the board of a joint-stock company such as Kyivstar may be composed of the company shareholders. Since the law clearly states that a joint-stock company's board may be composed of shareholders, only the shareholders may be elected as chairmen and members of the board.

6.   Consistent with Article 46, the Highest Commercial Court of Ukraine issued the December 22 Order and invalidated Section 9.1 of Kyivstar's Charter, which required Telenor Mobile and Storm to vote their shares each year so as to ensure the election of five candidates for director nominated by Telenor Mobile and four candidates for director nominated by Storm. The Court held that each of Telenor Mobile and Storm are only permitted to nominate

one director to Kyivstar's Board. (*See* December 22 Order, Ex. F to Telenor Mobile's Amended Statement of Claim.) The Highest Commercial Court also found that Section 10.3 of the Charter, which relates to the appointment of the President of Kyivstar, breaches the rights of shareholders under Ukrainian law and is therefore invalid.

7. Ukraine's Supreme Court has declined Telenor Mobile's request that it review the December 22 Order, so Telenor Mobile has exhausted its appeals of that decision.

8. Under Article 203(1) of the Civil Code of Ukraine, neither the charter of a joint-stock company nor any shareholders agreement entered into by shareholders of such a company may violate Ukrainian law. Article 215 of the Civil Code of Ukraine establishes that any such agreement may be found invalid by the courts or is invalid *ab initio*. The Shareholders Agreement, at Sections 2.01 and 2.02, contains provisions that are identical for all material purposes to the sections of the Charter invalidated by the December 22 Order. Thus, those sections of the Shareholders Agreement, as written, would violate Ukrainian law and were effectively invalidated by the December 22 Order.

9. In the April 25 Order, the Kyiv Commercial Court held, among other things, that the entire Shareholders Agreement is invalid because it was entered into without the requisite authority and it fails to comply with the registration and execution requirements of Ukrainian law. (*See* Ex. A hereto.) An appellate court recently upheld the April 25 Order.

**Storm's Representatives and Nominees to the Board Were Not Required, Under Ukrainian Law, To Attend the Shareholders and Board Meetings**

10. Storm admits the allegations in Paragraphs 10 through 14 of Telenor Mobile's Amended Statement of Claim. Storm further admits that, beginning in March 2005, those Board members nominated by Storm have not appeared at or participated in Board meetings and that, as a result, the Board has been unable to achieve the quorum necessary to hold a meeting or to conduct business affecting the management of Kyivstar. Storm avers, however, that its nominated Board members took such action because the meetings were being held in violation of Ukrainian law, as discussed below.

11.     Storm admits the allegations in Paragraph 16 of Telenor Mobile's Amended Statement of Claim, but avers that its representatives and directors did not attend or participate in the listed meetings because it was Storm's good-faith belief that the corporate governance provisions for Kyivstar violated Ukrainian law. As a result, its representatives declined to participate in the shareholders and Board meetings, since those meetings were being held pursuant to the very provisions that Storm believed to be invalid under Ukrainian law.

12.     Also, at the time of some of the meetings listed in Paragraph 16 of Telenor Mobile's Amended Statement of Claim, Storm had initiated court proceedings in the Ukraine challenging the corporate governance provisions. The actions of the Storm representatives and nominees were consistent with the fact that litigation was ongoing.

13.     The December 22 Order demonstrates that Storm had every reason to take the steps it did. Under the December 22 Order, the shareholders and Board meetings listed in Paragraph 16 of Telenor Mobile's Amended Statement of Claim were a legal nullity. Accordingly, Storm did not violate any provision of the Shareholders Agreement nor any provision of any applicable law in instructing its nominees and representatives not to attend.[2]

**Telenor Mobile Cannot Seek Relief Under Section 6.02 of the Shareholders Agreement**

14.     In Paragraphs 20 through 33 of the Amended Statement of Claim, Telenor Mobile has alleged various violations of Section 6.02 of the Shareholders Agreement (which is the non-compete provision). Although Storm denies that it breached Section 6.02, the Panel does not even need to consider the underlying validity of Telenor Mobile's allegations because the claim is deficient as a matter of Ukrainian and New York law.[3]

---

[2] The April 25 Order, which invalidated the Shareholders Agreement in its entirety, provides further support for Storm's position that the shareholders and Board meetings were invalidly convened. It also fatally undermines Telenor Mobile's allegation that Storm violated Section 2.05(b) of the Shareholders Agreement in failing to attend those meetings; as a result of the April 25 Order, Section 2.05(b) was never in force.

[3] If required to address the merits of Telenor Mobile's claim, Storm will demonstrate that extremely attenuated investments, such as those Telenor Mobile refers to in its Amended Statement of Claim, are outside the definition of prohibited investments as contemplated by the non-compete provision.

15. As discussed above, the Kyiv Commercial Court ruled in the April 25 Order that the Shareholders Agreement is invalid, in its entirety, under Ukrainian law. Therefore, Telenor Mobile cannot enforce the non-compete provision in Section 6.02.

16. Even if the Shareholders Agreement complies with Ukrainian law, the non-compete provision may not be enforced under applicable New York law. It is overbroad inasmuch as it is not limited to a reasonable geographic area, nor is it limited to a reasonable time period. The non-compete provision is also overbroad because it purports to prohibit nearly all investments "direct[] or indirect[]" in the Ukrainian telecommunications market.

17. Accordingly, the Panel should deny Telenor Mobile's claim that Storm violated Section 6.02 of the Shareholders Agreement.

**Telenor Mobile Has Waived the Right to Invoke the Arbitration Clause**

18. Storm admits the allegations in Paragraph 36 and 37 of the Amended Statement of Claim that Section 12.01 of the Shareholders Agreement contains an arbitration provision, but denies Telenor Mobile's characterization of the provision.

19. Storm admits that, as alleged in Paragraphs 38 and 39 of the Amended Statement of Claim, there were various court actions in the Ukrainian courts regarding the corporate governance provisions in the Charter. As discussed above, however, there was nothing improper about this litigation; to the contrary, the December 22 Order demonstrates that the challenged provisions in fact violate Ukrainian law.

20. Storm admits the allegations in Paragraphs 40 through 43 of the Amended Statement of Claim and avers that Telenor Mobile's appeal to the Supreme Court of Ukraine referenced in Paragraph 43 was denied on February 16, 2006.

21. Telenor Mobile appeared as a party and participated fully in various actions in the Ukraine, but at no time did it raise the arbitration clause in the Shareholders Agreement as a defense or seek a stay of those proceedings on the ground that Storm should have initiated an arbitration claim under Section 12.01 of the Shareholders Agreement. Telenor Mobile has

alleged in the Amended Statement of Claim that the Ukrainian suits constitute a dispute or controversy within the meaning of Section 12.01. (*See* Am. Stmt. of Claim at ¶ 44.) Telenor Mobile, therefore, has no excuse for not raising the arbitration provision in the Ukrainian court actions. Instead, Telenor Mobile chose to litigate the corporate governance claims and lost. It would be difficult to find a clearer example of waiver.

22. Telenor Mobile, therefore, cannot argue that Storm violated Section 12.01 of the Shareholders Agreement when Telenor Mobile itself did not enforce the arbitration provision when it had multiple opportunities to do so.[4]

23. In addition, to the extent that Telenor Mobile is seeking an adjudication by this Panel of any of the corporate governance issues that were decided in the Ukrainian court actions, the doctrine of estoppel bars Telenor Mobile from re-litigating matters that were already decided. Any such issues should have been raised in the Ukrainian actions. The Panel, therefore, should bar Telenor Mobile from seeking a ruling on issues that were decided by the Ukrainian courts or were within the scope of the matters before those courts.

**The Panel Should Deny Telenor Mobile's Request
for an Order Compelling Storm to Agree to a Charter Amendment**

24. Storm admits that, as alleged in Paragraph 46 of the Amended Statement of Claim, the December 22 Order has "cause[d] the Charter to be inconsistent with the express provisions of the Shareholders Agreement requiring, *inter alia*, a nine member board, five of whom are to be nominated by Telenor Mobile." Storm further admits the allegations in Paragraphs 47 and 48 to the extent that they describe the communications and Proposed Amendment, but Storm denies any characterization of the Proposed Amendment. Storm lacks information or knowledge sufficient to admit or deny the allegations of Paragraph 49.

25. Storm denies the allegations of Paragraph 50 and avers that Joe Cyr, Esq., counsel for Storm, on April 13, 2006, stated via electronic mail to Robert L. Sills, Esq., counsel for

---

[4] Again, Telenor Mobile's claim cannot stand in light of the April 25 Order, which invalidated Section 12.01 and the other provisions of the Shareholders Agreement.

Telenor Mobile, that: "It appears to me that the proposed [amendments] are an attempt to circumvent the effect of the decision of the [Ukrainian Highest] Commercial Court and that it would not be appropriate for Storm to agree with the proposed amendments. I have shared this view with Storm. Storm continues to confer with its lawyers in the Ukraine and others and will respond appropriately."

26. Any amendments to the Charter would necessarily be within the exclusive jurisdiction of the Ukrainian courts, which have already interpreted the Charter. The Charter is governed by Ukrainian law and, in the December 22 Order, the Highest Commercial Court stated that the parties should amend the Charter to comply with the applicable Ukrainian legislation. Any disputes relating to the proposed amendments to the Charter must be heard by the Ukrainian courts. This Panel, therefore, lacks jurisdiction to compel Storm to agree to any amendment to the Charter.

27. Even assuming the Panel has jurisdiction over the Charter-related issues, it should deny Telenor Mobile's request for an order compelling Storm to consent to an amendment of the Charter. The December 22 Order only required the parties to conform the Charter provisions to Ukrainian law; it did not require the parties to conform the Charter provisions to the Shareholders Agreement, which is the relief Telenor Mobile seeks. Accordingly, there is no basis for an order requiring Storm to agree to an amendment to the Charter that allegedly brings it into conformity with the Shareholders Agreement.

28. As set forth above, the April 25 Order renders the Shareholders Agreement a nullity. If the Panel should find otherwise, however, Storm asserts in the alternative that it has complied with its obligations under the Shareholders Agreements, and, therefore, denies the allegations in Paragraphs 51 and 52.

II. **RESPONDENT'S RESPONSE TO THE POINTS AT ISSUE RAISED BY TELENOR MOBILE**

1. Telenor Mobile is not entitled to an award compelling Storm to force its representatives to attend Kyivstar shareholders and Board meetings (a) because, as confirmed by the December 22 Order, the shareholders and Board meetings were being held pursuant to provisions of the Charter and Shareholders Agreement that are invalid under Ukrainian law; (b) because, as the Kyiv Commercial Court held in the April 25 Order, the entire Shareholders Agreement, under which all of Telenor Mobile's claims arise, is void; and (c) because Telenor Mobile waived the right to seek such relief by failing to raise the arbitration clause as a defense in the proceedings that culminated in the December 22 Order.

2. Storm has not violated Section 6.02 of the Shareholders Agreement because the provision is fatally overbroad and void as the result of the April 25 Order.

3. Telenor Mobile is not entitled to any relief in connection with Storm's alleged violations of Section 6.02 of the Shareholders Agreement.

4. Telenor Mobile is not entitled to an award barring Storm or its affiliates, or anyone acting in concert with Storm or its affiliates, from commencing or prosecuting any action, lawsuit, or other proceeding in connection with any matter arising out of or in connection with the Shareholders Agreement because it waived its right to seek such relief under the arbitration clause.

5. Telenor Mobile is not entitled to an award compelling Storm to take all actions necessary to amend the Charter to conform to the Shareholders Agreement in accordance with Section 6.03 because (a) the Panel lacks jurisdiction to consider the need for an amendment to the Charter or to compel Storm to agree to any such amendment and (b) Section 6.03 is void as the result of the April 25 Order.

6. Telenor Mobile has not suffered any damages.

III. **RESPONDENT'S RESPONSE TO THE RELIEF SOUGHT BY TELENOR MOBILE**

Respondent expressly denies any entitlement of the Claimant to the relief sought in these proceedings. Specifically, for the reasons set forth above, Telenor Mobile is ***not*** entitled to an award:

1. Declaring that Storm is in breach of the Shareholders Agreement for (a) failing to attend annual and extraordinary shareholder meetings; (b) failing to appoint candidates for election to the Kyivstar Board, and to cause the Storm-nominated Board members to attend Board meetings and participate in the management of Kyivstar, (c) owning, indirectly or directly, more than 5% of another company engaged in the mobile telecommunications business in

Ukraine, and (d) violating the good faith and dispute resolution procedures of the Shareholders Agreement;

2. Requiring that Storm attend all future annual and extraordinary shareholders meetings, and cause Storm to nominate candidates for election to the Kyivstar Board, and cause the Storm-nominated Board members to be elected and to attend all future Board meetings and participate, in good faith, in the management of Kyivstar;

3. Granting Telenor Mobile appropriate relief in respect of all of Storm's violations of Section 6.02 of the Shareholders Agreement;

4. Enjoining the commencement of prosecution of any and all court actions by Storm, its affiliates, and anyone acting in concert with Storm or its affiliates, in any way arising out of, relating to or in connection with any obligations described in the Shareholders Agreement, including all of the existing litigations in Ukraine described herein;

5. Requiring that Storm amend the Charter to conform to the Shareholders Agreement, pursuant to Sections 2.05(b)(ii) and 6.03 thereof, with respect to the December 22 Order and any other ruling of any court, in Ukraine or elsewhere, purporting to invalidate, limit or circumscribe any provision of the Charter, including, without limitation, amending the Charter, to the extent necessary, to reflect the transfer of shares to Telenor Ukraina I AS, Telenor Ukraina II AS, Telenor Ukraina III AS and Telenor IV AS [sic], and the status of each such entity as a shareholder of Kyivstar;

6. Awarding Telenor Mobile damages for the harm caused by Storm's violations of the Shareholders Agreement in an amount to be determined by the arbitrators, including all legal fees and disbursements incurred in defending the Ukrainian litigations commenced by Storm;

7. Awarding Telenor Mobile its costs and disbursements of this proceeding, including its reasonable attorneys' and experts' fees, in accordance with Article 38 of the UNCITRAL arbitration rules; or

8. Any other relief.

Furthermore, for the reasons set forth above, Storm is entitled to:

1. A declaration (a) that Storm's nominees to the Kyivstar Board were justified in not attending Board meetings beginning in March 2005; (b) that Telenor Mobile has waived the right to seek relief in this arbitration for Storm's nominees' alleged failure to attend Board meetings; and (c) that Telenor Mobile is estopped from seeking relief in this arbitration for Storm's nominees' alleged failure to attend Board meetings because, in the December 22 Order, the Highest Commercial Court of Ukraine previously ruled on the issue whether Storm's nominees were even empowered to represent Storm on the Board;

2. A declaration that Storm's representatives were justified in not attending the shareholders meetings specified in Paragraph 16 of Telenor Mobile's Amended Statement of Claim;

3. A declaration that Storm has not violated Section 6.02 of the Shareholders Agreement because that provision is fatally overbroad and void pursuant to the April 25 Order;

4. A declaration that Telenor Mobile has waived the right to seek relief in this arbitration for damages allegedly stemming from Storm improperly resorting to the Ukrainian courts, instead of to arbitration, because Telenor Mobile, while participating fully in the various Ukrainian proceedings, has at no time raised the arbitration clause as a defense or moved for a stay on the basis of the arbitration clause.

5. Its costs and disbursements in this action, including, without limitation, its reasonable attorneys' and expert fees, in accordance with Article 38 of the UNCITRAL Arbitration Rules;

6. Interest in the sums claimed in subparagraph (5) until paid; and

7. Such other and further relief as the Arbitrators deem just and proper.

Dated: May 30, 2006

LOVELLS

By: _____
Joe Cyr
Pieter Van Tol
Lisa J. Fried

590 Madison Avenue
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0660

Attorneys for Storm LLC

# Exhibit A



# KYIV COMMERCIAL COURT

44-B Bogdana Khmelnytskogo Street, Kyiv 01030   Tel.: 486-65-72

## DECISION
### IN THE NAME OF UKRAINE

№40/242                                                                                                25.04.2006

**Under the claim of:** Alpren Limited, Legal entity under the laws of Cyprus Republic

**against:**           Limited liability company "Storm"
**RE:**                recognition of certain actions as unlawful and their termination

**The Judge: Smirnova L.G.**

**Representatives:**
Of the plaintiff: Marchenko R.V., representative acting on the basis of the Power of Attorney (unnumbered), dated April 5, 2006
Of the defendant: Klimenko V.V., Director General acting on the basis of the Minutes, dated February 8, 2006

### FACTUAL BACKGROUND:

The Plaintiff filed a claim to recognize as unlawful the actions of the Defendant related to the execution of the Shareholder Agreement, dated January 30, 2004, and to terminate the actions of the Defendant related to its performance under the said agreement. During the case hearing, the Plaintiff has extended its statements of claim and asks to recognize as unlawful the actions of the Defendant related to the execution of the Shareholders Agreement, dated January 30, 2004, and the Voting Agreement, dated September 2, 2002, and to terminate the actions of the Defendant related to its performance under the said agreements.

By its Ruling, dated April 14, 2006, the Kyiv Commercial Court initiated court proceedings in the case, and the court hearing was scheduled for April 21, 2006.

At the court sitting of April 21, 2006 the case hearing was adjourned until April 25, 2006.

The Defendant submitted no statement of defense to the statement of claim.

The Plaintiff's representative, present at the court sitting, sustained the above statements of claim and asked the court to allow the claim in full.

The Defendant's representative denied the claim and asked the court to disallow it.

[round seal of the Clerk's Office No.1 of the Kyiv Commercial Court]                              [stamp: A TRUE COPY]

Having studied the case papers and having heard the arguments of the parties' representatives, the Kyiv Commercial Court, -

**DETERMINED AS FOLLOWS:**

Pursuant to Article 124 of the Constitution of Ukraine, the jurisdiction of the courts extends to all legal relations that arise in the State. Pursuant to Article 12 of the Commercial Procedural Code of Ukraine, commercial courts are competent to adjudicate in cases involving disputes arising in connection with execution, amendment, termination or performance of commercial agreements or otherwise, unless the parties refer the dispute for settlement to the court of arbitration (arbitration tribunal). The case papers reveal that the dispute in question has not been referred for settlement to the court of arbitration (arbitration tribunal) and is, therefore, within the jurisdiction of the commercial courts of Ukraine.

The Defendant is a limited liability company existing under the laws of Ukraine and its Charter.

The Plaintiff is one of the Defendant's participants holding 49.9 percent of votes. The Plaintiff, as the Defendant's participant, is entitled to participate in the management of the Defendant.

The Defendant's operations were and are managed by its bodies authorized by the Charter and the laws of Ukraine. Its current business operations are managed by its executive body – the Director General. Pursuant to Article 145 of the Civil Code of Ukraine, powers of the Defendant's Director General and their limitations are defined in Article 12 of the Defendant's Charter.

On September 9, 2002 the Defendant, as represented by its Director General, entered into the Voting Agreement between Telenor Mobile Communications AS and Storm Limited Liability Company. The said agreement bound the Defendant to purchase shares of Closed Joint Stock Company "Kyivstar G.S.M." on certain conditions (Clause 2.04(b)). Pursuant to the Defendant's Charter (Article 12), as in effect at the time of execution of the Voting Agreement, the Director General was authorized to sign the said agreement only upon approval by the Meeting of Participants, unless otherwise agreed between the participants. The court established that the Defendant's Meeting of Participants did not approve the above agreement, that there existed no other arrangements between the Defendant's participants other than those stipulated in its constituent documents, and that there was no evidence to suggest that the agreement was approved by the Defendant at any time later.

Therefore, having signed the Voting Agreement and actually trying to administer the Defendant's funds, the Defendant's Director General acted unlawfully and in excess of its powers, in violation of requirements of the laws of Ukraine, in particular, Article 145 of the Civil Code of Ukraine, and provisions of the Defendant's Charter.

On January 30, 2004 the Defendant, as represented by its Director General, entered into the Shareholders Agreement between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company. The said agreement bound the Defendant to purchase shares of "Kyivstar G.S.M." CJSC on certain conditions (Clause 2.03(b)(i)). Pursuant to the Defendant's Charter (Article 12), as in effect at the time of execution of the Shareholders Agreement, the Director General was authorized to sign the said agreement only upon approval by the Meeting of Participants, unless otherwise agreed between

[round seal of the Clerk's Office No.1 of the Kyiv Commercial Court]    [stamp: A TRUE COPY]

the participants. The court established that the Defendant's Meeting of Participants did not approve the above agreement, that there existed no other arrangements between the Defendant's participants other than those stipulated in the constituent documents, and that there was no evidence to suggest that the agreement was approved by the Defendant at any time later.

Therefore, having signed the Shareholders Agreement and actually trying to administer the Defendant's funds, the Defendant's Director General acted unlawfully and in excess of its powers, in violation of requirements of the laws of Ukraine, in particular, Article 145 of the Civil Code of Ukraine, and provisions of the Defendant's Charter.

Pursuant to Article 228 of the Civil Code of Ukraine, a transaction is considered as such that violates public order, in particular, where it was aimed at illegal seizure of property of a legal entity. In view of the fact that the Voting Agreement, dated September 2, 2002, and the Shareholders Agreement, dated January 30, 2004, are aimed at illegal seizure of the Defendant's funds, the court concludes that, pursuant to Article 215 and Article 228 of the Civil Code of Ukraine, the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and Storm Limited Liability Company, and the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company, should be rendered null and void in full, including the arbitration clause, from the time of their execution.

Pursuant to Article 216 of the Civil Code of Ukraine, an invalid transaction does not entail any legal consequences, except for those related to its invalidity. Any concerned person has the right to require to apply the consequences of invalidity of a void transaction.

Therefore, the court concludes that there are no legal grounds for the Defendant to take any actions for the purpose of performance under the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and Storm Limited Liability Company, and the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company, and the court further concludes that any such actions must be terminated.

The court also takes into account the fact that the Voting Agreement and the Shareholders Agreement, being actually partial changes and amendments to the Charter of "Kyivstar G.S.M." CSJC, are not duly registered and are executed in English, contrary to the requirements of the public law as to the state language, as provided in Article 10 of the Constitution of Ukraine, and therefore, the above agreements violate the requirements of Article 203 of the Civil Code of Ukraine, and this fact even alone allows to invalidate the said agreements.

Subject to the foregoing and being governed by Articles 49, 82 – 85 of the Commercial Procedural Code of Ukraine, the court, -

### RESOLVES AS FOLLOWS:

1. To allow the claim partially.

2. To render unlawful the actions of the "Storm" Limited Liability Company related to the execution of the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and "Storm" Limited Liability Company.

3. To render unlawful the actions of the "Storm" Limited Liability Company related to the execution of the Shareholders Agreement, dated January 30, 2004, entered between Telenor

[round seal of the Clerk's Office No.1 of the Kyiv Commercial Court]                    [stamp: A TRUE COPY]

Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company.

4. To apply the consequences of invalidity of the void transaction – the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and Storm Limited Liability Company – and terminate the actions of the "Storm" Limited Liability Company related to performance under the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and "Storm" Limited Liability Company.

5. To apply the consequences of invalidity of the void transaction – the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company – and terminate the actions of the "Storm" Limited Liability Company related to performance under the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, "Storm" Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company.

6. To collect the following amounts from "Storm" Limited Liability Company (1 Narodnogo Opolchennya Street, Kyiv 01001, c/a 26000100675001 opened with Alfa-Bank CJSC, USREOU[1] Code 23163325, MFO 300346) for the benefit of Alpren Limited, Legal entity under the laws of Cyprus Republic: UAH 85.00 (eighty five) of the state duty and UAH 118.00 (one hundred eighteen) of the costs of services related to the technical and information support of the court proceedings.

7. To issue an appropriate order.

This decision shall come into legal force ten days after its adoption.

**The Judge**                                                                 Smirnova L.G.

[*handwritten:* Secretary [signature]]

---

[1] the Unified State Register of Enterprises and Organizations of Ukraine

[round seal of the Clerk's Office No.1 of the Kyiv Commercial Court]                    [stamp: A TRUE COPY]