# EXHIBIT G

# IN THE MATTER OF AN ARBITRATION UNDER
# THE UNCITRAL ARBITRATION RULES BETWEEN:

## TELENOR MOBILE COMMUNICATIONS AS,

Claimant,

Snarøyveien 30
N-1331 Fornebu
Norway

-and-

## STORM LLC,

Respondent,

1 Narodnogo Opolchennya Street
Kyiv 03151
Ukraine

# RESPONDENT STORM LLC'S MOTION TO DISMISS CLAIMS
# OF CLAIMANT TELENOR MOBILE COMMUNICATIONS AS

# Table of Contents

**Page**

Preliminary Statement ........................................................................................................ 1

Background ......................................................................................................................... 3

Argument ............................................................................................................................ 5

I.    THE PANEL LACKS JURISDICTION TO HEAR TELENOR
      MOBILE'S CLAIMS IN THIS ARBITRATION BECAUSE THE
      UKRAINIAN COURTS HAVE INVALIDATED THE
      SHAREHOLDERS AGREEMENT ....................................................................... 5

II.   TELENOR MOBILE HAS WAIVED THE RIGHT TO ARBITRATE
      ITS CLAIM THAT STORM VIOLATED THE ARBITRATION
      CLAUSE IN SECTION 12.01 OF THE SHAREHOLDERS
      AGREEMENT ....................................................................................................... 8

      A.    New York Law Governs The Waiver Issue ............................................. 8

      B.    Under New York Law, Telenor Mobile Waived Its Right To
            Arbitrate ................................................................................................... 9

III.  TELENOR MOBILE IS ESTOPPED FROM ARBITRATING ITS
      CLAIM CONCERNING STORM'S NON-ATTENDANCE AT
      KYIVSTAR MEETINGS ..................................................................................... 10

      A.    New York Law Governs The Estoppel Issue ......................................... 10

      B.    Telenor Mobile May Not Relitigate Its Claim, Which Arises
            Out Of And Overlaps With The Kyivstar Corporate
            Governance Issues That Were Decided By The Ukrainian
            Courts ..................................................................................................... 10

            1.    Identity And Decisiveness Of Issues ........................................ 11
            2.    Full And Fair Opportunity To Be Heard ................................... 12

IV.   TELENOR MOBILE'S CLAIMS ARE NOT ARBITRABLE TO THE
      EXTENT THAT THEY INVOLVE ISSUES OF UKRAINIAN LAW
      THAT MUST BE DECIDED BY UKRAINIAN COURTS ............................... 13

Conclusion.................................................................................................................................. 14

## Table of Authorities

**Page**

### Cases

*Ackermann v. Levine,*
 788 F.2d 830 (2d Cir. 1986) ........................................................................7

*Benjamin v. Coughlin,*
 905 F.2d 571 (2d Cir. 1990) ......................................................................11

*D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.,*
 564 N.E.2d 634 (N.Y.1990) .......................................................................11

*Figueroa v. Flatbush Women's Servs.,*
 664 N.Y.S.2d 118 (N.Y. App. Div. 1997) ...................................................9

*Gilberg v. Barbieri,*
 423 N.E.2d 807 (N.Y. 1981) ......................................................................11

*Johnston v. Compagnie Générale Transatlantique,*
 152 N.E. 121 (N.Y. 1926) ............................................................................7

*Koch v. Consol. Edison Co. of N.Y.,*
 468 N.E.2d 1 (1984) ...................................................................................11

*Matter of Zimmerman v. Cohen,*
 139 N.E. 764 (N.Y. 1923) .......................................................................1, 9

*Sherrill v. Grayco Builders, Inc.,*
 475 N.E.2d 772 (N.Y. 1985) .......................................................................9

### Other Authorities

A. Redfern & M. Hunter, LAW & PRAC. OF INT'L COMM'L ARB.
 (3d ed. 1999) ...............................................................................................9

Article 122 of the Ukrainian Code of Civil Procedure .................................................10

Article 62 of the Ukrainian Code of Commercial Procedure ........................................10

Article 8(1) of the Ukrainian Law on International Commercial Arbitration 1994 .........9

Article 9 of the Ukrainian Constitution ........................................................................10

European Convention on International Commercial Arbitration,
 Article VI(1) ..............................................................................................10

New York Convention 1958,
 Article V(2)(b) .............................................................................................8

P. Fouchard, *et al.*, INT'L COMM'L ARB.,
(Kluwer 1999) ............................................................................................................. 5

RESTATEMENT (SECOND) OF JUDGMENTS (1982) ............................................................. 11

W. Park, "The Arbitrability *Dicta* in *First Options v. Kaplan*: What Sort of *Kompetenz-Kompetenz* Has Crossed the Atlantic?," 12 ARB. INT'L 137, 138 (1996) ............................... 5

.

As ordered at the Procedural Conference on April 14, 2006, Respondent Storm LLC ("Storm") respectfully submits this motion to dismiss the claims alleged in the Amended Statement of Claim by Claimant Telenor Mobile Communications AS ("Telenor Mobile").[1]

## **Preliminary Statement**

There are several reasons why Telenor Mobile's claims in this arbitration should be dismissed, either in whole or in part.

*First* (and foremost), the Ukrainian lower and appellate courts have ruled, in orders dated April 25, 2006 (the "April 2006 Order") and May 25, 2006 (the "May 2006 Order"), that the Shareholders Agreement is invalid as a matter of Ukrainian law.[2]  The Orders specifically state that both the Shareholders Agreement and the arbitration clause in Section 12.01 are "null and void." (*See* Exs. A and B.)  Because the Panel derives its power solely from the arbitration clause in the Shareholders Agreement, the Panel has no authority to decide the merits of Telenor Mobile's claims and instead must dismiss this arbitration for lack of jurisdiction.

*Second*, even if the Panel finds that it has jurisdiction, it should dismiss several of Telenor Mobile's claims under the doctrines of waiver and estoppel.  As discussed in more detail below, Telenor Mobile waived the right to argue in this matter that the Ukrainian actions initiated by Storm violate the arbitration clause in Section 12.01 because they are arbitrable disputes or controversies.  Telenor Mobile fully participated in several of those actions and it did not invoke the arbitration clause in the Shareholders Agreement as a defense or grounds for a stay.  Under New York law, which governs these proceedings, Telenor Mobile thus waived any argument that Storm contravened the arbitration clause in Section 12.01 by engaging in the Ukrainian actions

---

[1]    Any capitalized terms that are not defined below shall have the same meaning as in Telenor Mobile's Amended Statement of Claim and Storm's Statement of Defense.

[2]    The April 2006 Order and the May 2006 Order, which are attached hereto as Exhibits A and B, will be referred to collectively as the "Orders."

(which, as noted in the Statement of Defense, were brought in good faith to resolve issues of Kyivstar corporate governance under the applicable Ukrainian law).

Another one of Telenor Mobile's claims, which is that Storm violated Section 2.05 of the Shareholders Agreement by not attending Kyivstar shareholders and Board meetings, is barred by the doctrine of collateral estoppel. As set forth in its Statement of Defense, Storm did not participate in the shareholders and Board meetings because it reasonably, and in good faith, believed that they violated Ukrainian law. In various Ukrainian court actions, Storm sought an adjudication of whether certain governing provisions in the Kyivstar Charter — including the provisions under which the shareholders and Board meetings were conducted — are valid under Ukrainian law. The order of the Highest Commercial Court of the Ukraine dated December 22, 2005 (the "December 2005 Order") confirmed that they are not.

New York law states that prior decisions, like the December 2005 Order, will act as a bar to later claims if (a) those claims substantially overlap with the issues in the earlier decision; (b) the earlier decision would be decisive in the later action; and (c) the party to be estopped had a full and fair opportunity to litigate the issues in the preceding matter. Here, there is clearly an overlap between the action that resulted in the December 2005 Order and this arbitration because they both involve the same question: was Storm justified in not attending the shareholders and Board meetings? Moreover, the December 2005 Order is decisive because it provides a complete defense to Telenor Mobile's claim that Storm had no justification for its actions. It also cannot be doubted that Telenor Mobile had a full and fair opportunity to litigate; in fact, it appeared in the earlier action and unsuccessfully attempted to have the adverse rulings overturned.[3]

*Third*, two of Telenor Mobile's claims should be dismissed on the additional grounds that they present issues of Ukrainian law that are outside the scope of the arbitration clause. Telenor

---

[3]     The identity between the issues in the earlier action and this arbitration also supports a finding that Telenor Mobile waived the right to argue that Storm violated Section 2.05 of the Shareholders Agreement.

Mobile's claim that Storm violated Section 2.05 of the Shareholders Agreement by not participating in shareholders and Board meetings of Kyivstar, as well as its request for an order requiring Storm to amend the Kyivstar Charter to conform to the Shareholders Agreement, require an interpretation of the Kyivstar Charter and Ukrainian law. The Panel, however, does not have the authority to decide whether the Kyivstar Charter is valid under Ukrainian law. It should leave such matters to the Ukrainian courts, which have the exclusive jurisdiction over the Kyivstar Charter and the expertise to interpret Ukrainian law.

Storm, therefore, respectfully requests that the Panel dismiss this arbitration in its entirety or, in the alternative, that it dismiss the claims of Telenor Mobile as set forth below.[4]

### Background[5]

This motion seeks the dismissal of all of Telenor Mobile's claims or, alternatively, the dismissal of Telenor Mobile's claims that (1) Storm violated Section 2.05 of the Shareholders Agreement by not participating in the shareholders and Board meetings of Kyivstar; (2) Storm violated the arbitration clause in Section 12.01 of the Shareholders Agreement by bringing various court actions in the Ukraine to resolve issues of corporate governance; and (3) Storm violated the Shareholders Agreement by not agreeing to amend the Kyivstar Charter to conform it to the terms of the Shareholders Agreement. (*See* Am. Stmt. of Claim at ¶ 3.)

A closer examination shows that Telenor Mobile was either a party or was involved in several of the actions in the Ukraine (the "Ukrainian Actions") listed in the Amended Statement of Claim. (*See id.* at 16-17.) For example, in the suit commenced on August 23, 2005 regarding the appointment of Kyivstar's President, Mr. Lytovchenko (*see id.* at 15-16), the court ordered

---

[4]    Because this Panel has been properly constituted, Storm has submitted the jurisdictional issues to the Panel for a determination. Storm, however, reserves the right to raise the same issues before a court of competent jurisdiction.

[5]    Storm hereby incorporates the factual allegations in the Statement of Defense. The information provided below was either not contained in the Statement of Defense or is repeated here briefly for emphasis.

that Telenor Mobile be included as a proper party.  Telenor Mobile, however, did not raise the

arbitration clause in the Shareholders Agreement as a defense to the lawsuit, nor did it seek to

stay the action in favor of arbitration.[6]

Of the Ukrainian Actions listed in Telenor Mobile's Amended Statement of Claim, the

key action is the one that culminated in the December 2005 Order invalidating Sections 9.1 and

10.3 of the Kyivstar Charter (which establish the mechanism for selecting Kyivstar Board

members and its President, respectively).  (*See* Ex. C hereto.)  While the suit was commenced

through an *ex parte* application, Telenor Mobile fully participated in subsequent hearings.

Telenor Mobile even appealed from the December 2005 Order, but its appeal was rejected by the

Supreme Court of the Ukraine on February 16, 2006.  Telenor Mobile actively participated in all

of these proceedings and did not argue that it should be dismissed or stayed because of the

arbitration clause in the Shareholders Agreement.

Since the December 2005 Order, there have been two other critical rulings from the

Ukrainian courts.  In the April 2006 Order, the Kyiv Commercial Court (the "Commercial

Court") ruled that Storm's General Director did not have the authority under the Storm Charter

and Ukrainian law (which governs the Storm Charter) to enter into the Shareholders Agreement.

The Commercial Court stated that the Shareholders Agreement is "null and void in full, including

the arbitration clause."  (Ex. A.)  The Commercial Court further held that the Shareholders

Agreement violates Ukrainian law because it was not duly registered and was executed in

English.  (*See id.*)

In the May 2006 Order, the Kyiv Appellate Commercial Court (the "Appellate Court")

affirmed the April 2006 Order, which was appealed by Storm.  The Appellate Court rejected the

contention that the April 2006 Order was issued in violation of procedural rules and law.  (*See*

---

[6]     In another case before the Perchersky District Court of the City of Kyiv (*see id.* at 16-17), Telenor Mobile
alleges that it "is not a party."  (*Id.* at 16.)  It did, however, file an appeal from the lower court's ruling.  (*Id.*)

Ex. B at 1, 3.)  The Appellate Court agreed with the Commercial Court that Storm's General

Director "acted unlawfully in excess of his authority and in violation of requirements of

Ukrainian legislation" (*see id.* at 2) and further stated that the Shareholders Agreement "is [a]

null and void instrument, in its entirety, including its arbitration clause." (*See id.* at 3.)  Like the

Commercial Court, the Appellate Court held that the Shareholders Agreement resulted in a

breach of "public order." (*See id.* and Ex. A.)

The Orders form the basis of Storm's contention that Telenor Mobile's claims should be

dismissed in whole.  In the event, however, that the Panel finds that it still has jurisdiction, Storm

has presented below several alternative bases for the dismissal of Telenor Mobile's claims.

## Argument

## I.     THE PANEL LACKS JURISDICTION TO HEAR TELENOR MOBILE'S CLAIMS IN THIS ARBITRATION BECAUSE THE UKRAINIAN COURTS HAVE INVALIDATED THE SHAREHOLDERS AGREEMENT

It is well settled that the authority of an arbitration panel to render decisions on the claims

before it derives solely from the parties' agreement to arbitrate.  *See* P. Fouchard, *et al.*, INT'L

COMM'L ARB., 28 (Kluwer 1999) ("The fact that the basis of arbitration is contractual is not

disputed; an arbitrator's power to resolve a dispute is founded upon the common intention of the

parties to that dispute."); W. Park, "The Arbitrability *Dicta* in *First Options v. Kaplan*: What Sort

of *Kompetenz-Kompetenz* Has Crossed the Atlantic?," 12 ARB. INT'L 137, 138 (1996) ("Unlike a

judge, who receives decision-making [power] authority from the state, ... an arbitrator's power

derives from the consent of the individuals or entities involved in a particular dispute.").  If the

agreement containing the arbitration clause (or if the clause itself) is found to be invalid, a panel

ceases to have any power to issue rulings on the merits.  Here, the Ukrainian courts have declared

that, as a matter of Ukrainian law, the Shareholders Agreement is invalid.  (*See* Exs. A and B.)

Accordingly, the Panel does not have any jurisdiction to decide Telenor Mobile's claims, and it

should dismiss this arbitration in its entirety.

Storm anticipates that Telenor Mobile will ask the Panel to disregard the April 2006 Order or to decide for itself whether the Shareholders Agreement is valid under Ukrainian law. There is, however, no reason for the Panel to take those steps. In the Orders, the Commercial Court and the Appellate Court decided issues relating to Storm's internal corporate governance and the validity of its actions under Ukrainian law. As noted above, the two courts held that the General Director of Storm acted outside his powers in executing the Shareholders Agreement and that the agreement itself did not comply with certain requirements under Ukrainian corporate law. (*See* Exs. A and B.)  Those are matters that are within the exclusive jurisdiction and expertise of the Ukrainian courts.

The arbitration clause in Section 12.01 of the Shareholders Agreement nowhere states that the Panel should decide whether Storm's representative was acting within his powers in entering into the Shareholders Agreement or whether Storm complied with the technical requirements of Ukrainian law with regard to the filing and translation of the Shareholders Agreement. Indeed, the arbitration clause is effective only if the Shareholders Agreement is valid under Ukrainian law.[7]  This Panel, therefore, is divested of jurisdiction because the Commercial Court held that Shareholders Agreement is "null and void in full, including the arbitration clause" (*see* Ex. A) and the Appellate Court affirmed this holding.  (*See* Ex. B.)

Storm also anticipates that Telenor Mobile will allege (as it has before) that the Ukrainian judicial system is somehow not fair or does not adhere to the principles of due process. As an initial matter, Telenor Mobile cannot raise this issue now because it has participated in several of the Ukrainian Actions and affirmatively invoked the power of the Ukrainian courts. It would be grossly unfair to allow Telenor Mobile to claim, after the fact, that the process was unfair. Furthermore, the record shows that the Commercial Court and the Appellate Court had proper

---

[7]     Ukrainian law applies to the question of whether the Shareholders Agreement is valid because Storm is organized under the laws of the Ukraine, which govern the Storm Charter.

jurisdiction over the subject matter and the defendant, Storm. (*See* Exs. A and B.)  To Storm's knowledge, no United States court has questioned the procedural aspects of the Ukrainian court system.  The April 2006 Order was obtained within the requirements of Ukrainian law, and without any indication of fraud.  Moreover, it was affirmed on appeal by the Appellate Court, which specifically stated that the April 2006 Order complied with the substantive and procedural laws of the Ukraine.  The Panel, therefore, should give effect to the Orders of the Ukrainian courts.[8]

The law regarding enforcement of foreign judgments supports this conclusion.  Under New York law, "a foreign judgment is conclusive upon the merits" and "[i]t can be impeached only by proof that the court in which it was rendered [did not have] jurisdiction of the subject matter of the action or of the person of the defendant, or that it was procured by means of fraud." *Johnston v. Compagnie Générale Transatlantique*, 152 N.E. 121, 122 (N.Y. 1926) (internal quotation omitted).  The courts will decline to enforce a foreign judgment only where it is held to be "against public policy to the extent that it is repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." *Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986) (internal quotation omitted).  The public policy exception to the enforcement of foreign judgments is extremely narrow.  After noting that "the standard is high, and infrequently met," the *Ackermann* court stated:  "In the classic formulation, a judgment that tends clearly to undermine public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property is against public policy." *Id.* (internal quotation omitted).  The Orders, which relate to the internal governance issues of a company organized under Ukrainian law, do not raise any of these public policy concerns and would be readily enforced by a New York court.

---

[8]    If Telenor Mobile presents expert testimony on Ukrainian law or procedure, Storm reserves the right to call a rebuttal expert.  Storm will also make such an expert available if the Panel wishes to hear testimony on these issues.

By contrast, if this Panel were to ignore the Orders and issue an award on the merits, it is almost certain that the award would not be recognized in the Ukraine.[9] As a signatory to the New York Convention, the Ukrainian courts may refuse recognition and enforcement of an award if it would be contrary to Ukrainian public policy. *See New York Convention 1958*, Article V(2)(b). The recognition of an award based on an arbitration clause that has been judged by the Ukrainian courts to be "null and void" (along with the entire agreement it is contained in, *see* Exs. A and B) would undoubtedly contravene public policy because it would undermine Ukrainian law and the authority of the Ukrainian courts. That is especially the case here, where the Orders found that the Shareholders Agreement violates the "public order" provisions in Article 228 of the Civil Code of Ukraine. (*Id.*) In short, it would be futile for the Panel to assert jurisdiction and issue an award on the merits of Telenor Mobile's claims because such an award would likely be unenforceable in the Ukraine.

## II. TELENOR MOBILE HAS WAIVED THE RIGHT TO ARBITRATE ITS CLAIM THAT STORM VIOLATED THE ARBITRATION CLAUSE IN SECTION 12.01 OF THE SHAREHOLDERS AGREEMENT

As noted above, Telenor Mobile has alleged that Storm violated the arbitration clause in Section 12.01 of the Shareholders Agreement by bringing the Ukrainian Actions. That claim should be dismissed because Telenor Mobile, by its conduct in the Ukrainian Actions, clearly waived the right to arbitrate this issue.

### A. New York Law Governs The Waiver Issue

The parties agreed in the Shareholders Agreement that New York law will apply to the substantive issues in this arbitration. (*See* Section 13.06.) That includes the issue of whether Telenor Mobile waived its right to arbitrate. But even if waiver is considered a procedural issue, New York law still controls because the law of the arbitration seat (also known as the "*lex fori*")

---

[9]    The award would have to be enforced in the Ukraine to have any binding effect on Storm or Kyivstar, which are companies organized under Ukrainian law.

applies to matters of procedure. *See, e.g.*, A. Redfern & M. Hunter, LAW & PRAC. OF INT'L COMM'L ARB., at 81 (3d ed. 1999) (stating that arbitral procedure "is governed by the law of the place in which [the arbitration] is held"). Thus, regardless of whether waiver is a substantive or procedural issue, New York law governs.

### B.    Under New York Law, Telenor Mobile Waived Its Right To Arbitrate

The New York courts have noted that "[l]ike contract rights generally, a right to arbitration may be modified, waived or abandoned." *Sherrill v. Grayco Builders, Inc.*, 475 N.E.2d 772, 775 (N.Y. 1985). There is a waiver of arbitration if a party "by [its] litigation activity manifested a preference 'clearly inconsistent with [a] later claim that the parties were obligated to settle their differences by arbitration.'" *Id.* at 775-76 (*quoting Matter of Zimmerman v. Cohen,* 139 N.E. 764, 765 (N.Y. 1923)). *See also Figueroa v. Flatbush Women's Servs.*, 664 N.Y.S.2d 118, 118 (N.Y. App. Div. 1997) (holding that a party "waived his right to arbitrate by actively participating in this litigation prior to making his belated demand for arbitration").

As discussed above, Telenor Mobile actively participated in the Ukrainian Actions. Even though Telenor Mobile now argues in its Amended Statement of Claim that the Ukrainian Actions should have been arbitrated because they are disputes or controversies within the meaning of Section 12.01 (*see* Am. Stmt. of Claim at ¶ 44), Telenor Mobile's prior conduct is completely inconsistent with such an assertion. To Storm's knowledge, Telenor Mobile never raised Section 12.01 as a defense in the Ukrainian Actions, nor did it ever seek to stay the litigation in favor of arbitration.[10] As a result, Telenor Mobile cannot claim in this matter that Storm contravened the arbitration clause in the Shareholders Agreement by initiating the Ukrainian Actions, and the Panel should dismiss Telenor Mobile's claim based on Section 12.01.

---

[10]    Telenor Mobile clearly had the right to do so. Article 8(1) of the Ukrainian Law on International Commercial Arbitration 1994 (free translation in English) states that the courts shall refer the parties to arbitration upon a request of one of them made no later than the submission of its first statement on the substance of the dispute.

## III.    TELENOR MOBILE IS ESTOPPED FROM ARBITRATING ITS CLAIM CONCERNING STORM'S NON-ATTENDANCE AT KYIVSTAR MEETINGS

Telenor Mobile should also be precluded from asserting its claim that Storm violated

Section 2.05 of the Shareholders Agreement by failing to participate in various shareholders and

Board meetings.  Telenor Mobile's claim directly and substantially overlaps with the issues of

corporate governance that were decided in the Ukrainian Actions and, in particular, in the

December 2005 Order.  Under the circumstances, the doctrine of collateral estoppel applies and

acts as a bar to Telenor Mobile's claim in this matter that Storm violated Section 2.05.

### A.    New York Law Governs The Estoppel Issue

As with the waiver issue, it is clear that New York law applies to the question of whether

Telenor Mobile's claim relating to Storm's attendance at the Kyivstar meetings is barred under

the doctrine of collateral estoppel.  The parties have expressly chosen New York law for

substantive matters and, to the extent the application of the collateral estoppel doctrine is a

procedural matter, the law of New York still controls.  (*See supra* at Part II.A.)[11]

### B.    Telenor Mobile May Not Relitigate Its Claim, Which Arises Out Of And Overlaps With The Kyivstar Corporate Governance Issues That Were Decided By The Ukrainian Courts

The policy considerations underlying the doctrine of collateral estoppel are well

established.  "[The doctrine] is based on the notion that it is not fair to permit a party to relitigate

---

[11]    Although New York law applies here, it should be noted that Ukrainian law has adopted the principles of estoppel.  For instance, Article 62 of the Ukrainian Code of Commercial Procedure prohibits a commercial court from litigating issues that have already been decided.  Likewise, Article 122 of the Ukrainian Code of Civil Procedure prohibits a general court from litigating issues that have already been decided.  More specifically, Ukrainian law requires that a defendant raise the existence of an arbitration agreement at the same time as his defense on the merits.  The Ukraine is a signatory to the European Convention on International Commercial Arbitration, which states at Article VI(1):

> "A plea as to the jurisdiction of the court made before the court seized by either party to the arbitration agreement, on the basis of the fact that an arbitration agreement exists shall, *under penalty of estoppel*, be presented by the respondent before or at the same time as the presentation of his substantial defence, depending upon whether the law of the court seized regards this plea as one of procedure or of substance."  (emphasis added)

Through the application of Article 9 of the Ukrainian Constitution, the European Convention on International Commercial Arbitration has become part of domestic Ukrainian law.

an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point. Properly utilized it also serves to conserve the resources of courts and litigants." *Gilberg v. Barbieri*, 423 N.E.2d 807, 808 (N.Y. 1981).

The New York courts have used a two-prong test for an application of the collateral estoppel doctrine. "[First,] [t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling." *Id.*, 423 N.E.2d at 809. As demonstrated below, both prongs are satisfied in this case.

### 1.    Identity And Decisiveness Of Issues

In deciding whether there is an identity of issues, the New York courts have examined the following questions from the RESTATEMENT (SECOND) OF JUDGMENTS: (1) "Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?"; (2) "Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding?"; (3) "Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?"; and (4) "How closely related are the claims involved in the two proceedings?" *Id.* at § 27 cmt. c (1982). *See also Benjamin v. Coughlin*, 905 F.2d 571, 576 (2d Cir. 1990) (applying New York law and finding "there is a 'substantial overlap' of evidence and arguments"); *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 638 (N.Y.1990) (citing comment c to Section 27 of the RESTATEMENT (SECOND) OF JUDGMENTS). *See generally Koch v. Consol. Edison Co. of N.Y.*, 468 N.E.2d 1, 4 n.2 (1984) (adopting Section 27 of RESTATEMENT (SECOND) OF JUDGMENTS). An application of the RESTATEMENT factors reveals that there is very close relationship between the December 2005 Order and Telenor Mobile's claim in this arbitration. As noted in the Statement of Defense, the Storm representatives did not attend the shareholders and Board meetings because Storm had a

good-faith belief that the governing structure of Kyivstar, as established in the Charter (and

followed in the parallel provisions of the Shareholders Agreement), violates Ukrainian law.

Therefore, the resolution of the issue raised by Telenor Mobile in this arbitration, *i.e.*, whether

Storm acted properly in instructing its representatives not to attend the meetings, depends on

whether the corporate governance provisions for Kyivstar are legal.  This issue was decided in

the action that culminated in the December 2005 Order.  Thus, an adjudication of the Telenor

Mobile's claim in this arbitration would involve the same (or at least closely related) evidence,

argument, law and facts that were involved in the December 2005 Order.[12]

The decisiveness of the issue decided in the December 2005 Order also cannot be

doubted.  The finding that the corporate governance provisions for Kyivstar violated Ukrainian

law *a fortiori* means that the actions of the Storm representatives were justified.  In other words,

the December 2005 Order provides a complete defense to Telenor Mobile's claim against Storm.

### 2.    Full And Fair Opportunity To Be Heard

This prong is easily met because Telenor Mobile had more than an "opportunity" to be

heard.  It actually contested the rulings of the Ukrainian courts and participated in the

proceedings that resulted in the December 2005 Order.  Telenor Mobile also appealed the

December 2005 Order, without success.  Accordingly, there is no need for the Panel to revisit the

decisive issue of whether the Kyivstar governing provisions are legal.

\*   \*   \*   \*   \*   \*

In sum, the December 2005 Order has collateral estoppel effect under the applicable New

York law and Telenor Mobile may not seek to relitigate issues that were implicated in the

Ukrainian Actions in which it participated.  In addition to following New York law, an order

---

[12]    The intertwined nature of the corporate governance issues before the Ukrainian courts and Telenor Mobile's
Section 205 claim here also supports a finding that, under New York law, Telenor Mobile waived the right to argue
in this matter that Storm violated Section 2.05.  Because the allegations regarding Storm's non-attendance directly

dismissing Telenor Mobile's claim would serve the salutary purpose of conserving the Panel's and the parties' resources as well as expediting the resolution of any remaining issues.

## IV.   TELENOR MOBILE'S CLAIMS ARE NOT ARBITRABLE TO THE EXTENT THAT THEY INVOLVE ISSUES OF UKRAINIAN LAW THAT MUST BE DECIDED BY UKRAINIAN COURTS

Even if the Panel decides that the doctrine of collateral estoppel does not bar Telenor Mobile's claim regarding Storm's participation in shareholders and Board meetings, it still should dismiss that claim because it turns on issues of corporate governance under Ukrainian law.  As discussed above, Telenor Mobile cannot succeed on its claim if Storm is correct that certain of the governing provisions for Kyivstar (which are established in the Kyivstar Charter) are invalid under Ukrainian law.  Such issues relating to corporations that are organized under the laws of the Ukraine should be decided, in the first instance, by Ukrainian courts.  The arbitration provision in the Shareholders Agreement is limited to the interpretation of issues involving the Shareholders Agreement pursuant to New York law.  Therefore, under the terms of the parties' agreement, the Panel should not decide issues of Ukrainian law.  Instead, the Panel should defer to the Ukrainian courts on such matters.

This argument applies with equal force to another claim made by Telenor Mobile, which is that Storm should be ordered to amend the Kyivstar Charter to conform to the Shareholders Agreement.  In the December 2005 Order, the Highest Commercial Court stated that the parties should conform the Kyivstar Charter to *Ukrainian law*; it did not require the parties to conform the Kyivstar Charter provisions to the Shareholders Agreement.  Thus, any amendments to the Kyivstar Charter would have to comply with Ukrainian law, and any dispute relating to those amendments would be within the jurisdiction of the Ukrainian courts.  The arbitration clause in

---

implicated the propriety of the meetings, it should have been raised earlier when the Ukrainian courts were deciding whether Kyivstar's governing structure comports with Ukrainian law.

the Shareholders Agreement simply does not grant the Panel the power to decide whether the

Kyivstar Charter is in accordance with Ukrainian law.

## Conclusion

For the reasons set forth above, Storm respectfully requests that the Panel dismiss this

arbitration, in its entirety, based on the Orders of the Ukrainian courts.

In the alternative, Storm respectfully requests that the Panel rule that:

1.  Telenor Mobile waived the right to arbitrate its claims that (a) Storm violated
    Section 12.01 of the Shareholders Agreement by bringing the Ukrainian Actions;
    and (b) Storm violated Section 2.05 of the Shareholders Agreement by not
    participating in the shareholders and Board meetings of Kyivstar;

2.  Telenor Mobile is estopped from asserting its claim that Storm violated Section
    2.05 of the Shareholders Agreement by not participating in the shareholders and
    Board meetings of Kyivstar; and

3.  It has no jurisdiction over Telenor Mobile's claims that (a) Storm violated Section
    2.05 of the Shareholders Agreement by not participating in the shareholders and
    Board meetings of Kyivstar; and (b) Storm should be ordered to conform the
    Kyivstar Charter to the Shareholders Agreement because those claims involve the
    interpretation of the Kyivstar Charter under Ukrainian law.

Storm also respectfully requests that the Panel (a) award Storm its costs and

disbursements incurred in this proceeding, including its reasonable attorneys' and any experts'

fees, in accordance with Article 38 of the UNCITRAL arbitration rules; and (b) award Storm

such other and further relief as the Panel deems just and proper.

14

Dated: June 5, 2006

LOVELLS

By: _Joe Cyr /pvt_

Joe Cyr
Pieter Van Tol
Eric Z. Chang

590 Madison Avenue
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0660

Attorneys for Storm LLC

# Exhibit A



# KYIV COMMERCIAL COURT

44-B Bogdana Khmelnytskogo Street, Kyiv 01030   Tel.: 486-65-72

## DECISION
### IN THE NAME OF UKRAINE

№40/242                                                                                           25.04.2006

**Under the claim of:** Alpren Limited, Legal entity under the laws of Cyprus Republic

**against:**                  Limited liability company "Storm"
**RE:**                         recognition of certain actions as unlawful and their termination

**The Judge: Smirnova L.G.**

**Representatives:**
Of the plaintiff: Marchenko R.V., representative acting on the basis of the Power of Attorney (unnumbered), dated April 5, 2006
Of the defendant: Klimenko V.V., Director General acting on the basis of the Minutes, dated February 8, 2006

### FACTUAL BACKGROUND:

The Plaintiff filed a claim to recognize as unlawful the actions of the Defendant related to the execution of the Shareholder Agreement, dated January 30, 2004, and to terminate the actions of the Defendant related to its performance under the said agreement. During the case hearing, the Plaintiff has extended its statements of claim and asks to recognize as unlawful the actions of the Defendant related to the execution of the Shareholders Agreement, dated January 30, 2004, and the Voting Agreement, dated September 2, 2002, and to terminate the actions of the Defendant related to its performance under the said agreements.

By its Ruling, dated April 14, 2006, the Kyiv Commercial Court initiated court proceedings in the case, and the court hearing was scheduled for April 21, 2006.

At the court sitting of April 21, 2006 the case hearing was adjourned until April 25, 2006.

The Defendant submitted no statement of defense to the statement of claim.

The Plaintiff's representative, present at the court sitting, sustained the above statements of claim and asked the court to allow the claim in full.

The Defendant's representative denied the claim and asked the court to disallow it.

[round seal of the Clerk's Office No.1 of the Kyiv                [stamp: A TRUE COPY]
Commercial Court]

Having studied the case papers and having heard the arguments of the parties' representatives, the Kyiv Commercial Court, -

### DETERMINED AS FOLLOWS:

Pursuant to Article 124 of the Constitution of Ukraine, the jurisdiction of the courts extends to all legal relations that arise in the State. Pursuant to Article 12 of the Commercial Procedural Code of Ukraine, commercial courts are competent to adjudicate in cases involving disputes arising in connection with execution, amendment, termination or performance of commercial agreements or otherwise, unless the parties refer the dispute for settlement to the court of arbitration (arbitration tribunal). The case papers reveal that the dispute in question has not been referred for settlement to the court of arbitration (arbitration tribunal) and is, therefore, within the jurisdiction of the commercial courts of Ukraine.

The Defendant is a limited liability company existing under the laws of Ukraine and its Charter.

The Plaintiff is one of the Defendant's participants holding 49.9 percent of votes. The Plaintiff, as the Defendant's participant, is entitled to participate in the management of the Defendant.

The Defendant's operations were and are managed by its bodies authorized by the Charter and the laws of Ukraine. Its current business operations are managed by its executive body – the Director General. Pursuant to Article 145 of the Civil Code of Ukraine, powers of the Defendant's Director General and their limitations are defined in Article 12 of the Defendant's Charter.

On September 9, 2002 the Defendant, as represented by its Director General, entered into the Voting Agreement between Telenor Mobile Communications AS and Storm Limited Liability Company. The said agreement bound the Defendant to purchase shares of Closed Joint Stock Company "Kyivstar G.S.M." on certain conditions (Clause 2.04(b)). Pursuant to the Defendant's Charter (Article 12), as in effect at the time of execution of the Voting Agreement, the Director General was authorized to sign the said agreement only upon approval by the Meeting of Participants, unless otherwise agreed between the participants. The court established that the Defendant's Meeting of Participants did not approve the above agreement, that there existed no other arrangements between the Defendant's participants other than those stipulated in its constituent documents, and that there was no evidence to suggest that the agreement was approved by the Defendant at any time later.

Therefore, having signed the Voting Agreement and actually trying to administer the Defendant's funds, the Defendant's Director General acted unlawfully and in excess of its powers, in violation of requirements of the laws of Ukraine, in particular, Article 145 of the Civil Code of Ukraine, and provisions of the Defendant's Charter.

On January 30, 2004 the Defendant, as represented by its Director General, entered into the Shareholders Agreement between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company. The said agreement bound the Defendant to purchase shares of "Kyivstar G.S.M." CJSC on certain conditions (Clause 2.03(b)(i)). Pursuant to the Defendant's Charter (Article 12), as in effect at the time of execution of the Shareholders Agreement, the Director General was authorized to sign the said agreement only upon approval by the Meeting of Participants, unless otherwise agreed between

[round seal of the Clerk's Office No.1 of the Kyiv Commercial Court]                    [stamp: A TRUE COPY]

the participants. The court established that the Defendant's Meeting of Participants did not approve the above agreement, that there existed no other arrangements between the Defendant's participants other than those stipulated in the constituent documents, and that there was no evidence to suggest that the agreement was approved by the Defendant at any time later.

Therefore, having signed the Shareholders Agreement and actually trying to administer the Defendant's funds, the Defendant's Director General acted unlawfully and in excess of its powers, in violation of requirements of the laws of Ukraine, in particular, Article 145 of the Civil Code of Ukraine, and provisions of the Defendant's Charter.

Pursuant to Article 228 of the Civil Code of Ukraine, a transaction is considered as such that violates public order, in particular, where it was aimed at illegal seizure of property of a legal entity. In view of the fact that the Voting Agreement, dated September 2, 2002, and the Shareholders Agreement, dated January 30, 2004, are aimed at illegal seizure of the Defendant's funds, the court concludes that, pursuant to Article 215 and Article 228 of the Civil Code of Ukraine, the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and Storm Limited Liability Company, and the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company, should be rendered null and void in full, including the arbitration clause, from the time of their execution.

Pursuant to Article 216 of the Civil Code of Ukraine, an invalid transaction does not entail any legal consequences, except for those related to its invalidity. Any concerned person has the right to require to apply the consequences of invalidity of a void transaction.

Therefore, the court concludes that there are no legal grounds for the Defendant to take any actions for the purpose of performance under the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and Storm Limited Liability Company, and the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company, and the court further concludes that any such actions must be terminated.

The court also takes into account the fact that the Voting Agreement and the Shareholders Agreement, being actually partial changes and amendments to the Charter of "Kyivstar G.S.M." CSJC, are not duly registered and are executed in English, contrary to the requirements of the public law as to the state language, as provided in Article 10 of the Constitution of Ukraine, and therefore, the above agreements violate the requirements of Article 203 of the Civil Code of Ukraine, and this fact even alone allows to invalidate the said agreements.

Subject to the foregoing and being governed by Articles 49, 82 – 85 of the Commercial Procedural Code of Ukraine, the court, -

### RESOLVES AS FOLLOWS:

1. To allow the claim partially.

2. To render unlawful the actions of the "Storm" Limited Liability Company related to the execution of the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and "Storm" Limited Liability Company.

3. To render unlawful the actions of the "Storm" Limited Liability Company related to the execution of the Shareholders Agreement, dated January 30, 2004, entered between Telenor

[round seal of the Clerk's Office No.1 of the Kyiv Commercial Court]                    [stamp: A TRUE COPY]

Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company.

4. To apply the consequences of invalidity of the void transaction – the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and Storm Limited Liability Company – and terminate the actions of the "Storm" Limited Liability Company related to performance under the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and "Storm" Limited Liability Company.

5. To apply the consequences of invalidity of the void transaction – the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company – and terminate the actions of the "Storm" Limited Liability Company related to performance under the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, "Storm" Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company.

6. To collect the following amounts from "Storm" Limited Liability Company (1 Narodnogo Opolchennya Street, Kyiv 01001, c/a 26000100675001 opened with Alfa-Bank CJSC, USREOU[1] Code 23163325, MFO 300346) for the benefit of Alpren Limited, Legal entity under the laws of Cyprus Republic: UAH 85.00 (eighty five) of the state duty and UAH 118.00 (one hundred eighteen) of the costs of services related to the technical and information support of the court proceedings.

7. To issue an appropriate order.

This decision shall come into legal force ten days after its adoption.

**The Judge**                                                    **Smirnova L.G.**

[*handwritten:* Secretary [signature]]

---

[1] the Unified State Register of Enterprises and Organizations of Ukraine

[round seal of the Clerk's Office No.1 of the Kyiv Commercial Court]                    [stamp: A TRUE COPY]



# ГОСПОДАРСЬКИЙ СУД міста КИЄВА

01030, м.Київ, вул.Б.Хмельницького,44-Б    тел.486-65-72

## Р І Ш Е Н Н Я
### ІМЕНЕМ УКРАЇНИ

**№40/242**                                                                    **25.04.2006**

**За позовом**     Альпрен Лімітед, Юридична особа за законодавством
                Республіки Кіпр
**до**          Товариства з обмеженою відповідальністю "Сторм"
**про**         визнання дій незаконними та припинення дій

**Суддя Смірнова Л.Г.**

**Представники:**
**Від позивача:**     Марченко Р.В., представник за довіреністю б/н
                    від 05.04.2006
**Від відповідача:**  Клименко В.В. – Генеральний директор, протокол
                    від 08.02.2006

## ОБСТАВИНИ СПРАВИ:

Позивач звернувся з позовом про визнання незаконними дій по підписанню та припинення дій по виконанню Відповідачем Акціонерної угоди, датованої 30.01.2004 року. Під час розгляду справи Позивач збільшив позовні вимоги, та просить визнати незаконними дії по підписанню та припинити дії по виконанню Відповідачем Акціонерної угоди, датованої 30.01.2004 року та Договору про голосування, датованого 02.09.2002 року.

Ухвалою Господарського суду міста Києва від 14.04.2006 порушено провадження у справі, розгляд справи призначено на 21.04.2006.

У судовому засіданні 21.04.2006 було оголошено перерву до 25.04.2006.

Відповідач відзиву на позовну заяву не подав.

Присутній у судовому засіданні представник Позивача позовні вимоги підтримав, просив задовольнити позов в повному обсязі.

Представник Відповідача проти позову заперечив, просив в його

Розглянувши матеріали справи та заслухавши пояснення представників сторін, Господарський суд міста Києва, - ·

## ВСТАНОВИВ:

Згідно зі ст.124 Конституції України юрисдикція судів поширюється на всі правовідносини, що виникають у державі. Відповідно до ст.12 Господарського процесуального кодексу України господарським судам підвідомчі справи у спорах, що виникають при укладенні, зміні, розірванні і виконанні господарських договорів та з інших підстав, якщо сторони не передали спір на вирішення третейського суду (арбітражу). З матеріалів справи вбачається, що даний спір на вирішення третейському суду (арбітражу) не переданий, отже він підвідомчій господарським судам України.

Відповідач є товариством з обмеженою відповідальністю, яке діє на підставі законодавства України та статуту.

Позивач є одним із учасників Відповідача, якому належить 49,9 відсотків голосів. Позивачу, як учаснику Відповідача, належить право на участь в управлінні Відповідачем.

Керівництво діяльністю Відповідача здійснювалось та здійснюється його органами, повноваження яких визначені в Статуті, а також законодавством України. Поточною діяльністю керує виконавчий орган – генеральний директор. Повноваження генерального директора Відповідача та обмеження його повноважень, у відповідності до ст.145 Цивільного кодексу України, визначені в ст.12 Статуту Відповідача.

02.09.2002 року Відповідачем в особі генерального директора було підписано Договір про голосування між Теленор Мобайл Комьюнікешнз АС та Товариством з обмеженою відповідальністю "Сторм". Вказаним договором встановлено обов'язок по придбанню Відповідачем акцій "Київстар Дж.Ес.Ем." за певних умов (п.2.04, b). У відповідності до Статуту Відповідача (ст.12) в редакції, що діяла на момент підписання Договору про голосування, генеральний директор мав право підписувати вказаний договір тільки після затвердження зборами учасників, якщо не існує іншої домовленості між учасниками. Судом встановлено, що зборами учасників Відповідача вказаний договір не затверджувався, будь-яких інших домовленостей між учасниками Відповідача, крім визначених в установчих документах, не існувало, докази його наступного схвалення Відповідачем відсутні.

Таким чином, підписуючи вказаний Договір про голосування та фактично намагаючись розпорядитися грошовими коштами Відповідача, генеральний директор Відповідача діяв незаконно, з перевищенням своїх повноважень, порушуючи вимоги законодавства України, зокрема ст.145 Цивільного кодексу України, та статуту Відповідача.

Товариством з обмеженою відповідальністю "Сторм" та Закритим акціонерним товариством "Київстар Дж.Ес.Ем.". Вказаною угодою встановлено обов'язок по придбанню Відповідачем акцій ЗАТ "Київстар Дж.Ес.Ем." за певних умов (п.2.03, b. i). У відповідності до Статуту Відповідача (ст.12) в редакції, що діяла на момент підписання Акціонерної угоди, генеральний директор мав право підписувати вказану угоду тільки після затвердження зборами учасників, якщо не існує іншої домовленості між учасниками. Судом встановлено, що зборами учасників Відповідача вказана угода не затверджувалась, будь-яких інших домовленостей між учасниками Відповідача, крім визначених в установчих документах, не існувало, докази її наступного схвалення Відповідачем відсутні.

Таким чином, підписуючи вказану Акціонерну угоду та фактично намагаючись розпорядитися грошовими коштами Відповідача, генеральний директор Відповідача діяв незаконно, з перевищенням своїх повноважень, порушуючи вимоги законодавства України, зокрема ст.145 Цивільного кодексу України, та статуту Відповідача.

Згідно зі ст.228 Цивільного кодексу України правочин вважається таким, що порушує публічний порядок, якщо, зокрема, він спрямований на незаконне заволодіння майном юридичної особи. Оскільки Договір про голосування від 02.09.2002 та Акціонерна угода від 30.01.2004 спрямовані на незаконне заволодіння грошовими коштами Відповідача суд приходить до висновку, що Договір про голосування від 02.09.2002 року між Теленор Мобайл Комьюнікешнз АС та Товариством з обмеженою відповідальністю "Сторм" є нікчемним правочином, також нікчемним правочином є Акціонерна угода від 30.01.2004 року між Теленор Мобайл Комьюнікешнз АС, Товариством з обмеженою відповідальністю "Сторм" та Закритим акціонерним товариством "Київстар Дж.Ес.Ем." згідно зі ст.215, 228 Цивільного кодексу України в повному обсязі, включаючи арбітражне застереження з моменту їх вчинення.

Відповідно до ст.216 Цивільного кодексу України недійсний правочин не створює юридичних наслідків, крім тих, що пов'язані з його недійсністю. Будь-яка заінтересована особа має право пред'явити вимогу про застосування наслідків недійсності нікчемного правочину.

Таким чином суд приходить до висновку про відсутність будь-яких правових підстав для вчинення Відповідачем дій по виконанню Договору про голосування від 02.09.2002 року між Теленор Мобайл Комьюнікешнз АС та Товариством з обмеженою відповідальністю "Сторм" та Акціонерної угоди від 30.01.2004 року між Теленор Мобайл Комьюнікешнз АС, Товариством з обмеженою відповідальністю "Сторм" та Закритим акціонерним товариством "Київстар Дж.Ес.Ем." та про необхідність зупинення цих дій.

Також суд враховує, що Договір про голосування та Акціонерна угода,

публічно-правової норми про державну мову, що міститься в ст.10 Конституції України, викладені англійською мовою, отже не відповідаючи вимогам ст.203 Цивільного кодексу України є самостійно вже достатніми підставами для визнання їх недійсними.

Виходячи з наведеного та керуючись ст.ст. 49, 82 – 85 ГПК України, суд

**ВИРІШИВ:**

1.    Позов задовольнити повністю.

2.    Визнати незаконними дії Товариства з обмеженою відповідальністю "Сторм" по підписанню Договору про голосування від 02.09.2002 року між Теленор Мобайл Комьюнікешнз АС та Товариством з обмеженою відповідальністю "Сторм".

3.    Визнати незаконними дії Товариства з обмеженою відповідальністю "Сторм" по підписанню Акціонерної угоди від 30.01.2004 року між Теленор Мобайл Комьюнікешнз АС, Товариством з обмеженою відповідальністю "Сторм" та Закритим акціонерним товариством "Київстар Дж.Ес.Ем."

4.    Застосувати наслідки недійсності нікчемного правочину - Договору про голосування від 02.09.2002 року між Теленор Мобайл Комьюнікешнз АС та Товариством з обмеженою відповідальністю "Сторм" та припинити дії Товариства з обмеженою відповідальністю "Сторм" по виконанню Договору про голосування від 02.09.2002 року між Теленор Мобайл Комьюнікешнз АС та Товариством з обмеженою відповідальністю "Сторм".

5.    Застосувати наслідки недійсності нікчемного правочину - Акціонерної угоди від 30.01.2004 року між Теленор Мобайл Комьюнікешнз АС, Товариством з обмеженою відповідальністю "Сторм" та Закритим акціонерним товариством "Київстар Дж.Ес.Ем." та припинити дії Товариства з обмеженою відповідальністю "Сторм" по виконанню Акціонерної угоди від 30.01.2004 року між Теленор Мобайл Комьюнікешнз АС, Товариством з обмеженою відповідальністю "Сторм" та Закритим акціонерним товариством "Київстар Дж.Ес.Ем.".

6.    Стягнути з Товариства з обмеженою відповідальністю "Сторм" (01001, м.Київ, вул.Народного ополчення,1, п/р 26000100675001 в ЗАТ "Альфа-Банк", код ЄДРПОУ 23163325, МФО 300346) на користь Юридичної особи за законодавством Республіки Кіпр "Альпрен Лімітед" (Alpren Limited) 85(вісімдесят п'ять)грн.00коп – державного мита та 118(сто вісімнадцять)грн.00коп. – витрат на оплату послуг з інформаційно-технічного забезпечення судового процесу.

7.    Видати наказ.

Рішення набирає законної сили після закінчення десятиденного строку з дня його прийняття.

# Exhibit  B

## KYIV APPELLATE COMMERCIAL COURT

8 Rylsky Prov., Kyiv 01025

### RULING
### IN THE NAME OF UKRAINE

**No. 40/242**                                                    **May 25, 2006**

**The Kyiv Appellate Commercial Court** composed of the following Panel of Judges:
Presiding Judge:        V.O. Zelenin
Judges:                 L.O. Repina and S.O. Aldanova

**With the following representatives of the parties participating:**
For the claimant:       M.I. Illiashev, by proxy.
For the respondent:     V.V. Klymenko, General Director.

    **Having examined the petition of appeal filed by:** Storm Limited Liability Company
(LLC) against the decision, dated April 25, 2006 of the Kyiv Commercial Court,
**on case No.:** 40/242 (Judge L.G. Smirnova),
**based on the claim filed by:** Alpren Limited, a legal entity under legislation of the Republic of
Cyprus,
**against:** Storm LLC,
**for:** holding unlawful and terminating the actions,

### DETERMINED THE FOLLOWING:

    By decision, dated April 25, 2006 of the Kyiv Commercial Court on case No. 40/242, the
claim of Alpren Limited, a legal entity under legislation of the Republic of Cyprus, against
Storm LLC for holding unlawful and terminating the actions was allowed.

    Being in disagreement with the decision made, the respondent filed its petition of appeal
and requested that the decision be cancelled, as it believes that the decision was made in
violation of procedural law rules. In the respondent's opinion, the Kyiv Commercial Court was to
refuse accepting the statement of claim on the basis of Article 62 of the Commercial Procedure
Code of Ukraine, since the statement was not examinable by Ukrainian commercial courts.

    By resolution, dated May 19, 2006 of the Kyiv Appellate Commercial Court, appellate
proceedings on case No. 40/242 were instituted and the hearing was scheduled for May 25, 2006.

    Having studied the materials before it, having reviewed the petition of appeal and having
heard presentations of the appearing representatives of the parties, the Kyiv Appellate
Commercial Court determined the following.

    The Claimant is one of the participants of the Respondent and holds 49.9 percent of
votes. As participant of the Respondent, the Claimant is entitled to participate in management of
the Respondent.

    The Respondent is a limited liability company acting on the basis of Ukrainian legislation
and the Charter.

    The Respondent's operations were managed and are managed by its bodies. Powers of
each governance body are set forth in Ukrainian legislation and the Charter.

1

Under the Charter, the Respondent's day-to-day activities are managed by the General Director, whose authorities are specified in Article 12 of the Respondent's Charter.

As appears from the case materials, on September 2, 2002, the Respondent as represented by its General Director signed the Voting Agreement between Telenor Mobile Communications AS and Storm Limited Liability Company.

Pursuant to the said Agreement (Clause 2.04(b)), the Respondent was to purchase Kyivstar GSM shares subject to specific terms and conditions. Under the Respondent's Charter (Article 12) as amended at the time the Voting Agreement was signed, the Respondent's General Director was only authorized to sign that Agreement after it was approved by participants' meeting, unless otherwise agreed between the participants.

The first instance court determined that meeting of the Respondent's participants did not approve the said Agreement and that there were no other agreements between the Respondent's participants than those specified in the constituent documents; no evidence existed that the Respondent subsequently approved such Agreement.

The Panel of Judges agrees with the first instance court finding that, by signing the Voting Agreement, the Respondent's General Director actually sought to dispose of the Respondent's funds and acted unlawfully, in excess of his authority and in violation of requirements of Ukrainian legislation, in particular, Article 145 of the Civil Code of Ukraine and the Respondent's Charter.

Therefore, also valid is the local commercial court finding that, since the Voting Agreement, dated September 2, 2002 between Telenor Mobile Communications AS and Storm Limited Liability Company is meant to illegally take possession of the Respondent's funds, such Agreement is a null and void instrument, in its entirety, including its arbitration clause and since its execution, under Article 228 of the Civil Code of Ukraine as one breaching public order.

On January 30, 2004, the Respondent as represented by its General Director signed the Shareholders' Agreement between Telenor Mobile Communications AS, Storm Limited Liability Company and Kyivstar GSM Closed Joint Stock Company. Pursuant to the said agreement (Clause 2.03(b)(i)), the Respondent was to purchase Kyivstar GSM shares subject to specific terms and conditions.

Under the Respondent's Charter (Article 12) as amended at signing the Shareholders' Agreement, the General Director was only authorized to sign that agreement after it was approved by participants' meeting, unless otherwise agreed between the participants.

The first instance court determined that meeting of the Respondent's participants did not approve the said agreement and that there were no other agreements between the Respondent's participants than those specified in the constituent documents; no evidence existed that the Respondent subsequently approved such agreement.

The Panel of Judges agrees with the first instance court finding that, by signing the said Shareholders' Agreement, the General Director actually sought to dispose of the Respondent's funds and acted unlawfully in excess of his authority and in violation of requirements of Ukrainian legislation, in particular, Article 145 of the Civil Code of Ukraine and the Respondent's Charter.

Therefore, also valid is the local commercial court finding that, since the Shareholders' Agreement, dated January 30, 2004 is meant to illegally take possession of the Respondent's

2

funds, such agreement is null and void instrument, in its entirety, including its arbitration clause and since its execution, under Article 228 of the Civil Code of Ukraine as one breaching public order.

The Panel of Judges agrees with the first instance court finding that there are no legal grounds for the Respondent to act in pursuance of the Voting Agreement of September 2, 2002 between Telenor Mobile Communications AS and Storm Limited Liability Company and the Shareholders' Agreement of January 30, 2004 between Telenor Mobile Communications AS, Storm Limited Liability Company and Kyivstar GSM Closed Joint Stock Company, and that those actions are to be terminated.

With regard to the appellant's assertion that the Kyiv Commercial Court was to refuse accepting the statement of claim on the basis of Article 62 of the Commercial Procedure Code of Ukraine, as the statement is not examinable by Ukrainian commercial courts, the Panel of Judges deems it advisable to mention the following.

Under Article 12 of the Commercial Procedure Code of Ukraine, commercial courts have jurisdiction over cases based on disputes that arise in the process of executing, modifying, terminating and fulfilling economic agreements, as well as for other reasons, unless the parties have referred the dispute for settlement to arbitral tribunal (arbitration). This dispute was not referred to arbitral tribunal (arbitration); therefore, it falls within the jurisdiction of Ukrainian commercial courts. Moreover, under Article 124 of the Constitution of Ukraine, courts have jurisdiction over all legal relations that arise in the state.

Considering the foregoing, the Panel of Judges is of the opinion that the decision dated April 25, 2006 of the Kyiv Commercial Court on case No. 40/242 is in line with the court materials and applicable legislation; hence, there are no grounds to modify or cancel the same.

Being guided by Articles 99, 101, 103 and 105 of the Commercial Procedure Code of Ukraine, the Kyiv Appellate Commercial Court, -

### RULED AS FOLLOWS:

1.  To leave the petition of appeal as filed by Storm Limited Liability Company against the decision dated April 25, 2006 of the Kyiv Commercial Court on case No. 40/242 unallowed.

2.  To leave the decision, dated April 25, 2006 of the Kyiv Commercial Court on case No. 40/242 without any changes.

3.  To return the materials of case No. 40/242 to the Kyiv Commercial Court.


**Presiding Judge**                                         **V.O. Zelenin**

**Judges:**                                                 **S.O. Aldanova**

                                                            **L.O. Repina**


[Stamp 'Conforms to the Original'; secretary's signature]

3



# КИЇВСЬКИЙ АПЕЛЯЦІЙНИЙ ГОСПОДАРСЬКИЙ СУД

01025, м. Київ, пров. Рильський, 8

ПОСТАНОВА
ІМЕНЕМ     УКРАЇНИ

№ 40/242                                                                25. 05. 2006 р.

**Київський апеляційний господарський суд** у складі колегії суддів:
Головуючого судді – Зеленін В. О.
Суддів: Рєпіна Л. О., Алданова С. О.

**За участю представників сторін:**
Від позивача –Ілляшев М. І. – по довіреності.
Від відповідача – Клименко В. В. – Генеральний директор.

**Розглянувши апеляційну скаргу** Товариства з обмеженою відповідальністю (ТОВ) "Сторм" на рішення Господарського суду м. Києва від 25.04.2006 року
**у справі** № 40/242 (суддя Смірнова Л. Г.)
**за позовом** Альпрен Лімітед, юридична особа за законодавством Республіки Кіпр
**до** ТОВ "Сторм"
**про визнання дій незаконними та припинення дій.**

ВСТАНОВИВ :

Рішенням Господарського суду м. Києва від 25.04.2006 року у справі №40/242 позов Альпрен Лімітед, юридична особа за законодавством Республіки Кіпр до ТОВ "Сторм" про визнання дій незаконними та припинення дій був задоволений.

Не погоджуючись з прийнятим рішенням, відповідач звернувся з апеляційною скаргою, просить його скасувати, оскільки вважає, що воно було прийняте з порушенням норм процесуального права. На думку відповідача, Господарський суд м. Києва був зобов'язаний відмовити у прийнятті позовної заяви на підставі ст. 62 Господарського процесуального кодексу України, оскільки вона не підлягала розгляду в господарських судах України.

Ухвалою Київського апеляційного господарського суду від 19.05.2006 року було порушене апеляційне провадження у справі № 40/242, розгляд справи був призначений на 25.05.2006 року.

Дослідивши матеріали справи, розглянувши апеляційну скаргу, заслухавши пояснення присутніх представників сторін, Київським апеляційним господарським судом встановлено наступне.

Позивач є одним із учасників Відповідача, якому належить 49,9 відсотків голосів. Позивачу як учаснику Відповідача, належить право на участь в управлінні Відповідачем.

Відповідач є товариством з обмеженою відповідальністю, яке діє на підставі законодавства України та Статуту.

Керівництво діяльністю Відповідача здійснювалось та здійснюється його органами. Повноваження кожного органу управління встановлені законодавством України та Статутом.

Згідно Статуту керівництво поточною діяльністю Відповідача здійснюється генеральним директором, повноваження якого визначені в ст. 12 Статуту Відповідача.

Як вбачається з матеріалів справи, 02.09.2002 року Відповідачем в особі генерального директора було підписано Договір про голосування між Теленор Мобайл Комьюнікешнз АС та Товариством з обмеженою відповідальністю "Сторм".

Згаданим вище Договором (п. 2.04, b) встановлено обов'язок по придбанню Відповідачем акцій "Київстар Дж.Ес.Ем." за певних умов. У відповідності до Статуту Відповідача (ст. 12) в редакції, що діяла на момент підписання Договору про голосування, генеральний директор Відповідача був наділений повноваженнями підписувати згаданий Договір лише після затвердження зборами учасників, якщо не існує іншої домовленості між учасниками.

Судом першої інстанції було встановлено, що зборами учасників Відповідача згаданий Договір не затверджувався, будь-яких інших домовленостей між учасниками Відповідача, крім визначених в установчих документах, не існувало, докази його наступного схвалення Відповідачем відсутні.

Колегія погоджується з висновком суду першої інстанції про те, що підписуючи Договір про голосування генеральний директор Відповідача фактично намагався розпорядитися грошовими коштами Відповідача, та діяв незаконно, з перевищенням своїх повноважень, порушуючи вимоги законодавства України, зокрема, ст. 145 Цивільного Кодексу України та статуту Відповідача.

Таким чином, обгрунтованим є також висновок місцевого господарського суду про те, що оскільки Договір про голосування від 02.09.2002 року між Теленор Мобайл Комьюнікешнз АС та Товариством з обмеженою відповідальністю "Сторм" спрямований на незаконне заволодіння грошовими коштами Відповідача, то він є нікчемним правочином згідно ст. 228 Цивільного Кодексу України, як правочин, що порушує публічний порядок, в повному обсязі, включаючи арбітражне застереження з моменту його вчинення.

30.01.2004 року Відповідачем в особі генерального директора було підписано Акціонерну угоду між Теленор Мобайл Комьюнікешнз АС, Товариством з обмеженою відповідальністю "Сторм" та Закритим акціонерним товариством "Київстар Дж.Ес.Ем.". Вказаною угодою (п. 2.03, b. i) було встановлено обов'язок по придбанню Відповідачем акцій ЗАТ "Київстар Дж.Ес.Ем." за певних умов.

Згідно Статуту Відповідача (ст. 12) в редакції, що діяла на момент підписання Акціонерної угоди, генеральний директор був наділений повноваженнями підписувати вказану угоду тільки після затвердження зборами учасників, якщо не існує іншої домовленості між учасниками.

Судом першої інстанції було встановлено, що вище згадана угода не затверджувалась зборами учасників Відповідача, будь-яких інших домовленостей між учасниками Відповідача, крім визначених в установчих документах, не існувало, докази її наступного схвалення Відповідачем відсутні.

Колегія погоджується з висновком суду першої інстанції про те, що підписуючи вказану Акціонерну угоду генеральний директор фактично намагався розпорядитись грошовими коштами Відповідача, та діяв незаконно, з перевищенням своїх повноважень, порушуючи вимоги законодавства України, зокрема, ст. 145 Цивільного Кодексу України та Статуту Відповідача.

Таким чином, обгрунтованим є також висновок місцевого господарського суду про те, що оскільки Акціонерна угода від 30.01.2004 року спрямована на незаконне заволодіння грошовими коштами Відповідача, то вона є нікчемним правочином згідно ст. 228 Цивільного Кодексу України, як правочин, що порушує публічний порядок, в повному обсязі, включаючи арбітражне застереження, з моменту її вчинення.

Колегія погоджується з висновком місцевого господарського суду про те, що правові підстави для вчинення Відповідачем дій по виконанню Договору про голосування від 02.09.2002 року між Теленор Мобайл Комьюнікешнз АС та Товариством з обмеженою відповідальністю "Сторм" та Акціонерної угоди від 30.01.2004 року між Теленор Мобайл Комьюнікешнз АС, Товариством з обмеженою відповідальністю "Сторм" та Закритим

акціонерним товариством "Київстар Дж.Ес.Ем." – відсутні, а також про необхідність зупинення цих дій.

Що стосується твердження скаржника про те, що Господарський суд м. Києва був зобов'язаний відмовити у прийнятті позовної заяви на підставі ст. 62 Господарського процесуального кодексу України, оскільки вона не підлягала розгляду в господарських судах України, то колегія вважає за доцільне зазначити наступне.

Згідно ст. 12 Господарського процесуального кодексу України, господарським судам підвідомчі справи у спорах, що виникають при укладенні, зміні, розірванні і виконанні господарських договорів та з інших підстав, якщо сторони не передали спір на вирішення третейського суду (арбітражу). На вирішення третейському суду (арбітражу) даний спір не передавався, тому він підвідомчій господарським судам України. Крім того, статтею 124 Конституції України встановлено, що юрисдикція судів поширюється на всі правовідносини, що виникають у державі.

Враховуючи викладене вище, судова колегія вважає, що рішення Господарського суду м. Києва від 25.04.2006 року у справі № 40/242 відповідає матеріалам справи та чинному законодавству, а тому підстави для його зміни чи скасування відсутні.

Керуючись ст. ст. 99, 101, 103, 105 Господарського процесуального Кодексу України, Київський апеляційний господарський суд, -

## П О С Т А Н О В И В :

1. Апеляційну скаргу Товариства з обмеженою відповідальністю "Сторм" на рішення Господарського суду м. Києва від 25.04.2006 року у справі № 40/242 – залишити без задоволення.
2. Рішення Господарського суду м. Києва від 25.04.2006 року у справі № 40/242 – залишити без змін.
3. Матеріали справи № 40/242 повернути Господарському суду м. Києва.

**Голова колегії, суддя**                        **Зеленін В. О.**

**Судді:**                                       **Алданова С. О.**

                                               **Рєпіна Л. О.**

# Exhibit  C

# THE HIGHEST COMMERCIAL COURT OF UKRAINE

## RULING
## IN THE NAME OF UKRAINE

December 22, 2005                                                                 No. 46/501

The Highest Commercial Court of Ukraine, sitting as a chamber composed of:

Presiding Judge     V. V. Semchuk
Judges     H. V. Savenko
    I. P. Khodakivska

having considered
the cassation appeal of     Storm Limited Liability Company
against the decision of Kyiv City Commercial Court of October 12, 2005 and
the ruling of Kyiv City Commercial Court of Appeal of November 11, 2005
in the case     No. 46/501
under the claim of     Storm Limited Liability Company (hereinafter Storm LLC)
against     Closed Joint-Stock Company "Kyivstar G.S.M." (hereinafter CJSC "Kyivstar")
    Telenor Mobile Communications AS (hereinafter Telenor)
about     invalidation of charter provisions
with participation of representatives of
the plaintiff: T. O. Tertychnyi, S. V. Avramenko, O. V. Poliak;
the defendants: did not appear;

### determined:

Storm LLC applied to the Kyiv City Commercial Court with a claim against CJSC "Kyivstar" and Telenor to invalidate the provisions of CJSC "Kyivstar" Charter of April 27, 2004, specifically Paragraph 9.1 of Article 9 and Paragraph 10.3 of Article 10 in the part establishing the election procedure of CJSC "Kyivstar" President, as well as to invalidate the decisions of Shareholders Meetings of CJSC "Kyivstar" in the part of appointment of the Board members – Paragraph 6 of the Minutes No. 30 of April 27, 2004 and Paragraph 2 of the Minutes No. 32 of January 11, 2005.

The claim was entirely dismissed by the decision of Kyiv City Commercial Court of October 12, 2005 (judges – S.V. Shabunin, T. Y. Trofimenko, I.V. Usatenko).

The decision of the local commercial court was affirmed by the decision of the Kyiv City Commercial Court of Appeal of November 11, 2005 (judges V.V. Andryenko, M.M. Maletych, V.I. Studenets).

Storm LLC appealed to the Highest Commercial Court of Ukraine requesting to repeal the decision of the local and the ruling of the commercial court of appeal since they have breached material law, and to deliver a new decision that will invalidate Paragraph 9.1 of Article 9 of the Closed Joint-Stock Company "Kyivstar G.S.M." Charter in the part establishing the election procedure of the Members of the Board and decisions of the Shareholders' Meetings in the part of appointment of the Board members, specifically, Paragraph 6 of the Minutes No. 30 of April 27, 2004; Paragraph 2 of the Minutes No. 32 of January 11, 2005;

- to invalidate the Charter provisions of Paragraph 10.3 of Article 10 of the Closed Joint-Stock Company "Kyivstar G.S.M." in the part establishing the Company President election procedure.

The Chamber, having heard the plaintiff representatives' explanations, discussed arguments of the appeal, examined the available materials for the purposes of their legal

assessment by the commercial court, decided to satisfy the cassation appeal of Storm LLC on the following grounds.

CJSC "Kyivstar" was registered by Zaliznychnyi District State Administration on September 3, 1997 on the basis of decision No. 5959.

As of the date of consideration of the case the shareholders of CJSC "Kyivstar" are two legal entities – Storm Limited Liability Company (the plaintiff) holding 4,647,127 shares, an equivalent to 43.482342% of CJSC "Kyivstar G.S.M." charter fund, and Telenor Mobile Communications AS (hereinafter Defendant-2) holding 6,040,262 shares, equivalent to 56.517658% of CJSC "Kyivstar G.S.M" charter fund.

CJSC "Kyivstar G.S.M." is acting on the basis of the Charter approved by the General Meeting of the Company Shareholders – Minutes No. 30 of April 27, 2004 and registered by Solomyanskyi District State Administration in the City of Kyiv on June 14, 2004.

In accordance with the Paragraph 9.1 of CJSC "Kyivstar G.S.M" Charter, "The Company shall establish a board of the Company (the "Board") consisting of a total of nine (9) Directors. Each Shareholder shall vote or cause to be voted all of the Shares now or hereafter owned or controlled by it at all times in favor of the following actions:

(a)    Subject to Article 9.1(b), (c), (d) and (e):

(i)    to elect to the Board five (5) candidates nominated by Telenor (the "Telenor Directors"); and

(ii)    to elect to the Board four (4) candidates nominated by Storm (the "Storm Directors"); and the Shareholders shall take all actions necessary from time to time (...) to (A) ensure the election of such candidates and (B) maintain the membership of the Board as specified in this Article 9.1."

According to item "g" of Paragraph 9.1 of the Charter, shareholders shall also be entitled, "If so requested by Storm, to authorize up to four (4) individuals, each eligible to serve as a substitute for any of the individuals designated as a Storm Director in the event such Director is unable to attend a meeting of the Board."

Under the decision of the general meeting of defendant 1 shareholders of April 27, 2004 (Paragraph "g", Minutes of the Meeting No. 30), it was approved "... (c) to elect Oleksiy Khudyakov and Svitlana Tumanova as the Board Members of Storm; (d) to elect Pavlo Kulikov and Ernest Haliyev as Deputies of Storm Board Members; (e) to elect Paul Vien Espen as Board Member of Telenor; (f) to substitute Deputy of Board Member of Telenor Morten Carlsen Soerbi and transfer his authority to Oleh Yakymchuk; and (g) to substitute the deputy of the Board Member from Telenor Ragnar Corsaets and transfer his authority to Inger Malmanger Flaa."

On the general meetings of the defendant 1 shareholders of January 11, 2005 (Paragraph "c", Minutes of the Meeting No. 32) it was decided "to approve the following Members and substitutes of the Board from Storm: (i) Board Members from Storm: Yuriy Tumanov, Andriy Kosohov, Volodymyr Zhmak and Pavlo Kulikov; and (ii) substitutes of the Board Members from Storm: Valeriy Nilov, Oleksiy Modin and Oleksiy Khudiakov."

In accordance with Article 46 of the Law of Ukraine "On Commercial Entities", a board of joint-stock company (supervisory board) may be composed of the company shareholders, which board shall represent the interests of shareholders during the period between general meetings and within the competence determined by the charter, and shall supervise and regulate activities of management.

Since the law clearly defines that the supervisory board may be composed of shareholders, only the shareholders may be elected as a chairman and members of the supervisory board.

In accordance with CJSC "Kyivstar G.S.M." Charter, the members of the Board (supervisory board) of the company are the shareholders, namely the plaintiff and defendant-2.

According to the Explanation of the State Commission for Securities and Stock Exchange "Regarding the composition of the board (supervisory board) of a joint stock company from the shareholders in case when a shareholder is a legal entity" of November 26, 2002, No. 7, a legal entity, being a shareholder, can be elected to a joint-stock company board (supervisory board). A legal entity, elected as a shareholder to a joint-stock company board (supervisory board) may participate in the work of the supervisory board via its authorized representative(s).

Thus, according to the legislation provisions, a supervisory board of a the joint-stock company may be composed exclusively of shareholders, both individuals and legal entities. At the same time, the election to a supervisory board of individuals, who are not shareholders of this company but are the representatives of one of the shareholders–legal entity, contradicts the applicable legislation.

The possibility to establish a supervisory board of the joint-stock company is also contemplated by Article 160 of the Civil Code of Ukraine, which provides that the board shall supervise the activities of the executive body of the company and protect shareholders' rights.

The Code does not contemplate the establishment of the board exclusively out of the company shareholders. At the same time, the requirements of the Law regarding to the membership of the board are applicable, since they do not contradict the Civil Code.

Since the provisions of Paragraph 9.1 of CJSC "Kyivstar" Charter do not comply with the applicable legislation and under the said provisions individuals who were not the shareholders of the company were illegally elected to the Board during the general meetings of CJSC "Kyivstar" shareholders of April 27, 2004 and January 11, 2005, therefore the plaintiff's demands of invalidation of provisions stipulated in Paragraph 9.1 of Article 9 of CJSC "Kyivstar" Charter and invalidation of decisions made at the general meetings of the CJSC "Kyivstar" shareholders are subject to satisfaction.

According to Paragraph 10.3 of Article 10 of CJSC "Kyivstar" Charter "The President shall be appointed from among the members of the Management, and may be dismissed, by a simple majority vote of the Board. The President shall be nominated by Telenor, and each Shareholder shall cause the Directors nominated by such Shareholder to vote in favor of a nominee for a position of President nominated by Telenor. On the nomination of the President, the Board shall appoint, from among the members of the Management, a Vice President of the Company."

According to Paragraph 10.7, Article 10 of CJSC "Kyivstar" Charter, "The President shall have all the authority to manage and supervise the Company's day-to-day operations unless otherwise provided in this Charter. To the extent permitted by this Charter and applicable Ukrainian law, and within the limits established by the Board, the President shall manage the property and monetary funds of the Company, represent the Company, without a power of attorney, in relations with other Persons, in any legal or arbitration proceedings; execute contracts and agreements and documentation that relate to the operations and activities of the Company on behalf of the Company; issue powers of attorney for the execution of such agreements."

At the same time, according to Article 46 of the Law of Ukraine "On Commercial Enterprises", the board of a joint-stock company (supervisory board) shall represent interests of the shareholders in the period between convocations of the general meetings and shall supervise and regulate the activities of the management. One of the ways to influence the activities of the management of a joint-stock company is the possibility to change its composition, including the change of its chairman. This right is granted by the CJSC

"Kyivstar" Charter to the Board as a body that represents the interests of the shareholders between the general meetings of shareholders. Herewith the shareholders enjoy, under the legislation, equal rights to participate in the management of the company, and only when decisions are made at the general meeting of the shareholders with application of the principle "one share – one vote" (Article 44 of the Law of Ukraine "On Commercial Entities"), the equality of shareholders' rights as to the influence on company's activities is not adhered.

Therefore, the law does not provide for any restrictions as to shareholder's rights concerning participation in the work of a supervisory board of a company and decision making pertaining to its competence. Thus, Paragraph 10.3 of the Charter concerning the obligation of plaintiff's members of the Board to agree with candidacy of the President nominated by defendant-2 is a breach of right to participate in the management of a company and is subject to invalidation.

The Laws do not contemplate the obligation of a company shareholder to protect its rights by way of bringing forth disputable matters/issues for consideration at general meeting or other bodies of the company. At the same time, in compliance with paragraph 1 of Article 16 of the Civil Code of Ukraine, each person is entitled to submit to the court for protection of its personal property and non-property rights and interests. Accordingly, defendant's statement that the absence of initiatives of the plaintiff to consider disputable provisions of the Charter at a general meeting of shareholders proves the absence of breach of plaintiff's right, or its unwillingness to protect its rights, are groundless and are not supported by the law.

Governed by Articles $111^5$, $111^7$, $111^{9}$-$111^{11}$ of the Commercial Procedural Code of Ukraine, the Highest Commercial Court of Ukraine

### R U L E D:

To satisfy the cassation appeal of the Storm Limited Liability Company. To repeal the decision of the Kyiv City Commercial Court of October 12, 2005 and ruling of Kyiv City Commercial Court of Appeal of November 11, 2005 in the case No. 46/501.

To satisfy the claim of Storm Limited Liability Company.

To invalidate provisions of Paragraph 9.1 of Article 9 of the Charter of the Closed Joint-Stock Company "Kyivstar G.S.M."

To invalidate the decisions of Closed Joint-Stock Company "Kyivstar GSM" shareholders meetings in the part of election of the Board members (Paragraph 6 of the Minutes No. 30 of April 27, 2004; Paragraph 2 of the Minutes No. 32 of January 11, 2005).

To oblige shareholders of the Closed Joint-Stock Company "Kyivstar GSM", Storm Limited Liability Company, Telenor Mobile Communications AS to amend the text of the Charter in conformity with the applicable legislation of Ukraine. Invalidate Paragraph 10.3 of Article 10 of CJSC "Kyivstar GSM" Charter in the part that reads "The President shall be nominated by Telenor, and each Shareholder shall cause the Directors nominated by such Shareholder to vote in favor of a nominee for a position of President nominated by Telenor".

Recover the court fees expenses from the Closed Joint-Stock Company "Kyivstar GSM" in favor of Storm LLC.

To charge the Kyiv City Commercial Court with issuance of the order.

Chief Judge                                 V. Semchuk

Judges:                                     H. Savenko

I. Khodarkovska

[Stamp]: A true copy with the original

[Signature]: Specialist of the 1 Category (signature) L. Duda

[Round Seal]: The Highest Commercial Court of Ukraine, Secretariat No. 2



# ВИЩИЙ ГОСПОДАРСЬКИЙ СУД УКРАЇНИ
## ПОСТАНОВА
### ІМЕНЕМ УКРАЇНИ

22 грудня 2005 року                                                    №46/501

Вищий господарський суд України у складі колегії суддів:

| | |
|---|---|
| головуючого, судді | Семчука В.В. |
| суддів | Савенко Г.В. |
| | Ходаківська І.П. |
| розглянувши касаційну скаргу | товариства з обмеженою відповідальністю "Сторм" |

на рішення господарського суду м.Києва від 12 жовтня 2005 року та
постанову Київського апеляційного господарського суду від 11 листопада 2005 року
у справі            №46/501

| | |
|---|---|
| за позовом | товариства з обмеженою відповідальністю "Сторм" (далі – ТОВ "Сторм") |
| до | закритого акціонерного товариства "Київстар Дж.Ес.Ем."(далі – ЗАТ "Київстар") |
| | Теленор Мобайл Ком'юнікейшнз АС (далі - Теленор) |
| про | визнання недійсними положень статуту |

за участю представників:
позивача: Тертичний Т.О., Авраменко С.В., Поляк О.В.;
відповідачів: не з'явились;

### встановив:

ТОВ "Сторм" звернулося до господарського суду міста Києва з позовом до ЗАТ "Київстар", Теленор про визнання недійсними положень Статуту ЗАТ „Київстар" від 27 квітня 2004 року, а саме п. 9.1 статті 9 та п. 10.3 статті 10 в частині порядку обрання Президента ЗАТ „Київстар", а також про визнання недійсними рішень Зборів акціонерів ЗАТ "Київстар" в частині обрання членів Ради – п.6 Протоколу №30 від 27 квітня 2004 року та п.2 Протоколу №32 від 11 січня 2005 року.

Рішенням господарського суду м. Києва від 12 жовтня 2005 року (судді Шабунін С.В., Трофименко Т.Ю., Усатенко І.В.) в позові відмовлено повністю.

Постановою Київського апеляційного господарського суду від 11 листопада 2005 року (судді Андрієнко В.В., Малетич М.М., Студенець В.І.) рішення місцевого господарського суду залишено без змін.

ТОВ "Сторм" звернулося з касаційною скаргою до Вищого господарського суду України, в якій просить рішення місцевого та постанову апеляційного господарських судів скасувати, оскільки ними порушені норми матеріального права та прийняти нове рішення, яким - визнати недійсним положення п.9.1 статті 9 Статуту закритого акціонерного товариства "Київстар Дж. ЕС. Ем." в частині порядку обрання членів Ради товариства та рішення

Зборів акціонерів Товариства в частині обрання членів Ради – а саме п. 6 Протоколу №30 від 27.04.2004 року; п. 2 Протоколу №32 від 11.01.2005 року;

- визнати недійсним положення п. 10.3 статті 10 Статуту закритого акціонерного товариства "Київстар Дж. ЕС. Ем." в частині порядку обрання Президента товариства.

Заслухавши пояснення представників позивача, обговоривши доводи касаційної скарги, перевіривши наявні матеріали на предмет їх юридичної оцінки господарським судом, колегія суддів встановила, що касаційна скарга ТОВ "Сторм" підлягає задоволенню з наступних підстав.

ЗАТ „Київстар" зареєстровано Залізничною районною державною адміністрацією 3 вересня 1997 року на підставі рішення № 5959.

На час розгляду справи акціонерами ЗАТ „Київстар" є дві юридичні особи - Товариство з обмеженою відповідальністю „Сторм" (позивач), якому належить 4 647127 акцій, що становить 43,482342% статутного фонду ЗАТ „Київстар Дж.Ес.Ем.", та компанія Теленор Мобай Ком'юнікейшнз АС (далі - відповідач -2), якій належить 6 040 262 акцій, що становить 56,517658% статутного фонду ЗАТ „Київстар Дж.Ес.Ем.".

ЗАТ „Київстар Дж.Ес.Ем." діє на підставі Статуту, затвердженого Загальними Зборами акціонерів товариства - протокол № 30 від 27 квітня 2004 року та зареєстрованого Солом'янською районною в місті Києві державною адміністрацією 14 червня 2004 року.

Відповідно до п. 9.1 Статуту ЗАТ „Київстар Дж.Ес.Ем.", „У Товаристві створюється рада Товариства (далі – „Рада"), до складу якої входять 9 (дев'ять) Директорів. Кожен Акціонер голосує чи забезпечує голосування всіма Акціями, якими він володіє або які контролює на даний момент чи в будь-який час в майбутньому, для здійснення наступних дій:

(a)     З урахуванням Статті 9.1(б), (в), (г) і (д):

(i)     обрання до Ради 5 (п'ять) кандидатів, запропонованих Теленором (далі – „Директори Теленора"); та

(ii)    обрання до Ради 4 (чотири) кандидатів, запропонованих Стормом (далі – „Директори Сторма");

і Акціонери здійснюють всі дії, які є час від часу необхідними (...) для (А) забезпечення обрання таких кандидатів і (Б) збереження складу Ради, визначеного цією Статтею 9.1."

Відповідно до пп. „є" п. 9.1 Статуту, акціонери також можуть „На прохання Сторма уповноважити до 4 (чотири) осіб, кожна з яких має право заміняти будь-яку з осіб, призначених Директорами Сторма, у випадку, якщо такий Директор не може бути присутній на засіданні Ради."

Рішенням загальних зборів акціонерів відповідача 1 від 27.04.2004 р. (п. "є" Протоколу № 30 зборів) було ухвалено "...(в) обрати Олексія Худякова та Світлану Туманову членами Ради від Сторма; (г) обрати Павла Кулікова та Ернеста Галієва заступниками членів Ради від Сторма; (д) обрати Пола Вієна Еспена членом Ради від Теленора; (е) замінити заступника члена Ради від Теленора, Мортена Карлсена Соербі, і передати його повноваження Олегу

Якимчуку; та (є) замінити заступника члена Ради від Теленора, Рагнара Корсаетса, і передати його повноваження Інгер Малмангер Флаа."

Рішенням загальних зборів акціонерів відповідача 1 від 11.01.2005 р. (п. „в" Протоколу № 32 зборів) було ухвалено „Затвердити наступний склад членів та заступників членів Ради від Сторма: (і) члени Ради від Сторма: Юрій Туманов, Андрій Косогов, Володимир Жмак та Павло Куліков; та (іі) заступники членів Ради від Сторма: Валерій Нілов, Олексій Модін, та Олексій Худяков."

Відповідно до ст. 46 Закону України „Про господарські товариства", в акціонерному товаристві з числа акціонерів може створюватися рада акціонерного товариства (спостережна рада), яка представляє інтереси акціонерів у період між проведенням загальних зборів і в межах компетенції, визначеної статутом, контролює і регулює діяльність правління.

Оскільки в законі чітко визначено, що спостережна рада може створюватися з числа акціонерів, то головою та членами спостережної ради можуть обиратися тільки акціонери.

Відповідно до Статуту ЗАТ „Київстар Дж.Ес.Ем." членами Ради (спостережної ради) товариства є акціонери, а саме Позивач та Відповідач – 2.

Відповідно до роз'яснення Державної комісії з цінних паперів та фондового ринку від 26 листопада 2002 року №7 "щодо створення ради акціонерного товариства (спостережної ради) з числа акціонерів у разі, якщо акціонером є юридична особа", юридична особа, яка є акціонером , може бути обраною до ради акціонерного товариства (спостережної ради). Юридична особа, обрана як акціонер до складу ради акціонерного товариства (спостережної ради), може брати участь у роботі спостережної ради через свого уповноваженого представника (представників).

Відтак, за змістом законодавчих приписів спостережна рада акціонерного товариства може утворюватися виключно із числа акціонерів – як фізичних, так і юридичних осіб. Одночасно з цим, обрання до складу спостережної ради фізичних осіб, які не є акціонерами цього товариства, а є представниками одного із акціонерів – юридичної особи, суперечить чинному законодавству.

Можливість створення спостережної ради акціонерного товариства також передбачено в ст. 160 Цивільного кодексу України, де вказано, що рада здійснює контроль за діяльністю виконавчого органу товариства та захист прав акціонерів.

Кодексом не передбачається формування ради виключно з числа акціонерів товариства. Разом з тим, вимоги Закону щодо складу ради застосовуються, оскільки не суперечать Цивільному кодексу.

Оскільки положення пункту 9.1 Статуту ЗАТ "Київстар" не відповідають чинному законодавству, і відповідно до вказаних положень неправомірно на загальних зборах акціонерів ЗАТ "Київстар" від 27 квітня 2004 року та 11 січня 2005 року до складу Ради обрано фізичних особи, які не є акціонерами, тому вимоги позивача про визнання недійсним положень п.9.1 статті ( Статуту ЗАТ "Київстар" та визнання недійсними рішень загальних зборів акціонерів ЗАТ "Київстар" підлягають задоволенню.

Відповідно до п. 10.3 статті 10 Статуту ЗАТ „Київстар", „Президент призначається з числа членів Правління, та може бути звільнений з посади, простою більшістю голосів Ради. Кандидата на посаду Президента пропонує Теленор, і кожний Акціонер забезпечує, щоб Директори, призначені таким Акціонером, проголосували за обрання такого кандидата, запропонованого Теленором, на посаду Президента. За поданням Президента Рада призначає з числа членів Правління Віце-Президента Товариства."

Відповідно до п. 10.7 статті 10 Статуту ЗАТ „Київстар", „Президент має всі повноваження для керівництва і нагляду за поточною діяльністю Товариства, якщо інше не передбачено цим Статутом. В обсязі, дозволеному цим Статутом та чинним законодавством України, та у межах, визначених Радою, Президент розпоряджається майном та грошовими коштами Товариства; без доручення представляє Товариство у відносинах з іншими Особами, у будь-якому судовому або арбітражному провадженні, підписує від імені Товариства контракти та договори, а також документацію, пов'язану з діяльністю Товариства; видає довіреності на підписання таких угод."

Разом з цим, відповідно до ст. 46 Закону України „Про господарські товариства" рада акціонерного товариства (спостережна рада) представляє інтереси акціонерів у період між проведенням загальних зборів і контролює і регулює діяльність правління. Одним зі способів впливу на діяльність правління акціонерного товариства є можливість зміни його складу, у тому числі зміни його голови. Статутом ЗАТ „Київстар" це право надано Раді, як органу, що представляє інтереси акціонерів між загальними зборами акціонерів. При цьому відповідно до законодавства акціонери мають однакові права щодо участі в управлінні товариством, і лише при прийнятті рішень на загальних зборах акціонерів при застосуванні принципу одна акція - один голос (ст. 44 Закону України „Про господарські товариства") рівність прав акціонерів щодо впливу на діяльність товариства не дотримується.

Таким чином, законом не передбачено обмеження прав акціонера щодо участі у роботі спостережної ради товариства та прийнятті питань, віднесених до її компетенції. Таким чином, положення п. 10.3 Статуту щодо обов'язку членів Ради від позивача погодитися з кандидатурою Президента, запропонованою відповідачем 2, є порушенням права на участь в управлінні товариством і підлягають визнанню недійсними.

Законодавством не передбачено обов'язку акціонера товариства захищати свої права шляхом винесення спірних питань на розгляд загальних зборів чи інших органів товариства. Разом з тим, відповідно до ч. 1 ст. 16 ЦК України, кожна особа має право звернутися до суду за захистом свого особистого немайнового або майнового права та інтересу. Відповідно, посилання відповідачів про те, що відсутність ініціатив позивача розглянути спірні положення Статуту на загальних зборах акціонерів свідчить про відсутність порушення права позивача або його небажання захистити свої права, є безпідставними і не підтверджуються нормами закону.

Керуючись ст.ст.111[5], 111[7], 111[9]-111[11] Господарського процесуального кодексу України, Вищий господарський суд України,

## ПОСТАНОВИВ:

Касаційну скаргу товариства з обмеженою відповідальністю "Сторм" задовольнити. Рішення господарського суду м.Києва від 12 жовтня 2005 року та постанову Київського апеляційного господарського суду від 11 листопада 2005 року у справі №46/501 скасувати.

Позов товариства з обмеженою відповідальністю "Сторм" задовольнити.

Визнати недійсним положення п.9.1 статті 9 Статуту закритого акціонерного товариства "Київстар Дж.Ес.Ем".

Визнати недійсними рішення зборів акціонерів закритого акціонерного товариства "Київстар Дж.Ес.Ем." в частині обрання членів Ради (п.6 Протоколу №30 від 27 квітня 2004 року; п.2 Протоколу №32 від 11 січня 2005 року).

Зобов'язати акціонерів ЗАТ "Київстар Дж.Ес.Ем.", товариство з обмеженою відповідальністю "Сторм", Теленор Мобайл Ком'юнікейшинз АС провести зміст Статуту у відповідність з вимогами чинного законодавства України. Визнати недійсним положення п.10.3. ст.10 Статуту ЗАТ "Київстар Дж.Ес.Ем" в частині "Кандидата на посаду Президента пропонує Теленор і кожний Акціонер забезпечує, щоб Директори, призначені таким акціонером, проголосували за обрання такого кандидата, запропонованого Теленором, на посаду Президента".

Стягнути з закритого акціонерного товариства "Київстар Дж. Ес. Ем." на користь ТОВ "Сторм" витрати по державному миту.

Доручити господарському суду м. Києва видати наказ.


Головуючий суддя                                          В.Семчук

                    Судді:                               Г. Савенко

                                                         І. Ходаківська

З ОРИГІНАЛОМ ЗГІДНО

ГОСПОДАРСЬКИЙ СУД
УКРАЇНИ
вул.О.Копиленка, 6
КИЇВ 11,
01601

0192

UKRAINE

КИЇВ11

P

01011 0218837 4

*Передсідачу товариства*
*Воращенко С.Ф.*
*1Ф. Магістрі Корпнеці*

вул. Велика Житомирська,
20, пов.8,
м.Київ 25,
01025 Україна

*п. 46/50?*