# EXHIBIT N
# PART 3

# EXHIBIT 5

18.04.2006

**Kyiv Commercial Court**

**Claimant:**
*Name:* "Alpren Limited"
legal entity under the laws of Cyprus Republic
*Registered office:* 3 Themistocles Dervis Street, Julia House, 1st Floor, 1066, Nicosia, Cyprus
**Address for correspondence:** 01030, Kyiv, 4 Chapayeva Street, Suite 12.

**Defendant:**
*Name:* "Storm" Limited Liability Company
*Registered office:* 01001, Kyiv, 1 Narodnogo Opolchennya Street
*USREOU Code* 23163325
c/a 26000100675001 opened with Alfa-Bank CJSC, MFO 300346

**APPLICATION**
**for claim extension**

Claimant seized the court with the claim on recognition of the actions of "Storm" Limited Liability Company related to the execution of the Shareholders Agreement, dated January 30, 2004, as unlawful and termination of the actions of "Storm" Limited Liability Company related to the execution of the Shareholders Agreement, dated January 30, 2004.

However, as Claimant was informed by Defendant, along with the Shareholders Agreement, Defendant in the person of its executive body had also signed a so-called Voting Agreement. The substance of this alleged "agreement" contradicts the law of Ukraine; it violates public policy of Ukraine; it is concluded in the form that contravenes the formal requirements for agreements of this kind, laid down in the Civil Code of Ukraine and other rules of Ukrainian legislation and it is void by virtue of what is said below.

Analyzing legal nature of the mentioned agreement, one should conclude that the Voting Agreement, just as the agreement, is a bogus deed aimed to conceal another one – addendum to another legal entity's charter and a sales contract of shares. Bearing in mind the legal consequences, stipulated in Art. 235 of the Civil Code of Ukraine, in this case it should be considered partially as a

foundational document and partially as a sales contract of shares, according to the Ukrainian legal rules on foundational agreements and on sales contracts.

Such conclusion is based on that the mentioned document determines, in particular, the management procedure of another legal entity, specifically, procedure of organization of the executive body. Moreover, para. 5.03 of Art. 5 of the Voting Agreement establishes consequences of discrepancies between its text and that of the Charter. Particularly, it is established that in such cases preference is shown to the Voting Agreement. The same paragraph of the Voting Agreement sets forth procedure of introducing amendments to the Charter. Furthermore, Art. 2 of the Voting Agreement regulates procedure of purchase of shares in certain circumstances. Thus, the parties to the agreement have virtually shown what kind of deed they have done having signed the so-called "Voting Agreement".

According to para. 6 of the Decree of the Cabinet of Ministers of Ukraine "On Procedure of State Registration of Entrepreneurs" (as in force in the time when the "Voting Agreement" was signed) and Art. 8 of the Law of Ukraine "On State Registration of Legal Entities and Natural Persons – Entrepreneurs" foundational documents of a legal entity are to be set forth in the official language of the state, which is, pursuant to Art. 10 of the Constitution of Ukraine, Ukrainian.

According to the Law of Ukraine "On Languages in the Ukrainian SSR" (Art. 24) language of agreements of Ukrainian companies with foreign companies is Ukrainian and language of the other party to the agreement. Thus, in any case, the text of this so-called "Voting agreement", among its parties on the one side being residents of Ukraine (including Claimant) is to be in Ukrainian. Moreover, as far as this so-called "agreement" could have been set forth not only in Ukrainian but also in the language of the other party to the agreement, bearing in mind that such other party is a resident of Norway, such language must have been Norwegian. Therefore, setting forth its text only in English is illegal and its signing by Defendant is unlawful and contradicting the Constitution of Ukraine (the rule of public law on the official language of the state, stipulated in it) and Art. 203 of the Civil Code of Ukraine.

One should also mention that the so-called "agreement", although it does not include Claimant as its party, is, actually, entered into with the purpose to produce a Claimant's obligation to finance purchase (to participate in subscription) of shares of another legal entity. In particular, Art. 2 of the agreement obliges Defendant to purchase shares of a certain joint-stock company under certain conditions. In other words, Defendant, in the person of the Director General, has violated requirements of the Charter (para. 12.4) and of the law of Ukraine (Art. 145, Art. 203 of the Civil Code of Ukraine), as far as Defendant was acting beyond the limits of its civil legal capacity. As regards imposition of obligations to purchase shares and to finance this transaction, this is an attempt of misappropriation of Defendant's and Claimant's property (funds), as far as, in such a way, they were supposed to be deprived of their funds intended for the purchase of shares.

Bearing the aforesaid in mind, it is a void deed by virtue of Art. 228 of the Civil Code of Ukraine and is not subject to invalidation by court under Art. 215 of the Civil Code of Ukraine.

In view of violations of the Constitution of Ukraine, the Civil Code of Ukraine, the Law of Ukraine "On Languages in the Ukrainian SSR", the Law of Ukraine "On State Registration of Legal Entities and Natural Persons – Entrepreneurs", the Charter of "Storm" LLC caused by signing of the so-called "Shareholders Agreement" dated January 30, 2004, and the so-called "Voting Agreement" dated September 2, 2002, with participation of "Storm" LLC, Claimant considers that its rights and legitimate interests have been abused (which are, according to Judgment of the Constitutional Court of Ukraine dated December 1, 2004, in case № 1-10/2004, "independent object of judicial protection"), as far as illegitimate acts of "Storm" LLC in the person of its executive body threaten Claimant's ability to exercise its rights a participant in "Storm" LLC.

In view of the foregoing, guided by Arts. 10, 124 of the Constitution of Ukraine, Art. 203, Art. 215, Art. 228, Art. 235 of the Civil Code of Ukraine, Art. 83, Art. 84 of the Commercial Procedure Code of Ukraine,

**REQUEST:**

- to render unlawful the actions of the "Storm" Limited Liability Company related to the execution of the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and "Storm" Limited Liability Company;
- to apply the consequences of invalidity of the void transaction – the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and Storm Limited Liability Company – and terminate the actions of the "Storm" Limited Liability Company related to performance under the Voting Agreement, dated September 2, 2002, entered between Telenor Mobile Communications AS and "Storm" Limited Liability Company;
- to render unlawful the actions of the "Storm" Limited Liability Company related to the execution of the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company;
- to apply the consequences of invalidity of the void transaction – the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company – and terminate the actions of the "Storm" Limited Liability Company related to performance under the Shareholders Agreement, dated January 30, 2004, entered between Telenor Mobile Communications AS, Storm Limited Liability Company, and "Kyivstar G.S.M." Closed Joint Stock Company
- to hold "Storm" Limited Liability Company liable for the court expenses paid by "Alpren Limited".

Exhibits:

1. Copy of the Voting Agreement, dated September 2, 2002.

*[Signature]*

Illiashev M.I.

Representative by proxy.

006

**Господарський суд м. Києва**

**Позивач:**
*Найменування:* "Альпрен Лімітед"
юридична особа за законодавством Республіки Кіпр
*Місцезнаходження:* 3 Themistocles Dervis Street, Julia House, 1st Floor, 1066, Nicosia, Cyprus (Кіпр)
**Адреса для кореспонденції**: 01030, м. Київ, вул. Чапаєва, буд. 4, оф. 12.

**Відповідач:**
*Найменування:* Товариство з обмеженою відповідальністю "Сторм"
*Місцезнаходження:* 01001, м. Київ, вул. Народного ополчення, буд.1
*Ідентифікаційний код юридичної особи* 23163325
п/р 26000100675001 в ЗАТ "Альфа-Банк",
МФО 300346

**КЛОПОТАННЯ**
**про збільшення позовних вимог**

Позивач звернувся до суду з позовом в якому просив визнати незаконними [...]овариства з обмеженою відповідальністю "Сторм" щодо підписання [...]онерної угоди, датованої 30.01.2004 року та припинити дії Товариства з [...]еженою відповідальністю "Сторм" по виконанню Акціонерної угоди, [...]аної 30.01.2004 року.

Проте, як стало відомо Позивачу від Відповідача, крім Акціонерної [...] Відповідачем в особі його виконавчого органу було також підписано так [...]ий Договір про голосування (Voting Agreement). Вказаний так званий [...]ір не відповідає вимогам законодавства України по змісту, порушує [...]ічний порядок України, укладений у формі, яка не відповідає вимогам щодо [...]и подібних документів, визначених Цивільним кодексом України та [...]ими нормами українського законодавства та є нікчемною з огляду на [...]дене нижче.

Аналізуючи правову природу вказаної угоди, слід прийти до висновку, [...]казаний договір, так само як і угода є удаваним правочином, з метою [...]ховати інший правочин - доповнення до статуту іншої юридичної особи та [...]ір купівлі-продажу акцій. Враховуючи правові наслідки, передбачені ст.235 [...]ільного кодексу України, в даному випадку, його слід розглядати частково

1

12

...к установчий документ, а частково саме як договір купівлі-продажу акцій ...вимогами, що застосовуються законодавством України відповідно для ...ічних документів та договорів купівлі-продажу.

Вказаний висновок ґрунтується на тому, що вказаний документ ...ює, серед іншого, порядок управління іншою юридичною особою, зокрема ...ок формування виконавчого органу. Також п.5.03 ст.5 договору ...влюються наслідки протиріч між його текстом та текстом Статуту, а саме ...влено, що в таких випадках договір матиме переважну силу. В цьому ж ... договору встановлюється порядок внесення змін до Статуту. Крім того, ...оговору містить умови придбання акцій за настання певних обставин. Цим ... сторони угоди фактично самі показали, який саме правочин вони ...ваді вчинили, підписавши так званий "Договір про голосування".

Згідно з п.6 Постанови Кабінету Міністрів України "Про порядок ...вної реєстрації суб'єктів підприємницької діяльності" (чинна на момент ...ання "Договору про голосування") та ст.8 Закону України "Про державну ...рацію юридичних осіб та фізичних осіб - підприємців" установчі ...енти юридичної особи повинні бути викладені державною мовою, якою ...ідно до ст. 10 Конституції України є українська мова.

Законом України "Про мови в Українській РСР" (ст.24) визначено, що ...ю угод українських підприємств з іноземними підприємствами є українська ...та мова іншої сторони по договору. Тобто, за будь-яких умов, текст цього ...ваного "Договору про голосування" стороною в якій є з одного боку ...енти України (серед яких Позивач) повинен бути викладений українською ...ю. А оскільки в даному випадку цей так званий "договір" крім української ...міг бути викладений мовою іншої сторони по договору, то враховуючи, що ...ю стороною є резидент Норвегії, такою мовою мала б бути ще й норвезька .... Викладення ж його тесту виключно англійською мовою є протизаконним, ...его підписання Відповідачем неправомірним, та таким що порушує ...ституцію України (викладену в ній публічно-правову норму про державну ...) та ст.203 Цивільного кодексу України.

Слід також зазначити, що вказаний так званий "договір", хоча й не ...ить в якості сторони Позивача, насправді укладений з метою виникнення у ...вача обов'язків по фінансуванню купівлі (прийнятті участі у підписці) акцій ... юридичної особи. Зокрема, ст.2 договору містить обов'язки Відповідача ...ти акції певного акціонерного товариства при певних умовах. Тобто ...овідачем в особі генерального директора порушено вимоги Статуту (п.12.4), ...нодавства України (ст.145, ст.203 Цивільного кодексу України), оскільки ...овідач діяв за межами своєї цивільної дієздатності. Щодо покладення ...овідних обов'язків по купівлі акцій та фінансуванню цієї операції, то це є ...обою незаконно заволодіти майном (грошовими коштами) Відповідача та ...ивача, оскільки таким чином передбачалось позбавлення їх грошових ...тів, які повинні були б бути витрачені на купівлю акцій.

Враховуючи вказане, він є нікчемним правочином на підставі ст.228 [illegible] кодексу України та не підлягає визнанню судом недійсним на [illegible] ст.215 Цивільного кодексу України.

Зважаючи на порушення Конституції України, Цивільного кодексу [illegible], Закону України "Про мови в Українській РСР", Закону України "Про [illegible] реєстрацію юридичних осіб та фізичних осіб - підприємців", Статуту "Сторм" при підписанні так званої "Акціонерної угоди" від 30.01.2004 [illegible] так званого "Договору про голосування" від 02.09.2002 року за участю "Сторм", Позивач вважає, що його права і охоронювані законом інтереси [illegible] (які відповідно до Рішення Конституційного Суду України від [illegible] 2004 року у справі № 1-10/2004 "є самостійним об'єктом судового [illegible]"), оскільки незаконність дій ТОВ "Сторм" в особі його виконавчого [illegible] ставить під загрозу можливість реалізації Позивачем своїх прав як [illegible] ТОВ "Сторм".

Враховуючи вищевикладене, керуючись ст.ст.10, 124 Конституції України, ст. 215, ст.228, ст.235 Цивільного кодексу України, ст.83, ст.84 ГПК [illegible]ни,

**ПРОСИМО:**

- визнати незаконними дії Товариства з обмеженою відповідальністю "Сторм" щодо підписання Договору про голосування від 02.09.2002 року між Теленор Мобайл Комьюнікейшнз АС та Товариством з обмеженою відповідальністю "Сторм";
- застосувати наслідки недійсності нікчемного правочину - Договору про голосування від 02.09.2002 року між Теленор Мобайл Комьюнікейшнз АС та Товариством з обмеженою відповідальністю "Сторм" та припинити дії Товариства з обмеженою відповідальністю "Сторм" по виконанню Договору про голосування від 02.09.2002 року між Теленор Мобайл Комьюнікейшнз АС та Товариством з обмеженою відповідальністю "Сторм";
- визнати незаконними дії Товариства з обмеженою відповідальністю "Сторм" щодо підписання Акціонерної угоди від 30.01.2004 року між Теленор Мобайл Комьюнікейшнз АС, Товариством з обмеженою відповідальністю "Сторм" та Закритим акціонерним товариством "Київстар Дж.Ес.Ем.";
- Застосувати наслідки недійсності нікчемного правочину - Акціонерної угоди від 30.01.2004 року між Теленор Мобайл Комьюнікейшнз АС, Товариством з обмеженою відповідальністю "Сторм" та Закритим акціонерним товариством "Київстар Дж.Ес.Ем." та припинити дії Товариства з обмеженою відповідальністю "Сторм" по виконанню Акціонерної угоди від 30.01.2004 року між Теленор Мобайл Комьюнікейшнз АС, Товариством з обмеженою відповідальністю "Сторм" та Закритим акціонерним товариством "Київстар Дж.Ес.Ем."
- покласти на Товариство з обмеженою відповідальністю "Сторм" обов'язок по відшкодуванню "Альпрен Лімітед" судових витрат.



Додатки:
Копія договору про голосування, датованого 02.09.2002р.

М.І.
тавник по довіреності.



VOTING AGREEMENT

dated September 2, 2002

between

TELENOR MOBILE COMMUNICATIONS AS

and

STORM LLC

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS AND INTERPRETATION .......... 1

- Definitions .......... 1
- Interpretation .......... 8

ARTICLE II MANAGEMENT OF THE COMPANY .......... 8

- Board of Directors .......... 8
- President .......... 11
- Amendments to the Charter .......... 11
- Capital Increases; Financing; IPO .......... 12
- Termination of Shareholders Agreement; New Shareholders Agreement .......... 13
- Registration Rights Agreement .......... 14
- Dividend Policy .......... 14
- Implementation of and Compliance with Agreement .......... 14
- Acquisition of Additional Shares .......... 15

ARTICLE III REPRESENTATIONS AND WARRANTIES .......... 15

- Representations and Warranties of the Shareholders .......... 15
- Representations and Warranties of Subsequent Shareholders .......... 16

ARTICLE IV TRANSFER RESTRICTIONS .......... 16

- General .......... 16
- Required Sale Right .......... 17
- Co-Sale Right .......... 17

ARTICLE V CERTAIN CORPORATE MATTERS .......... 18

- Debt Acquisition .......... 18
- Non-Compete .......... 19
- Amendment of Charter .......... 20
- Purchase Right of Telenor Mobile .......... 20
- Disclosure of Beneficial Ownership in connection with Securities Offering .......... 21
- Other Arrangements .......... 21
- Shareholder Capacity .......... 21

ARTICLE VI CONFIDENTIALITY .......... 22

ARTICLE VII ETHICAL BUSINESS CONSIDERATIONS .......... 22

- Offers to Government Officials .......... 22
- Books and Records .......... 22
- Agents, Subcontractors and Consultants .......... 23
- Transfers to the Company .......... 23
- Affiliates, Directors, Officers and Employees .......... 23
- Compliance Policies .......... 23
- Access to Capital Markets; IPO .......... 23
- Termination by Non-Breaching Shareholder .......... 24

ARTICLE VIII TERM AND TERMINATION .......... 24

ARTICLE IX DISPUTE RESOLUTION .......... 24

- Arbitration; Consent to Jurisdiction .......... 24
- Service of Process .......... 26
- Waiver of Sovereign Immunity .......... 26

ARTICLE X MISCELLANEOUS .......... 26

- 10.1 Notices .......... 26
- 10.2 Entire Agreement; Agreement to Prevail .......... 27
- 10.3 Waiver .......... 28