# EXHIBIT N
# PART 6

Parties shall, prior to initiating or participating in any enforcement action or bankruptcy proceeding against any Protected Party with respect to any Debt Obligation, provide at least ninety (90) days prior written notice thereof to the Protected Party (with a copy to the Company) and adhere to the procedures set forth in Section 5.01(b)(i) and 5.01(b)(ii).

(d) In the event a Shareholder or any of its other Standstill Parties initiates or participates in the initiation of any enforcement action or bankruptcy proceeding against any Protected Party with respect to any Debt Obligation without adhering to the provisions of Section 5.01(c), such Shareholder shall, and shall procure that its other Standstill Parties shall, immediately file all papers necessary to terminate or cause the termination of such action or proceeding within five (5) Business Days of receiving notice from the Protected Party, the Company or any Shareholder that the entity against whom such bankruptcy proceeding was initiated is a Protected Party, and shall thereafter use its best efforts to ensure that such enforcement action or bankruptcy proceeding is terminated, and immediately thereafter or simultaneously with such actions, the relevant Standstill Party shall make an offer to sell to such Protected Party (which offer shall be legally binding on the Standstill Party upon acceptance by such Protected Party or the Company or the Company's designee, as the case may be, on behalf of such Protected Party) and shall sell such Relevant Obligation to the relevant Protected Party or the Company or the Company's designee, as the case may be, pursuant to Section 5.01(b), if such offer is accepted.

(e) Any breach of Section 5.01(b) shall be deemed cured and no violation of Section 5.01(b) shall be deemed to have occurred or to exist if the terms of Section 5.01(b) are complied with immediately upon the relevant Shareholder becoming aware of it or any of its Standstill Parties have entered into the Debt Transaction.

(f) Any breach of Section 5.01(c) shall be deemed cured and no violation of Section 5.01(c) shall be deemed to have occurred or to exist if the Standstill Party complies with Section 5.01(d) and such enforcement action or bankruptcy proceeding is thereafter terminated.

(g) The Company will, or will cause each Protected Party to, promptly inform each Shareholder if it becomes aware of any violation of the terms of this Section 5.01.

02. Non-Compete

(a) Subject to Section 5.02(b), no Shareholder or any of its Affiliates will, without the prior written consent of the Company and the other Shareholders, (i) engage in the Business in any region in Ukraine, (ii) own or control, directly or indirectly, more than five percent (5%) of the voting capital stock in any Person (other than the Company or any of its Controlled Affiliates) engaged in the Business in any region in Ukraine or (iii) permit any of its Controlled Affiliates (other than the Company or any of its Controlled Affiliates) to engage in the Business in any region in Ukraine or own or control, directly or indirectly, more than five percent (5%) of the voting capital stock in any Person (other than the Company or any of its Controlled Affiliates) engaged in the Business in any region in Ukraine.

(b) The Shareholders acknowledge that this Section 5.02 shall not in any way limit any Shareholder's or any of its Affiliates' right to:

(i) maintain, increase the amount of, or otherwise develop, its investments in the Company or any of the Company's Controlled Affiliates, or

(ii) acquire, maintain, increase the amount of, or otherwise develop any investment in a Person specified in Schedule 4 or an Affiliate thereof, so long as no officer, director or employee of such Shareholder or any of its Affiliates serves as a member of the board of directors of such Person's Ukrainian Affiliate or otherwise participates in the management of such Person's Ukrainian Affiliate; provided that, for purposes of this Section 5.02(b)(ii), no Person identified in Schedule 4 shall be considered an Affiliate of any Shareholder.

Amendment of Charter

(a) In the event of any conflict or inconsistency between this Agreement and the Charter, this Agreement shall prevail. Without limiting the generality of the foregoing, the Shareholders shall take such action as may be necessary to supplement or amend the Charter to reflect, and not conflict or be inconsistent with, the provisions of this Agreement. The Shareholders also agree, to the extent permitted by applicable law, to waive any rights or privileges granted to them (including, but not limited to, redemption rights, rights of first refusal and the like) by applicable law that conflict or are inconsistent with the terms and conditions of this Agreement.

(b) To the extent that pursuant to applicable law the legality, validity or enforceability of any provision contained in this Agreement now or at any time hereafter requires that such provision, or a reference to such provision, be contained in the Charter, or requires any amendment to the Charter, then the Shareholders shall vote their Voting Securities to approve any such amendments and cause the Company to take such action as may be necessary to register such amendments to the Charter as are required with all appropriate Governmental or Regulatory Authorities, and each Shareholder hereby consents to such amendment to the fullest extent permitted by law.

4 Purchase Right of Telenor Mobile

Each Shareholder shall vote its Voting Securities and cause the Directors nominated by it to vote, and take any other action, in favor of approving the execution and delivery by the Company of, the Registration Rights Agreement or such other agreement as provides that, for so long as Telenor Mobile owns individually (or, together with its Affiliates, collectively) at least 50% plus one share of the Company's Voting Securities, Telenor Mobile shall have the right, but not the obligation, to elect to purchase from the Company at the price offered to investors in the IPO such number of New Securities issued in connection with any increase in the Company's authorized charter capital relating to the IPO as may be required by Telenor Mobile to maintain its individual (or, together with its Affiliates, collective) ownership of 50% plus one share of the Company's Voting Securities. If for any reason the Company fails to execute and deliver the Registration Rights Agreement or any such other agreement, each Shareholder shall vote its Voting Securities, and cause the Directors nominated by it to vote, and take any other action, in favor of approving the granting by the Company to Telenor Mobile of the right to purchase New Securities on the terms specified in this Section 5.04.

Disclosure of Beneficial Ownership in connection with Securities Offering

Shareholder undertakes and agrees that, within ten (10) days following a written request the Company or its external legal counsel stating that the Company is preparing to make the IPO or any other offering of Securities, such Shareholder shall deliver to the party and its external legal counsel a true and correct written description of the ultimate any intermediate) beneficial owners of such Shareholder and shall use its best efforts to erate with the Company and its external legal counsel in responding to questions and ding additional information regarding such beneficial owners.

Other Arrangements

(a) Except for this Agreement, the Option Agreement, the Pledge Agreement, the Shareholders Agreement, the Storm Participants Agreement, the Registration Rights Agreement, the Existing Agreements and the Share Retention and Subordination Deed, no Shareholder shall grant any proxy or enter into or agree to be bound by any understanding or any voting trust, voting proxy or other voting agreement with respect to any Securities, nor shall any Shareholder enter into any shareholders agreement or arrangement of any kind (whether written or oral) with any Person with respect to any Securities, including, without limitation, any agreement, understanding or arrangement with respect to the acquisition, ownership, Transfer or other disposition or voting of Securities, nor shall any Shareholder act, for any reason, as a member of a group or in concert with any other Person in connection with the acquisition, transfer or other disposition or voting of Securities in any manner which is inconsistent with any obligation of such Shareholder under this Agreement or the Shareholders Agreement, provided that each Shareholder shall be permitted to Transfer its Securities in accordance with the terms hereof and of the Shareholders Agreement.

(b) Without prejudice to any other rights or remedies of any Shareholder to this Agreement, if any representation and warranty made by any Shareholder in Article III is shown to have been false or misleading when made or confirmed, or if any Shareholder violates the provisions of Article IV or this Article V, the rights of such Shareholder under this Agreement and the Registration Rights Agreement shall terminate forthwith, but such Shareholder shall continue to be bound by all of its obligations hereunder and thereunder.

17 Shareholder Capacity

Person executing this Agreement who is, or who becomes during the term hereof, a ector makes any agreement or understanding herein in his or her capacity as such ector, and the agreements set forth herein shall in no way restrict any Director in the rcise of his or her fiduciary duties as a Director. Each Shareholder executes and delivers is Agreement solely in its capacity as the record and beneficial owner of such Shareholder's ting Securities.

36

(ii) acquire, maintain, increase the amount of, or otherwise develop, any investment in a Person specified in Schedule 4 or an Affiliate thereof, so long as no officer, director or employee of such Shareholder or any of its Affiliates serves as a member of the board of directors of such Person's Ukrainian Affiliate or otherwise participates in the management of such Person's Ukrainian Affiliate; provided that, for purposes of this Section 5.02(b)(ii), no Person identified in Schedule 4 shall be considered an Affiliate of any Shareholder.

3 <u>Amendment of Charter</u>

(a) In the event of any conflict or inconsistency between this Agreement and the Charter, this Agreement shall prevail. Without limiting the generality of the foregoing, the Shareholders shall take such action as may be necessary to supplement or amend the Charter to reflect, and not conflict or be inconsistent with, the provisions of this Agreement. The Shareholders also agree, to the extent permitted by applicable law, to waive any rights or privileges granted to them (including, but not limited to, redemption rights, rights of first refusal and the like) by applicable law that conflict or are inconsistent with the terms and conditions of this Agreement.

(b) To the extent that pursuant to applicable law the legality, validity or enforceability of any provision contained in this Agreement now or at any time hereafter requires that such provision, or a reference to such provision, be contained in the Charter, or requires any amendment to the Charter, then the Shareholders shall vote their Voting Securities to approve any such amendments and cause the Company to take such action as may be necessary to register such amendments to the Charter as so required with all appropriate Governmental or Regulatory Authorities, and each Shareholder hereby consents to such amendment to the fullest extent permitted by law.

4 <u>Purchase Right of Telenor Mobile</u>

ch Shareholder shall vote its Voting Securities and cause the Directors nominated by it to e, and take any other action, in favor of approving the execution and delivery by the mpany of, the Registration Rights Agreement or such other agreement as provides that, for ong as Telenor Mobile owns individually (or, together with its Affiliates, collectively) at st 50% plus one share of the Company's Voting Securities, Telenor Mobile shall have the ht, but not the obligation, to elect to purchase from the Company at the price offered to stors in the IPO such number of New Securities issued in connection with any increase in Company's authorized charter capital relating to the IPO as may be required by Telenor ile to maintain its individual (or, together with its Affiliates, collective) ownership of % plus one share of the Company's Voting Securities. If for any reason the Company fails xecute and deliver the Registration Rights Agreement or any such other agreement, each eholder shall vote its Voting Securities, and cause the Directors nominated by it to vote, d take any other action, in favor of approving the granting by the Company to Telenor ile of the right to purchase New Securities on the terms specified in this Section 5.04.

[illegible] of Beneficial Ownership in Connection with [illegible] Offering

[illegible] and agrees that, within ten (10) days following a written request [illegible] or its external legal counsel stating that the Company is preparing [illegible] IPO or any other offering of Securities, each Shareholder shall deliver to the [illegible] external legal counsel a true and correct written description of the [illegible] beneficial owners of such Shareholder and shall use its best efforts to [illegible] the Company and its external legal counsel in responding to questions and [illegible] information regarding such beneficial owners.

Arrangements

Except for this Agreement, the Option Agreement, the Pledge Agreement, the [illegible] Agreement, the Share Participation Agreement, the Registration Rights [illegible], the Existing Agreements and the Share Retention and Subordination [illegible], no Shareholder shall grant any proxy or enter into or agree to be bound by any [illegible] or any voting trust, voting proxy or other voting agreement with [illegible] to any Securities, nor shall any Shareholder enter into any shareholders [illegible] or arrangement of any kind (whether written or oral) with any Person with [illegible] to any Securities, including, without limitation, any agreement, understanding [illegible] arrangement with respect to the acquisition, ownership, Transfer or other [illegible] or voting of Securities, nor shall any Shareholder act, for any reason, as a [illegible] of a group or in concert with any other Person in connection with the [illegible], transfer or other disposition or voting of Securities in any manner which [illegible] consistent with any obligation of such Shareholder under this Agreement or the [illegible] Agreement, provided that each Shareholder shall be permitted to [illegible] its Securities in accordance with the terms hereof and of the Shareholders [illegible].

Without prejudice to any other rights or remedies of any Shareholder in this [illegible], if any representation and warranty made by any Shareholder in Article III [illegible] to have been false or misleading when made or confirmed, or if any [illegible] violates the provisions of Article IV or this Article V, the rights of such [illegible] under this Agreement and the Registration Rights Agreement shall [illegible] forthwith, but such Shareholder shall continue to be bound by all of its [illegible] hereunder and thereunder.

[illegible] Capacity

[illegible] executing this Agreement who is, or who becomes during the term hereof, a [illegible] makes any agreement or understanding herein in his or her capacity as such [illegible] and the agreements set forth herein shall in no way restrict any Director in the [illegible] of his or her fiduciary duties as a Director. Each Shareholder executes and delivers [illegible] solely in its capacity as the record and beneficial owner of such Shareholder's [illegible] Securities.

## ARTICLE VI CONFIDENTIALITY

Shareholder will hold, and will use its best efforts to cause its Affiliates, and their ective representatives to hold, in strict confidence from any Person (other than any such liate or representative or a bona fide pledgee in connection with any action contemplated rticle IV hereof), unless (a) compelled to disclose by judicial or administrative process uding, without limitation, as may be required to be disclosed under the Securities Act, Exchange Act or applicable stock exchange rules) or by other requirements of law or (b) losed in an action or proceeding brought by a Shareholder in pursuit of its rights or in the cise of its remedies hereunder, all documents and information concerning the Company ny other Shareholder or any of its or their Affiliates furnished by the Company or such r Shareholder or their respective representatives to such Shareholder in such capacity, pt to the extent that such documents or information can be shown to have been (i) ously known by the Shareholder receiving such documents or information, (ii) in the lic domain (either prior to or after the furnishing of such documents or information under) through no fault of such receiving Shareholder or (iii) later acquired by the iving Shareholder from another source if the receiving Shareholder is not aware that such rce is under an obligation to another Shareholder hereto to keep such documents and rmation confidential. In the event that this Agreement is terminated, upon the request of ther Shareholder, each Shareholder hereto will, and will cause its Affiliates and their ective representatives to, unless otherwise required by law, promptly redeliver or cause to redelivered all copies of documents and information furnished by the other Shareholders connection with this Agreement or the transactions contemplated hereby and destroy or se to be destroyed all notes, memoranda, summaries, analyses, compilations and other ings related thereto or based thereon prepared by the Shareholder which furnished such uments and information or its representatives.

## ARTICLE VII ETHICAL BUSINESS CONSIDERATIONS

1 Offers to Government Officials

Shareholder (a) shall pay, promise to pay, or offer any fee, commission, material uneration or other thing of value to or for the benefit of any Government Official, itical party or official thereof or candidate for political office in order to corruptly luence an act or decision of such Person in his or her official capacity, cause such Person act or fail to act in violation of his or her lawful duty or cause such Person to influence an t or decision of the government, for the purpose of assisting such Shareholder or any of its filiates to obtain or retain business or gain any improper advantage, or (b) shall otherwise late the FCPA or any Ukrainian or other anti-corruption laws applicable to any areholder, its Affiliates or their respective directors, officers, employees, consultants or ents. Nothing in this Agreement, however, shall be construed to prohibit any Shareholder om offering or making any facilitating or expediting payment the purpose of which is to pedite or to secure the performance of a routine governmental action by a Government fficial within the meaning of the FCPA, or any other payment to a Government Official that permitted under Ukrainian or other laws applicable to such Shareholder.

02 Books and Records

connection with this Agreement, all transactions, including, but not limited to, the

39

position of assets, the incurrence of liabilities, the reconciliation of expenses and the ...mentation of contractual arrangements undertaken by any Shareholder in connection ...h this Agreement shall be recorded in compliance with applicable law and shall in ...sonable detail accurately and fairly reflect the transactions (including the purpose of each ...saction and the party with whom it was concluded) in such Shareholder's books and ...ords.

13 Agents, Subcontractors and Consultants

...connection with this Agreement, no Shareholder shall retain or pay any agent, sub-...tractor or consultant if such Shareholder knows that, or has reason to believe that ...cumstances exist which make it likely that, such agent, subcontractor or consultant will ...age in conduct that would violate any provision of Section 7.01 or Section 7.02 if such ...nt, subcontractor or consultant were a party to this Agreement. Each Shareholder shall ...e reasonable precautions to require its agents, sub-contractors and consultants to comply ...h the obligations in Sections 7.01 and 7.02.

14 Transfers to the Company

...asset which any Shareholder shall contribute, or otherwise make available, to the ...mpany, and no funds to be paid or otherwise transferred to any other Shareholder, any ...er Shareholder's Affiliate or the Company shall have been acquired by such Shareholder ... pursuant to a transaction that has involved directly or indirectly an illegal payment to a ...vernment Official or (b) where such asset represents the proceeds of any illegal activity.

15 Affiliates, Directors, Officers and Employees

...connection with this Agreement, each Shareholder shall require its Affiliates and its and ...ir respective directors, officers and employees to comply with the obligations assumed by ...h Shareholder in this Article VII. This effort shall include, but not be limited to, ...ablishing reasonable precautions to prevent such Affiliates, directors, officers and ...ployees from receiving entertainment or gifts, payments, loans, or other things of value ...m the Company's or any other Shareholder's directors, officers, employees or agents, or ...vernment Officials or making, promising or offering entertainment or gifts, payments, ...ns, or other things of value to the Company's or any other Shareholder's directors, officers, ...ployees or agents, or Government Officials, in violation of applicable law, including, ...hout limitation, anti-corruption laws.

16 Compliance Policies

...e Shareholders agree to cause the Company to enact and maintain appropriate compliance ...icies to implement the provisions of this Article VII, including arranging for appropriate ...ining of officers, directors and employees regarding their obligations to adhere to the ...ndards of conduct set forth in such policies.

17 Access to Capital Markets; IPO

...thout prejudice to any other provision of this Article VII, no Shareholder shall take any ...ion or engage in any conduct, or permit any of its Affiliates or any of its or their respective ...ectors, officers, employees, agents, subcontractors or consultants to take any action or ...gage in any conduct, the direct or indirect consequence of which would be to prevent the ...mpany from having access to the United States or other international capital markets, or ...m undertaking an IPO.

40

[illegible] Termination by Non-breaching Shareholder

[illegible] Shareholder, any of its Affiliates, the Company or any of their respective directors, [illegible], employees, agents, subcontractors and consultants engages in conduct that would [illegible] Section 7.01, 7.02, 7.04 or 7.07 (as if the Company or any such Affiliate, director, [illegible], employee, agent, subcontractor or consultant were a party to this Agreement) and as a [illegible] of such conduct such Shareholder, any of such Shareholder's Affiliates, the Company [illegible] of their respective directors, officers, employees, agents, subcontractors or consultants [illegible] to an Order issued by any Governmental or Regulatory Authority to have violated [illegible] law, each non-breaching Shareholder shall have the right to terminate this [illegible] by delivering to the other Shareholders written notice detailing the facts which [illegible] the violation of Section 7.01, 7.02, 7.04 or 7.07.

## ARTICLE VIII TERM AND TERMINATION

[illegible] Agreement shall become effective on the Effective Date and remain in effect until the [illegible] of:

(a) the date on which all of the Shareholders agree in writing to the termination of this Agreement;

(b) the date thirty (30) days from the date on which any non-breaching Shareholder terminates this Agreement in accordance with Section 7.08;

(c) the date on which the Shareholders and their Affiliates cease to own at least fifty percent (50%) plus one (1) share of the issued and outstanding capital stock of the Company;

(d) the date on which there is only one (1) Shareholder party hereto;

(e) the date on which the New Shareholders Agreement becomes effective in accordance with its terms; and

(f) the date of termination of the Share Purchase Agreement pursuant to Section 6.2 thereof;

[illegible] that (i) any Shareholder who having once attained ownership of at least ten percent [illegible] or more of the Outstanding Voting Securities thereafter ceases to own at least ten [illegible] (10%) of the Outstanding Voting Securities shall cease to be a party to, or be bound [illegible] the terms of, this Agreement from and after the date of the relevant Transfer (or dilution); [illegible] (ii) no Transfer or termination shall be deemed to relieve any Shareholder of any [illegible] of such Shareholder pursuant to this Agreement accruing, or resulting from [illegible] or omissions of such Shareholder occurring, prior to the date of such Transfer or [illegible].

## ARTICLE IX DISPUTE RESOLUTION

[illegible] Arbitration; Consent to Jurisdiction

(a) Any and all disputes and controversies arising under, relating to or in connection with this Agreement shall be settled by arbitration by a panel of three (3) [illegible] under the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules then in force (the "**UNCITRAL Rules**") in

accordance with the following terms and conditions:

(i) In the event of any conflict between the UNCITRAL Rules and the provisions of this Agreement, the provisions of this Agreement shall prevail.

(ii) The place of the arbitration shall be New York, New York, United States of America.

(iii) Where there is only one claimant party and one respondent party, each shall appoint one arbitrator in accordance with the UNCITRAL Rules, and the two arbitrators so appointed shall appoint the third (and presiding) arbitrator in accordance with the UNCITRAL Rules within thirty (30) days from the appointment of the second arbitrator. In the event of an inability to agree on a third arbitrator, the appointing authority shall be the International Court of Arbitration of the International Chamber of Commerce, acting in accordance with such rules as it may adopt for such purpose. Where there is more than one claimant party, or more than one respondent party, all claimants and/or all respondents shall attempt to agree on their respective appointment(s). In the event that all claimants and all respondents cannot agree upon their respective appointment(s) within thirty (30) Business Days of the date of the notice of arbitration, all appointments shall be made by the International Court of Arbitration of the International Chamber of Commerce.

(iv) The English language shall be used as the written and spoken language for the arbitration and all matters connected to the arbitration.

(v) The arbitrators shall have the power to *grant* any remedy or relief that they deem just and equitable and that is accordance with the terms of this Agreement, including specific performance, and including, but not limited to injunctive relief, whether interim or *final*, and any such relief and any interim, provisional or conservatory measure ordered by the arbitrators may be specifically enforced by any court of competent jurisdiction. Each Shareholder retains the right to seek interim, provisional or conservatory measures from judicial authorities and any such request shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(vi) The award of the arbitrators shall be final and binding on the Shareholders.

(vii) The award of the arbitrators may be enforced by any court of competent jurisdiction and may be executed against the person and assets of the losing party in any competent jurisdiction.

Except for arbitration proceedings pursuant to Section 9.01(a), no action, lawsuit or other proceeding (other than the enforcement of an arbitration decision, an action to compel arbitration or an application for interim, provisional or conservatory measures in connection with the arbitration) shall be brought by or between the Shareholders in connection with any matter arising out of or in connection with this Agreement.