# EXHIBIT N
# PART 21

# EXHIBIT 7

*Total II Volumes*

[State Emblem of Ukraine]

## KYIV COMMERCIAL COURT

Volume *II*                                                    year *2006*

# CASE № *40/242*

*C: Alpren Limited*

*D: Storm LLC*

*on recognition as unlawful and termination of the actions*

| | |
|---|---|
| Commenced | *2006* |
| Concluded | *25.05.06 11:40 a.m.* |
| Sent to archive | _____ |
| Total | _____ pages |

## Ukraine



# EXHIBIT 8

**To the Kyiv Commercial Court**
8 Rylskiy Prov., Kyiv 01025

**Case:    № 40/242**

**Judge:    Smirnova L.G.**

**From Defendant:    "Storm" Limited Liability Company**
01001, Kyiv, 1 Narodnogo Opolchennya Street

**In the person of representative by proxy:    Kliuchkovsky Markiyan Yuriyovych**
01025, Kyiv,
20 Velyka Zhytomyrska Street, 8 floor,
Magister & Partners Attorneys-at-Law

**Claimant:    Legal entity under the laws of the Republic of Cyprus "Alpren Limited"**

**Defendant:    "Storm" Limited Liability Company**
01001, Kyiv, 1 Narodnogo Opolchennia Street

**Application
for examination of the case file**

The Kyiv Commercial Court holds case № 40/242 on the claim of the Legal entity under the laws of Cyprus Republic "Alpren Limited" against "Storm" Limited Liability Company on recognition actions on signing as unlawful and termination of the actions on Defendant's execution of the Shareholders Agreement of 30 January 2004.

Guided by Arts. 21, 22, 28 of the Commercial Procedure Code of Ukraine,

**Request:**

To let the representative of "Storm" Limited Liability Company to examine the case file № 40/242 and allow its photographing.

Exhibits:
1.Copy of the proxy for representation of the interests of "Storm" Limited Liability Company.

17 June 2006

Representative of "Storm" LLC
*[Signature]*
Kliuchkovsky M.Y.

*[Sealed]*
*Kyiv Commercial Court*
*RECEIVED 17 July 2006*
*#06-37\16381 [Signature]*

До
ОН

Справа: №
Суддя: Смі

Від Відповідача: Товариство з обмеженою
відповідальністю "Сторм"
01001, м. Київ, вул. Народного ополчення, 1

В особі представника за довіреністю: Ключковський Маркіян Юрійович
01025, м. Київ,
вул. Велика Житомирська 20, 8-й поверх,
юридична фірма "Магістр & Партнери"

Позивач: Юридична особа за законодавством
Республіки Кіпр "Альпрен Лімітед"
(Alpren Limited)

Відповідач: Товариство з обмеженою
відповідальністю "Сторм"
01001, м. Київ, вул. Народного ополчення, 1

## КЛОПОТАННЯ
### про ознайомлення з матеріалами справи

У Господарському суді м. Києва знаходиться справа № 40/242 за позовом Юридичної особи за законодавством Республіки Кіпр "Альпрен Лімітед" (Alpren Limited) до Товариства з обмеженою відповідальністю "Сторм" про визнання незаконними дій по підписанню та припинення дій зо виконанню Відповідачем Акціонерної угоди, датованої 30 січня 2004 року.

Керуючись ст.ст. 21, 22, 28 Господарського процесуального кодексу України,

прошу:

Надати представнику Товариства з обмеженою відповідальністю "Сторм" можливість ознайомитися з матеріалами справи № 40/242 та дозволити їх фотографування.

Додаток
1. Копія довіреності на представлення інтересів Товариства з обмеженою відповідальністю "Сторм"

"17" липня 2006 року

Представник ТОВ "Сторм"
Ключковський М.Ю.

ОДЕРЖАНО  17 ЛИП 2006

# EXHIBIT 9

**LIST**
**of the documents in the file**

| № | Title of the document | Page № |
|---|---|---|
| 1. | Charter of Defendant | 1-19 |
| 2. | Charter of Defendant | 20-46 |
| 3. | Amendments to the Charter of Defendant | 47-50 |
| 4. | Certificate of Incorporation of Defendant | 51 |
| 5. | Defendant`s Certificate of registration with the Unified State Register of Enterprises and Organizations of Ukraine (USREOU) | 52 |
| 6. | Minutes of the Extraordinary Meeting of Equity Holders of Defendant | 53-54 |
| 7. | Power of Attorney with a translation | 55-60 |
| 8. | Application of Claimant #25/04 dated 21.04.06 | 61-66 |
| 9. | Reference from the Court Information Center | 67 |
| 10. | Application of Claimant #25/03 dated 21.04.06 | 68 |
| 11. | Minutes of the hearing dated 21.04.06 № 40/242 | 69 |
| 12. | Minutes of the hearing dated 25.04.06 № 40/242 | 70 |
| 13. | Decision № 40/242 dated 25.04.06 | 71-74 |
| 14. | Cover letter | 75 |
| | | |
| | Judge          [seal of the Kyiv          [Signature]          L.G. Smirnova | |
| | Secretary          Commercial Court]          [Signature]          N.V. Umanets | |
| | | |
| 1. | Order dated 19.05.06 | 76 |
| 2. | Appellate submission with enclosures | 77-80 |
| 3. | Instruction | 81 |
| 4. | Postal notification | 82 |
| 5. | Minutes of the hearing | 83-84 |
| 6. | Ruling dated 25.05.06 | 85-87 |
| 7. | Cover letter | 88 |
| | | |
| | | |
| | Judge          [seal of the Kyiv          [Signature]          Zelenin V.O. | |
| | Commercial Court] | |
| | | |
| | Secretary          [Signature]          Golyuk N.I. | |
| | | |
| | | |

## ОПИС
### документів, які знаходяться у справі

| №№ п\п | Заголовок документа | № арк. |
|---|---|---|
| 1. | *[нерозбірливо]* | 1-19 |
| 2. | *[нерозбірливо]* | |
| 3. | *[нерозбірливо]* | |
| 4. | *[нерозбірливо]* | |
| 5. | *[нерозбірливо]* | |
| 6. | *[нерозбірливо]* | |
| 7. | *[нерозбірливо]* | |
| 8. | *[нерозбірливо]* | |
| 9. | *[нерозбірливо]* | |
| 10. | *[нерозбірливо]* | |
| 11. | *[нерозбірливо]* | |
| 12. | *[нерозбірливо]* | |
| 13. | *[нерозбірливо]* | |
| 14. | *[нерозбірливо]* | |

Суддя *[підпис]*

Секретар *[підпис]*

| 1. | Ухвала 19.05.06р | 76 |
| 2. | Апеляційна скарга з додатками | 77-80 |
| 3. | *[нерозбірливо]* | 81 |
| 4. | поштове повідомлення | 82 |
| 5. | Протокол судового засідання | 83-84 |
| 6. | Постанова 15.05.06р | 85-87 |
| 7. | супровідний лист | 88 |

Суддя *[підпис]* Зеленин В.О.

Секретар *[підпис]* *[нерозбірливо]*

# EXHIBIT 10

*1*
APPROVED                              *[seals of the state registering*          **COPY**
By Meeting of the Equity Holders      *bodies]*
Minutes dated February 15, 2006       *[date of state registration –*
                                      *17.02.2006]*

CHARTER

OF THE LIMITED LIABILITY COMPANY

"STORM"

USREOU Code – 23163325

(new edition)

*[state tax inspection of Ukraine*          Kyiv - 2006
*in Solomyanskyi district of*
*Kyiv; department of taxpayers*
*registration, 20.02.2006]*

*[TRUE COPY]*

*2*

Limited Liability Company "STORM" ("Company") incorporated under the laws of Ukraine in effect and the Foundational Agreement of the Company dated April 20, 1995.

The Company is registered on June 23, 1995 in the State Administration of Solomyanskyi District in Kyiv under number 10731200000000003.

## ARTICLE 1
## DEFINITIONS

"**Affiliated person**" – is a Person that directly or indirectly through one or more intermediaries controls, is controlled or is jointly controlled together with another person (for the purposes of this Charter, "control" shall mean authority to influence or assure influence on management and policies by means of owning securities that entitle to vote, through the contract or by any other means). "**Person**" shall mean any natural person, corporation, company, limited liability company, association, joint-stock venture, trust or the trustee, incorporated association or joint venture, court or state body, or any agency or its division or any other legal entity. "**Statutory Fund**" shall mean the statutory fund of the Company as determined in Section 7.1 of this Charter. "**Company**" shall mean Limited Liability Company "STORM". "**Equity Holders**" shall mean as determined in Section 4.1 of this Charter. Other terms used in this Statute, including "**Meeting of the Equity Holders**", "**General Meeting**", "**Extraordinary Meeting**", "**Director General**", "**Board of Auditors**", "**Annual Reports**", "**Reserve Fund**", "**Agenda**", "**Creditor Report**" and "**Liquidation Commission**" are used in the same meaning as determined by the legislation of Ukraine, unless the opposite meaning is specifically introduced or the context suggests to the opposite.

## ARTICLE 2
## NAME OF THE COMPANY AND ITS SEAT

2.1.    Name of the Company. The Company shall have the following name:

    2.1.1.  In Ukrainian:

        full name: Товариство з обмеженою відповідальністю "СТОРМ";
        reduced name: ТОВ "СТОРМ".

    2.1.2.  In English:

        full name: Limited Liability Company "STORM";
        reduced name: LLC "Storm".

2.2.    Seat of the Company. Seat of the Company shall be:

    Ukraine, Kyiv, 1 Narodnogo Opolchennya Street.

## ARTICLE 3
## TERM AND LEGAL STATUS OF THE COMPANY

3.1.    Term of Existence. The Company has an indefinite term of existence and shall be considered to exist until liquidated as laid down in this Charter.

3.2.    Legal Status. The Company is a legal entity in the form of a limited liability company, incorporated under the laws of Ukraine.

*[TRUE COPY]*

*3*

3.3.    Enterprise with foreign investments. The Company is an enterprise with foreign investments. The Company may establish local and foreign subsidiaries, affiliated persons and divisions, participate in commercial relations, as well as may use rights and privileges, provided for enterprises with foreign investments by the laws of Ukraine.

3.4.    Limitation of liability. The Company shall be liable before its creditors by all of its property and assets. However, liability of the Equity Holders of the Company shall be limited to the value of their contributions into the Statutory Fund, as provided for in Section 7.3 of this Charter. The Equity Holders of the Company shall not be liable for the debts and obligations of the Company.

## ARTICLE 4
## THE EQUITY HOLDERS OF THE COMPANY

The Equity Holders of the Company shall be:

**"Alpren Limited"**, legal entity incorporated under the laws of Cyprus, having its registered number 143441 and registered office at: Themistocles Dervis Street, 3 Julia House, 1st floor, P.C. 1066, Nicosia, Cyprus (**"Alpren Limited"**), and

**"Hardlake Limited"**, legal entity incorporated under the laws of Cyprus, having its registered number 163009 and registered office at: 5 Themistocles Dervis Street, Elenion Building, 2nd Floor, CY- 1066, Nicosia, Cyprus (**"Hardlake Limited"**),

Referred to separately as "the Equity Holder" and collectively as "the Equity Holders".

## ARTICLE 5
## PURPOSE OF THE COMPANY

The purpose of the Company is gainful commercial activity as set forth in this Charter. The Company's commercial activity shall mean ownership of shares of the Closed Joint Stock Company "Kyivstar G.S.M.", USREOU code 21673832, registered by the State Administration of Zaliznychny District in Kyiv on September 3, 1997, under registered № 5959, or its legal successor (hereinafter – "Kyivstar"), and all the rights and obligations connected with ownership of the mentioned shares. All the shares that were issued by Kyivstar and are in possession of the Company on the date of this Charter or at any other time in the future shall be hereinafter referred to as "Kyivstar Shares"

## ARTICLE 6
## SUBSTANCE OF THE COMPANY'S ACTIVITY

The primary substance of the Company's activity is possession of Kyivstar Shares, as well as exercise of any and all rights and obligations connected to possession of Kyivstar Shares. The Company shall not be engaged in any other type of commercial activity unless the Meeting of the Equity Holders decides to the contrary.

## ARTICLE 7
## STATUTORY FUND OF THE COMPANY

7.1.    Statutory Fund. The Statutory Fund of the Company (hereinafter **"Statutory Fund"**) shall amount to 349,923,179.58 hryvnas (three hundred and forty nine million nine hundred and twenty three thousand one hundred and seventy nine hryvnas, fifty eight kopiykas).

*[TRUE COPY]*

*4*

7.2.   Formation.  The Statutory Fund is formed with monetary and/or property contributions of the Equity Holders.

7.3.   Shares and contributions of the Equity Holders.

7.3.1.  Share of Alpren Limited in the Statutory Fund of the Company amounts to 49,9 %.

Contribution of Alpren Limited to the Statutory Fund of the Company amounts to 174,611,666.61 hryvnas (one hundred and seventy four million six hundred and eleven thousand six hundred and sixty six hryvnas, sixty one kopiykas), which equals to 34,209,133.71 US Dollars (thirty four million two hundred and nine thousand one hundred and thirty three US dollars, seventy one cents).

7.3.2.  Share of Hardlake Limited in the Statutory Fund of the Company amounts to 51.1%.

Contribution of Hardlake Limited to the Statutory Fund of the Company amounts to 175,311,512.97 hryvnas (one hundred and seventy five million three hundred and eleven thousand five hundred and twelve hryvnas, ninety seven kopiykas), which equals to 34,346,244.25 UD Dollars (thirty four million three hundred and forty six thousand two hundred and forty four US dollars, twenty five cents).

7.4.   Certification of complete contribution for share in the Company. Following timely and complete contribution of the share into the Statutory Fund, each Equity Holder receives a certificate of the Company certifying that the respective Equity Holder has made complete contribution in exchange for its respective share in the Company.

7.5.   Amendments to the Statutory Fund. The General Meeting of the Equity Holders may decide to increase or decrease the Statutory Fund of the Company through introduction of amendments and addenda into the Foundational Agreement and the Charter of the Company according to requirements of the laws of Ukraine in effect as well as of registration of such amendments and addenda with the respective public authorities.

7.6.   Priority right to purchase; decrease share. If the Statutory Fund of the Company is increased, each Equity Holder has a priority right to purchase additional share, which is proportional to the share of property of such Equity Holder at the moment when the Statutory Fund is increased. If any of the Equity Holders decided not to purchase additional share of property in maximum amount, to which it is entitled by such priority right, all the other Equity Holders, which decided to purchase, are entitled to purchase such additional share, which is proportional to their shares of property at the moment when the Statutory Fund is increased. Such decision may be taken prior to the moment when the entire additional share, in the amount of which the Statutory Fund is increased, is purchased by one or several Equity Holders, or prior to the moment when neither of the Equity Holders decides to purchase any additional share. If the Equity Holder is unable to duly purchase or pay for the additional share of property, which is proportional to its share and to which it is entitled by virtue of increase of the Statutory Fund, the share of property of such Equity Holder in the Statutory Fund shall be subject to respective decrease.

7.7.   Notice about payment of dividends. During reasonable period of time following the end of each financial year of the Company, the General Meeting of the Equity Holders shall be obliged to approve the yearly report (including verified financial reports) for the respective financial year as well as to consider payment of dividends to the Equity Holders in proportion to their respective shares in the Statutory Fund of the Company.

*[TRUE COPY]*

*5*

## ARTICLE 8
## CONCESSION OF THE SHARE (ITS PORTION) IN THE STATUTORY FUND OF THE COMPANY

8.1.    Agreement to concession of share (its portion). Except for (a) transfer of share of property by virtue of the Equity Holder's exercise of its Priority right to refuse under Section 8.2 of this Charter or (b) Privileged Transfer (this term is defined in Section 8.2 below), the Equity Holder of the Company may not sell, transfer, concede or otherwise alienate either entire or any portion of its share in the Company to another Equity Holder of the Company or third persons without clear written agreement to this of all the other Equity Holders.

8.2.    Right to first refusal. Within the limits of the Ukrainian legislation, each Equity Holder is free to sell or otherwise transfer either entire, or portion of its share according to this Section 8.1 and Rights to first refusal of other Equity Holders pursuant to Section 8.2.

If an Equity Holder (hereinafter "Offeror") wishes to sell, transfer, concede or otherwise alienate either portion or its entire share of property in the Company to any Person, including another Equity Holder (hereinafter referred "the Offer Addressee") by any means other than the Privileged Transfer (this term is defined below), the Offeror prior to concluding the binding contract with the Offer Addressee, shall offer its share to other Equity Holders (Equity Holders Non Offerors) by means of timely written notice (Transfer Notice) about his wish to transfer such share. This Transfer Notice shall contain information about the offered amount of the share of property to be transferred (Offered Share), offered sale price and other substantial terms and conditions of transfer; if any conditions connected with determination of certain time limits are not regarded substantial for the Equity Holder Non Offerors, and Section 8.2 is applied to the time limits.

Every Transfer Notice shall be an irrevocable proposal of the Offeror about the sale of the entire Offered Share to any or all Equity Holders Non Offerors with price and on conditions mentioned in the Transfer Notice. Equity Holders Non Offerors shall have the right and a well-founded ability to analyze (i) the grounds for the offered price and other substantial conditions of the offered transfer, and (ii) confirmation of the honesty of this offer from the Offer Addressee or contract with it. Each of the Equity Holders Non Offerors shall have the Priority right to purchase the Offered Share for the price and on the conditions as set forth in the Transfer Notice (Right of First Refusal).

An Equity Holder Non Offeror shall exercise its Right of first refusal for purchase of the entire Offered Share by means of giving a written notice to the Offeror on acceptance of the offer mentioned in the Transfer Notice (Acceptance Notice) within 60 (sixty) days after the receipt of the Transfer Notice by the Equity Holder Non Offeror (Term of Right Exercise). Transfer Notice and Acceptance Notice, together with the provisions of this Section 8.2, shall constitute a single and a binding contract on purchase of the Offered Share, and the Offeror shall sell to such an Equity Holder Non Offeror that sends the Acceptance Notice (Acceptor Equity Holder), and the Acceptor Equity Holder(s) shall purchase from the Offeror the entire Offered Share for the mentioned price and on the mentioned conditions within 90 (ninety) days after the date of the Acceptance Notice. If any part of the purchase price mentioned in the Transfer Notice is expressed in the non-monetary form, the Accepting Equity Holder(s) shall be entitled to pay in the monetary form a fair market price for the part of the price, expressed in the non-monetary form, if agreed by the parties, or, failing such agreement, as determined by an internationally recognized investment bank choseb by the Accepting Equity Holder(s).

Closing of the contract shall take place as determined by the Accepting Equity Holder(s), or, if it is not determined, in the office of the Company no later than 10 (ten) days after registration of the share to the name of the Accepting Equity Holder(s). Full purchase price shall be paid in the monetary form by means of the bank transfer of immediately available funds, and such payment

*[TRUE COPY]*

shall be made against transfer of the certified copies of the amendments and addenda to this Charter and the Foundational Agreement, reflecting transfer of the share of property, free from any encumbrances, to the Accepting Equity Holder.

6

The Equity Holders shall take all measures necessary to the transfer of the share of property to the Accepting Equity Holder in accordance with the provisions of this Section 8.2, including, *inter alia*, participation in the Meeting of the Equity Holders and due approval of the amendments and addenda to this Charter and the Foundational Agreement, and such amendments and addenda shall remain in force and be absolutely effective at the date of closing.

If a valid Accepting Notice is given by more than one Equity Holder Non Offeror, the Offered Share shall be purchased by such Equity Holders in proportion to their shares of property in the Statutory Fund of the Company (excluding the Offeror's ownership share).

If no Accepting Notices are received during the Term of Right Exercise, the Offeror shall be entitled to offer the Offered Share to the Offer Addressee for the price and on conditions mentioned in the Transfer Notice, provided that after the lapse of the 60-day period from the end of the Term of Right Exercise such a transfer may not be performed. After this, the Offeror may transfer the share only after he has resubmitted the Transfer Notice to the Equity Holders Non Offerors, and these Equity Holders shall have all the same rights, privileges and options as provided in this Section 8.2.

For the purposes of this Charter, the term "Privileged transfer" shall mean (i) sale, transfer or concession by any Equity Holder of its share of property or its portion to the Affiliated Person of such Equity Holder, (ii) sale of any share of property in accordance with sections 8.3 or 8.4 of this Charter, (iii) sale of any share of property in accordance with Article 17 of the Foundational Agreement, and (iv) any other sale that is not the object of the Right to first refusal under the terms of the Foundational Agreement or otherwise as agreed by the Equity Holders. As regards the Privileged Transfer under subsection (i) if the Affiliated Person of the Equity Holder at any time possesses any share of property, and this Affiliated Person ceases to be an Affiliated Person of the Equity Holder, during the term before the event, after which the Affiliated Person ceases to be an Affiliated Person of the Equity Holder, takes place, other Equity Holders shall have the right and possibility to purchase the entire share of property owned by such Affiliated Person in accordance with the provisions of Section 6.4 of this Charter as if the mentioned share of property is subject to compulsory transfer, except when the share of property is returned to the original Equity Holder prior to such event.

8.3. <u>Rights to compulsory sale.</u> If, after conditions set forth in Section 8.2 are executed (except Compulsory Transfer), none of the Equity Holder Non Offerors decides to acquire the entire Offered Share under the provisions of Section 8.2, the Offeror shall have the rights (hereinafter "The Right to compulsory sale") to demand that all Equity Holders Non Offerors sell to the named Offer Addressee the entire share of property that belongs to such Equity Holders Non Offerors. The Offeror exercises his Right to compulsory sale by including the reference about existence of such right in the Transfer Notice, where the amount of the share of property is mentioned that all the Equity Holders Non Offerors must sell on the Offeror's demand. If no such reference is made in the Transfer Notice, Offeror shall be deemed to have waived the Right to compulsory sale under this Offer (this waiver is, however, not extended to any subsequent Transfer). The sale by the Equity Holders Non Offerors of their shares of property under this Section 8.3 is performed on the conditions similar to those, set forth in the Transfer Notice.

8.4. <u>Compulsory Transfer.</u> If any share of property must be sold, transferred, concede or alienated in the result of (i) bankruptcy or insolvency proceedings initiated against an Equity Holder, voluntarily or compulsory, or (ii) it attachment or other compulsory transfer, the Equity Holder whose share is subject to compulsory transfer ("Offeror") shall notify the other Equity Holders ("Other Equity Holders") accordingly immediately after the grounds, underlying such

*[TRUE COPY]*