# EXHIBIT N
# PART 22

offered transfer, emerged, mentioning the conditions of such offered transfer and the identity of the Offer Addressee.

7

Having received such notice or, if it is not received – after every Other Equity Holder obtains reliable information from other sources about such transfer, such Other Equity Holder shall have the right and possibility to purchase this entire share of property. This right may be exercised by such Other Equity Holder's directing the written notice to the Offeror within 60 (sixty) days after the receipt by the Other Equity Holder of this notice, or if it is not received – after every Other Equity Holder obtains reliable information from other sources about such transfer. If such notice is sent by more than one Other Equity Holder, the share of property is purchased by such Other Equity Holders in proportion to amount of their shares of property in the Statutory Fund of the Company (excluding the Offeror's ownership share).

Price paid by Other Equity Holders for the share of property under the provisions of this Section 8.4, shall correspond to the fair market price of this share of property that is determined by an internationally recognized investment bank chosen by the Other Equity Holder(s) that exercise their rights under Section 8.4.

Closing of the contract shall take place as determined by the Other Equity Holder(s) or, and if it is not determined, in the office of the Company no later than 10 (ten) days after registration of the share to the name of the Other Equity Holder(s). Full purchase price shall be paid in the monetary form by means of the bank transfer of immediately available funds, and such payment shall be made against transfer of the certified copies of the amendments and addenda to this Charter and the Foundational Agreement, reflecting transfer of the share of property, free from any encumbrances, to the Other Equity Holder.

The Equity Holders shall take all measures necessary to the transfer of the share of property to the Other Equity Holder in accordance with the provisions of this Section 8.2, including, *inter alia*, participation in the Meeting of the Equity Holders and due approval of the amendments and addenda to this Charter and the Foundational Agreement, and such amendments and addenda shall remain in force and be absolutely effective at the date of closing.

8.5.    Transfer of share (its portion) to third persons. Transfer of share (its portion) to third persons shall be possible if Sections 8.1, 8.2, 8.3 and 8.4 of this Charter are adhered and only following the full contribution by the Equity Holder transferring the share is made. Any third person acquiring the share, shall become bound by all provisions of this Charter and the Foundational Agreement. Any Equity Holder transferring the share (its portion) in the Company to a third person, shall include in the contract on transfer of such share of property (its portion) the clause providing for application of the provisions of the Charter and the Foundational Agreement to the transfer of the share and to the person acquiring it, as well as the clause committing the person acquiring the share to sign the written amendments and addenda to this Charter and the Foundational Agreement confirming such transfer.

8.6.    Purchase of share by the Company. A share of an Equity Holder of the Company, if its contribution is fully made, may be acquired by the Company if such purchase is approved by the General Meeting according to the Charter or upon exit or exclusion of the Equity Holder of the Company according to the Charter. In this case, no later than one year, the Company shall transfer the share to the other Equity Holders or to third persons. During this period the distribution of income, as well as voting and defining quorum at the Meeting of the Company or during the decision-making by the Equity Holders via questioning, according to Article 11 of this Charter, are made without consideration of the share acquired by the Company.

8.7.    Negative pledge. Regardless of any provisions to the contrary an Equity Holder may not transfer its share into pledge or mortgage or take other actions that may encumber its share, except when there is a written consent of all the Equity Holders.

*[TRUE COPY]*

8

8.8.    Prohibition to transfer encumbered Share. Regardless of any provision of this Charter to the contrary, no Equity Holder may sell, transfer or otherwise alienate, or commit itself to sell, transfer or otherwise alienate (as a principal debtor or as a guarantor, pledger or in any other capacity for direct obligation or for conditional obligation or otherwise) his share of the statutory capital or corporate rights (or any portion thereof) in the Company if and while any pledge or other encumbrance created by such Equity Holder in regard of such share or corporate rights to secure any debt of the Equity Holder before the bank or financial institution is finally and unconditionally settled in accordance with the legislation in force in relation to the settlement of such debt under the written permission of such bank or financial institution.

8.9.    Transfer and pledge contrary to the Charter. Any sale, transfer, concession, pledge or other alienation of share or any plans to sell, transfer, concede, pledge or otherwise alienate an Equity Holder's share, contrary to the other provisions of this Article 8, shall be considered invalid and have no legal force, and the person, for which such transfer is destined, shall not have rights in the Company, regarding it or regarding any such share of property.

## ARTICLE 9
## RESERVE FUND AND OTHER FUNDS OF THE COMPANY

9.1.    Establishment of separate funds. Apart from the Statutory Fund, the Company shall establish and maintain the following funds:

9.1.1.  The Reserve Fund; and

9.1.2.  Other funds in accordance with the requirements of the law of Ukraine or under the decision of the Meeting of the Equity Holders of the Company.

9.2.    The Reserve Fund. With the view to reimbursement of possible damages of the Company, the Reserve Fund shall be created at the rate of 25% (twenty five per cent) of the Statutory Fund. Annual allocations to the Reserve Fund of the Company shall amount to at least 5% (five per cent) of the net profit of the Company, but only until and while the Reserve Fund is lower than 25% (twenty five per cent) of the Statutory Fund.

9.3.    Other funds. The Company may establish and maintain other funds that may be necessary for the activity of the Company; such funds shall be established under the laws of Ukraine in force.

9.4.    Use of funds. Any losses occurred in the course of the Company's activity shall, first of all, be reimbursed from the Reserve Fund. If the Reserve Fund may not reimburse such losses, the Company, upon respective recommendations from the Director General, as well as upon agreement of the Meeting of the Equity Holders, shall use other possibilities to reimburse the losses.

## ARTICLE 10
## MANAGING BODIES OF THE COMPANY

Managing bodies of the Company shall be:

(i)      the Meeting of the Equity Holders;

(ii)     the Director General;

(iii)    the Board of Auditors.

*[TRUE COPY]*

## ARTICLE 11
## THE MEETING OF THE EQUITY HOLDERS

11.1.    Senior body. The Meeting of the Equity Holders, which may be General or Extraordinary, is the senior decision-making body of the Company. Within the limits, set forth by law of Ukraine and this Charter, the Meeting of the Equity Holders shall exercise all rights and powers, which are not entrusted upon other managing bodies of the Company.

11.2.    Head of the Company. The Meeting of the Company shall elect the Head of the Company. The Head of the Company may be elected as the Head of the Meeting of the Company when the Meeting of the Equity Holders is held. The Head of the Company shall be competent to convene the Meeting of the Equity Holders according to Section 11.3.2 below, as well as make for written questioning to enable the Equity Holders of the Company to decide without the Meeting of the Equity Holders.

11.3.    General and Extraordinary Meeting.

11.3.1. General Meeting. The General Meeting of the Equity Holders (hereinafter "the General Meeting") shall be held at least one (1) time per year. The Equity Holders also may make decisions by means of written interviews as set forth in Section 11.11 of this Charter.

11.3.2. Extraordinary Meeting. The Extraordinary Meeting of the Equity Holders shall be held in case of insolvency of the Company, upon request of the Head of the Company and/or the Board of Auditors and/or the Director General, in any case, if the interests of the Company so require, as well as upon request of the Equity Holders of the Company that in aggregate own more than 20 (twenty) per cent of the votes. If after the lapse of 25 (twenty five) days from the day of receipt of such request of the Equity Holders of the Company the Head of the Company does not convene the Extraordinary Meeting, these Equity Holders shall be entitled to convene the Extraordinary Meeting themselves.

11.4.    Competence of the Meeting of the Equity Holders. According to the legislation of Ukraine, any General or Extraordinary Meeting of the Equity Holders shall be competent to consider the following matters:

a)    determination of the basic activities of the Company, approving of its plans and reports on their implementation;

b)    amending the Charter of the Company, including, but not limited to, amending the Statutory Fund of the Company;

c)    exclusion of an Equity Holder from the Company;

d)    exclusion and recalling of the Head of the Company and members of the Board of Auditors;

e)    approval of annual results of the Company's activity, including that of its subsidiaries, approval of reports and opinions of the Board of Auditors, procedure of the profit division, term and procedure of payment of the shares of profit (dividends), determination of the losses reimbursement procedure;

*[TRUE COPY]*

*10*

f)     incorporation, reorganization and liquidation of the wholly-owned subsidiaries, branches and representative offices, approval of their charters and regulations;

g)     deciding upon liability of the Company's officials for their misconducts against the Company;

h)     approval of procedural rules and other internal documents of the Company, determination of the organizational structure of the Company;

i)     determination of salary of the Director General and the Company's officials;

j)     determination of amounts, forms and procedure of additional contributions of the Equity Holders;

k)     approval of decision on reorganization, liquidation and cessation of the Company's activity, appointment of the liquidation commission, approval of the liquidation balance;

l)     approval of decision on the Company's acquisition of the Equity Holder's share;

m)     deciding to sign, conclude or perform any deed, transaction or agreement, which may result in total commitments of the Company (*i.e.* all its liabilities with exception of the own capital) exceeding 490,000,000 US Dollars (four hundred and ninety million US Dollars) or the equivalent in another currency (according to the official exchange rate or cross-rate, determined with the reference to the official exchange rate of the National Bank of Ukraine valid for at least any of the following dates: for the date when the matter to conclude such deed, transaction or agreement is decided or for the date when such deed, transaction or agreement is signed, concluded or performed, hereinafter "Official NBU Exchange Rate");

n)     deciding to sign, conclude or perform any deed, transaction or agreement (or series of deeds, transactions or agreements with the same person or with one or more related persons), which stipulates for:

     (i)     obligation of the Company (either direct or conditional, as a principal pledgee or as a pledger or otherwise) to pay funds (including, but not limited to, grant a loan or deposit) or sell or otherwise transfer or dispose of any property or other assets in the amount that, or value of which, exceeds 10,000 US Dollars (ten thousand US Dollars) or the equivalent in another currency (according to the Official NBU Exchange Rate);

     (ii)     any sale, transfer, another disposal or making for any pledge or another encumbrance or liability (either current, or future, conditional or otherwise, as a principal debtor or a pledger or otherwise) regarding the Kyivstar Shares or any of their portion;

     (iii)     making for any pledge, mortgage or another encumbrance regarding any Company's assets;

     (iv)     subscription for, purchase or another Company's acquiring (either direct, or conditional) of any shares, other securities, shares in statutory funds and/or corporate rights; and/or

*[TRUE COPY]*

*11*

      (v)    Company's establishment of any account (in monetary form or securities) in any bank, securities registrar, depository system or custodian in Ukraine or abroad;

    o)    deciding for the Company to perform any acts (including, but not limited to, exercise of any voting rights at the general meeting of shareholders or in another managing body of Kyivstar) with the view to introducing any amendments to the Kyivstar Charter, including (but not limited to) any increase or decrease of Kyivstar's statutory fund;

    p)    deciding for the Company to refuse from any priority rights to purchase any shares of Kyivstar either owned by any shareholders of Kyivstar, or new ones, issued by Kyivstar.

    Decision on the abovementioned issues (a), (b) and (c) shall be deemed adopted, if it casts votes of the Equity Holders that in aggregate own more than 50 per cent of the votes of the Equity Holders (except for subsection (c) where more than 50% (fifty per cent) of the votes, not including votes of the Equity Holders to be excluded, shall be required). If this Charter does not set forth to the contrary, other decisions shall be adopted by simple majority of the Equity Holders' votes present at the Meeting.

    11.5.    <u>Notice</u>. Notice about either General, or Extraordinary meeting (hereinafter "Meeting") shall contain the following information:

      (i)    name and address of the Company;

      (ii)    date, place and time of the Meeting;

      (iii)    matters to be considered at the Meeting (hereinafter "Agenda"); and

      (iv)    reference to the form of the Meeting: General or Extraordinary.

    The Notice shall be sent via post or delivered by courier to the Equity Holders no later than 30 (thirty) days prior to the Meeting of the Equity Holders to their addresses, mentioned in the Foundational Agreement of the Company. If address of an Equity Holder is changed, such Equity Holder shall be obliged to inform immediately the Company and the Equity Holders about that. If such obligation is not observed, the Equity Holder may not invoke non-delivery of the notice about the Meeting of the Equity Holders to the new address.

    11.6.    <u>Agenda.</u> Any Equity Holder is entitled to request consideration of a matter at the Meeting of the Equity Holders if it is submitted no later than 25 days prior to the Meeting.

    Matters, not included into the Agenda, may be considered only upon respective agreement of all the Equity Holders present at the Meeting.

    No later than 7 (seven) days prior to the Meeting the Equity Holders shall be given possibility to examine the documents included in the Agenda of the Meeting. These documents may be examined and copied in the office of the Company except when their copies are sent along with notices about the Meeting.

    11.7.    <u>Quorum.</u> Presence, either personal, or through authorized representatives, of the Equity Holders that own in aggregate more than 60 (sixty) per cent of votes shall make quorum at any Meeting of the Equity Holders.

*[TRUE COPY]*

*12*

If there is no quorum on the set date, in the set time and in the set place of the Meeting of the Equity Holders, the Meeting of the Equity Holders shall be convened again but <u>only if</u> the Equity Holders are informed about this no later than 30 (thirty) days prior to such repeated Meeting of the Equity Holders. Quorum requirements, set forth in the first sentence of this Section 11.7 shall be applied unaltered to any and all repeated Meetings of the Equity Holders.

11.8.     <u>Representatives (trusted persons) of the Equity Holders</u>. An Equity Holder may be represented by an authorized representative (a trusted person) at any Meeting of the Equity Holders if such representatives are appointed as required by the law of Ukraine in force.

11.9.     <u>Minutes</u>. The Head shall be in charge of the Meeting and appoint a secretary (not obviously from among the Equity Holders) to keep minutes. Such minutes shall be kept in the journal of the minutes. The Head and the secretary of the Meeting of the Equity Holders shall confirm that minutes fully and correctly reflect the substance of matters submitted to consideration at the Meeting of the Equity Holders.

11.10.    <u>Voting</u>. The Equity Holders shall have number of votes in proportion to amount of their shares in the Statutory Fund. All decisions are adopted by simple majority of votes of the Equity Holders present at the Meeting, except when under Section 11.4 of this Charter more votes are required for a decision to be adopted.

11.11.    <u>Form of the Meeting; Actions without the Meeting of the Equity Holders</u>. Within 10 (ten) days after receipt of a written notice about decision or voting on a respective matter from all the Equity Holders, the Head of the Meeting (elected at the previous Meeting of the Equity Holders or upon the decision of the Equity Holders adopted through interviews) shall inform all the Equity Holders about the decision adopted through such interviews.

Within 10 (ten) days since the last notice from the participants in voting is received, all the Equity Holders shall be informed about the adopted decision by the Director General.

Decisions adopted without the Meeting of the Equity Holders shall, together with information about such decision, be recorded in the respective journal of the minutes and read at the following Meeting of the Equity Holders.

## ARTICLE 12
## THE DIRECTOR GENERAL OF THE COMPANY

12.1.     <u>Executive body.</u> The Director General shall exercise powers of the executive body of the Company. The Director General shall decide upon all issues of the Company's activity except those within the competence of the Meeting of the Equity Holders if decisions of the Meeting of the Equity Holders and this Charter do not provide to the contrary. The Director General shall not be entitled to adopt decisions to bind the Equity Holders of the Company.

12.2.     <u>Appointment and Term of Office.</u> The Director General shall be appointed as set forth in Section 11.3 of this Charter. The Director General shall be appointed for 3 (three) years and may be reelected unlimited number of times.

12.3.     <u>Obligations</u>. The Director's General competence extends to the following issues:

*[TRUE COPY]*

(i)    control over day-to-day activities of the Company and conducting the Company's affairs;

(ii)   deciding upon any and all issues relating to the day-to-day activities of the Company except issues within the competence of another body of the Company according to the laws of Ukraine, this Charter or decision of the Meeting of the Equity Holders;

(iii)  drafting annual reports, business-plans and annual budget;

(iv)   management and administration of business-plans implementation, reporting for the results before the Meeting of the Equity Holders;

(v)    representing the Company's interests and acting on its behalf without a power of attorney in relation to any Company's activity according to the Foundational Agreement and this Charter, as well as limitations imposed by Section 12.4 of this Charter;

(vi)   signing and making for fulfillment of all contracts, agreements and documents relating to the Company's activity according to the limitations imposed by Section 12.4 of this Charter;

(vii)  determination of the staff selection criteria; hiring; determination of the employees' functions and obligations; control and supervision over their work; stimulation, imposition of disciplinary penalties and firing;

(viii) making for implementation of all rules and regulations in the sphere of administration and operation of the Company;

(ix)   representation of the Company before public courts and courts of arbitration;

(x)    representing the Company's interests at the general meeting of shareholders of Kyivstar or of other legal entities, shares of which are owned by the Company, and voting by the shares of property of such legal entities, possessed by the Company according to the limitations imposed by Section 12.4 of this Charter;

(xi)   other powers and additional functions that may be imposed upon him by a decision of the Meeting of the Equity Holders, as well as his basic obligations according to the instructions of the Meeting of the Equity Holders.

12.4.    Limitations of the Director's General competence to conclude deeds. Regardless of any provision of this Charter to the contrary, the Director General may not, without clear and special preliminary approval of the Equity Holders through a written decision, sign, conclude or perform any deed, transaction or agreement (or series of deeds, transactions or agreements with the same person or with one or more related persons), or perform another act set forth in subsections (m) to (p) inclusive of Article 11.4 of this Charter. Any deed, transaction or agreement, concluded, signed or performed, or any action performed by the Director General with any violation of requirements of this Article 12.4 shall entail no obligation or responsibility for the Company. The Director General shall be obliged to inform any natural or legal person, with which the Director General is discussing or negotiating as regards any deeds, transactions, agreements or acts, defined in this Article, about all limitations, contained in this Article 12.4.

*[TRUE COPY]*

*14*

12.5.     Signing on behalf of the Company. Under Section 12.4 of this Charter, provided there are no other decisions of the Meeting of the Equity Holders, the Director General, acting individually, or another person, appointed by the Director General in written form, shall be entitled to sign documents on behalf of the Company.

12.6.     No other office requirement. The Director General of the Company shall not be a member of the Board of Auditors and/or the Head of the Meeting of the Equity Holders of the Company.

## ARTICLE 13
## BOARD OF AUDITORS

13.1.     Composition. The Company shall have the Board of Auditors composed of at least 3 (three) persons appointed (and may be dismissed) by the Meeting of the Equity Holders.

13.2.     Obligations. The Board of Auditors shall certify the annual accounting and financial reports, balances and reports on income and losses, as well as tax declarations and submissions (hereinafter "the Annual reports"), and, also, assist the Director General and other officers on the tax and financial management of the Company. The Board of Auditors shall also verify legitimacy of the Director's General activity, other officers and employees of the Company. The Board of Auditors may request convention of the Meeting of the Equity Holders if it considers the vital interests of the Company to be threatened or identifies the facts of the abuse of the property of the Company by the Company's employees.

13.4.     Reporting. Within 3 (three) months after the end of each financial year the Board of Auditors shall certify and submit the Annual Audit Report along with the detailed analysis and comments of the Annual Reports of the Company for the consideration of the Director General and the Meeting of the Equity Holders. On the request of the Meeting of the Equity Holders the Board of Auditors shall submit other reports.

## ARTICLE 14
## FINANCIAL DOCUMENTATION, ACCOUNTING REPORTS AND AUDIT REVIEWS

14.1.     Financial year. The financial year of the Company shall start on January 1 and ends on December 31. The principles of the accounting and audit reviews of the Company shall comply with the requirements of this Charter, decisions of the Meeting of the Equity Holders and the legislation of Ukraine in force.

14.2.     Financial reports. The Company shall keep complete and precise financial and accounting record according to the main principles, set by the Director General and adopted by the Meeting of the Equity Holders. Such record shall reflect accurately all the income, losses, profits, expenditures, assets and liabilities of the Company. Apart from the auditing documentation, kept according to the Ukrainian legislation on the accounting activities, the balance, income and losses report, costs investment report and other financial documents shall be prepared quarterly and annually, according to the international accounting standards, and disseminated among the Equity Holders. The financial reports of the Company shall be drafted and signed by the Director General along with the Chief Accountant and certified annually by the Board of Auditors. As requested by the Equity Holders, they shall be given access to all financial and accounting documentation of the Company.

*[TRUE COPY]*

*15*

14.3.    Independent auditors. Apart form the audit reviews that may be conducted by the Ukrainian audit organizations according to the requirements of the Ukrainian legislation, the Company shall be entitled, on its own costs, appoint the independent auditors from any country, for the conduction of annual or other periodic audits of the company according to the international accounting standards.

### ARTICLE 15
### EXIT FROM THE COMPANY

Under the provisions of this Charter and the laws of Ukraine in force, an Equity Holder may, at any time, exit from the Company by sale of its share in the Company to the other Equity Holders or to third persons and/or to the Company, if such Equity Holder has made his contribution in full.

### ARTICLE 16
### EXCLUSION OF AN EQUITY HOLDER FROM THE COMPANY

Regardless of the provisions of Article 17 of the Foundational Agreement, the Equity Holder that systematically refrains from or inappropriately fulfills its obligations or by its actions impedes achievement of the Company's objectives, may be excluded from the Company by decision of the Meeting of the Equity Holders, adopted by the Equity Holders, aggregate vote of which exceeds 50 (fifty) per cent of total votes of the Company's Equity Holders. In this case such Equity Holder (its representative) shall not participate in the voting.

### ARTICLE 17
### TERMINATION OF THE ACTIVITY (REORGANIZATION) AND LIQUIDATION OF THE COMPANY

17.1.    General provisions. Termination of the Company's activity takes place in case of its reorganization (merger, accession, division, separation, transformation) or liquidation. In case of reorganization, all the rights and obligations of the Company are transferred to the legal successors.

17.2.    Grounds for liquidation. The Company may be liquidated in the following cases:

      (i)    upon decision of the Meeting of the Equity Holders according to subsection k) of Section 11.4 of this Charter; or

      (ii)    by decision of a public court or a court of arbitration according to the legislation of Ukraine.

17.4.    Management, carried out by the Liquidation Commission. Starting from the date on which the Liquidation Commission is appointed, all the powers on management of the Company shall be transferred to it. Within the time limits, required or permitted by the legislation of Ukraine, the Liquidation Commission shall publish information on the liquidation of the Company in official (national and local) press, define the deadlines for the claims submission and inform the creditors about them, assess the actual property (assets and liabilities) of the Company, publish the lists of debtors and creditors of the Company, as well as make settlement with them, make for the clearance of the Company's debts before the employees, third persons and the Equity Holders, draft the liquidation balance and submit it for consideration of the Meeting of the Equity Holders, and perform other functions, as provided by the legislation of Ukraine.

*[TRUE COPY]*

*16*

17.5.    <u>Liquidation balance</u>. The liquidation Commission shall prepare, no later than the proposed date of liquidation, the financial report (hereinafter "Liquidation Balance") showing all the assets remaining after the settlement of the unpaid obligations, including, in particular, the taxes and fees, debts before the banks and suppliers with the payment date before or after the date of the liquidation of the Company. The Liquidation Commission shall submit the Liquidation Balance for consideration of the Meeting of the Equity Holders together with the current report on the liquidation process and proposals on settlement of any remaining obligations as well as regarding the use of the remaining assets of the Company.

17.6.    <u>Division of assets/incomes from the liquidation of the Company</u> After the liquidation balance is approved by the Meeting of the Equity Holders, the Liquidation Commission shall commence the liquidation of the Company. After the Company's activity is terminated the Liquidation Commission, upon decision of the Meeting of the Equity Holders, shall sell all the assets of the Company to raise funds to cover expenditures, connected with the liquidation of the Company, to settle all other claims and to distribute remaining (if any) funds among the Equity Holders in proportion to their correspondent shares in the Company. Nevertheless, if the monetary and other assets of the Company are sufficient to settle unfulfilled obligations, and the shares of Kyivstar have not been sold prior to the adoption of the decision on the liquidation of the Company, the Liquidation Commission shall not sell the shares of Kyivstar, but distribute them among the Equity Holders in proportion to their shares in the Statutory Fund in accordance with the requirements of the foundational documents of Kyivstar and any other relevant agreement between the shareholders.

17.7.    <u>Termination of the Company's activity</u>. The Liquidation Commission

(i)        shall make for safe storage of  all accounting and record documentation within the term as laid down by law; and

(ii)       shall take measures to withdrawal of the Company from the respective company register.

Liquidation of the Company shall be deemed finalized and the Company shall be deemed to have terminated its activity after the moment when respective record is made in the respective state register.

**ARTICLE 18**
**NOTICES**

Any notice or other information to be provided under this Charter shall be in written form. Such information or notice shall be deemed duly provided, if delivered in the manner directly determined by this Charter. If a manner is not determined in this Charter, the notice shall be deemed duly made, if delivered personally, by air mail, sent by telex or fax to the Equity Holder, to which it must or may be provided, to the address of such Equity Holder stated below or to another address, notified by the Equity Holder to the other Equity Holders and the Company. Such notices or any other information shall be sent to the Equity Holders to their addresses and faxes, mentioned in the Foundational Agreement of the Company.

**EQUITY HOLDERS of "STORM" Limited Liability Company:**

**Company "Alpren Limited" (Cyprus),**
Represented by Oleksandra Serhiyivna Maltseva,
acting by proxy of January 5, 2006,
certified by the private notary of the Kyiv notary district

*[TRUE COPY]*

*17*

Levchenko V.M. on January 5, 2006 under № 33                   *[signature]*

**Company "Hardlake Limited" (Cyprus),**
Represented by Kateryna Serhiyivna Kokot,
acting by proxy issued on November 11, 2005, and
certified by the Regional Commissioner of Nicosia
*[Name]* on November 18, 2005 under № 142140/05          *[signature]*

*[TRUE COPY]*

*18*

Kyiv on February 15, 2006, I, Yakymenko V.O., Private Notary of Kyiv notary district, certify the authenticity of the signatures of ***Kokot Kateryna Serhiyivna***, acting by proxy of Company "Hardlake Limited" ***Maltseva Oleksandra Serhiyivna***, acting by proxy of Company "Alpren Limited", done in my presence. The identity of Kokot K.S. and Maltseva O.S. who have signed the document is confirmed, the authority of the representatives is verified.

Registered in the Register under the № *523, 524*

The payment charged – according to Article 31 of the Law of Ukraine "On Notariate".

Private Notary

*[Signature and the round seal of Private Notary V.O. Yakymenko]*

[signed and stamped by the round stamp of the private Notary V.O. Yakymenko]

[Kyiv, 20.02.2005.

I, Levytskyi R.V., Private Notary of Kyiv notary district, certify that this is the true copy of the document, in which I have reveled no strike-outs, corrections and other unapproved changes or other peculiarities.

Registered with № *1228*

Payment charged – as per agreement

**[Signature and the round seal of Private Notary R.V. Levytskyi]**

*[Seal]*
Stitched, numbered and sealed
20 (twenty) pages
*[Signature]*

*[Seal]*
Numbered, stitched, signed and sealed 18 (eighteen) pages
*[Signature]*

*[Signature and the round seal of Private Notary V.O. Yakymenko]*

*[TRUE COPY]*



Товариство з обмеженою відповідальністю "СТОРМ" ("Товариство"), створене відповідно до чинного законодавства України та Установчого договору Товариства від 20 квітня 1995 року.

Товариство зареєстроване 23 червня 1995 року Солом'янською районною у місті Києві державною адміністрацією за номером 10731200000000003.

## СТАТТЯ 1
### ВИЗНАЧЕННЯ ТЕРМІНІВ

"Афілійована особа" - це Особа, яка прямо чи опосередковано через одного чи кількох посередників контролює, контролюється або перебуває під спільним контролем разом із іншою особою (для цілей цього Статуту, термін "контроль" означає повноваження прямо чи опосередковано впливати чи забезпечувати вплив на управління та політику шляхом володіння цінними паперами за якими можна голосувати, за контрактом чи в силу інших прав). Термін "особа" означає будь-яку фізичну особу, корпорацію, компанію, товариство з обмеженою відповідальністю, асоціацію, акціонерне товариство, траст або його опікуна, неінкорпоровану націю або спільне підприємство, суд або орган державної влади чи будь-яке відомство або підрозділ, або будь-яку юридичну особу. "Статутний фонд" означає статутний фонд Товариства, як визначено у пункті 7.1. цього Статуту. Термін "Товариство" означає - товариство з обмеженою відповідальністю "СТОРМ". Термін "Учасники" має значення, зазначено у п. 4.1 цього Статуту. Інші слова та терміни, які вживаються у цьому Статуті, зокрема "Збори Учасників", "Загальні збори", "Позачергові збори", "Генеральний директор", "Ревізійна комісія", "Річна звітність", "Резервний фонд", "Порядок денний", "аудиторський звіт" та "Ліквідаційна комісія", вживаються у значенні, визначеному законодавством України, якщо спеціально не вводиться протилежне значення або якщо текст, у якому зустрічається слово або термін, не обумовлює їх іншого тлумачення.

## СТАТТЯ 2
### НАЗВА ТОВАРИСТВА ТА ЙОГО МІСЦЕЗНАХОДЖЕННЯ

2.1.   Назва Товариства. Товариство має таку назву:

   2.1.1.  Українською мовою:

       повна назва - Товариство з обмеженою відповідальністю "СТОРМ";
       скорочена назва - ТОВ "СТОРМ".

   2.1.2.  Англійською мовою:

       повна назва - Limited Liability Company "STORM";
       скорочена назва - LLC "STORM".

2.2.   Місцезнаходження Товариства. Товариство знаходиться за адресою:

   Україна, м. Київ, вул. Народного Ополчення, буд. 1.



## СТАТТЯ 3
## СТРОК ІСНУВАННЯ ТА ЮРИДИЧНИЙ СТАТУС ТОВАРИСТВА

**Строк існування.** Товариство має невизначений строк існування та діє, поки існує, до моменту його ліквідації в порядку, визначеному у цьому [...]

**Юридичний статус.** Товариство є юридичною особою у формі товариства з відповідальністю, створеного відповідно до законодавства України.

**Підприємство з іноземними інвестиціями.** Товариство є підприємством з іноземними інвестиціями. Товариство може створювати власні та повні дочірні і афілійовані особи та відділення, брати участь у господарських [...] та може користуватися правами та пільгами, які встановлюються для підприємств з іноземними інвестиціями згідно з чинним законодавством України.

**Обмеження відповідальності.** Товариство несе відповідальність по зобов'язаннях у межах вартості усього свого майна та активів, але несе Учасники обмежуються розміром їх відповідних вкладів у Статутний [...] у пункті 7.3 цього Статуту. Учасники Товариства не несуть [...] по боргах та зобов'язаннях Товариства.

## СТАТТЯ 4
## УЧАСНИКИ ТОВАРИСТВА

Товариства є:

"Лімітед" (англійською мовою - "Alpren Limited"), юридична особа, яка створена відповідно до законодавства Кіпру та зареєстрована за номером 143441, зареєстрований офіс якої за адресою: Themistocles Dervis Street, 3 Julia House, 1st floor, P.C. 1066, Nicosia, (далі "Лімітед"), та

"Лімітед" (англійською мовою - "Hardlake Limited"), юридична особа, яка створена відповідно до законодавства Кіпру та зареєстрована за номером 163009, зареєстрований офіс якої за адресою: 5 Themistocles Dervis Street, Elenion Building, 2nd Floor, CY-1066, (далі "Хардлейк Лімітед"),

кожен окремо іменуються "Учасник" та всі разом іменуються "Учасники".

## СТАТТЯ 5
## МЕТА ТОВАРИСТВА

[...] Товариства є здійснення господарської діяльності, визначеної у цьому Статуті, з [...] прибутку. Господарська діяльність Товариства полягає у володінні акціями акціонерного товариства "Київстар Дж.Ес.Ем", код ЄДРПОУ 21673832, [...] Державною адміністрацією Шевченківського району міста Києва, Україна, 3[...] 97 року за реєстраційним № 1639, або її правонаступника (далі - "Київстар"), та будь-яких та всіх прав та обов'язків, пов'язаних з володінням зазначеними акціями, на акції, які були випущені Київстар та знаходяться у володінні Товариства на дату [...] цього Статуту або у будь-який час у майбутньому, далі іменуються "Акції [...]

## СТАТТЯ 6
### ПРЕДМЕТ ДІЯЛЬНОСТІ ТОВАРИСТВА

Основним предметом діяльності Товариства є володіння Акціями Київстар та здійснення будь-яких прав та обов'язків, пов'язаних з володінням Акціями Київстар. Товариство не займається жодною іншою господарською діяльністю, до прийняття Зборами Учасників рішення інше.

## СТАТТЯ 7
### СТАТУТНИЙ ФОНД ТОВАРИСТВА

7.1. Статутний фонд. Статутний фонд Товариства (далі — Статутний фонд) дорівнює 349 923 179,58 гривень (триста сорок дев'ять мільйонів дев'ятсот двадцять три мільйони сто сімдесят дев'ять гривень та п'ятдесят вісім копійок).

7.2. Порядок формування. Статутний фонд сплачується грошовими та/або майновими вкладами Учасників.

7.3. Частки та вклади Учасників.

7.3.1. Частка Алпрен Лімітед у Статутному фонді Товариства становить 49,9%.

Вклад Алпрен Лімітед до Статутного фонду Товариства складає 174 611 666,61 грн. (сто сімдесят чотири мільйони шістсот одинадцять тисяч шістсот шістдесят шість гривень та шістдесят одна копійка), що дорівнює 34 209 133,71 доларам США (тридцять чотири мільйони двісті дев'ять тисяч сто тридцять три долари США та сімдесят один цент).

7.3.2. Частка Хардлейк Лімітед у Статутному фонді Товариства становить ...

Частка Хардлейк Лімітед набута згідно договору передачі частки до статутного фонду від Алпрен Лімітед та складає 175 311 512,97 гривень (сто сімдесят п'ять мільйонів триста одинадцять тисяч п'ятсот дванадцять гривень і дев'яносто сім копійок), що є еквівалентом 34 244,25 доларам США (тридцять чотири мільйони триста сорок чотири тисячі двісті сорок чотири долари США та двадцять п'ять центів).

7.4. Підтвердження повноти внесення вкладу за частку у Товаристві. Після власного та повного внесення свого вкладу до Статутного фонду, кожному Учаснику надається Товариством, що засвідчує повноту внесення вкладу таким Учасником в обмін на відповідну частку у Товаристві.

7.5. Зміни до Статутного фонду. Загальні Збори Учасників Товариства можуть прийняти рішення про збільшення або зменшення Статутного фонду Товариства шляхом внесення змін та доповнень до Установчого договору та Статуту Товариства згідно з вимогами чинного законодавства України та реєстрації таких змін та доповнень у відповідних органах державної влади.

7.6. Переважне право на придбання зменшення частки. При збільшенні Статутного фонду Товариства, кожен з Учасників має переважне право на придбання частки, пропорційно частці власності такого Учасника на момент ...