# EXHIBIT N
# PART 24

# EXHIBIT 11

*20*
**COPY**

**REGISTERED**

State Administration of Solomyansky district in Kyiv
Registration № _____
of " __ " _____ 2002

This edition of Charter is registered
by State Administration of Solomyansky district in Kyiv
__5__ » __07.__ __2002__
Deputy Head *[Seal, Signature]*

**APPROVED**

By Meeting of the Equity Holders of
"STORM" Limited Liability Company
Minutes № 18 dated June 26, 2002

CHARTER

OF THE LIMITED LIABILITY COMPANY

"STORM"
(new edition)

June 26, 2002

Amendments to the foundational documents
registered
« 24 » __09.__ __2004__ _____

Amendments to the foundational documents
registered
« 13 » __07.__ __2004__ _____

Amendments to the foundational documents
registered
__9__ » __10.__ __2002__ _____

Kyiv - 2002

*[TRUE COPY]*

## PREAMBLE

Limited Liability Company "STORM" (hereinafter "Company") incorporated and existing under the Foundational Agreement of the Company dated April 20, 1995, according to the Law of Ukraine "On Commercial Entities" dated September 19, 1991 number 1576-XII (as amended and restated), the Law of Ukraine "On Entrepreneurship" dated February 7, 1991, number 698-XII (as amended and restated), the Law of Ukraine "On Enterprises in Ukraine" dated March 27, 1991, number 887-XII (as amended and restated), the Law of Ukraine "On Foreign Investments Regime" dated March 19, 1996, number 93/96-BP (as amended and restated), as well as other legal acts of Ukraine upon the terms and conditions as laid down below.

The Company is registered on June 23, 1995 in the State Administration of Zhovtnevy District in Kyiv under number 23163325.

## ARTICLE 1
### DEFINITIONS

**"Affiliated person"** – is a Person that directly or indirectly through one or more intermediaries controls, is controlled or is jointly controlled together with another person (for the purposes of this Charter, "control" shall mean authority to influence or assure influence on management and policies by means of owning securities that entitle to vote, through the contract or by any other means). **"Person"** shall mean any natural person, corporation, company, limited liability company, association, joint-stock venture, trust or the trustee, incorporated association or joint venture, court or state body, or any agency or its division or any other legal entity. **"Statutory Fund"** shall mean the statutory fund of the Company as determined in Section 7.1 of this Charter. **"Company"** shall mean Limited Liability Company "STORM". **"Equity Holders"** shall mean as determined in Section 4.1 of this Charter. Other terms used in this Statute, including **"Meeting of the Equity Holders"**, **"General Meeting"**, **"Extraordinary Meeting"**, **"Director General"**, **"Board of Auditors"**, **"Annual Reports"**, **"Reserve Fund"**, **"Agenda"**, **"Creditor Report"** and **"Liquidation Commission"** are used in the same meaning as determined by the legislation of Ukraine, unless the opposite meaning is specifically introduced or the context suggests to the opposite.

## ARTICLE 2
### NAME OF THE COMPANY AND ITS SEAT

2.1.     Name of the Company. The Company shall have the following name:

   2.1.1.  In Ukrainian:

   full name: Товариство з обмеженою відповідальністю "СТОРМ";
   reduced name: ТОВ "СТОРМ".

   2.1.2.  In English:

   full name: Limited Liability Company "STORM";
   reduced name: LLC "Storm".

2.2.     Seat of the Company. Seat of the Company shall be:

   Ukraine, Kyiv, 1 Narodnogo Opolchennya Street.

*[TRUE COPY]*

## ARTICLE 3
## TERM AND LEGAL STATUS OF THE COMPANY

3.1.     Term of Existence. The Company has an indefinite term of existence and shall be considered to exist until liquidated as laid down in this Charter.

3.2.     Legal Status. The Company is a legal entity in the form of a limited liability company, incorporated under the laws of Ukraine.

3.3.     Enterprise with foreign investments. The Company is an enterprise with foreign investments. The Company may establish local and foreign subsidiaries, affiliated persons and divisions, participate in commercial relations, as well as may use rights and privileges, provided for enterprises with foreign investments by the laws of Ukraine.

3.4.     Limitation of liability. The Company shall be liable before its creditors by all of its property and assets. However, liability of the Equity Holders of the Company shall be limited to the value of their contributions into the Statutory Fund, as provided for in Section 7.3 of this Charter. The Equity Holders of the Company shall not be liable for the debts and obligations of the Company.

## ARTICLE 4
## THE EQUITY HOLDERS OF THE COMPANY

The Equity Holders of the Company shall be the following legal and natural persons:

*Svitlana Yurtyivna Tumanova*, national of Ukraine, residing at: Kyiv Region, Boyarka, 16 Schorsa Street, passport №CM101141 issued by Kyiv-Svyatoshino District Department of the Chief Administration of the Ministry of Internal Affairs of Ukraine in Kyiv Region on April 5, 1999 (hereinafter – *Tumanova S.Y.*);

*Vladlena Volodymyrivna Lytovchenko*, national of Ukraine, residing at: Kyiv, 33 Entuziastiv Street, apt. 54, passport CH-603309 issued by Darnytsky District Department of the Chief Administration of the Ministry of Internal Affairs of Ukraine in Kyiv on November 20, 1997 (hereinafter – *Lytovchenko V.V.*);

*Mobile Telecom Finance*, legal entity incorporated under the laws of the United States of America, having its registered office at: 100 Peachtree Street, Atlanta, Georgia 30303, USA (hereinafter – *Mobile Telecom Finance*);

*E.C. Venture Capital*, legal entity incorporated under the laws of Switzerland, having its registered office at: 4 San-Urs Street, Geneva, Switzerland (hereinafter – *E.C. Venture Capital*);

*Euroquest Commerce Limited*, legal entity incorporated under the laws of Cyprus, having its registered office at: 1506, Cyprus, Nicosia, 20 Queen Frederica Street, El Greco House, office 104 (hereinafter – *Euroquest Commerce Limited*);

*Alfa Telecom Limited*, legal entity incorporated under the laws of British Virgin Islands, having its registered office at: P.O. Box 3339, Geneva Place, 2nd Floor, 333 Waterfront Drive, Road Town, Tortola, British Virgin Islands (hereinafter – *Alfa Telecom Limited*);

Hereinafter collectively – "the Equity Holders".

*[TRUE COPY]*

23

## ARTICLE 5
## PURPOSE OF THE COMPANY

The general commercial purpose of the Company is gainful commercial activity, whether direct or via subsidiaries or branches. The basic commercial activity shall mean ownership of shares of the Closed Joint Stock Company "Kyivstar G.S.M." being a Ukrainian Closed Joint Stock Company – the national GSM mobile operator (USREOU code 21673832), registered by the State Administration of Zaliznychny District in Kyiv on September 3, 1997, registered № 5959 (hereinafter – "Kyivstar"). For the purposes of this Charter all the shares of Kyivstar, possessed by the Company on the date of this Charter or purchased in the future shall be hereinafter referred to as "Kyivstar Shares".

## ARTICLE 6
## SUBSTANCE OF THE COMPANY'S ACTIVITY

6.1.    Substance of activity. The Company shall be engaged in the following types of activity:

6.1.1.    foreign economic activity as regards import and export of any merchandise, materials, equipment, as well as provision of services;

6.1.2.    investments in Ukraine and abroad;

6.1.3.    purchase, sale and lease of any equipment and property;

6.1.4.    trade agency;

6.1.5.    investment of the funds possessed into the Ukrainian companies, participation in their management, establishment of subsidiaries;

6.1.6.    representation of foreign companies in the territory of Ukraine, dealership, distributorship and agency;

6.1.7.    participation in, establishment and management of enterprises to be ancillary to the basic activity;

6.1.8.    other types of commercial activity, necessary, related or favorable to achievement of the general purpose of the Company if permitted by the laws of Ukraine.

## ARTICLE 7
## STATUTORY FUND OF THE COMPANY

7.1.    Statutory Fund. The Statutory Fund of the Company (hereinafter – "Statutory Fund") amounts to 104,233,229.58 hryvnas (one hundred and four million two hundred and thirty three thousand two hundred and twenty two hryvnas, fifty eight kopiykas), which equals to 22,455,377.96 US Dollars (twenty two million four hundred and fifty five thousand three hundred and seventy seven US Dollars, ninety six cents) according to the official exchange rate of the National Bank of Ukraine:

* 2.0591 hryvnas for 1 US Dollar as of June 24, 1998. Consequently 6,392,585 (six million three hundred and ninety two thousand five hundred and eighty five) hryvnas, which equals to 3,104,552.96 US Dollars (three million one hundred and four five hundred and fifty two US Dollars, ninety six cents),

*[TRUE COPY]*

- 3.428 hryvnas for 1 US Dollar as of October 27, 1998. Consequently 5,957,949.70 (five million nine hundred and fifty seven thousand nine hundred and forty nine hryvnas, seventy kopiykas) hryvnas, which equals to 1,738,025 US Dollars (one million seven hundred and thirty eight thousand twenty five US Dollars),

- 3.9414 hryvnas for 1 US Dollar as of April 9, 1999. Consequently 9,774,672 (nine million seven hundred and seventy four thousand six hundred and seventy two) hryvnas, which amounts to 2,480,000 US Dollars (two million four hundred and eighty thousand US Dollars),

- 5.4396 hryvnas for 1 US Dollar as of June 14, 2000. Consequently 35,209,442.88 (thirty five million two hundred and nine thousand four hundred and forty two hryvnas, eighty eight kopiykas) hryvnas, which equals to 6,472,800 US Dollars (six million four hundred and seventy two thousand eight hundred US Dollars),

- 5.4163 hryvnas for 1 US Dollar as of April 26, 2001. Consequently 19,498,680 (nineteen million four hundred and ninety eight thousand six hundred and eighty) hryvnas, which equals to 3,600,000 US Dollars (three million six hundred thousand US Dollars), and

- 5.4150 hryvnas for 1 US Dollar as of May 8, 2001. Consequently 27,399,900 (twenty seven million three hundred and ninety nine thousand nine hundred) hryvnas, which equals to 5,060,000 US Dollars (five million sixty thousand US Dollars).

7.2.    Formation. The Statutory Fund is formed with monetary and/or property contributions of the Equity Holders.

7.3.    Shares and contributions of the Equity Holders.

7.3.1.    The share of *Tumanova S.Y.* in the Statutory Fund of the company amounts to 0.00717 percent.

The contribution of *Tumanova S.Y.* into the Statutory Fund of the Company amounts to hryvnas 4,533.57 hryvnas (four thousand five hundred and thirty three hryvnas, fifty seven kopiykas), which equals to 1,610.43 US Dollars (one thousand six hundred and ten US Dollars, forty three cents).

7.3.2.    The share of *Lytovchenko V.V.* in the Statutory Fund of the Company amounts to 0.00191 per cent.

The contribution of *Lytovchenko V.V.* into the Statutory Fund of the Company amounts to 1,207.34 hryvnas (one thousand two hundred and seven hryvnas, thirty four kopiykas), which equals to 428.83 US Dollars (four hundred and twenty eight US Dollars, eighty three cents).

7.3.3.    The share of *Mobile Telecom Finance* in the Statutory Fund of the Company amounts to 9.00721 per cent.

The contribution of *Mobile Telecom Finance* into the Statutory Fund of the Company amounts to 9,389,177.91 hryvnas (nine million three hundred and eighty nine thousand one hundred and seventy seven hryvnas, ninety one lopiykas), which equals to 2,022,603.0 US Dollars (two million twenty two thousand six hundred and three US Dollars).

*[TRUE COPY]*

7.3.4.  The share of *E.C. Venture Capital* in the Statutory Fund of the Company amounts to 5.93945 per cent.

The contribution of *E.C. Venture Capital* into the Statutory Fund of the Company amounts to 6,191,323.57 hryvnas (six million one hundred and ninety one thousand three hundred and twenty three hryvnas, fifty seven kopiykas), which equals to US Dollars 1,333,725.9 US Dollars (one million three hundred and thirty three thousand seven hundred and twenty five US Dollars, ninety cents).

7.3.5.  The share of *Euroquest Commerce Limited* in the Statutory Fund of the Company amounts to 34.94426 per cent.

The contribution of *Euroquest Commerce Limited* into the Statutory Fund of the Company amounts to 36,426,139.17 hryvnas (thirty six million four hundred and twenty six thousand one hundred and thirty nine hryvnas, seventeen kopiykas), which equals to 7,846,865.55 US Dollars (seven million eight hundred and forty six thousand eight hundred and sixty five US Dollars, fifty five cents).

7.3.6.  The share of *Alfa Telecom Limited* in the Statutory Fund of the Company amounts to 50.1 per cent.

The share of *Alfa Telecom Limited* into the Statutory Fund of the Company amounts to 52,220,848.02 hryvnas (fifty two million two hundred and twenty thousand eight hundred and forty eight hryvnas, two kopiykas), which equals to 11,250,144.25 US Dollars (eleven million two hundred and fifty thousand one hundred and forty four US Dollars, twenty five cents).

7.4.     Certification of complete contribution for share in the Company. Following timely and complete contribution of the share into the Statutory Fund, each Equity Holder receives a certificate of the Company certifying that the respective Equity Holder has made complete contribution in exchange for its respective share in the Company.

7.5.     Amendments to the Statutory Fund. The General Meeting of the Equity Holders may decide to increase or decrease the Statutory Fund of the Company through introduction of amendments and addenda into the Foundational Agreement and the Charter of the Company according to requirements of the laws of Ukraine in effect as well as of registration of such amendments and addenda with the respective public authorities.

7.6.     Priority right to purchase; decrease share. If the Statutory Fund of the Company is increased, each Equity Holder has a priority right to purchase additional share, which is proportional to the share of property of such Equity Holder at the moment when the Statutory Fund is increased. If any of the Equity Holders decided not to purchase additional share of property in maximum amount, to which it is entitled by such priority right, all the other Equity Holders, which decided to purchase, are entitled to purchase such additional share, which is proportional to their shares of property at the moment when the Statutory Fund is increased. Such decision may be taken prior to the moment when the entire additional share, in the amount of which the Statutory Fund is increased, is purchased by one or several Equity Holders, or prior to the moment when neither of the Equity Holders decides to purchase any additional share. If the Equity Holder is unable to duly purchase or pay for the additional share of property, which is proportional to its share and to which it is entitled by virtue of increase of the Statutory Fund, the share of property of such Equity Holder in the Statutory Fund shall be subject to respective decrease.

*[TRUE COPY]*

7.7.  Notice about payment of dividends. During reasonable period of time following the end of each financial year of the Company, the General Meeting of the Equity Holders shall be obliged to approve the yearly report (including verified financial reports) for the respective financial year as well as to consider payment of dividends to the Equity Holders in proportion to their respective shares in the Statutory Fund of the Company.

## ARTICLE 8
## CONCESSION OF THE SHARE (ITS PORTION) IN THE STATUTORY FUND OF THE COMPANY

8.1.  Agreement to concession of share (its portion). Except for (a) transfer of share of property by virtue of the Equity Holder's exercise of its Right to first refuse under Section 8.2 of this Charter or (b) Privileged Transfer (this term is defined in Section 8.2 below), the Equity Holder of the Company may not sell, transfer, concede or otherwise alienate either entire or any portion of its share in the Company to another Equity Holder of the Company or third persons without clear written agreement to this of all the other Equity Holders.

8.2.  Right to first refusal. Within the limits of the Ukrainian legislation, each Equity Holder is free to sell or otherwise transfer either entire, or portion of its share according to this Section 8.1 and Rights to first refusal of other Equity Holders pursuant to Section 8.2.

If an Equity Holder (hereinafter "Offeror") wishes to sell, transfer, concede or otherwise alienate either portion or its entire share of property in the Company to any Person, including another Equity Holder (hereinafter referred "the Offer Addressee") by any means other than the Privileged Transfer (this term is defined below), the Offeror prior to concluding the binding contract with the Offer Addressee, shall offer its share to other Equity Holders (Equity Holders Non Offerors) by means of timely written notice (Transfer Notice) about his wish to transfer such share. This Transfer Notice shall contain information about the offered amount of the share of property to be transferred (Offered Share), offered sale price and other substantial terms and conditions of transfer; if any conditions connected with determination of certain time limits are not regarded substantial for the Equity Holder Non Offerors, and Section 8.2 is applied to the time limits.

Every Transfer Notice shall be an irrevocable proposal of the Offeror about the sale of the entire Offered Share to any or all Equity Holders Non Offerors with price and on conditions mentioned in the Transfer Notice. Equity Holders Non Offerors shall have the right and a well-founded ability to analyze (i) the grounds for the offered price and other substantial conditions of the offered transfer, and (ii) confirmation of the honesty of this offer from the Offer Addressee or contract with it. Each of the Equity Holders Non Offerors shall have the Priority right to purchase the Offered Share for the price and on the conditions as set forth in the Transfer Notice (Right of First Refusal).

An Equity Holder Non Offeror shall exercise its Right of first refusal for purchase of the entire Offered Share by means of giving a written notice to the Offeror on acceptance of the offer mentioned in the Transfer Notice (Acceptance Notice) within 60 (sixty) days after the receipt of the Transfer Notice by the Equity Holder Non Offeror (Term of Right Exercise). Transfer Notice and Acceptance Notice, together with the provisions of this Section 8.2, shall constitute a single and a binding contract on purchase of the Offered Share, and the Offeror shall sell to such an Equity Holder Non Offeror that sends the Acceptance Notice (Acceptor Equity Holder), and the Acceptor Equity Holder(s) shall purchase from the Offeror the entire Offered Share for the mentioned price and on the mentioned conditions within 90 (ninety) days after the date of the Acceptance Notice. If any part of the purchase price mentioned in the Transfer Notice is expressed in the non-monetary form, the Accepting Equity Holder(s) shall be entitled to pay in the monetary form a fair market price for the part of the price, expressed in the non-monetary form, if agreed by the parties, or,

*[TRUE COPY]*

failing such agreement, as determined by an internationally recognized investment bank chosen by the Accepting Equity Holder(s).

27

Closing of the contract shall take place as determined by the Accepting Equity Holder(s), or, if it is not determined, in the office of the Company no later than 10 (ten) days after registration of the share to the name of the Accepting Equity Holder(s). Full purchase price shall be paid in the monetary form by means of the bank transfer of immediately available funds, and such payment shall be made against transfer of the certified copies of the amendments and addenda to this Charter and the Foundational Agreement, reflecting transfer of the share of property, free from any encumbrances, to the Accepting Equity Holder.

The Equity Holders shall take all measures necessary to the transfer of the share of property to the Accepting Equity Holder in accordance with the provisions of this Section 8.2, including, *inter alia*, participation in the Meeting of the Equity Holders and due approval of the amendments and addenda to this Charter and the Foundational Agreement, and such amendments and addenda shall remain in force and be absolutely effective at the date of closing.

If a valid Accepting Notice is given by more than one Equity Holder Non Offeror, the Offered Share shall be purchased by such Equity Holders in proportion to their shares of property in the Statutory Fund of the Company (excluding the Offeror's ownership share).

If no Accepting Notices are received during the Term of Right Exercise, the Offeror shall be entitled to offer the Offered Share to the Offer Addressee for the price and on conditions mentioned in the Transfer Notice, provided that after the lapse of the 60-day period from the end of the Term of Right Exercise such a transfer may not be performed. After this, the Offeror may transfer the share only after he has resubmitted the Transfer Notice to the Equity Holders Non Offerors, and these Equity Holders shall have all the same rights, privileges and options as provided in this Section 8.2.

For the purposes of this Charter, the term "Privileged transfer" shall mean (i) sale, transfer or concession by any Equity Holder of its share of property or its portion to the Affiliated Person of such Equity Holder, (ii) sale of any share of property in accordance with sections 8.3 or 8.4 of this Charter, (iii) sale of any share of property in accordance with Article 17 of the Foundational Agreement, and (iv) any other sale that is not the object of the Right to first refusal under the terms of the Foundational Agreement or otherwise as agreed by the Equity Holders. As regards the Privileged Transfer under subsection (i) if the Affiliated Person of the Equity Holder at any time possesses any share of property, and this Affiliated Person ceases to be an Affiliated Person of the Equity Holder, during the term before the event, after which the Affiliated Person ceases to be an Affiliated Person of the Equity Holder, takes place, other Equity Holders shall have the right and possibility to purchase the entire share of property owned by such Affiliated Person in accordance with the provisions of Section 6.4 of this Charter as if the mentioned share of property is subject to compulsory transfer, except when the share of property is returned to the original Equity Holder prior to such event.

8.3.    <u>Rights to compulsory sale.</u> If, after conditions set forth in Section 8.2 are executed (except Compulsory Transfer), none of the Equity Holder Non Offerors decides to acquire the entire Offered Share under the provisions of Section 8.2, the Offeror shall have the rights (hereinafter "The Right to compulsory sale") to demand that all Equity Holders Non Offerors sell to the named Offer Addressee the entire share of property that belongs to such Equity Holders Non Offerors. The Offeror exercises his Right to compulsory sale by including the reference about existence of such right in the Transfer Notice, where the amount of the share of property is mentioned that all the Equity Holders Non Offerors must sell on the Offeror's demand. If no such reference is made in the Transfer Notice, Offeror shall be deemed to have waived the Right to compulsory sale under this Offer (this waiver is, however, not extended to any subsequent Transfer). The sale by the Equity

*[TRUE COPY]*

Holders Non Offerors of their shares of property under this Section 8.3 is performed on the conditions similar to those, set forth in the Transfer Notice.

28

8.4.    Compulsory Transfer. If any share of property must be sold, transferred, concede or alienated in the result of (i) bankruptcy or insolvency proceedings initiated against an Equity Holder, voluntarily or compulsory, or (ii) it attachment or other compulsory transfer, the Equity Holder whose share is subject to compulsory transfer ("Offeror") shall notify the other Equity Holders ("Other Equity Holders") accordingly immediately after the grounds, underlying such offered transfer, emerged, mentioning the conditions of such offered transfer and the identity of the Offer Addressee.

Having received such notice or, if it is not received – after every Other Equity Holder obtains reliable information from other sources about such transfer, such Other Equity Holder shall have the right and possibility to purchase this entire share of property. This right may be exercised by such Other Equity Holder's directing the written notice to the Offeror within 60 (sixty) days after the receipt by the Other Equity Holder of this notice, or if it is not received – after every Other Equity Holder obtains reliable information from other sources about such transfer. If such notice is sent by more than one Other Equity Holder, the share of property is purchased by such Other Equity Holders in proportion to amount of their shares of property in the Statutory Fund of the Company (excluding the Offeror's ownership share).

Price paid by Other Equity Holders for the share of property under the provisions of this Section 8.4, shall correspond to the fair market price of this share of property that is determined by an internationally recognized investment bank chosen by the Other Equity Holder(s) that exercise their rights under Section 8.4.

Closing of the contract shall take place as determined by the Other Equity Holder(s) or, and if it is not determined, in the office of the Company no later than 10 (ten) days after registration of the share to the name of the Other Equity Holder(s). Full purchase price shall be paid in the monetary form by means of the bank transfer of immediately available funds, and such payment shall be made against transfer of the certified copies of the amendments and addenda to this Charter and the Foundational Agreement, reflecting transfer of the share of property, free from any encumbrances, to the Other Equity Holder.

The Equity Holders shall take all measures necessary to the transfer of the share of property to the Other Equity Holder in accordance with the provisions of this Section 8.2, including, *inter alia*, participation in the Meeting of the Equity Holders and due approval of the amendments and addenda to this Charter and the Foundational Agreement, and such amendments and addenda shall remain in force and be absolutely effective at the date of closing.

8.5.    Transfer of share (its portion) to third persons. Transfer of share (its portion) to third persons shall be possible if Sections 8.1, 8.2, 8.3 and 8.4 of this Charter are adhered and only following the full contribution by the Equity Holder transferring the share is made. Any third person acquiring the share, shall become bound by all provisions of this Charter and the Foundational Agreement. Any Equity Holder transferring the share (its portion) in the Company to a third person, shall include in the contract on transfer of such share of property (its portion) the clause providing for application of the provisions of the Charter and the Foundational Agreement to the transfer of the share and to the person acquiring it, as well as the clause committing the person acquiring the share to sign the written amendments and addenda to this Charter and the Foundational Agreement confirming such transfer.

8.6.    Purchase of share by the Company. A share of an Equity Holder of the Company, if its contribution is fully made, may be acquired by the Company if such purchase is approved by the General Meeting according to the Charter or upon exit or exclusion of the Equity Holder of the Company according to the Charter. In this case, no later than one year, the Company shall transfer

*[TRUE COPY]*

the share to the other Equity Holders or to third persons. During this period the distribution of income, as well as voting and defining quorum at the Meeting of the Company or during the decision-making by the Equity Holders via questioning, according to Article 11 of this Charter, are made without consideration of the share acquired by the Company.

29

8.7.  Negative pledge. Regardless of any provisions to the contrary an Equity Holder may not transfer its share into pledge or mortgage or take other actions that may encumber its share, except when there is a written consent of all the Equity Holders.

8.8.  Transfer and pledge contrary to the Charter. Any sale, transfer, concession, pledge or other alienation of share or any plans to sell, transfer, concede, pledge or otherwise alienate an Equity Holder's share, contrary to the other provisions of this Article 8, shall be considered invalid and have no legal force, and the person, for which such transfer is destined, shall not have rights in the Company, regarding it or regarding any such share of property.

## ARTICLE 9
## RESERVE FUND AND OTHER FUNDS OF THE COMPANY

9.1.  Establishment of separate funds. Apart from the Statutory Fund, the Company shall establish and maintain the following funds:

9.1.1.  The Reserve Fund; and

9.1.2.  Other funds in accordance with the requirements of the law of Ukraine or under the decision of the Meeting of the Equity Holders of the Company.

9.2.  The Reserve Fund. With the view to reimbursement of possible damages of the Company, the Reserve Fund shall be created at the rate of 25% (twenty five per cent) of the Statutory Fund. Annual allocations to the Reserve Fund of the Company shall amount to at least 5% (five per cent) of the net profit of the Company, but only until and while the Reserve Fund is lower than 25% (twenty five per cent) of the Statutory Fund.

9.3.  Other funds. The Company may establish and maintain other funds that may be necessary for the activity of the Company; such funds shall be established under the laws of Ukraine in force.

9.4.  Use of funds. Any losses occurred in the course of the Company's activity shall, first of all, be reimbursed from the Reserve Fund. If the Reserve Fund may not reimburse such losses, the Company, upon respective recommendations from the Director General, as well as upon agreement of the Meeting of the Equity Holders, shall use other possibilities to reimburse the losses.

## ARTICLE 10
## MANAGING BODIES OF THE COMPANY

Managing bodies of the Company shall be:

(i)     the Meeting of the Equity Holders;

(ii)    the Director General;

(iii)   the Board of Auditors.

## ARTICLE 11
## THE MEETING OF THE EQUITY HOLDERS

*[TRUE COPY]*

11.1.   Senior body. The Meeting of the Equity Holders, which may be General or Extraordinary, is the senior decision-making body of the Company. Within the limits, set forth by law of Ukraine and this Charter, the Meeting of the Equity Holders shall exercise all rights and powers, which are not entrusted upon other managing bodies of the Company.

11.2.   Head of the Company. The Meeting of the Company shall elect the Head of the Company. The Head of the Company may be elected as the Head of the Meeting of the Company when the Meeting of the Equity Holders is held. The Head of the Company shall be competent to convene the Meeting of the Equity Holders according to Section 11.3.2 below, as well as make for written interviews to enable the Equity Holders of the Company to decide without the Meeting of the Equity Holders.

11.3.   General and Extraordinary Meeting.

11.3.1. General Meeting. The General Meeting of the Equity Holders (hereinafter "the General Meeting") shall be held at least one (1) time per year. The Equity Holders also may make decisions by means of written interviews as set forth in Section 11.11 of this Charter.

11.3.2. Extraordinary Meeting. The Extraordinary Meeting of the Equity Holders shall be held in case of insolvency of the Company, upon request of the Head of the Company and/or the Board of Auditors and/or the Director General, in any case, if the interests of the Company so require, as well as upon request of the Equity Holders of the Company that in aggregate own more than 20 (twenty) per cent of the votes. If after the lapse of 25 (twenty five) days from the day of receipt of such request of the Equity Holders of the Company the Head of the Company does not convene the Extraordinary Meeting, these Equity Holders shall be entitled to convene the Extraordinary Meeting themselves.

11.4.   Competence of the Meeting of the Equity Holders. According to the legislation of Ukraine, any General or Extraordinary Meeting of the Equity Holders shall be competent to consider the following matters:

a)   determination of the basic activities of the Company, approving of its plans and reports on their implementation;

b)   amending the Charter of the Company, including, but not limited to, amending the Statutory Fund of the Company;

c)   exclusion of an Equity Holder from the Company;

d)   exclusion and recalling of the Head of the Company and members of the Board of Auditors;

e)   approval of annual results of the Company's activity, including that of its subsidiaries, approval of reports and opinions of the Board of Auditors, procedure of the profit division, term and procedure of payment of the shares of profit (dividends), determination of the losses reimbursement procedure;

[TRUE COPY]

*31*

f)      incorporation, reorganization and liquidation of the wholly-owned subsidiaries, branches and representative offices, approval of their charters and regulations;

g)      deciding upon liability of the Company's officials for their misconducts against the Company;

h)      approval of procedural rules and other internal documents of the Company, determination of the organizational structure of the Company;

i)      determination of salary of the Director General and the Company's officials;

j)      determination of amounts, forms and procedure of additional contributions of the Equity Holders;

k)      approval of decision on reorganization, liquidation and cessation of the Company's activity, appointment of the liquidation commission, approval of the liquidation balance;

l)      approval of decision on the Company's acquisition of the Equity Holder's share;

Decision on the abovementioned issues (a), (b) and (c) shall be deemed adopted, if it casts votes of the Equity Holders that in aggregate own more than 50 per cent of the votes of the Equity Holders (except for subsection (c) where more than 50% (fifty per cent) of the votes, not including votes of the Equity Holders to be excluded, shall be required). If this Charter does not set forth to the contrary, other decisions shall be adopted by simple majority of the Equity Holders' votes present at the Meeting.

11.5.  <u>Notice</u>. Notice about either General, or Extraordinary meeting (hereinafter "Meeting") shall contain the following information:

(i)      name and address of the Company;

(ii)      date, place and time of the Meeting;

(iii)      matters to be considered at the Meeting (hereinafter "Agenda"); and

(iv)      reference to the form of the Meeting: General or Extraordinary.

11.6.  <u>Agenda.</u> Any Equity Holder is entitled to request consideration of a matter at the Meeting of the Equity Holders if it is submitted no later than 25 days prior to the Meeting.

Matters, not included into the Agenda, may be considered only upon respective agreement of all the Equity Holders present at the Meeting.

No later than 7 (seven) days prior to the Meeting the Equity Holders shall be given possibility to examine the documents included in the Agenda of the Meeting. These documents may be examined and copied in the office of the Company except when their copies are sent along with notices about the Meeting.

11.7.  <u>Quorum.</u> Presence, either personal, or through authorized representatives, of the Equity Holders that own in aggregate more than 60 (sixty) per cent of votes shall make quorum at any Meeting of the Equity Holders.

*[TRUE COPY]*

*32*

If there is no quorum on the set date, in the set time and in the set place of the Meeting of the Equity Holders, the Meeting of the Equity Holders shall be convened again but only if the Equity Holders are informed about this no later than 30 (thirty) days prior to such repeated Meeting of the Equity Holders. Quorum requirements, set forth in the first sentence of this Section 11.7 shall be applied unaltered to any and all repeated Meetings of the Equity Holders.

11.8.  Representatives (trusted persons) of the Equity Holders. An Equity Holder may be represented by an authorized representative (a trusted person) at any Meeting of the Equity Holders if such representatives are appointed as required by the law of Ukraine in force.

11.9.  Minutes. The Head shall be in charge of the Meeting and appoint a secretary (not obviously from among the Equity Holders) to keep minutes. Such minutes shall be kept in the journal of the minutes. The Head and the secretary of the Meeting of the Equity Holders shall confirm that minutes fully and correctly reflect the substance of matters submitted to consideration at the Meeting of the Equity Holders.

11.10.  Voting. The Equity Holders shall have number of votes in proportion to amount of their shares in the Statutory Fund. All decisions are adopted by simple majority of votes of the Equity Holders present at the Meeting, except when under Section 11.4 of this Charter more votes are required for a decision to be adopted.

11.11.  Form of the Meeting; Actions without the Meeting of the Equity Holders. The Equity Holders may participate in the Meeting in person or via telephone connection, if all the Equity Holders unable to be present at the Meeting in person can hear and be heard by all the other Equity Holders at the Meeting. The Equity Holders may also decide upon all the issues mentioned in Section 11.4 or which are within the competence of the Meeting without the Meeting of the Equity Holders, if their votes in relation to any such matter or decision are submitted in writing (including via post or courier) and if all the Equity Holders participate in such voting. In such case a draft decision or a matter for voting is sent to all the Equity Holders in writing (including via fax, courier or post). Signatures sent via facsimile connection shall be deemed authentic to this end.

Within 10 (ten) days since the last notice from the participants in voting is received, all the Equity Holders shall be informed about the adopted decision by the Director General.

Decisions adopted without the Meeting of the Equity Holders shall, together with information about such decision, be recorded in the respective journal of the minutes and read at the following Meeting of the Equity Holders.

## ARTICLE 12
## THE DIRECTOR GENERAL OF THE COMPANY

12.1.  Executive body. The Director General shall exercise powers of the executive body of the Company. The Director General shall decide upon all issues of the Company's activity except those within the competence of the Meeting of the Equity Holders if decisions of the Meeting of the Equity Holders and this Charter do not provide to the contrary. The Director General shall not be entitled to adopt decisions to bind the Equity Holders of the Company.

12.2.  Appointment and Term of Office. The Director General shall be appointed as set forth in Section 11.3 of this Charter. The Director General shall be appointed for 3 (three) years and may be reelected unlimited number of times.

12.3.  Obligations. The Director's General competence extends to the following issues:

*[TRUE COPY]*

*33*

(i)    control over day-to-day activities of the Company and conducting the Company's affairs;

(ii)    deciding upon any and all issues relating to the day-to-day activities of the Company except issues within the competence of another body of the Company according to the laws of Ukraine, this Charter or decision of the Meeting of the Equity Holders;

(iii)    drafting annual reports, business-plans and annual budget;

(iv)    management and administration of business-plans implementation, reporting for the results before the Meeting of the Equity Holders;

(v)    representing the Company's interests and acting on its behalf without a power of attorney in relation to any Company's activity according to the Foundational Agreement and this Charter;

(vi)    signing and making for fulfillment of all contracts, agreements and documents relating to the Company's activity according to the limitations imposed by Section 12.4 of this Charter;

(vii)    determination of the staff selection criteria; hiring; determination of the employees' functions and obligations; control and supervision over their work; stimulation, imposition of disciplinary penalties and firing;

(viii)    making for implementation of all rules and regulations in the sphere of administration and operation of the Company;

(ix)    representation of the Company before public courts and courts of arbitration;

(x)    representing the Company's interests at the general meeting of shareholders of Kyivstar or of other legal entities, shares of which are owned by the Company, and voting by the shares of property of such legal entities, possessed by the Company;

(xi)    other powers and additional functions that may be imposed upon him by a decision of the Meeting of the Equity Holders, as well as his basic obligations according to the instructions of the Meeting of the Equity Holders.

12.4.    Clear limitations upon the competence. Regardless of the abovementioned provisions of Section 12.3, the Director General is entitled to sign contracts and conclude agreements on behalf of the Company, bearing in mind that, if the agreement or transaction provides for:

(i)    payment of sum equal to or exceeding 10,000 (ten thousand) US Dollars or its equivalent in hryvnas under the exchange rate of the National Bank of Ukraine (except agreements set forth in subsections (ii) and (iii) of this Section 12.4);

(ii)    disposal of or encumbrance upon the Kyivstar Shares or any other assets of the Company, including shares of property in other legal entities;

(iii)    acquiring, purchase or subscription for any shares, bonds, debt instruments, promissory notes or other securities (or to any interest under them) of Kyivstar or another company, trust or another legal entity;

*[TRUE COPY]*

*34*

such contract or other documents shall be signed by the Director General only following approval of the Meeting of the Equity Holders, if there is no agreement between Equity Holders to the contrary.

12.5.  Signing on behalf of the Company. Under Section 12.4 of this Charter, provided there are no other decisions of the Meeting of the Equity Holders, the Director General, acting individually, or another person, appointed by the Director General in written form, shall be entitled to sign documents on behalf of the Company.

12.6.  No other office requirement. The Director General of the Company shall not be a member of the Board of Auditors and/or the Head of the Meeting of the Equity Holders of the Company.

## ARTICLE 13
## BOARD OF AUDITORS

13.1.  Composition. The Company shall have the Board of Auditors composed of at least 3 (three) persons appointed (and may be dismissed) by the Meeting of the Equity Holders.

13.2.  Obligations. The Board of Auditors shall certify the annual accounting and financial reports, balances and reports on income and losses, as well as tax declarations and submissions (hereinafter "the Annual reports"), and, also, assist the Director General and other officers on the tax and financial management of the Company. The Board of Auditors shall also verify legitimacy of the Director's General activity, other officers and employees of the Company. The Board of Auditors may request convention of the Meeting of the Equity Holders if it considers the vital interests of the Company to be threatened or identifies the facts of the abuse of the property of the Company by the Company's employees.

13.4.  Reporting. Within 3 (three) months after the end of each financial year the Board of Auditors shall certify and submit the Annual Audit Report along with the detailed analysis and comments of the Annual Reports of the Company for the consideration of the Director General and the Meeting of the Equity Holders. On the request of the Meeting of the Equity Holders the Board of Auditors shall submit other reports.

## ARTICLE 14
## FINANCIAL DOCUMENTATION, ACCOUNTING REPORTS AND AUDIT REVIEWS

14.1.  Financial year. The financial year of the Company shall start on January 1 and ends on December 31. The principles of the accounting and audit reviews of the Company shall comply with the requirements of this Charter, decisions of the Meeting of the Equity Holders and the legislation of Ukraine in force.

14.2.  Financial reports. The Company shall keep complete and precise financial and accounting record according to the main principles, set by the Director General and adopted by the Meeting of the Equity Holders. Such record shall reflect accurately all the income, losses, profits, expenditures, assets and liabilities of the Company. Apart from the auditing documentation, kept according to the Ukrainian legislation on the accounting activities, the balance, income and losses report, costs investment report and other financial documents shall be prepared quarterly and annually, according to the international accounting standards, and disseminated among the Equity Holders. The financial reports of the Company shall be drafted and signed by the Director General along with the Chief Accountant and certified annually by the Board of Auditors. As requested by the Equity Holders, they shall be given access to all financial and accounting documentation of the Company.

*[TRUE COPY]*

*35*

14.3.   Independent auditors. Apart form the audit reviews that may be conducted by the Ukrainian audit organizations according to the requirements of the Ukrainian legislation, the Company shall be entitled, on its own costs, appoint the independent auditors from any country, for the conduction of annual or other periodic audits of the company according to the international accounting standards.

## ARTICLE 15
## EXIT FROM THE COMPANY

Under the provisions of this Charter and the laws of Ukraine in force, an Equity Holder may, at any time, exit from the Company by sale of its share in the Company to the other Equity Holders or to third persons and/or to the Company, if such Equity Holder has made his contribution in full.

## ARTICLE 16
## EXCLUSION OF AN EQUITY HOLDER FROM THE COMPANY

Regardless of the provisions of Article 17 of the Foundational Agreement, the Equity Holder that systematically refrains from or inappropriately fulfills its obligations or by its actions impedes achievement of the Company's objectives, may be excluded from the Company by decision of the Meeting of the Equity Holders, adopted by the Equity Holders, aggregate vote of which exceeds 50 (fifty) per cent of total votes of the Company's Equity Holders. In this case such Equity Holder (its representative) shall not participate in the voting.

## ARTICLE 17
## TERMINATION OF THE ACTIVITY (REORGANIZATION) AND LIQUIDATION OF THE COMPANY

17.1.   General provisions. Termination of the Company's activity shall take place in case of its reorganization (merger, accession, division, separation, transformation) or liquidation. In case of reorganization, all the rights and obligations of the Company shall be transferred to the legal successors.

17.2.   Grounds for liquidation. The Company may be liquidated in the following cases:

(i)      upon decision of the Meeting of the Equity Holders according to subsection k) of Section 11.4 of this Charter; or

(ii)     by decision of a public court or a court of arbitration according to the legislation of Ukraine.

17.3.   Liquidation Commission. Termination of the Company's activity and liquidation of its assets shall be within the competence of the Liquidation Commission, appointed either by the Meeting of the Equity Holders, or by the public court or the court of arbitration.

17.4.   Management, carried out by the Liquidation Commission. Starting from the date on which the Liquidation Commission is appointed, all the powers on management of the Company shall be transferred to it. Within the time limits, required or permitted by the legislation of Ukraine, the Liquidation Commission shall publish information on the liquidation of the Company in official (national and local) press, define the deadlines for the claims submission and inform the creditors about them, assess the actual property (assets and liabilities) of the Company, publish the lists of debtors and creditors of the Company, as well as make settlement with them, make for the clearance of the Company's debts before the employees, third persons and the Equity Holders, draft the liquidation

*[TRUE COPY]*

*36*

On June 26, 2002, I, *Kravchenko I.V.*, *Private Notary of Kyiv city notary district*, certify the authenticity of the signatures of Ms. Tumanova Svitlana Yuriyivna, Ms. Lytovchenko Vladlena Volodymyrivna, national of France, Mr. Gudyma Borys, acting by proxy of Company "Mobile Telecom Finance" (USA), citizen of Russian Federation, Mr.Kyshenin Volodymyr Mykolajovych, acting by proxy of Company "E.C. Venture Capital" (Switzerland), Mr. Zhukov Yuriy, acting by proxy of Company "Euroquest Commerce Limited" (Cyprus), Director of the Company "Alfa Telecom Limited" (British Virgin Islands) – Pavlo Nazarian, done in my presence. The identity of Ms. Tumanova S.Y., Ms. Lytovchenko V.V., citizen of France, Mr. Gudyma B., citizen of Russian Federation, Mr. Kyshenin V.M., Mr. Zhukov Y., Mr. Pavlo Nazaryan, that have signed the document is confirmed, the authority of the representatives is verified.

Registered in the Register under the № 2-3035, 2-3036.

The payment charged – *according to the Article 31 of the Law of Ukraine "On Notariate" and the State Tax rate of the under the Decree of the President of Ukraine of 10.07.1998 № 762/98.*

**PRIVATE NOTARY** *[Signature and the round seal of Private Notary Kravchenko Inessa Volodymyrivna]*

*[The round seal of Private Notary Kravchenko Inessa Volodymyrivna]*

*[The round seal of Private Notary Kravchenko Inessa Volodymyrivna]*

On  7 DEC 2005  I, Tymoshenko L.A.,
Private Notary of Kyiv city notary district,
certify the authenticity of this photocopy.

Registered in the Register under the № *9618*
The payment charged as agreed.

Private Notary Tymoshenko L.A. (signature)
[stamped by the round stamp of the private Notary Tymoshenko L.A.,]

*[Seal]*
Numbered, stitched, signed and stamped
20 (twenty) pages
Private Notary *[Signature]*

*[Seal]*
Stitched, numbered and stamped
20 (twenty) pages
Private Notary *[Signature]*

*[TRUE COPY]*

*37*

**EQUITY HOLDERS of "STORM" Limited Liability Company:**

| | |
|---|---|
| Tumanova Svitlana Yuriyivna | *[Signature]* |
| Lytovchenko Vladlena Volodymyrivna | *[Signature]* |
| Company "Mobile Telecom Finance" (USA)<br>represented by Borys Gudyma,<br>acting by proxy of October 15, 2002 | *[Signature]* |
| Company "E.C. Venture Capital" (Switzerland)<br>represented by Kyshenin V.M.,<br>acting by proxy of April 9, 2002 | *[Signature]* |
| Company "Euroquest Commerce Limited" (Cyprus)<br>represented by Yuriy Zhukov,<br>acting by proxy of January 14, 2002 | *[Signature]* |
| Company "Alfa Telecom Limited" (British Virgin Islands)<br>represented by Director Pavlo Nazaryan,<br>acting according to the Charter | *[Signature]* |

*[TRUE COPY]*



## ПРЕАМБУЛА

Товариство є правонаступником всіх зобов'язань "СТОРМ" (надалі - "Товариство") та діє на підставі з Установчим договором Товариства від 20 червня 1995 року та Закону України "Про господарські товариства" від 19 вересня 1991 номер 1576-XII (зі змінами та доповненнями), Закону України "Про власність" від 7 лютого 1991 року номер 698-XII (зі змінами та доповненнями), Закону України "Про підприємництва в Україні" від 27 березня 1991 року номер АХ-XII (зі змінами та доповненнями), Закону України "Про режим іноземного інвестування" від 19 березня 1996 року номер 93-96-ВР (зі змінами та доповненнями), а також інших чинних актів України на умовах, що зазначені нижче.

Товариство зареєстроване 23 червня 1995 року Жовтневою районною радою міста Києва за номером 23163325

## СТАТТЯ 1
## ВИЗНАЧЕННЯ ТЕРМІНІВ

"Афілійована особа" - це Особа, яка прямо чи опосередковано через одного чи кількох посередників контролює, контролюється або перебуває під спільним контролем з і з іншою Особою (для цілей цього Статуту, термін "контроль" означає наявність прямо чи опосередковано належить чи забезпечує право з управління політику шляхом володіння членами панування за акції голосів положення, з рахунок чи в силу інших прав). Термін "Особа" означає будь-яку фізичну особу, корпорацію, компанію, товариство з обмеженою відповідальністю, акціонерне товариство, трест або його спільне, зареєстровану асоціацію або інший неюридичну юридичну особу. "Статутний фонд" означає статутний фонд Товариства, зазначено у пункті 2.1 цього Статуту. Термін "Товариства" означає Товариство з обмеженою відповідальністю "СТОРМ". Термін "Учасника" має значення, як зазначено у п. 4.1 цього Статуту. Інші слова та терміни, які вживаються у цьому Статуті, означають "Збори Учасників", "Загальні збори", "Позачергові збори", Генеральний директор", "Ревізійна комісія", "Річна звітність", "Резервний фонд", "Аудиторський звіт" та "Ліквідаційна комісія", акціонери, застосовуваному законодавством України, якщо спеціально не вказаний, за іншим, зазначеному або зміст контекст, у якому зустрічається слово або термін, не вимагає їх іншого тлумачення.

## СТАТТЯ 2
## НАЗВА ТОВАРИСТВА ТА ЙОГО МІСЦЕЗНАХОДЖЕННЯ

2.1 Назва Товариства. Товариство має таку назву:

2.1.1  Українською мовою:

повна назва
скорочена назва          Товариство з обмеженою відповідальністю "СТОРМ"
                         ТОВ "СТОРМ"

2.1.2  Англійською мовою:



повна назва
скорочена назва          Limited Liability Company "STORM"
                         LLC "STORM"

1

СТАТТЯ 3
СТРОК ІСНУВАННЯ ТА ЮРИДИЧНИЙ СТАТУС ТОВАРИСТВА

1. Строк існування. Товариство має необмежений строк існування та діє доти, що діяє, до моменту його ліквідації (у порядку, визначеному у цьому

2. Юридичний статус. Товариство є юридичною особою у формі Закритого акціонерного товариства, створеною відповідно до законодавства України.

3. Правомочності з вчиненням правочинів. Товариство є підприємством з ... власністю. Товариство може створювати вклади та інший розмір майна, вчиняти особи та зобов'язання, придбати права з господарського обороту, а також може користуватися правами та пільгами, що встановлюються для ... з відповідним оформленням згідно з чинним законодавством України

4. Обмежена відповідальність. Товариство несе відповідальність по своїх кредиторах у межах наявного усього свого майна та активів, що належить Учасникам обмежується розміром їх відповідної вкладу з ... зазначається у пункті 7.3. цього Статуту. Учасники Товариства не несуть ... по боргам та іншим вкладам Товариства.

СТАТТЯ 4
УЧАСНИКИ ТОВАРИСТВА

Учасниками Товариства є такі юридичні та фізичні особи:

Світлана Крістіна Туманова, громадянка України, яка мешкає за адресою: Київська область, м. Бориспіль, вул. Шорса, 16, паспорт №СМ101141, виданий Києво-Святошинським РВ ГУ МВС України в Київській обл. 5 квітня 1999 році (надалі – Туманова С.К.);

Вишнева Володимирівна, Анатоліївна, громадянка України, яка мешкає за адресою: м. Київ, вул. Вигурівська, 33, кв.54, паспорт СН-602369, виданий Дарницьким РВ ГУ МВС України в м. Києві 20 листопада 1997 року (надалі – Вишневої В.В.);

Мобайл Телеком Фінанс, (англійською мовою – "Mobile Telecom Finance L.L.C."), юридична особа, яка створена згідно із законодавством Сполучених Штатів Америки, з місцезнаходженням за адресою: 192, вул. Пічтрі, Атланта, Джорджія 30303, США (англійською мовою - 192 Peachtree St., Atlanta, Georgia 30303, USA), (надалі – Мобайл Телеком Фінанс);

Е.С.Венчер Кепітал, (англійською мовою – "E.C. Venture Capital"), юридична особа, яка створена згідно із законодавством Швейцарії, з місцезнаходженням за адресою: 4, вул. Сан-Уре, Женева, Швейцарія (англійською мовою ... ), Geneva, Switzerland), (надалі – Е.С.Венчер Кепітал);

4

## СТАТТЯ 5
### МЕТА ТОВАРИСТВА

## СТАТТЯ 6
### ПРЕДМЕТ ДІЯЛЬНОСТІ ТОВАРИСТВА

1. Предмет діяльності. Товариство займається такими видами діяльності:

1.1.

1.2. інвестиційна діяльність в Україні та за її межами;

1.3.

1.4. торговельно-посередницькі операції;

1.5.

1.6.

1.7.

