# EXHIBIT P

11-15-06 Transcript.txt

1

```
        6BFHSTOA
  1     UNITED STATES DISTRICT COURT
  1     SOUTHERN DISTRICT OF NEW YORK
  2     ------------------------------x
  2
  3     STORM, LLC,
  3
  4                    Plaintiff,
  4
  5            v.                              06 Civ. 13157 (GEL)
  5
  6     TELENOR MOBILE COMMUNICATIONS AS,
  6
  7                    Defendant.
  7
  8     ------------------------------x
  8
  9                                           New York, N.Y.
 10                                           November 15, 2006
 10                                           10:10 a.m.
 11
 11     Before:
 12
 12                        HON. GERARD E. LYNCH
 13
 13                                           District Judge
 14
 14                          APPEARANCES
 15
 15     LOVELLS
 16            Attorneys for Plaintiff
 16     BY:    PIETER VAN TOL
 17            LISA J. FRIED
 17            ERIC Z. CHANG
 18            GONZALO ZEBALLOS
 18
 19     ORRICK HERRINGTON & SUTCLIFFE, LLP
 19            Attorneys for Defendant
 20     BY:    ROBERT L. SILLS
 20            KAREN D. THOMPSON
 21            ALISON F. SWAP
 21
 22
 22
 23
 23
 24
 24
 25
 25
```

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

2

```
        6BFHSTOA
  1            (In open court)
  2            THE COURT:   Good morning.
  3            This is Storm, LLC v. Telenor Mobile Communications.
  4            Who do I have in front of me?
  5            MR. VAN TOL:   Good morning, your Honor.   My name is
  6     Pieter Van Tol, from Lovells, representing Storm, the
  7     petitioner.
```
                            Page 1

                              11-15-06 Transcript.txt
8              THE COURT:  Good morning, sir.
9              MR. VAN TOL:  Good morning.
10             I should introduce my colleagues.  Lisa Fried is to my
11    right; Eric Chang is to her right; Gonzalo Zeballos is to the
12    right again, all from the Lovells firm.
13             THE COURT:  Good morning to all.
14             MR. SILLS:  Your Honor, I'm Robert Sills, of Orrick
15    Herrington & Sutcliffe, on behalf of Telenor Mobile
16    Communications.  With me are my colleagues Karen Thompson and
17    Alison Swap.
18             THE COURT:  Good morning to all of you.
19             It is Mr. Van Tol who brings us here this morning,
20    but, Mr. Sills, it is you who brings us here to federal court.
21             I have not seen a copy of the notice of removal.  The
22    plaintiff didn't have one, I believe, at the time that this
23    order to show cause was brought before me.  When I tried to
24    find it on ECF, it seems it hasn't been posted yet.
25             Can you tell me, why do I have jurisdiction here?
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300

                                                                        3
      6BFHSTOA
1              MR. SILLS:  Yes, your Honor.  Because this is an
2     international arbitration.  The underlying dispute that is
3     being arbitrated is between my client, a Norwegian corporation,
4     Mr. Van Tol's client, a Ukrainian limited liability company,
5     concerning their rights as shareholders in a Ukranian
6     corporation known as Kyivstar that has operations throughout
7     Ukraine.  Therefore, the arbitration agreement and the contract
8     itself arise under the New York Convention and under Chapter 2
9     of the Arbitration Act, which is 9 U.S.C. 201 et seq.  There is
10    jurisdiction.  There is removal jurisdiction under, I believe,
11    Section 207 of the Act.
12             THE COURT:  There is something special about
13    international arbitration that gives federal jurisdiction?
14             MR. SILLS:  There is indeed, your Honor.  The United
15    States is a party to the New York Arbitration Convention of
16    1958, as is virtually every other country.  Pursuant to Chapter
17    2 of the Arbitration Act, and I have actually brought the
18    statute here with me if your Honor would like, that is enacted
19    as positive law by Congress.
20             Unlike Chapter 1 of the Arbitration Act, which does
21    not confer subject matter jurisdiction, although it does
22    prescribe a substantive rule of law, that creates original
23    jurisdiction in this court over any dispute, and it is Section
24    202.  It says:  An arbitration agreement or arbitrable award
25    arising out of a legal relationship, whether contractual or
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300

                                                                        4
      6BFHSTOA
1     not -- although this one is -- which is considered as
2     commercial, including a transaction, contract, or agreement
3     described in Section 2 of this title, falls under the
4     Convention, and that is this treaty, the New York Arbitration
5     Convention.  An agreement or award arising out of such a
6     relationship which is, and there is an exception for disputes
7     between citizens of the United States, the remainder of, and
8     then the following section says:  An action or proceeding
9     falling under the Convention shall be deemed to arise under the
10    laws and treatise of the United States.  The district courts of
11    the United States shall have original jurisdiction over such an
12    action or proceeding regardless of the amount in controversy.
                                 Page 2

11-15-06 Transcript.txt
13          Then Section 205 makes any case related arising under
14    the Convention in state court removable to this court at any
15    time prior to judgment.
16          THE COURT:  OK.  Sounds like that will do.
17          Mr. Van Tol, I understand you don't dispute the
18    jurisdiction of the court.  Of course, I have to satisfy myself
19    that I do have jurisdiction, but he is right you're saying.
20          MR. VAN TOL:  Yes, your Honor.  I agree that he is.
21          THE COURT:  Then let's turn to the merits of the
22    argument.
23          I certainly can't say I have read all the documents,
24    but I have read really all of the materials submitted in
25    connection with the declaration of Ms. Fried, which includes
            SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

                                                            5
6BFHST0A
1     the affirmations and briefing that were submitted to the state
2     court.  I have reviewed the arbitrators' decision on
3     jurisdiction, although for some reason pages 2 through 6 seem
4     to be missing from my copy.  But I have read what is there.  So
5     I have some familiarity with the plaintiff's position.
6           Mr. Van Tol, I think you can be brief, but why don't
7     you start by taking a few minutes to state the main points of
8     your argument.
9           MR. VAN TOL:  Thank you, your Honor.  I will be brief.
10    Really, the key consideration here on the motion for a
11    TRO is irreparable harm, much as it is on an injunction.  What
12    we have put before you are two cases that I think really answer
13    this question.  They are on all fours.  That is the Castlewood
14    case, very recently decided, and also the Tellium case, which
15    was decided by Judge Buchwald in 2004.
16          What those cases said, your Honor, is that it is per
17    se harm where you have a party in my client's situation which
18    is being forced to arbitrate where that party has an argument
19    that no arbitration agreement exists.
20          THE COURT:  But of course you are not forced to
21    arbitrate until December the 7th, is it?
22          MR. VAN TOL:  Yes, your Honor.
23          What those cases make clear is they are not talking
24    about appearing at a hearing, they are talking about every day
25    that you are expending attorneys' fees preparing for a hearing,
            SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

                                                            6
6BFHST0A
1     because in those cases the hearing was off in the future, that
2     is per se harm.  The Maryland Casualty case, which is a Second
3     Circuit case, said that harm is not compensable by, say, an
4     award of attorneys' fees.
5           THE COURT:  As a realistic matter, though, you have
6     this dispute with them, right?
7           MR. VAN TOL:  We do, your Honor.
8           THE COURT:  And it is going to have to be adjudicated
9     somewhere.
10          MR. VAN TOL:  We believe in court.  Yes, your Honor.
11          THE COURT:  In this court, for example, or in an
12    American court?
13          MR. VAN TOL:  In two stages, your Honor.  The first
14    would be in this court to find that there is no contract so
15    there is no arbitration to be had.  So you could permanently
16    enjoin the arbitration.  Then it is our anticipation that we
17    have the facts to move rapidly for summary judgment before your
                        Page 3

11-15-06 Transcript.txt
18  Honor.
19         Of course, it is always at Telenor Mobile's option to
20  go to the Ukraine, which would seem like a logical place to go
21  to address Ukrainian law options, and they have always had that
22  option.
23         THE COURT:  Of course, wherever you go there will have
24  to be discovery, right?  So a lot of what is going on now -- I
25  took it that what the arbitrators were telling people to do at
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
                                                                   7
    6BFHSTOA
1   the moment is to finish their discovery.
2          MR. VAN TOL:  Not necessarily, though, your Honor.
3   That was my point about summary judgment.
4          Here, there really are issues of law.  If there is no
5   contract, not only is the arbitration permanently enjoined,
6   Mr. Sills' claims almost in toto are barred.
7          The only claim that might be left -- it wouldn't even
8   be left.  The noncompete claim arises under the contract.  It
9   is not as if, your Honor, he is bringing tort claims outside
10  the contract.  If you as a matter of law find that a contract
11  does not exist, that is the end of the story.
12         THE COURT:  Well, but under American law the question
13  of the arbitration, the validity of the arbitration clause, is
14  a question of severability, is it not?
15         MR. VAN TOL:  It is, your Honor.  What you would do in
16  that respect is -- fortunately for I would think the court's
17  benefit the Ukrainian courts have addressed severability.
18         THE COURT:  Have they?
19         MR. VAN TOL:  Yes, your Honor, especially in this most
20  recent clarification, which is at Tab 21 of Ms. Fried's
21  declaration.
22         The Ukrainian court in the clarification took head on
23  the arbitration tribunal's finding on severability and said,
24  essentially, you disregarded what we said.  In the Ukrainian
25  court's decisions they said the agreement is void, including
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
                                                                   8
    6BFHSTOA
1   the arbitration clause.  Now, that is addressing severability.
2          To the extent there was any doubt --
3          THE COURT:  Let's start with that.
4          MR. VAN TOL:  Yes, your Honor.
5          THE COURT:  Was that actually litigated in the
6   Ukrainian court?
7          MR. VAN TOL:  It was, your Honor.  Yes.
8          That was another point that the tribunal either
9   overlooked or disregarded.  The parties brought up the
10  existence of this New York arbitration.  Storm was then
11  defending a suit against another company, Alpren, and said,
12  wait a minute, there is an arbitration going on here.  They
13  raised the clause.  So it was at least implicit and probably
14  explicit in the original orders that the Ukrainian courts
15  focused in on severability and said, no, the clause itself is
16  void.
17         THE COURT:  Let's try to be clear, because I don't
18  fully understand what was going on in the Ukraine.
19         There is this shareholders' agreement, whether it is
20  void or not, and Telenor has sought arbitration against Storm
21  with respect to alleged breaches of that agreement.  That is
22  what is going on here in New York.
                                Page 4

11-15-06 Transcript.txt
23          MR. VAN TOL:  Correct, your Honor.
24          THE COURT:  So who sued you about what in Kyiv?
25          MR. VAN TOL:  In Kyiv, Alpren, which is a shareholder
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

9

6BFHST0A
1   of Storm, sued and said, you, Storm -- the person who signed
2   the agreement, Mr. Nilov, did not have authority to enter into
3   the shareholders' agreement.  That is the basis of the
4   arbitration here.
5          In the course of those proceedings, Storm argued, no,
6   there is a valid agreement or it should be arbitrated in New
7   York.  Storm argued that in the Ukraine.
8          THE COURT:  What is it that should be arbitrated in
9   New York, in the sense that -- I don't know what Alpren is
10  trying to do.  Was Alpren there trying to enjoin this
11  arbitration?
12         MR. VAN TOL:  No, your Honor.  It was there trying to
13  avoid the shareholders' agreement.
14         THE COURT:  So it is sort of a declaratory judgment
15  action that says this purported shareholders' agreement should
16  be declared void.
17         MR. VAN TOL:  Yes, your Honor.
18         THE COURT:  Now, if Alpren wins that, what are the
19  legal consequences?
20         MR. VAN TOL:  That is exactly the point, your Honor.
21  Under Ukrainian law, the legal consequence of voiding an
22  arbitration agreement is that --
23         THE COURT:  Is that what this suit was all about in
24  the Ukraine?
25         People could have all kinds of reasons to think that a
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

10

6BFHST0A
1   contract should be voided, and there are all kinds of legal
2   obligations that you might have towards Alpren.  I am not sure
3   that is the same thing as whatever obligations you have towards
4   Telenor, or maybe it is.  I just don't understand what is
5   actually being sued about in the Ukraine.
6          MR. VAN TOL:  Then I need to explain it better, your
7   Honor.
8          Actually, what the court found was the shareholders'
9   agreement was null and void.  It then said, as a consequence of
10  Ukrainian law, the arbitration clause ipso facto falls away.  I
11  can read to you from the clarification order, Tab 21.
12         THE COURT:  Yes.
13         MR. VAN TOL:  I don't know if you have it, but it says
14  in that first paragraph that the arbitration clause contained
15  therein, as its integral part, is also void and invalid.
16         Then it goes on to explain that under Article 216 of
17  the Ukrainian Civil Code --
18         THE COURT:  I am just trying to get everything.  In
19  the beginning it says, including the arbitration agreement,
20  included in the form of an arbitration clause, is null and
21  void.  I see.  Down below.
22         MR. VAN TOL:  Yes, your Honor.  Then it goes on to
23  say:  This follows by operation of Ukrainian law.
24         Under Article 216 of the Ukranian Code, civil code,
25  when you void an agreement, it means there are no other legal
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                        Page 5

11-15-06 Transcript.txt

6BFHSTOA
1  consequences other than its invalidity.  In other words, the
2  whole agreement, including the arbitration clause, has to fall
3  by operation of law.
4       The Ukrainian court said that in their April order,
5  they said it in their May order, and here in the clarification
6  order they're saying if there is any doubt, here's expressly
7  what we are saying.
8       THE COURT:  I thought I saw somewhere in these papers
9  a suggestion that Telenor had participated in some way in the
10 appeal in the Ukraine.  Is that mistaken?
11      MR. VAN TOL:  Not in this case, your Honor.  It is our
12 position that they had the option to participate in the appeal.
13 They did not in this appeal.  But in other collateral
14 litigation in the Ukraine they have appeared on appeals and on
15 other matters.
16      THE COURT:  So your position is whether or not they
17 had notice or an opportunity to be heard in the trial level in
18 the Ukraine in this case, they had the opportunity, you
19 maintain, to intervene, at least so as to participate in this
20 appellate process.
21      MR. VAN TOL:  Yes, your Honor.  It is even more than
22 us maintaining that point.  We introduced expert evidence at
23 the arbitration hearing, which was unrebutted, to that effect.
24      If I may, in another collateral litigation, well after
25 the fact, Telenor Mobile went into the court and pursued the
           SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

6BFHSTOA
1  very same clarification procedure that Storm did.  So the
2  Ukrainian courts give you several bites at the apple.  And
3  Telenor Mobile, for reasons that are unknown to us, has not
4  chosen to avail itself of those.
5       Your Honor, sticking with the clarification order, if
6  you are on the second page, it gets pretty express.  It even
7  goes on to say that the ongoing arbitration in New York is
8  illegal under Ukrainian law.
9       My client is a Ukrainian corporation.  By virtue of
10 the tribunal's ruling on October 22nd, they are forcing us to
11 act contrary to the courts that oversee us.
12      THE COURT:  Is there some criminal or civil penalty
13 for participating in unauthorized arbitrations in the Ukraine?
14      MR. VAN TOL:  Well, your Honor, the one very real
15 effect it has is that who knows what effect the arbitration
16 award is going to have.  It looks like under the case law we
17 have cited that it itself will be null and void.  So it will be
18 a waste of time, your Honor.
19      THE COURT:  There is that, yes.  But it is not quite
20 the same thing as somebody's forcing you to do an act that puts
21 you in legal jeopardy back home.
22      MR. VAN TOL:  Correct, your Honor.  The cases don't
23 say you need to be violating --
24      THE COURT:  I understand that.  I am just saying that
25 the point that you make, sort of as an afterthought, I think,
           SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

6BFHSTOA
1  in the papers, that somehow you are being pushed to do
2  something that is illegal, as you just put it, according to the
3  courts that supervise you, it certainly is not clear to me that
                        Page 6

11-15-06 Transcript.txt
4  under American law if the court said this arbitration is null
5  and void and the arbitrators went ahead anyway and you
6  participated under protest that you would be violating
7  anything.  Now, Ukranian law may be different, but you are not
8  citing anything to me that says that there is.
9           MR. VAN TOL:  You are right.  The bigger point,
10 obviously, is that we are afraid that even if we participate,
11 that whoever gets an award, it will be just a waste of the
12 parties' time.
13          So what we are really telling the court now is, we are
14 not talking about a delay of months and months nor are we
15 necessarily telling you when you need to decide.  But this is a
16 matter that could be resolved in a few weeks.
17          There is no magic to the December 7th or 8th hearing
18 date.  It was put off several times.  All we're asking is that
19 the tribunal stay its hands for a very short period of time so
20 that we know we are in the right forum.
21          THE COURT:  All right.  I think I have the point.
22          MR. VAN TOL:  Thank you, your Honor.
23          THE COURT:  Mr. Sills, a couple of things.  First of
24 all, where is the fire?  Why can't we just all agree to
25 postpone this December 7th hearing until this matter gets
            SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                              14
   6BFHSTOA
1  sorted out?
2           MR. SILLS:  Because of the importance, your Honor, of
3  the underlying issues in the arbitration.
4           THE COURT:  Tell me what they are.
5           MR. SILLS:  If I could speak to that for a moment.
6           My client originally controlled all of Kyivstar, which
7  is the largest cell phone company in Ukraine, and it has a
8  market value of about $8 billion.  At some point Alfa Group,
9  which is a large Russian conglomerate controlled by one of the
10 Russian oligarchs, Michael Friedman, became interested in
11 investing in that company.  There was a series of negotiations
12 in which Mr. Friedman was trying to buy up to a 40 percent
13 interest.  That is critical as a matter of Ukrainian corporate
14 law because that gives important veto and blocking rights to
15 the holder of the shares.
16          As a condition of allowing that purchase of shares in
17 this extremely valuable company, the parties entered into an
18 elaborate negotiated shareholder agreement.  It is annexed to
19 the papers.
20          It provides, among other things, that the Alfa Group,
21 which is the sole shareholder of Storm and, for that matter,
22 the sole shareholder of Alpren, the plaintiff in the supposed
23 litigation in the Ukraine, which I will get to in a moment,
24 would not boycott board of directors' meetings, it would not
25 boycott shareholders' meetings, and would cooperate in good
            SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                              15
   6BFHSTOA
1  faith in the corporate governance to avoid paralysis of the
2  operations of this company.
3           Alfa, which is notorious throughout Russia, and really
4  throughout the world, for its extremely aggressive business
5  tactics and actually is the subject of two unrelated RICO
6  actions right here in this court --
7           THE COURT:  Then it was pretty dumb of you to enter
8  into an agreement with them, wasn't it?
                     Page 7

11-15-06 Transcript.txt
```
 9         MR. SILLS:  Hindsight is always 20/20, your Honor.
10         THE COURT:  Foresight is pretty good too.  If you are
11    going to make sort of allegations that there are big bad wolves
12    out there, that is fine.  I don't know that I can decide a case
13    based on what you think about Russian oligarchs.  But these are
14    guys that you got in bed with so you don't have to tell me too
15    much more about how evil they are.  Let's just get ahead with
16    what are the issues in this arbitration.
17         MR. SILLS:  I will move on, your Honor, except to note
18    only that they were on a charm offensive at the time.
19         For several years they did in fact comply with their
20    obligations under the agreement, and then as part of what
21    appears to be a campaign to get greater rights stopped coming
22    to board meetings, stopped coming to shareholder meetings, and
23    caused very serious damage to the company.  At the same time
24    they began an assault on the corporate charter in the courts of
25    Ukraine, arguing that they were entitled under various theories
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

6BFHSTOA
```
 1    of Ukrainian law to equal rights, even though they only had
 2    approximately 45 percent of the shares in the company.
 3         In response, we initiated this arbitration back in
 4    February.  This arbitration has had nothing but delay, your
 5    Honor.  What we are trying to do is to get the company back on
 6    an even keel -- to get the board of directors functioning, to
 7    hold shareholders' meetings, to amend the charter to conform to
 8    the shareholders' agreement.
 9         The shareholders' agreement, which is expressly
10    governed by New York law, provides that the shareholders'
11    agreement trumps the charter and that the charter has to be
12    conformed to the shareholders' agreement to maintain the
13    governance scheme, in which my client has five out of the nine
14    directors on the board, has the right to appoint the president
15    of the company, and has a controlling share.
16         THE COURT:  You have a majority interest?
17         MR. SILLS:  We have 56.5 percent of the company, your
18    Honor.
19         THE COURT:  The big bad wolf has 40.
20         MR. SILLS:  Approximately 43.5 percent.
21         THE COURT:  So essentially all the rest.
22         MR. SILLS:  They are the only two shareholders, your
23    Honor.
24         THE COURT:  Mr. Van Tol's client is the unfortunate
25    ward of you two folks.  In other words -- who is really on the
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

6BFHSTOA
```
 1    other side of this arbitration, I am trying to figure out.  You
 2    are suing the corporation that you have a majority interest in?
 3         MR. SILLS:  No, your Honor.
 4         THE COURT:  I'm sorry.
 5         MR. SILLS:  We are suing Storm, the other shareholder.
 6         THE COURT:  Storm is --
 7         MR. VAN TOL:  Of Kyivstar, your Honor.
 8         THE COURT:  Of Kyivstar.
 9         MR. SILLS:  I apologize, your Honor.
10         THE COURT:  It is not your fault.  I just am slow on
11    these things.
12         So Storm is Alpren is Alfa.
13         MR. SILLS:  That is exactly right.
```
Page 8

11-15-06 Transcript.txt
14          THE COURT:  Kyivstar is the company that you jointly
15 own.
16          MR. SILLS:  Precisely.
17          THE COURT:  So you sought arbitration against the
18 other party to the shareholders' agreement.  I think I have it.
19          MR. SILLS:  Exactly, your Honor, in order to compel
20 them to comply with the express terms of the shareholders'
21 agreement that they signed.  That was back in February.
22          THE COURT:  Who is the person who, according to the
23 Ukrainian courts, didn't have the authority to enter this
24 agreement?
25          MR. SILLS:  Your Honor, it is a gentleman named
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                18
   6BFHSTOA
1 Valeriy Nilov.  He was, and it is undisputed, the general
2 director, the chief executive officer of Storm.  He was also an
3 executive of Alfa Group, which controls Storm.
4          There is no dispute that that is his signature and the
5 seal of the company on this agreement.  In fact, your Honor, at
6 the time the agreement was signed, two estoppel certificates
7 were delivered to my client.
8          I can hand them up if you'd like.
9          THE COURT:  Sure.  OK.
10          MR. SILLS:  Those were delivered attesting to
11 Mr. Nilov's authority to sign this agreement, your Honor.  That
12 was some years ago.
13          Because it was a condition of allowing Alfa Group to
14 buy into the company, following that, shares were sold by my
15 client to Alfa Group.  They were allowed to buy into this
16 blocking position.  The parties amended the charter to conform
17 to the new realities of the new shareholder arrangement.  The
18 parties operated under this agreement for a while and then
19 there was a change in character, a change in business plans,
20 and, in effect, this corporate war broke out in the Ukraine.
21          THE COURT:  What are you asking the arbitrators to do,
22 what relief?
23          MR. SILLS:  We are asking in terms of governance, your
24 Honor, for three principal heads of relief.
25          First, we are asking that the provision, the express
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                19
   6BFHSTOA
1 provision of the shareholders' agreement, that the nominees of
2 Storm, that is, the nominees of Alfa, attend board meetings.
3 Because the board cannot act without a quorum, and under the
4 corporate charter, so long as they boycott the meetings, the
5 board can't act and it can't conduct the ordinary business of
6 the board -- appointing executives, approving budgets, and so
7 on.
8          We are asking that they be directed, as they expressly
9 promised to do in the shareholders' agreement, to attend
10 shareholders' meetings, including the annual meeting of the
11 company, and, as with any company, it is important to hold
12 shareholders' meetings to conduct the business of the company.
13          Third, we are asking that the charter be amended.  The
14 shareholders' agreement governed by New York law expressly
15 provides that in the event of any conflict between the charter,
16 the governance scheme of the shareholders' agreement which
17 gives control of the company to my client, that the parties
18 will cooperate in amending the charter so as to conform to the
                                Page 9

11-15-06 Transcript.txt
19  shareholders' agreement.
20         THE COURT:  Now, when they give you the finger, what
21  are you going to do about it?  You win the arbitration and they
22  say, sorry, but that's New York and we're not interested.
23  Unlike an award of damages, which at least conceivably, not
24  knowing where the assets of Storm are, could be enforced
25  somewhere else in the world, aren't all of these forms of
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                            20
    6BFHST0A
1   relief things that at the end of the day you are going to have
2   to go back and enforce in the Ukraine?
3          MR. SILLS:  Your Honor, there is a fourth heading that
4   they are also trying to stop.  There is a noncompete agreement.
5   As a condition of being allowed to buy in, Alfa agreed not to
6   compete, in effect, with the joint venture.
7          Then they went ahead and they bought prohibited
8   interest in another cell phone company in Ukraine.
9          THE COURT:  That is also in the Ukraine.
10         MR. SILLS:  But, your Honor, that would be subject to
11  a damage remedy that we could enforce anywhere in the world
12  against Alfa.
13         This is the primary jurisdiction.  As a matter of --
14  we could win an award, reduce it to a judgment here, confirming
15  it under the Arbitration Act.  If they don't comply with that
16  in Ukraine, we could seek judgment of contempt here.  Because
17  that is a degree of specific performance which would give us a
18  right to money damages, which we could seek to enforce in the
19  Ukraine.
20         THE COURT:  So conceivably there are benefits.
21         MR. SILLS:  I think they are important benefits.
22         Your Honor, Ukraine has only been independent for 15
23  years.  As I am sure you know from recent newspaper accounts,
24  it has an extremely volatile political and legal system.  It is
25  not clear which way it is moving.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                            21
    6BFHST0A
1          Once this is resolved -- and a judgment, after all, is
2   good for a long time.  It may well be that Ukraine will enforce
3   it.  We believe Ukraine will enforce it now.
4          Ukraine, for example, has adopted the UNCITRAL model
5   law on international commercial arbitration, and under the
6   express terms of that law a judgment in New York would be
7   enforceable, or an award in New York would be enforceable in
8   Ukraine.
9          THE COURT:  In general terms.  It is a little hard to
10  expect that it is going to be enforced by courts that have said
11  that, in effect, the arbitration clause is null and void.
12         MR. SILLS:  Well, your Honor, turning to that point.
13  Your Honor, that is nothing but a collusive lawsuit.
14  Alpren --
15         THE COURT:  The thought crossed my mind, but this
16  lawsuit was brought by Alpren against Storm, and Alpren owns
17  Storm.
18         MR. SILLS:  It was brought, in effect, by Storm
19  against itself, your Honor.  Storm has no operations.  It
20  describes itself publicly as a holding company.
21         So what happened here?  We commenced, frustrated with
22  the inability to negotiate with Alfa, this arbitration in early
23  February of this year.
                         Page 10

11-15-06 Transcript.txt
24      In April, without notice to us, Storm arranged to have
25 itself sued by its corporate parent, and representing Alpren,
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

6BFHSTOA
1 the parent in that case, was a lawyer who usually represents
2 Storm.  Storm didn't have a lawyer.  It sent its general
3 director, a Russian businessman, Ukrainian businessman, to
4 represent it, although he chose not to put in any written
5 defense.  And of course in civil law jurisdiction, written
6 presentations really are at the heart of any corporate
7 presentation.
8       Despite what Mr. Van Tol said, there wasn't much of an
9 argument.  Apparently, Mr. Klymenko, the businessman who chose
10 to represent himself, mentioned the fact that there was an
11 arbitration proceeding in New York and didn't attempt to defend
12 the fact that Mr. Nilov, the general director, had signed this
13 agreement, that there had been an earlier general meeting of
14 participants, and there is a complicated history to this, and
15 it's been the subject of two separate evidentiary proceedings
16 before the arbitrators.
17      THE COURT:  I understand that.  We will get back to
18 that in a minute.
19      So what happens in Ukraine, at least this was the view
20 of the arbitration panel, is that Storm does not attempt to
21 argue severability.
22      MR. SILLS:  Not only do they not attempt to, they
23 don't even mention it, your Honor.
24      Leaping ahead for one moment with this, after the
25 arbitrators, after three hearings, ruled that indeed they have
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

6BFHSTOA
1 jurisdiction to proceed, not even Alpren, the supposed
2 plaintiff in that case, but Storm, the supposed defendant, goes
3 back and asks for a clarification, in effect asking for a
4 ruling against itself -- again, without notice to us -- and
5 gets this absurd ruling, holding that there is no severability
6 after the arbitrators had addressed this.
7       THE COURT:  You agree that the second most recent -- I
8 don't know if second is the right word, but this November 8,
9 2006 ruling does address severability, which is the issue that
10 the arbitrators hung their hat on and said was not addressed in
11 the earlier Ukrainian judgments.
12      MR. SILLS:  Well, it addresses it, your Honor, but,
13 again, in this proceeding, to which not only were we strangers
14 but of which we had no knowledge, what happened is after this
15 trial court decision that Storm had arranged against itself,
16 they purported to take an appeal.  Again, without notice to us.
17 We found out about this case through a press release.  This
18 then became the centerpiece of the motion to dismiss that Storm
19 had made before the arbitrators.
20      THE COURT:  Is Mr. Van Tol right, though, that you
21 could have intervened at some stage in the appeal, and the
22 significance of that being that if you had, then presumably you
23 would have gotten notice if you were a party?
24      MR. SILLS:  Your Honor, I'm not a Ukrainian lawyer and
25 I don't know the answer.  From speaking with Ukrainian counsel,
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

Page 11

11-15-06 Transcript.txt
6BFHSTOA

1 my understanding is that intervention at the appellate stage
2 would be roughly analogous to intervention at the appellate
3 stage in the United States. That is, you would take the
4 record, such as it is, as you find it.
5         But the more important point, I think, your Honor,
6 under Parklane Hosiery and thousands of case that have followed
7 it, a party cannot be bound by a judgment in an action to which
8 it was not itself a party. The fact that you could have
9 intervened in theory, and I don't think much turns on this
10 Ukrainian doctrine of intervention because New York law governs
11 under the express terms of the shareholders' agreement, is that
12 it is meaningless. This is what the Supreme Court said in
13 Chase National Bank v. City of Norwalk.
14         THE COURT: Let me try and focus on what I guess is a
15 choice of law question. I am hardly an expert on arbitration,
16 but I did get the opportunity to pick up the most recent
17 Supreme Court decision that seems relevant, which is Buckeye
18 Check Cashing.
19         The Supreme Court says -- and this is sort of what I
20 take to be the American law about who decides arbitrability,
21 who decides the validity of the arbitration clause. The
22 Supreme Court says that that is generally going to be for the
23 arbitrators, and that is a separate question than the question
24 of the legality of the contract as a whole. But then there is
25 a suggestion that this all turns on the applicable state law as
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                    25
6BFHSTOA

1 to whether the arbitration clause is severable.
2         Do I have that right?
3         MR. SILLS: I think, with all respect, your Honor, yes
4 and no.
5         THE COURT: That is wrong because this is an
6 international arbitration, or that is wrong because --
7         MR. SILLS: No, your Honor. It is because the missing
8 piece of the puzzle is the Supreme Court's decision in Prime
9 Options of Chicago.
10         THE COURT: OK.
11         MR. SILLS: Ordinarily, under the Steel Workers
12 trilogy, your Honor, there are strong presumptions in favor of
13 arbitrability, with the exception, as a general rule, as your
14 Honor says, that the question of whether or not the contract --
15 there is an agreement to arbitrate will ordinarily be given to
16 a court. That is simply a presumption based into the law.
17         But what Prime Options of Chicago holds, your Honor,
18 is that the parties can by contract vary that. The parties can
19 agree that the arbitrators will be the judges of their own
20 jurisdiction. Because arbitration is simply, as you say, a
21 matter of contract, and contract is ordinarily a matter of
22 state law, we would look to state law to determine that.
23         Under New York law, which governs here, both because
24 the arbitration is pending here and because the parties
25 concerned about the application of Ukrainian law opted for a
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                    26
6BFHSTOA

1 New York forum and for New York law to govern. New York law
2 incorporates federal law on the question of severability and
3 arbitrability. The most recent case on that is the decision of
4 the First Department in Weiner Malkin, which I believe is a
                        Page 12

11-15-06 Transcript.txt
5   2004 case, your Honor.  So that the Federal Arbitration Act,
6   including the special provisions relating to international
7   arbitration found in Chapter 2, are part of New York law, and
8   there is no difference between New York law and federal law on
9   that point.  So it is, in effect, a false conflict.
10          Now in order to agree, the parties have to either put
11  in express language in their contract or, as the Second Circuit
12  held in the Contec case, the parties by incorporating
13  arbitration rules that have a severability provision in them
14  agree as surely as if they had put those provisions in
15  expressly.
16          Here, the parties look to the UNCITRAL.  Article 21 of
17  the UNCITRAL rules say this:  The arbitrable tribunal shall
18  have the power to rule on objections that it has no
19  jurisdiction, including any objections with respect to the
20  existence or validity of the arbitration clause or of the
21  separate arbitration agreement.
22          Then it goes on to say:  The arbitral tribunal shall
23  have the power to determine the existence or the validity of
24  the contract of which a arbitration clause forms a part.
25          For the purposes of Article 21, an arbitration clause
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              27
    6BFHSTOA
1   which forms part of a contract and which provides for
2   arbitration under these rules, as this one does, shall be
3   treated as an agreement independent of the other terms of the
4   contract.  A decision by the arbitral tribunal that the
5   contract is null and void shall not entail ipso jure the
6   invalidity of the arbitration clause.
7           So conceptually, your Honor, what that means is, even
8   though it is physically one piece of paper, the shareholders'
9   agreement is really two separate contracts.
10          As the arbitrators found in this case, and as they
11  found correctly, there is no doubt that Mr. Nilov, as the
12  general director of this Ukrainian LLC, Storm, had the
13  authority to enter into a separate arbitration agreement.  That
14  is really the only question that was before the tribunal and it
15  is really the only question that is here.
16          If Mr. Nilov had signed two pieces of paper, one
17  called shareholders' agreement and one called arbitration
18  agreement, even given this, and I have to say, your Honor --
19          THE COURT:  So point one, as you see it, is whether
20  the arbitration agreement is severable and separately valid,
21  and that goes to the arbitrators under New York and federal
22  law.  Then, of course, you are going to go next, in December,
23  to the arbitrators and tell them that in fact they should
24  enforce the shareholders' agreement and that the shareholders'
25  agreement is valid and enforceable.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              28
    6BFHSTOA
1           MR. SILLS:  That is exactly right, your Honor.
2           THE COURT:  I don't know who is going to argue what
3   Ukrainian law in the abstract has to say about that.  But I
4   take it what you are also saying is that whatever went on in
5   Kyiv, while it may or may not be persuasive about what
6   Ukrainian law is, an issue that you think should be decided by
7   the arbitrators, it certainly isn't binding on you as any kind
8   of collateral estoppel.  The fact that this declaration
9   occurred in connection with the same subject matter as the
                        Page 13

11-15-06 Transcript.txt
10  arbitration is largely irrelevant because there is no res
11  judicata or collateral estoppel or other effect of this on your
12  action in New York.
13          MR. SILLS:  Precisely, your Honor, any more than if we
14  arranged to be sued by Telenor Mobile Holdings, our corporate
15  parent, in a court in Oslow for a declaration that this was
16  enforceable.  I would be here saying that they were bound.
17          THE COURT:  Whether or not it is collusive is actually
18  not the key thing here.
19          The key thing is, you are just not there, and since
20  you are not there, you are not bound by the judgment.  Then
21  once we are past that issue, this is just a piece of evidence
22  that is relevant, perhaps, to the question of what Ukrainian
23  law is on any of these subjects.
24          MR. SILLS:  But, as your Honor says, those are
25  questions for the arbitrator.  Those are questions that the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                29
    6BFHSTOA
1   parties committed to the arbitrators when they signed the
2   shareholders' agreement.
3           THE COURT:  Let me get back to Mr. Van Tol on this.
4           MR. VAN TOL:  Yes, your Honor.
5           THE COURT:  This is all very interesting what went on
6   in Kyiv and whether it is collusive or whatever else anybody
7   has to say and whether or not you are the big bad wolf, but the
8   key issue here, it seems to me, is that if Telenor isn't
9   present, then this judgment doesn't bind them.
10          You are not saying it does, are you?
11          MR. VAN TOL:  Your Honor, there are a couple of things
12  there.  There is, in fact, case law that a nonparty to an
13  arbitration can be bound by findings in an arbitration, and
14  that can be imparted to a New York court.  I would submit that
15  the findings in and conclusions of a Ukrainian court on a
16  Ukrainian law issue is something that the arbitration tribunal
17  here should have given recognition to.
18          In other words, New York law says, if you've got a
19  judgment that comes from abroad and you can't show that there
20  was a failure of due process, that it is against public policy
21  grounds or there was fraud in the procurement of the judgment,
22  under New York law you must follow that order.
23          What I note, your Honor --
24          THE COURT:  Again, putting aside any question that you
25  basically sue yourself in Kyiv.  If some other guy sued you in
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                30
    6BFHSTOA
1   Kyiv, but not Telenor, and the Kyiv court says, here's what we
2   think about this contract:  That is interesting and it may be
3   due some deference or some consideration when the time comes to
4   consider what is Ukrainian law as a matter of precedent, the
5   same as if two total strangers sued each other and got some
6   answer about a question of law.  But it is really just
7   theoretically irrelevant and coincidental that it happens to be
8   a judgment about the subject matter of this arbitration because
9   unless Telenor is there, I don't see how they're bound by it or
10  how the arbitration panel is bound by it other than as some
11  evidence of what Ukrainian law is.
12          MR. VAN TOL:  And, your Honor, there are a couple of
13  points there.  One is that Telenor Mobile has never shown that
14  they could not have intervened.  This is not some agreement
                        Page 14

11-15-06 Transcript.txt
15  that is tangential; it is the very agreement on which the
16  arbitration is based.
17          THE COURT:  Right.  They didn't have notice when the
18  case started, right?
19          MR. VAN TOL:  They did not, your Honor.  They are not
20  entitled to notice under Ukrainian law.
21          THE COURT:  Whether they are entitled under Ukrainian
22  law, it is you who are the party to that proceeding and you
23  could have told them.
24          MR. VAN TOL:  Yes, your Honor.
25          THE COURT:  And you didn't.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              31
    6BFHSTOA
1           MR. VAN TOL:  We did not under advice of Ukrainian
2   counsel.
3           THE COURT:  Advice of Ukrainian counsel that this
4   would be like Swiss bank secrecy.  That is Ukrainian court
5   secrecy, that you are not allowed to tell other parties to your
6   contracts that there is litigation going on.
7           MR. VAN TOL:  Your Honor, I have to add, though --
8   this was left out of Mr. Sills' presentation -- Mr. Sills'
9   client, Telenor Mobile, went back to the Ukrainian court on
10  another related matter, obtained a clarification order similar
11  to what we did without notice to us.  We were actually a party
12  to that case.
13          THE COURT:  So they are bad, too.  That doesn't bother
14  me.  I am not concerned about clean hands here.  I am concerned
15  about the effect that should be given to this ruling.
16          You are saying maybe they are kind of collaterally
17  estopped or something like that because they could have
18  intervened.  It seems to me what is happening here is they
19  couldn't have intervened because they didn't have actual notice
20  in time to get into the trial court rulings.  While they could
21  have intervened at the Court of Appeals stage, they are kind of
22  stuck, at least if appellate litigation in the Ukraine is like
23  that in the United States.  I don't know whether it is.  Maybe
24  there is some de novo proceeding over there.  I don't know.
25  But at least if it is analogous to American procedure,
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              32
    6BFHSTOA
1   intervening at the appellate stage, when the record is already
2   fixed, in a lawsuit in which there was no real adversary
3   proceeding, is kind of not a very good option.
4           MR. VAN TOL:  Your Honor, you did raise an earlier
5   point that I wanted to return to when you said is the tribunal
6   supposed to take this as evidence of what Ukrainian law is.
7   Yes, they are.
8           We have to revert back to the --
9           THE COURT:  But as conclusive evidence or just one
10  among a number of things that might be relevant in the
11  analysis?
12          MR. VAN TOL:  Your Honor, Sphere Drake says, if a
13  party, as in my client, is attacking the validity of a
14  contract, what we need to do is come up with some evidence that
15  the contract is not valid.  What is better "some evidence" than
16  the fact that a Ukranian court said this agreement doesn't
17  exist.
18          Then what we do is we come to you, your Honor, and
19  say, now that we have passed that some evidence threshold, the
                        Page 15

11-15-06 Transcript.txt
20    determination of what effect is given to the Ukrainian court,
21    all these issues we are discussing now, is decided by you.
22              We are not here today to talk about the ultimate
23    merits of who is right and who is wrong.
24              THE COURT:  Yes, you are, because you can't just come
25    in here and say enjoin the arbitration.  There has to be some
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    33
      6BFHSTOA
1     showing that you are likely to win.
2               MR. VAN TOL:  Yes, your Honor.  That likelihood is
3     that we have got an enforceable judgment from a Ukrainian
4     court, that I note the arbitration panel never questioned.
5     They said the procedures in the Ukraine, as far as they could
6     tell, were fine.
7               They took a lot more evidence than we have had today,
8     and they had no trouble with Ukrainian procedures.
9               THE COURT:  Then they went and disregarded it.
10              MR. VAN TOL:  Exactly, your Honor.  That is why we are
11    here.
12              THE COURT:  With all due respect nod to the Ukrainian
13    court, they are not saying the Ukrainian court did anything
14    wrong.  That is a little different than saying that they have
15    to respect the outcome of a suit in which the Ukrainian court
16    is presented with no adversarial issues, where the party that
17    would like to undue the arbitration is basically suing itself.
18              MR. VAN TOL:  Your Honor, there are actually two
19    things going on here.  The ultimate merits here are broken into
20    two separate issues.  There is the ultimate merits as in, when
21    we move for summary judgment how will you as the court treat
22    the Ukrainian award.  Before you get there, there are merits on
23    whether or not we are in the right jurisdiction.
24              In other words, we told the arbitration tribunal two
25    things.  We said, you have to follow Sphere Drake and the some
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    34
      6BFHSTOA
1     evidence standard.  They disregarded that.  We said, you have
2     to follow New York law on honoring a Ukrainian judgment.  They
3     disregarded that.  So the merits that are really before your
4     Honor are, what is the likelihood of success on those issues.
5               Of course, we will then come to you on the ultimate
6     issues of whether or not we win ultimately on the enforcement
7     of the Ukrainian judgment.
8               THE COURT:  But what you are doing here is you are
9     coming and asking me to enjoin the arbitration because the
10    arbitration clause is ultimately not valid.  The first thing
11    you want to do is argue that the arbitration panel should
12    have -- I take what you are saying is what they should have
13    done in this ruling is say, well, we may have our views on the
14    arbitrability of this, but we should wait and defer that issue
15    to a court.
16              MR. VAN TOL:  Yes, your Honor.
17              THE COURT:  If it goes to a court, though, and the
18    court is not very impressed with the argument that the
19    arbitration clause is invalid, then aren't we just engaged in a
20    process of delay to say that the arbitration should be
21    enjoined.  Because the court needs to first decide the question
22    of arbitrability and, therefore, you get to not even address
23    the question of how the court should decide that, and you don't
24    have to show that the court is likely to agree with you about
                                Page 16

11-15-06 Transcript.txt
25    arbitrability.  All you need to show is that the court should
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    35
     6BFHSTOA
1    decide this in the first instance, and then everything should
2    stop while we engage in this discussion, and I should be
3    entirely agnostic as to how that discussion could come out and
4    I shouldn't consider whether you are likely to win that.  That
5    is your position.
6            MR. VAN TOL:  It is, your Honor, although we strongly
7    believe we will win, which is why we will move for summary
8    judgment.
9            Why we are here today on both the TRO and the
10   preliminary injunction is really going back to the question
11   your Honor asked Mr. Sills, which was, where is the fire.
12           What Mr. Sills told you is that they have several
13   grounds for injunctive relief and also monetary damages.  Well,
14   I would submit that those two things really are damning for
15   them in two ways.
16           One, if there was such urgency attached to this need
17   to get an order from the tribunal that Storm has to attend
18   shareholder meetings, why didn't they get an injunction in the
19   intervening time since February?  Our contract says that in aid
20   of arbitration you may go to a court and get a provisional
21   remedy.  They could have sought an injunction either from the
22   tribunal or from the court ordering Storm to attend the
23   meetings if it really is as urgent as Mr. Sills posits.
24           The second point is, they are asking for damages.  The
25   cases we have cited you are quite clear that where there is an
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    36
     6BFHSTOA
1    arbitration and someone seeking damages and you issue an
2    injunction, Mr. Sills and his client are harmed, they may
3    collect whatever harm they suffered in the arbitration.
4            That is really why we are here, your Honor.  We are
5    happy to talk about the merits, but today is, do we need to go
6    forward, file briefs on the 29th, do witness statements on the
7    22nd, engage in a hearing on December 7th that may end up being
8    a nullity under Ukrainian law, where it is surely going to have
9    to be enforced at least in part.
10           THE COURT:  Well, that may or may not be foolish on
11   their part, but I don't see why it affects this issue.
12           If they are pursuing an arbitration award that they
13   are not going to be able to enforce, well, so be it.  The
14   question is whether there is jurisdiction in the arbitration
15   panel.
16           I note that you folks didn't come running to court in
17   the first place and try to enjoin the arbitration; you
18   submitted this very issue to the arbitration panel.
19           MR. VAN TOL:  We did, your Honor.  Absolutely.  The
20   reason we did is because -- Mr. Sills cited Article 21 of the
21   UNCITRAL rules.  All it says is if you've got a jurisdictional
22   objection, in the first instance go to the arbitration
23   tribunal.  It doesn't say the arbitration tribunal may do as it
24   pleases.  I argued to the arbitration tribunal, I agree that is
25   why we are here, but I would like to you decide the issue under
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    37
     6BFHSTOA

                          Page 17

11-15-06 Transcript.txt
1  Sphere Drake, and they disregarded it.
2          To your Honor's other point about whether Mr. Sills
3  can foolishly go ahead and get an award, well, I have enough
4  confidence in my case to believe that I might win the
5  arbitration as well.  I want to make sure that any award I get
6  is valid under Ukrainian law or wherever I want to enforce it.
7          So all we are asking your Honor to do is, there has
8  been no showing that there is any urgency about December 7th,
9  put it off so we may have your Honor decide whether we argue it
10 before you or we go back to the arbitration panel.
11         I have no trouble going back to the arbitration panel
12 with my arguments.  I just want to make sure I am in the right
13 place.
14         THE COURT:  Mr. Sills.
15         MR. SILLS:  Your Honor, there are two points I would
16 like to address.  The fact is, this is the fourth application
17 for a stay we have seen since September in this case.  As soon
18 as the dam broke, as soon as the arbitrators ruled that they
19 did have jurisdiction and that the case would be going forward
20 and directed the parties to cooperate, even at that point we
21 couldn't get a schedule in place.
22         Documents are due tomorrow under the stipulated
23 discovery schedule that Mr. -- I'm sorry.  They are due today
24 under the stipulated discovery schedule.  I think it is fairly
25 obvious why we are seeing this last-minute application.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    38
    6BFHSTOA
1          Your Honor, very briefly.  We haven't talked about the
2  standard of review or, for that matter, whether this is a
3  reviewable order at all.
4          As your Honor is well aware, great deference is paid
5  to the decisions of arbitrators in general, particularly great
6  deference is paid to the decisions of arbitrators in
7  international cases.  Listening to Mr. Van Tol's presentation,
8  he is essentially complaining that there was an evidentiary
9  mistake at an interim stage of an arbitration.
10         The rule in this circuit, your Honor, set forth in
11 Michaels v. Mariforum Shipping -- the citation is 624 F.2d
12 411 -- a case that has been cited dozens, if not hundreds, of
13 times, is this:  Under the Federal Arbitration Act, a district
14 court does not have the power to review an interlocutory ruling
15 by an arbitration panel.  It goes on to say:  As we stated in
16 Campagnia Panamania Maritima, a district court should not hold
17 itself open as an appellate tribunal during an ongoing
18 arbitration proceeding; its application for interlocutory
19 relief results only in a waste of time, the interruption of the
20 arbitration proceeding, and delaying tactics in a proceeding
21 that is supposed to produce a speedy decision.
22         THE COURT:  I had a little bit of that reaction just
23 reading the plaintiff's briefs.  It may be bringing the
24 erroneous focus I suppose of American appellate procedure,
25 which isn't quite analogous to what is going on here.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    39
    6BFHSTOA
1          You don't normally get to go to the Court of Appeals
2  because the district court has said it has jurisdiction.  The
3  case gets decided and then you appeal.  That is normally what
4  happens.  They had an interlocutory appeal on this.  Indeed,
5  they kept referring to this as an award.  Until I went back and
                              Page 18

11-15-06 Transcript.txt
6      looked and saw that is exactly the way the arbitration panel
7      characterized what it was doing, as a partial final award
8      regarding jurisdiction, and they did cite -- I haven't read it,
9      but they cited a case which sounded as if it was Judge Buchwald
10     doing something just like what they are asking me to do.
11                 MR. VAN TOL:  Yes, your Honor.  The Tellium case, your
12     Honor.
13                 MR. SILLS:  Your Honor, the context is so different.
14     Your Honor, the rule is the rule of Mariforum.  The analogy
15     your Honor draws is exactly the same as the right one.  In
16     fact, under Section 16 of the Arbitration Act, a decision by a
17     district court to hold an arbitration is immediately appealable
18     because of the favored position of arbitration in our legal
19     system.  But a decision by a district court to compel
20     arbitration is not an appealable order under Section 16.
21                 What is happening here, your Honor, is we can't be in
22     a position where every time this arbitrable tribunal -- and it
23     has been like pulling teeth to get a hearing schedule so we can
24     get the relief we are entitled to.  Every time Mr. Van Tol is
25     unhappy about some evidentiary ruling or because his theory on
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

                                                                    40

6BFHST0A
1      choice of law hasn't been adopted -- I think it is a meritless
2      theory, but it is a complex theory he seems to have
3      constructed.  At the end of the case, it is all brought up for
4      a review in accordance with Section 10 of the Arbitration Act
5      and in accordance with the provisions of Chapter 2 of the
6      Arbitration Act.
7                  Under Chapter 2, your Honor, the manifest disregard of
8      the law, which is a judge-made basis for upsetting an
9      arbitration award that they rely on, is not applicable under
10     Chapter 2.  So I don't think as an interlocutory order of an
11     arbitrable tribunal it is reviewable at all.
12                 If there was some way to thread the needle and make it
13     reviewable, it is still subject to the deference which is due
14     to an arbitration panel.  Here, we have an interim order.  The
15     complaint is about an evidentiary ruling.  This claim they have
16     got is preserved for review on a final award.  The case ought
17     to finally be allowed to go forward and the company Kyivstar
18     ought to be put right side up, your Honor.
19                 THE COURT:  The plaintiff here is seeking a
20     preliminary injunction.  What brings us here this morning is
21     simply a request, originally made ex parte to me yesterday, for
22     a temporary restraining order that would block the arbitration
23     from going forward while we sort this out and while you get the
24     opportunity to brief the preliminary injunction issues.  As
25     ably as you have presented the issues this morning, of course I
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

                                                                    41

6BFHST0A
1      have not had the benefit of your side of this in writing.
2                  I think one question that I need to get clear in my
3      mind is what is going to happen next.  Whether I sign the TRO
4      or I don't, we still have to go forward on what I take it is
5      going to be a very expedited basis to decide the question of
6      preliminary injunction.
7                  Now, in your view, what has to happen in order for me
8      to decide that?
9                  You are going to submit papers.  Is there some
10     evidentiary proceeding that either side contemplates?  What do
                                Page 19

11-15-06 Transcript.txt
```
11    you think is going to happen on that?
12              MR. SILLS:  I can't speak for Mr. Van Tol.
13              THE COURT:  I know, but what do you think we have to
14    do?
15              MR. SILLS:  We are prepared to proceed on papers and
16    on the record made before the arbitrators.
17              On that point, if a TRO were to be entered, it would
18    completely disrupt the arbitration.
19              THE COURT:  I didn't ask you that.  I asked you what
20    do we have to do to decide the preliminary injunction and how
21    fast can that happen.
22              MR. SILLS:  We can do it on papers, your Honor.  We
23    can do it as fast as your Honor requests.
24              THE COURT:  You can get me papers very rapidly.
25              In terms of what I have before me, you referred to the
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

```
      6BFHSTOA
1     record that was before the arbitrators.  I haven't plowed
2     through all of these exhibits.  Do I have already the
3     transcripts?
4               Here, I am just trying to judge bulk.  These two fat
5     volumes.  Does this include everything there is or do you have
6     more stuff that you are going to have to get me?
7               MR. SILLS:  I believe, your Honor, what has been
8     submitted to you by the plaintiff is the three transcripts that
9     were made before the arbitrators but not all the exhibits that
10    were submitted.  But those we each have copies of.
11              THE COURT:  It will be quick enough to get it to me,
12    but it will add to what I need to see.
13              MR. SILLS:  Unfortunately, it will, your Honor.
14              THE COURT:  Mr. Van Tol, what do you contemplate
15    happening before the preliminary injunction issues can be
16    decided?
17              MR. VAN TOL:  Your Honor, I agree with Mr. Sills that
18    I don't see a need for an evidentiary hearing, and we are happy
19    to have it submitted on papers.
20              I think time is of the essence.  If Mr. Sills puts in
21    papers and we have a hearing very quickly, say on Monday, we
22    are willing to waive the right to put in reply papers.  Because
23    I think this is going to be something we can brief and argue
24    for your Honor.  You have a clear grasp of the issues and I
25    don't want to burden the record with a reply.  We are happy to
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

```
      6BFHSTOA
1     move forward very quickly.
2               THE COURT:  You have your papers in already.
3               MR. VAN TOL:  Yes, your Honor.
4               THE COURT:  And you don't need a reply.
5               You are going to get me your papers, Mr. Sills, by
6     when?
7               MR. SILLS:  Your Honor, as Mr. Van Tol knows, there is
8     another arbitration that at their insistence is being held in
9     London on Monday and Tuesday between these same two parties and
10    I have to be there.  We could argue it on the Wednesday before
11    Thanksgiving.
12              THE COURT:  He doesn't have to be there.
13              MR. SILLS:  I believe another of his partners is going
14    to be there.
15              THE COURT:  The question is, when are you going to get
```
Page 20

11-15-06 Transcript.txt
16    me your papers?
17            MR. SILLS:  We could have them to you Friday, your
18    Honor.
19            THE COURT:  OK.  You get me the papers on Friday and
20    you are going to arrive here hung over and jet lagged from
21    London to argue on Wednesday morning.  That is very brave.
22            MR. VAN TOL:  That is where I came from yesterday,
23    your Honor, in my defense.
24            THE COURT:  I guess everybody has that problem.
25            Why don't we do it 10:00 on Wednesday morning.  Is
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    44

      6BFHSTOA
1     that doable?
2            MR. VAN TOL:  That works for Storm, your Honor.  Thank
3     you.
4            THE COURT:  So you get me the papers on Friday for the
5     defendant.  We will do this on Wednesday morning.  I am not
6     going to sign the TRO.  I think that it doesn't sound like --
7     there is discovery to be provided, but it sounds like these
8     people are litigating in several arbitrations in several courts
9     in at least three countries that we have now heard of.
10           It is a little hard for me to see that there is any
11    irreparable anything that is imposed on the plaintiff to
12    provide that discovery or do anything that is going to take
13    place between now and next Wednesday.  So far I am not
14    persuaded that this is a matter that is going to require the
15    court to intervene.
16           Now, it may turn out to be entirely different once I
17    have had the opportunity to review all of these issues, and I
18    am not trying to forecast how I am going to rule on the
19    preliminary injunction issue when it is finally fully briefed
20    and argued, but at this moment I see neither an urgency to stop
21    anything that is going on or enough likelihood that plaintiff
22    is going to prevail that I ought to stop everything in its
23    tracks.
24           If we do get this matter put before me fully by next
25    Wednesday, then I am anticipating being able to rule on
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    45

      6BFHSTOA
1     Wednesday.  If the plaintiff prevails on the preliminary
2     injunction, then that is plenty of time to stop the arbitration
3     scheduled for December 7th and 8th.  If they don't, then we
4     will not have disrupted whatever is going on in preparation for
5     that.
6            So I think the prudent course is to not enter any
7     orders at this time, to leave things where they lie, and then
8     try to resolve the preliminary injunction issue as rapidly as
9     possible based on as full a record as the parties can put
10    before me.
11           So I think that is the ruling.
12           Thank you very much for a very enlightening argument.
13           (Adjourned)
14
15
16
17
18
19
20
                            Page 21

11-15-06 Transcript.txt
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300