# EXHIBIT S

6BMVSTOC                          Argument

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   STORM LLC,

4                    Plaintiff,

5            v.                          06 CV 13157 (GEL)

6   TELENOR MOBILE COMMUNICATIONS,
    AS,
7
                     Defendant.
8
    ------------------------------x
9                                        New York, N.Y.
                                         November 22, 2006
10                                       10:45 a.m.

11  Before:

12                   HON. GERARD E. LYNCH,

13                                       District Judge

14                          APPEARANCES

15  LOVELLS LAW FIRM
         Attorneys for Plaintiff
16  PIETER VAN TOL
    GONZALO S. ZEBALLOS
17
18  ORRICK HERRINGTON & SUTCLIFFE
         Attorneys for Defendant
    ROBERT L. SILLS
19  ALISON SWAP
    KAREN D. THOMPSON
20  PETER O'DRISCOLL

21  TELENOR MOBILE COMMUNICATIONS, AS
         Attorneys for Defendant
22  BJORN HOGSTAD

23

24

25

6BMVSTOC                         Argument

1              (In open court; case called)

2              THE DEPUTY CLERK:  Matter of Storm LLC v. Telenor

3    Mobile Communications.  Counsel, please identified yourselves

4    for the record.

5              MR. VAN TOL:  Good morning, your Honor.  Pieter

6    Van Tol of Lovells for Storm LLC.  I am joined by my colleague

7    Gonzalo Zeballos from Lovells.

8              THE COURT:  Good morning, gentlemen.

9              MR. SILLS:  Good morning, your Honor.  Robert Sills of

10   Orrick, Herrington & Sutcliffe on behalf of defendant Telenor

11   Mobile Communications.  With me are my colleagues Peter

12   O'Driscoll, Karen Thompson, and Alison Swap.

13             Also in the courtroom, your Honor, is Bjorn Hogstad,

14   the region attorney who works at Telenor, observing these

15   proceedings.

16             THE COURT:  Okay.  Good morning to all.  Since we were

17   here last week, I have carefully read all of the written

18   submissions of the parties.  And while I can't claim to have

19   read every word of all of the exhibits submitted in support of

20   those papers, I have delved fairly deeply into the substantive

21   record of the case.  So I have, I think, come to a pretty clear

22   understanding of the issues in the case, and largely prepared

23   to rule.

24             Now, I note two things in that regard.

25             Number one, the plaintiffs, as I believe we had

6BMVSTOC                        Argument

1   discussed at our last meeting, did not submit reply papers, and

2   so I think it's fair to give them an opportunity to make any

3   additional points in response to things asserted in the

4   defendant's arguments.

5         And then secondly, I see that Mr. Van Tol has come

6   prepared not only to argue, but with a chart, which I can see

7   and have already read as we were waiting to begin today.  And I

8   think it actually is a very clear and effective summary of the

9   points that I already understand the plaintiffs to be making.

10        So while I don't want to foreclose anything the

11  plaintiffs think is important to say in response, the one thing

12  that I would be particularly interested to hear, if the

13  plaintiffs have something to say about it, is the defendant's

14  argument that I, in effect, don't have jurisdiction to hear the

15  plaintiff's action and request for an injunction because the

16  arbitrable tribunal's ruling was interlocutory in nature.

17        The points on the merits I think are ones that were

18  very effectively made in the plaintiff's opening and brief.

19  And at least reviewing the chart that's before me, it seems to

20  me that I do understand those points, and I think they were

21  already made, and there was understandably not extensive or any

22  attention given to the jurisdictional point in the plaintiff's

23  initial submission.

24        And the defendant's discussion of the point was

25  notably brief; and, of course, all I can do is evaluate it on

6BMVSTOC                          Argument

1    its merits.  The fact that it was brief, it could mean that it

2    was so straightforward, simple, and convincing a point that

3    there was nothing more to be said; or it could mean the

4    defendant was relying more on other arguments and was putting

5    that one forward more tentatively.  You can't draw any

6    inference from its brevity other than with defendants

7    submitting one paragraph effectively and one or two citations,

8    and the plaintiffs saying nothing, I'm not as sure that I do

9    understand the competing arguments on this front.

10            So without foreclosing the plaintiffs from saying

11   anything that they think is important in rebuttal, I would be

12   particularly interested in hearing their response to the one

13   point that, as far as I can see, and maybe I missed something,

14   they had not yet responded to.

15            So, Mr. Van Tol, the floor is yours.

16            MR. VAN TOL:  Thank you, your Honor.  And on the

17   demonstrative, I won't go through point-by-point, I will merely

18   use it to frame our response to Telenor's arguments.  But I

19   will, as your Honor suggested, pick up at the jurisdictional

20   point.

21            The case that Telenor cites is the Michaels case.

22   With just a bit of scrutiny, it becomes clear that Michaels is

23   inapposite here.  In the Michaels case, the arbitrators decided

24   five of six counterclaims in their award, but they defer the

25   other counterclaim, as well as any determination on the ones

6BMVSTOC                     Argument

1   they did decide as far as damages for a later time.  So it's

2   clear in Michaels that the award required further action of the

3   issues that were decided.

4        And the Second Circuit in a case called

5   Metallgesellschaft, which I'm sure I butchered in German,

6   speaks to that.  So I have a copy for Mr. Sills, and I also

7   have a copy for your Honor if you would like it.

8        THE COURT:  Why don't you tell me what it says with

9   respect to the jurisdictional point.  And let me be try to be

10  as focused as I can.

11       It seems to me that the Michaels case is potentially

12  distinguishable, essentially, as you suggest.  In that case,

13  the ruling was a partial resolution of the claims; that is,

14  there were, as you say, a number of claims; some of them were

15  decided, some of them remain to be decided.  And it certainly

16  makes a lot of sense to say that we shouldn't address those

17  issues in court piecemeal, but should wait until there's a

18  final resolution of all the claims.

19       And one might argue that a jurisdictional ruling is

20  something else; again, that it has a different nature; and that

21  it might be more important or more efficient or something to

22  take that up at an earlier stage.

23       But if we were talking, for example, about the

24  jurisdiction of the Court of Appeals over a ruling that I might

25  make, or of my jurisdiction over appeals from the bankruptcy

6BMVSTOC                        Argument

1    court, it's clear, is it not, that a ruling denying a motion to

2    dismiss for lack of jurisdiction in those contexts would be

3    considered an interlocutory order.

4         And so I guess the larger point or the more general

5    point I'd wonder about is to what extent is that a valid

6    analogy or are there considerations with respect to arbitration

7    different, and it's not an appeal, it's a different kind of

8    animal when you've come to the Court in this context.

9         And more specifically, does the Metallgesellschaft

10   case or anything else specifically address that kind of

11   distinction?  And do you have some precedent where the courts

12   have accepted an action of this sort where the plaintiff comes

13   in seeking, in effect, review of a jurisdictional decision of

14   the arbitrator?

15        MR. VAN TOL:  I'll start with your last question

16   first, your Honor.  I searched high and low, and I'd be happy

17   if Mr. Sills found one, I did not find a case dealing with

18   jurisdiction specifically.

19        THE COURT:  Okay.  We didn't, either, so that's okay.

20        MR. VAN TOL:  At least I did something right, your

21   Honor.  But I think the Metallgesellschaft case does help,

22   because it's not quite the situation that your Honor posed

23   where there's an appeal.  Instead, Metallgesellschaft was a

24   request to confirm an award.  And what the Court said, this is

25   on page 283 of the reported decision, page 3 of the Westlaw

6BMVSTOC                    Argument

1    printout, it, first of all, distinguished Michaels by saying in

2    Michaels it didn't finally dispose of the claims, and we

3    already talked about that.  But then it sets forth the

4    standard, which is important, your Honor, in the next

5    paragraph.

6        It says, An award which finally and definitely

7    disposes of a separate independent claim may be confirmed,

8    although it does not dispose of all the claims that were

9    submitted to the arbitration.

10   THE COURT:  But that's not the case here.  We haven't

11   had a final disposition of any claim; we've only had, again,

12   what in the context of the courts would be a clearly

13   interlocutory ruling along the way to resolving the claims.

14   MR. VAN TOL:  The key though, your Honor, is what the

15   courts look at is, is there anything else that the arbitrators

16   would have to do on that issue.  And here, there isn't.

17   THE COURT:  Well, but "on that issue" is very

18   different than "on that claim."  There's nothing more they have

19   to do to decide jurisdiction.  That much is so.  But you could

20   make that argument with respect to any interlocutory order at

21   all.  If the arbitrable tribunal says, We're going to hear this

22   evidence; we're not going to exclude it.  That's a final ruling

23   about that issue.  They're not going to revisit that later on.

24   Maybe different kinds of evidentiary rulings.  They could say,

25   We're not going to revisit it.  It's done.  We're hearing it.

6BMVSTOC                        Argument

1    That issue is finally and authoritatively resolved.  But that's

2    the very essence of interlocutory rulings.

3          MR. VAN TOL:  In this case, your Honor, and I do have

4    another argument, and I don't want to be seen as moving too

5    quickly to it, because I think they intersect.

6          The difference here is this isn't just a

7    jurisdictional ruling or a ruling where we then go forward.  We

8    are also asking here for a permanent injunction, a stay.

9          Under the FAA, we are allowed to come into court to

10   your Honor, even if we're not moving to vacate the award, and

11   say, your Honor, stop this case in its tracks.  We are not a

12   proper signatory to the contract; therefore, we want you to

13   issue a stay.

14         So there is an alternative grounds for your Honor to

15   hear this case.  And I would urge that on you if you were at

16   all concerned that the award might not be final.

17         THE COURT:  Let me address that.  And here, I do think

18   we might be on slightly different grounds, because I'm not sure

19   that this is about jurisdiction.  It might be about a more

20   prudential kind of consideration.

21         Of course, you could have come to court up-front and

22   said, We object to this arbitration.  We don't want to be in

23   this arbitration and join this arbitration.  They've served us

24   notice, and this is just not an arbitrable claim.

25         And, alternatively, I suppose that there's no waiver

6BMVSTOC                          Argument

1    if you state your objection to the arbitration panel, lose, and

2    then go forward and come here at the end and say, Don't confirm

3    this award; vacate it, because there's no jurisdiction.

4          But once you go to the arbitrable panel and make your

5    arguments to them and lose there, whether or not there's

6    jurisdiction here, is it sensible for a court to hear piecemeal

7    that, in effect, appeal from the arbitrator's judgment?

8    Because what you're doing is taking several preliminary bites

9    of the apple in a way that very much interferes with the

10   efficiency of arbitration proceedings.

11         It's one thing to say, We don't want to be there.

12   It's a different thing to say at the end that their decisions

13   are wrong on any number of issues.  But to sort of go halfway

14   down the path and then interrupt to come to court strikes me as

15   getting the worst the of both worlds.

16         And, again, maybe this is a subset of the kind of case

17   that we already said none of us could find, but is there any

18   precedent that addresses this sort of in medias res request for

19   a stay?

20         MR. VAN TOL:  Not that I've seen, your Honor.  This is

21   an unusual case because of the UNCITRAL rules.  And as I said

22   at our earlier hearing, the reason we went to the tribunal is

23   because the UNCITRAL rules, which are incorporated in the

24   agreement, quite clearly say to Storm the tribunal may hear

25   jurisdictional objections.  We agree with that.

6BMVSTOC                          Argument

1           Our argument to the tribunal was in hearing our

2    objection, you must apply this Sphere Drake standard.

3           THE COURT:  Is there anything in the UNCITRAL rules

4    that say you can't go to court and raise the issue first?

5           MR. VAN TOL:  Well, your Honor, I would be afraid that

6    I would then be in breach of the arbitration agreement.  The

7    principle that the UNCITRAL rules incorporates is an arbitrable

8    principle called competence-competence, which means that the

9    arbitration tribunal may rule first, and then the party who

10   wins or loses may go to the applicable court and say they were

11   right or they weren't right about whether or not there's

12   jurisdiction.

13          So while there's not a case on it, this happens in the

14   arbitrable context all the time.  And the distinction here is

15   even if there were no award by the arbitration tribunal, say we

16   went there, we made our arguments, and they said, We're going

17   to defer and you go to arbitration, I could come into court

18   under the FAA, file a motion to stay the arbitration, and argue

19   to your Honor that Sphere Drake says this needs to be heard by

20   a judge and not an arbitration tribunal.  And that gives us

21   full jurisdiction; it gives your Honor full power to review our

22   submission.  So we don't need to decide whether the award is

23   interlocutory or final; we have a freestanding basis to be

24   here.

25          THE COURT:  Okay.  When you say that happens all the

6BMVSTOC                          Argument

1    time, but there's no case on it, of course such things -- there

2    are many such things, they happen all the time, and it's so

3    obvious that they are allowed to happen, that nobody challenges

4    them and, therefore, there's no case law.

5              But are you representing to me you're saying that

6    there are many cases in which courts have ruled on

7    jurisdictional issues after the arbitration panel has either

8    decided them or deferred them, but while the arbitration is in

9    process, and enjoined the further proceeding of the

10   arbitration?

11             MR. VAN TOL:  Yes, your Honor.  I'm aware of foreign

12   cases.  Remember, these UNCITRAL cases are often foreign.  And

13   Mr. Sills, I know, is much more adept at this than I.  There is

14   a French version of competence-competence, a German one.  So it

15   becomes an ongoing debate in the international arbitration

16   community as to what happens when you go and ask the tribunal

17   whether they have jurisdiction and they say yea or nay what to

18   do then.

19             And there's a stream of cases that say you may go to

20   court and get an adjudication, and those are the ones I'm

21   referring to, your Honor.  And that's where we are today,

22   because we are trying to invoke the Sphere Drake standard.

23             I don't need an arbitrable award ignoring Sphere Drake

24   to come to your Honor and say, Your Honor, we're in the wrong

25   place.  We need to be in court.

6BMVSTOC                        Argument

1          THE COURT:  Okay.  Mr. Sills, maybe I should hear from

2    you briefly about that issue of jurisdiction.  I don't need to

3    hear more about whether this was or wasn't a final award.  I

4    think it clearly is not.  I think it's clearly an interlocutory

5    ruling.  But Mr. Van Tol has now suggested a somewhat different

6    argument, and I'm not sure the extent to which it's just trying

7    to say the same thing in different words.

8          But it does seem to me that this is not quite the same

9    thing as taking an appeal within a court system from an

10   interlocutory ruling.  He is coming here seeking an injunction

11   against an arbitration.  And one that I think is clear, maybe

12   you'll have a different view, but I would have thought it's

13   clear that he could have come here with exactly this action

14   before the arbitration started, as soon as they got the notice.

15   I would have thought it clear that the plaintiff could have

16   come and brought essentially this same action to this Court.

17         So I guess one question is am I right about that?  And

18   then the second is if I am, then why is it different because

19   the arbitrators have spoken their piece on the same subject

20   matter?

21         MR. SILLS:  Well, your Honor, I think the plaintiff

22   is, to some extent, shifting ground here.  And the petition is

23   framed as a petition to vacate.  And I think as to that, the

24   Michaels case is absolutely clear.  I know your Honor reviewed

25   the case, and I don't want to burden the record by reading from

6BMVSTOC                    Argument

1  it, but that requires a final determination on claims.  And

2  there, I think the Court of Appeals analogy would be a 54(b)

3  certificate.  It's perfectly possible to decide a separate and

4  independent claim.  And that is, in fact, the language that

5  appears in the arbitration cases.  And this isn't that.

6           THE COURT:  Right.  And that's the language in the

7  Metallgesellschaft case also.

8           MR. SILLS:  Precisely, your Honor.  And very close

9  analogy to the way in which interlocutory orders of this Court

10  are or are not appealable to the Court of Appeals, an almost

11  identical practice has grown up in terms of seeking

12  interlocutory review of arbitrable decisions by this Court and

13  I suppose it's not surprising, given who's devised this set of

14  rules.

15           THE COURT:  Okay.  So he's shifting ground.  And maybe

16  the form is critical that the action is a petition to vacate.

17  But I suppose that doesn't really get us very far, because I

18  guess then you could come back tomorrow, if the problem is he

19  didn't style it right, he can come back tomorrow with a

20  different action that is styled a lawsuit to enjoin

21  arbitration, and then where are we?

22           MR. VAN TOL:  Your Honor?

23           THE COURT:  I'm sorry.

24           MR. VAN TOL:  I am loathed to interrupt, but in the

25  free declaration, Exhibit A is our petition, and it's styled as

6BMVSTOC                    Argument

1   a petition for vacatur and injunction where we cite 9 U.S.C.,

2   Section 4.  So that shouldn't be an issue, your Honor.

3          MR. SILLS:  Your Honor, I don't dispute that.  From

4   the day we filed our demand for arbitration, they could have

5   come into court seeking to vacate it.  The party always has the

6   right under the Arbitration Act to come in and seek an

7   injunction against arbitration.

8          Now, whether it's seen as jurisdictional or not,

9   "jurisdiction" has a bit of a funny meaning in this context,

10  the fact is, as your Honor says, that's not what they did.

11  They went forward, and as we've documented and as the record

12  documents very extensively, conceded jurisdiction on the part

13  of the arbitrator, went ahead and argued this jurisdiction

14  motion and lost.

15         THE COURT:  Let me be clear about what we're saying.

16  They conceded, am I right, that the arbitrators had

17  jurisdiction to decide the jurisdictional question; they didn't

18  concede the merits that the -- they are vigorously arguing that

19  the arbitrators -- that this was not an arbitrable claim.

20         MR. SILLS:  That's true, your Honor.  But it seems to

21  me, having conceded jurisdiction, and I don't think the record

22  would be any clearer on that, that you're not allowed to say, I

23  concede jurisdiction, but only on condition that I went.  If

24  there's a jurisdictional concession, and you're prepared -- and

25  I don't dispute, your Honor, that at the end of this case,

6BMVSTOC                          Argument

1   which will hopefully come someday, when there's a final award,

2   assuming that it grants us the relief we seek, that all of

3   their claims, including their claim that there was no

4   jurisdiction in the first instance, are brought up for review,

5   just as if your Honor denies a motion to dismiss for, say, lack

6   of personal jurisdiction, and goes ahead and decides the case.

7   That's preserved for review before the Court of Appeals.

8            And so I suppose that in some highly theoretical sense

9   they're seeking the analogy of an antisuit injunction.  And in

10  the sense in which we use the term "jurisdiction" in court,

11  there is jurisdiction in the sense that there is judicial power

12  to exercise equitable jurisdiction and halt the arbitration.

13  And in that sense, I don't think Michaels is dispositive,

14  because you always have the right to come to this Court and

15  seek an injunction, I suppose, against almost anything.  And

16  it's not jurisdictional in the sense now, I think.

17            THE COURT:  Yes.

18            MR. SILLS:  I mean there are obvious defenses in terms

19  of latches and waiver and the underlying merits, but putting

20  those to one side --

21            THE COURT:  Well, but this has some consequences for

22  both sides, if I'm hearing you right.  Because one of the --

23  you just said, and I think it is correct as an abstract

24  statement, that if I were to say, Get out of here.  I don't

25  have jurisdiction.  I shouldn't consider the merits of this for

1    whatever reason, and bar the door at the threshold, then it

2    certainly would be clear that the plaintiff would have the

3    ability to raise this jurisdictional objection, for want of a

4    better word, the objection to the arbitrability of these claims

5    or the objection to the validity of the arbitration agreement,

6    in an effort to vacate any award that you ultimately receive.

7          But what happens if I say, Gee, Mr. Sills just said

8    that the Michaels case is not really dispositive; and maybe as

9    a matter of equitable discretion I shouldn't grant the relief

10   of the plaintiff's request; but since that's only a prudential

11   consideration, I think that since the issues have been

12   presented on the merits to me already, I can go ahead and deny

13   the plaintiff's arguments on the merits?  Would that then be

14   something that would be res judicata or would otherwise estop

15   the plaintiffs from making an argument down the road to me or

16   to somebody else that there was no jurisdiction on the part of

17   the arbitration tribunal when and if you win in the

18   arbitration?

19         MR. SILLS:  The answer, your Honor, I think, is yes.

20   You get one bite of the apple in court.  They could obviously

21   take an appeal.  But I think your Honor --

22         THE COURT:  Mr. Van Tol, are you sure you want to

23   proceed with this action here now at this moment before me?

24         MR. VAN TOL:  Yes, your Honor.  The preliminary

25   injunction rules state that the findings that your Honor makes

6BMVSTOC                          Argument

1    for preliminary injunction --

2              THE COURT:  Is only a preliminary injunction.

3              MR. VAN TOL:  Yes, your Honor.

4              THE COURT:  Of course, then what happens after the

5    preliminary injunction gets denied, assuming it gets denied?

6    What do we do with this action?  Your request so far is for a

7    preliminary injunction.  But then after that, there's still an

8    action pending for a permanent injunction.  We could proceed

9    and deal with that then in due course, as well.  I guess that's

10   just something that we have to decide if, as, and when we see

11   how the preliminary injunction goes.

12             MR. VAN TOL:  Yes, your Honor.  And that was my

13   suggestion.  I don't know about timing, but if your Honor were

14   to deny the preliminary injunction today, I don't think there

15   would be time for you to really rule on our request to vacate

16   and for a permanent injunction, which is really why we're here

17   asking for a PI.

18             THE COURT:  That's why it's so important to do this

19   fast.  But if it doesn't succeed, then there may be nothing

20   left of the action to be ruled on on its ultimate merits,

21   because absent a preliminary injunction, there wouldn't be much

22   point in proceeding to address the permanent injunction issue.

23             MR. VAN TOL:  Well, your Honor, then I guess if you

24   deny the preliminary injunction and we go forward on the 7th

25   and the 8th, and assuming for purposes of argument that we

6BMVSTOC                          Argument

1    don't prevail, we would come to your Honor and say, Please

2    vacate whatever you decided on the preliminary injunction was

3    for those purposes only.

4            THE COURT:  Right.  So that presumably would not, in

5    fact, estop you, because it's a preliminary ruling.  And the

6    only thing I have to decide now is whether you meet the

7    standard for a preliminary injunction, not whether the

8    arbitration panel does or does not have authority to hear this

9    as a matter of law.  That decision could only be made

10   authoritatively either in this action, if there were time, or

11   after the fact.

12           And I suppose there's no doubt that one way or the

13   other this comes back before me, because even assuming that

14   this action, as it currently exists, were to evaporate before

15   the arbitration under the rules for the division of business,

16   any subsequent action addressed to the merits of whatever the

17   arbitration panel decides would come back to me anyway.

18           MR. VAN TOL:  And, your Honor, that's why what we're

19   suggesting is really a way to do this even more efficiently.

20   In other words, I've said this before, there is no reason,

21   absent the arbitrator's schedule, and I'm not trying to be too

22   cavalier about that, but there is no reason to go forward on

23   December 7th and December 8th and not give your Honor time to

24   decide our petition for vacatur and injunction.  If you put it

25   off for a short time, Telenor has made no showing whatsoever of

6BMVSTOC                        Argument

1    any financial harm, they've stated it, and I'll give your Honor

2    evidence that's not occurring.  There is no harm to a couple

3    weeks' adjournment while your Honor decides these very tough

4    issues.

5              This case in many ways is sui generis, and it's hard

6    to get done.  And there's no reason to go forward on December

7    7th or 8th that I've heard from Telenor Mobile.

8              MR. SILLS:  Your Honor, I can address that, but I

9    don't think there's any need to.

10             THE COURT:  I don't think there's any need to do that

11   at this point.  In fact, I think I'm prepared to rule, because

12   the jurisdictional issue was the only one that I think I had

13   not adequate argument on before, and I think this has been very

14   useful in clarifying that issue.

15             Petitioner Storm LLC seeks a preliminary injunction

16   prohibiting the further prosecution of an arbitration between

17   itself and respondent Telenor Mobile Communications AS, pending

18   the Court's resolution of Storm's application for an order that

19   would, one, vacate the arbitration tribunal's October 22nd,

20   2006 award; and, two, permanently enjoin the parties from

21   proceeding with the arbitration.  The motion will be denied.

22             In the first place, the Court agrees with Telenor that

23   to the extent that plaintiff seeks vacation of the order styled

24   "Partial Final Reward Regarding Jurisdiction," the order is not

25   subject to review by this Court because it is an interlocutory

1   order.  As the Second Circuit held in Michaels v. Mariforum

2   Shipping S.A., 624 F.2d 411 (1980):

3          "Under the Federal Arbitration Act, a district court

4   does not have the power to review an interlocutory ruling by an

5   arbitration panel.  The language of the act is unambiguous.  It

6   is only after an award has been made by the arbitrators that a

7   party can seek to attack any of the arbitrators' determinations

8   in court by moving either to vacate the award or to modify or

9   correct it.  Where, as here, arbitrators make an interim ruling

10  that does not purport to resolve finally the issues submitted

11  to them, judicial review is unavailable."

12         That's 624 F.2d at page 414, citations and footnote

13  omitted.

14         Though the Court in Michaels relied on Chapter 1 of

15  the Federal Arbitration Act in making this statement, that

16  chapter applies to actions and proceedings brought under

17  Chapter 2, which enforces the convention on the recognition and

18  enforcement of foreign arbitrable awards, except where Chapter

19  1 conflicts with Chapter 2 or with the convention itself.  See

20  9 U.S.C., Section 208.  There is no conflict here.

21         Moreover, the policy considerations supporting the bar

22  on interlocutory appeals apply with equal force to arbitration

23  under the convention.  See Michaels, 624 F.2d at 414, noting

24  that, "most of the advantages inherent in arbitration are

25  dissipated by interlocutory appeals to a district court."

1        There is no question that the award at issue here was

2   not final.  To be final, an arbitration award "must resolve all

3   the issues submitted to arbitration; and it must resolve them

4   definitively enough so that the rights and obligations of the

5   two parties with respect to the issues submitted do not stand

6   in need of further adjudication."  The quotation is from Rocket

7   Jewelry Box, Incorporated v. Noble Gift Packaging Incorporated,

8   157 F.3d 174 at 176, (2d Cir. 1998).

9        Here, the tribunal merely denied a motion to dismiss.

10  It did not resolve all the issues submitted to it.  Storm does

11  not even attempt to argue the contrary, and it would not make

12  sense to do so, given that Storm's motion to enjoin the

13  arbitration proceedings from continuing is predicated on the

14  very fact that those proceedings have not been completed.

15  Storm relies on the case of Metallgesellschaft, A.G. v.

16  Merchant Vessel Capitan Constante, 790 F.2d 280 (2d Cir. 1986).

17       I note that that decision is binding precedent on this

18  Court, even though Judge Feinberg dissented from it, which, in

19  this Court's view, raises some questions about whether it was

20  rightly decided.  But that doesn't matter to this case.

21       Metallgesellschaft is binding authority, but it does

22  not do what the plaintiffs say it does for this case.  What it

23  points out is that in some situations, an arbitrable tribunal

24  may finally decide some claims and not others, and a party may

25  seek judicial review of the claims that were finally decided.

6BMVSTOC                          Argument

1    But here, no claim has been finally decided.  We have a classic

2    interlocutory order simply addressing the question of the

3    tribunal's jurisdiction.

4            The tribunal's use of the term "final award" does not

5    affect this conclusion.  Read in context, the more significant

6    word in what the arbitrators chose as a title is "partial."

7    The award is only final with respect to the question of

8    jurisdiction, which makes it not final at all.  As noted by the

9    Seventh Circuit, in any event, the caption is not what matters.

10   "The content of the decision, not its nomenclature, determines

11   finality."  Publicis Communication v. True North

12   Communications, Incorporated, 206 F.3d 725, at 728, (7th Cir.

13   2000).

14           Now, today, the plaintiff suggested an alternative

15   ground jurisdiction, however, which may make this discussion of

16   the Michaels case somewhat moot.  Plaintiff notes that it is

17   not seeking solely the vacation of the interlocutory award of

18   the trubinal; that what it is really seeking is an injunction

19   against the proceeding.  And as the defendant concedes, this is

20   something that the Court does have jurisdiction to hear; that

21   the Court's equitable powers are being invoked independently as

22   the plaintiff could have done before the arbitration proceeding

23   began.

24           And it appeaars to me that the fact that the

25   arbitration proceeding has commenced and the arbitrators have

6BMVSTOC                          Argument

1   expressed certain views about jurisdiction, does not defeat

2   this Court's jurisdiction to hear such an action.  And so the

3   Court must address the application for a preliminary

4   injunction, though I note that the same considerations that

5   preclude a formal action to vacate an award in the nature of an

6   interlocutory order also militate quite strongly against the

7   Court exercising equitable powers to intervene in this

8   situation.  There are only so many bites of the apple that are

9   appropriate.

10          The plaintiff could have, and I believe could have

11  without breaching any of its obligations under the UNCITRAL

12  rules or under the underlying contract, proceeded to court, put

13  this issue before the Court up-front.  The plaintiff will have

14  the opportunity to put these issues before the Court at the

15  end.  If they are unsuccessful in the arbitration, and if the

16  defendant here succeeds in obtaining any relief from the

17  arbitration tribunal, something about which I have no view as

18  to the likelihood, if that happens, the plaintiff can attack

19  the award on jurisdictional, among other, grounds.

20          But to allow the plaintiff to submit the issue of

21  jurisdiction to the arbitration tribunal, take up the time of

22  the tribunal to decide the issue, without having come to court

23  and presented it, and then come in medias res during the

24  arbitration to attempt to interrupt and disrupt a scheduled

25  arbitration hearing by, as a matter of substance, attacking the

6BMVSTOC                    Argument

1    interlocutory decision with respect to arbitration, would, as

2    the Second Circuit said, as I quoted earlier, undermine the

3    inherent advantages of arbitration, and undermine the orderly

4    consideration of issues by the Court.  There was plenty of time

5    to put this before a court in a way that would not delay and

6    undermine the process of the arbitration, and allow the Court

7    to consider it fully before the arbitration began.

8              To do it this way wastes the time of the arbitration

9    tribunal and puts the Court under pressure to decide things too

10   rapidly for the Court, and too slowly for the arbitration

11   panel.  So the same factors that deny jurisdiction to an

12   explicit action to vacate the arbitrators' decision suggest

13   that the Court should be very cautious about granting an

14   injunction in this situation.

15             With respect to the merits of the preliminary

16   injunction application, relying primarily on Sphere Drake v.

17   Clarendon National Insurance Company, 263 F.3d 26 at 30 (2d

18   Cir. 2001), Storm argues that where a party challenges the

19   existence or formation of the contract from which the

20   obligation to arbitrate derives, a party is entitled to have a

21   court, rather than an arbitrator, decide the issue of the

22   contract's existence or validity, provided that the challenging

23   party, one, presents "some evidence" in support of its claim;

24   and, two, unequivocally denies that an agreement was made.

25             However, Sphere Drake's holding that courts, as

6BMVSTOC                         Argument

1   opposed to arbitrators, must decide the issue of a contract's

2   existence in such circumstances does not purport to override

3   the bar on interlocutory appeals from a nonfinal arbitration

4   ruling.

5         In Sphere Drake, the dispute began in federal court,

6   when one of the parties, Sphere Drake, brought a declaratory

7   judgment action seeking to have certain contracts declared

8   void, and to avoid arbitration.  The other party, Clarendon,

9   moved in court to dismiss and to compel arbitration.  Neither

10  party was contesting or appealing the ruling of an arbitrator.

11        Here, in contrast, the parties argued the issues first

12  before the arbitration tribunal.  Storm participated in those

13  proceedings, and repeatedly conceded before the tribunal that

14  the tribunal at least have jurisdiction to determine its own

15  jurisdiction.  See transcript of the hearing of August 14th,

16  2006 before the arbitration tribunal at page 258, lines 7 to

17  13; 259, lines 8 and 9; 260, lines 15 to 18; and 263, lines 6

18  to 17.

19        This is not to say that Storm has necessarily waived

20  or abandoned its objections to any aspect of the tribunal's

21  rulings; however, having submitted to proceedings before the

22  tribunal, Storm must now wait for a final award before it can

23  ask this Court to reject the tribunal's rulings.

24        In addition to that, the question of whether the

25  plaintiff has submitted some evidence in support of its claims

6BMVSTOC                          Argument

1    raises further significant questions.

2          The plaintiff says that it has some evidence because

3    of a Ukrainian judgment to which it refers.  But in assessing

4    whether that really is some evidence with respect to the lack

5    of validity of the arbitration agreement, the Court needs to

6    look more carefully, as I will in a moment, about the nature of

7    that litigation, and what it really evidences.

8          Because there are certain narrow exceptions to the bar

9    on interlocutory use, see, for example, Metallgesellschaft,

10   already cited, and because the Court does have at least

11   jurisdiction to address the injunctive relief issues, the Court

12   must, it seems to me, go on to address the question of whether

13   the plaintiff has made a sufficient showing of likelihood of

14   success on the merits with respect to its underlying action.

15         Even if the Court has jurisdiction, and even

16   disregarding the various arguments with respect to why the

17   Court should decline to exercise that authority that I've

18   already canvassed, it's my belief that Storm would still not be

19   entitled to relief, because it has failed to demonstrate that

20   it is likely to succeed in showing a basis for vacating the

21   tribunal's interlocutory ruling or for enjoining the

22   arbitration.  Storm has, therefore, failed to demonstrate the

23   likelihood of success on the merits or even sufficiently

24   serious questions going to the merits of the case that such

25   preliminary relief would be warranted.  See Moore v.

6BMVSTOC                          Argument

1    Consolidated Edison Company of New York, 409 F.3d 506 at 510

2    (2d Cir. 2005) in which the Court of Appeals explained that the

3    party seeking a preliminary injunction must demonstrate, one,

4    irreparable harm, absent preliminary relief; and, two, either

5    that the party is likely to succeed on the merits, or that

6    there are sufficiently serious questions going to the merits to

7    make them a fair ground for litigation; and that the balance of

8    hardships tips decidedly in favor of the moving party.

9             In arguing that the tribunal's award should be

10   vacated, Storm argues that the tribunal manifestly disregarded

11   Ukrainian law, New York law, under recognition of foreign

12   judgments, and the Second Circuit's decision in Sphere Drake.

13   Storm also argues that the tribunal's award is contrary to

14   public policy because it would force Storm to violate the law.

15   None of these arguments is persuasive.

16            A party seeking to vacate an arbitration award on the

17   basis of manifest disregard of the law must satisfy a

18   two-pronged test, proving that, "(1) the arbitrator knew of a

19   governing legal principle, yet refused to apply it or ignored

20   it altogether; and (2), the law ignored by the arbitrator was

21   well-defined, explicit, and clearly applicable to the case."

22   D.H. Blair & Company, Incorporated v. Gottdiener, 462 F.3d 95

23   at 110-111 (2d Cir. 2006), citation omitted.

24            This requires more than just an error or

25   misunderstanding with respect to the law.  As the Court of

6BMVSTOC                    Argument

1    Appeals explained in Wallace v. Buttar, 378 F.3d 182 at 190,

2    (2d Cir. 2004), "A federal court cannot vacate an arbitral

3    award merely because it is convinced that the arbitration panel

4    made the wrong call on the law.  On the contrary, the award

5    should be enforced, despite a court's disagreement with it on

6    the merits, if there is a barely colorable justification for

7    the outcome reached."  Citations and internal quotation marks

8    omitted.

9          With respect to Sphere Drake, Storm cannot meet the

10   standard.  The tribunal did not ignore or disregard Sphere

11   Drake; but, rather, distinguished the case, noting that here,

12   unlike in that case, "both the contract in dispute and the

13   UNCITRAL rules clearly point to arbitration as the vehicle for

14   resolving disputed issues."  See the Partial Final Arbitration

15   Award at 12-13.  Sphere Drake, the tribunal noted, "did not

16   involve an arbitration clause incorporating rules similar to

17   the UNCITRAL rules."  Same source at page 13.

18         The UNCITRAL rules to which the tribunal referred

19   provided that the, "arbitral tribunal shall have the power to

20   rule on the objection that it has no jurisdiction," and "shall

21   have the power to determine the existence or the validity of

22   the contract of which an arbitration clause forms a part."  Id.

23   at 12, citing Article 21 of the UNCITRAL rules.

24         Storm might believe that this attempt to distinguish

25   Sphere Drake is inadequate or reflects some misunderstanding of

6BMVSTOC                          Argument

1    Second Circuit law, but even if Storm were correct, that would

2    be insufficient to vacate the tribunal's decision under the

3    "manifest disregard" standard.

4           In any event, it is not even clear that the

5    arbitration tribunal was bound to follow Sphere Drake in the

6    first place.  The Second Circuit rested its decision in that

7    case on Article II(3) of the Convention on the Recognition and

8    Enforcement of Foreign Arbitral Awards.  See 263 F.3d at 29-30

9    and note 2.

10          The article provides a rule of law for courts to apply

11   when determining whether to grant a party's request to refer a

12   matter to arbitration.  Specifically, it provides that the

13   "court of a contracting state, when seized of an action in a

14   matter in respect to which the parties have made an agreement

15   within the meaning of this article, shall, at the request of

16   one of the parties, refer the parties to arbitration, unless it

17   finds that the said agreement is null and void, inoperative or

18   incapable of being performed."

19          That provision says nothing about what arbitrators

20   should do when a party to the arbitration challenges an

21   agreement's validity.  Storm does not adequately explain why

22   the arbitration tribunal here was required to apply a

23   convention provision specifically directed at courts.

24          Storm also challenges the tribunal's conclusion that

25   it was not bound by the Ukrainian court's decision,

1     invalidating the shareholders agreement.  According to Storm,

2     the tribunal's refusal to defer to the Ukrainian court's

3     conclusions constituted a manifest disregard of Ukrainian law,

4     as well as New York and federal law governing the recognition

5     of foreign judgments.

6          According to Storm, the tribunal was "required" to

7     follow the Ukrainian orders.  See Storm's brief at page 18.

8     Storm concedes, however, that Telenor was not a party to the

9     dispute in Ukraine, and did not even have notice of it.  See

10    the transcript of the November 15th hearing in this Court at

11    pages 30-31.

12         The Ukrainian judgments regarding the validity of the

13    shareholders agreement and/or the arbitration agreement,

14    therefore, can have no binding effect on Telenor in any

15    subsequent proceeding.  It is well-established that "it is a

16    violation of due process for a judgment to be binding on a

17    litigant who is not a party or privy and, therefore, never had

18    an opportunity to be heard."  Parklane Hosiery Company v.

19    Shore, 439 U.S. 322, at page 327, note 7, 1979; see also

20    Gramatan Home Investors Corporation v. Lopez, 46 N.Y. 2d 481 at

21    485-86 in 1979.

22         Thus, even if the tribunal could be said to have

23    disregarded the Ukrainian judgments in some respect, this would

24    not constitute the disregard of a controlling order or legal

25    principle clearly applicable to this case, so as to satisfy the

6BMVSTOC                          Argument

1    "manifest disregard" standard.

2            Moreover, there are further reasons why the Ukrainian

3    court's judgment may not apply to this case.

4            For one thing, the parties' agreement expressly

5    provides that New York law, rather than Ukrainian law, will

6    control the interpretation of and validity of the parties'

7    agreement.

8            Secondly, the arguments in this case and the arguments

9    that were made to the Ukrainian court concern primarily the

10   validity of the shareholders agreement.

11           Here, the issue really goes to the validity of the

12   arbitration clause.  And the arguments made with respect to the

13   validity of the shareholders agreement do not necessarily

14   directly attack the validity of the arbitration clause.  And

15   absent such an attack, it seems clear under New York and

16   federal law that the arbitrators do, indeed, have jurisdiction

17   to address that issue.

18           Plaintiffs respond that the Ukrainian courts were

19   ultimately asked to rule on the severability -- even that's not

20   quite the right way to put it.  The Ukrainian courts were not

21   actually asked to rule on the severability as such of the

22   arbitration agreement, but the question was put to them whether

23   the shareholders agreement was null and void, including the

24   arbitration clause.  And both the trial and appellate courts

25   apparently ruled that the entire agreement was null and void.

6BMVSTOC                         Argument

1        However, the relevance of that finding of invalidity

2   is further undermined by the substantial evidence that the

3   Ukrainian orders were the product of collusive litigation.  To

4   be called the litigation collusive is to dignify it.

5        The proceedings involved a suit brought against Storm

6   by its own corporate parent, seeking a declaration that the

7   general director of Storm lacked actual authority to execute

8   the shareholders agreement with Kyivstar and Telenor.  See Van

9   Tol affirmation, paragraphs 5 and 6.

10       Kyivstar and Telenor, however, as noted already, were

11  not parties to the litigation.  And Storm, the only signatory

12  of the agreement that was a party to the litigation, submitted

13  no statement of defense, and was not even represented by an

14  attorney.  Storm concedes that it did not notify Telenor about

15  the Ukrainian litigation.  See the November 15th hearing

16  transcript at 30-31.  Nor did Storm advise the arbitration

17  tribunal in New York of the existence of the Ukrainian

18  litigation until after the Ukrainian courts have ruled on the

19  shareholder agreement's validity, even though the arbitration

20  proceeding, which pertains to the very same shareholders

21  agreement that was at issue in Ukraine began before the

22  Ukrainian litigation was filed.  See Partial Final Arbitration

23  Award at 14.

24       No argument, as far as is apparent to this Court, was

25  ever addressed to the Ukrainian courts with respect to the

6BMVSTOC                              Argument

1    severability of the arbitration clause or whether the person

2    who signed the agreement had authority to enter an arbitration

3    agreement.  The Court was simply presented with a friendly

4    lawsuit between, essentially, Storm and itself, in which the

5    only argument presented was an argument for invalidity, and in

6    which no effort was made to argue any of the issues which would

7    certainly be apparent to an American court and which would be

8    controlling under New York and federal law and which, for all I

9    know, and for all the Ukrainian court's judgment would

10   evidence, might well be significant under Ukrainian law, as

11   well.  All that was presented to the Court was one side of a

12   part of the issues that are relevant to this case.

13         And I note finally that while this Court has had a

14   relatively short period of time to address these issues, the

15   arbitration tribunal, it conducted an exemplary inquiry into

16   these issues.  The arbitration tribunal did not act hastily or

17   precipitately.  It did anything but manifestly disregard the

18   arguments presented to it with respect to Ukrainian law.

19         Rather, it conducted an extensive factual inquiry into

20   the nature of the Ukrainian litigation, and provided a

21   thoughtful and reasoned judgment with respect to its reasons

22   for believing that the arbitration tribunal did have

23   jurisdiction over this controversy, and should proceed to

24   address its merits.

25         Finally, Storm argues that the tribunal's award should

6BMVSTOC                    Argument

1   be vacated because it compels Storm to violate the Ukrainian

2   decisions, invalidating the shareholder agreement.  In making

3   this argument, Storm relies on a provision of the convention on

4   the recognition and enforcement of foreign arbitrable awards

5   that allows a court to refuse enforcement of an award, where to

6   do so would violate the public policy of the enforcing state.

7   See Convention Article V(2)(B).

8           According to Storm, it would violate public policy to

9   compel violation of a foreign decree.  The Second Circuit has

10  held, however, that the "public policy exception is to be

11  construed very narrowly, and should be applied only where

12  enforcement would violate our most basic notions of morality

13  and justice."  Europcar Italia, S.p.A. v. Maiellano Tours,

14  Incorporated, 156 F.3d 310 at 315 (2d Cir. 1998) omitting

15  citations and internal quotation marks.

16          In view of Storm's conscious decision not to inform

17  the other parties to the shareholders agreement that their

18  agreement's validity was at issue in Ukrainian litigation, it

19  cannot now rely on "basic notions of morality and justice" to

20  argue that that litigation binds the uninformed parties.  To

21  the extent Storm faces a dilemma of conflicting obligations,

22  the dilemma results from Storm's and its parent's own tactical

23  decisions.

24          Moreover, I note that the convention referred to

25  relates to whether a court to enforce an award that would

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6BMVSTOC                          Argument

1    violate public policy of the enforcing state.

2          There's no issue here, it seems to me, that the public

3    policy of any state would be violated by requiring the parties

4    to proceed with respect to the arbitration.  There might be

5    issues at some future point, depending on what Ukrainian law

6    really is or would really be found to be in a

7    properly-contested litigation in that country.

8          There may be some issue as to whether under Ukrainian

9    law an award of the arbitration tribunal could be reduced to

10   judgment and enforced, but that would be a matter for the

11   Ukrainian courts.  I see nothing in American or New York public

12   policy that would prevent requiring the parties here to proceed

13   with their arbitration.

14         For these reasons, the Court believes, first, that the

15   plaintiff has definitely not succeeded in showing a likelihood

16   of success on the merits.  And, indeed, it's my belief that

17   Storm has not shown sufficiently serious questions going to the

18   merits to make this Court proceed further with applying the

19   preliminary injunction test.

20         However, even if I'm wrong about that, and even if

21   Storm has shown sufficiently serious questions going to the

22   merits to make them a fairground for litigation, Storm cannot

23   show that the balance of hardships tips decidedly in its favor.

24   And I emphasize the test is decidedly and not slightly.

25         Both parties may suffer hardships from a ruling

6BMVSTOC                          Argument

1    against them.

2          If the Court rules for Telenor, Storm will be forced

3    to participate in arbitration, in which it claims it has no

4    obligation to participate, and which, at the end of the day, it

5    will be entitled to challenge on these jurisdictional grounds

6    in an action either by it to vacate or by Telenor to enforce an

7    award, assuming any final award were offered.

8          I note, however, that while the courts have indicated

9    that being forced to participate in an arbitration improperly

10   constitutes irreparable injury, that's a somewhat theoretical

11   statement, especially in the context of a case like this one.

12         Storm is not a party that has never agreed to proceed

13   to arbitration, and is somehow being required to do so.  Storm

14   is a party that has explicitly agreed to participate in

15   arbitration which is challenging the validity of that

16   agreement.

17         As a practical matter, the harm to it of proceeding

18   with the arbitration is somewhat limited.  The arbitration is

19   scheduled for a rather brief period.  The parties have already

20   expended considerable resources in this matter on two

21   continents in two court systems and before the arbitration

22   panel.  And the actual harm of going forward at this point with

23   a hearing on the merits is somewhat limited.

24         On the other hand, if the Court rules for Storm, then

25   Storm will be able to prolong its boycott of the meetings of

6BMVSTOC                              Argument

1   Telenor's subsidiary, Kyivstar, which makes it apparently

2   impossible for that company to function, and Storm will be

3   permitted to continue with its policy of dragging out these

4   proceedings through various delay tactics.  It may be a close

5   call which hardship, if the Court were in error, is greater,

6   but it certainly does not seem to me that the balance of

7   hardships tips decidedly in favor of Storm.

8           Indeed, overall, what appears to me to be the case is

9   that the plaintiff, Storm, and its parent, have attempted, by

10  means of friendly litigation in the Ukrainian courts, without

11  notice to the other parties to the dispute in this case, to

12  make an end run around the very procedure for adjudicating

13  disputes between the parties that Storm and Telenor

14  deliberately agreed to when they entered their contract; and

15  that this effort should not be countenance by this Court.

16          Regardless of the ultimate merits of the question of

17  whether the arbitration panel does have jurisdiction, and

18  whether the shareholders agreement or the arbitration clause

19  within it will ultimately be found to be valid by this or other

20  courts in the United States, the effort by the plaintiffs here

21  to attack the arbitration tribunal and its jurisdiction on the

22  basis of the Ukrainian litigation, and again, I say nothing

23  about whether the Ukrainian court or the arbitration tribunal

24  may or may not ultimately be right about the validity of any of

25  these contracts or clauses, but the effort to disrupt the

6BMVSTOC                         Argument

1    arbitration proceeding on the basis of collusive litigation in

2    the Ukraine is basically a shabby tactic on the part of the

3    plaintiffs and should not be condoned.

4            In sum, the Court holds that it may not review the

5    arbitration tribunal's partial final award regarding

6    jurisdiction, but also that to the extent that the Court has

7    jurisdiction, either on that theory or as based on the

8    independent action invoking the equitable powers of the court

9    to enjoin the arbitration, there is no basis for vacating the

10   award.

11           At a minimum, plaintiffs have not made a showing of

12   likelihood of success on the merits or serious questions going

13   to the merits and a balance of hardships in its favor that

14   would warrant preliminary relief, and the application for a

15   preliminary injunction is therefore denied.

16           Now, at some point I guess we'll decide whether this

17   action continues to exist in some form or whether it's properly

18   dismissed without prejudice to some further action with respect

19   to the validity of any award that the arbitration panel might

20   or might not come up with, but this is not the day to worry

21   about that.  And I suppose the plaintiff has its avenues of

22   review of this decision, and will either pursue them or not, as

23   the case may be.

24           But I think that does all the business that brings us

25   here on the morning before Thanksgiving.  Unless there's

6BMVSTOC                          Argument

1   anything that the parties need me to address further, I think

2   we can stand adjourned.  Mr. Van Tol.

3          MR. VAN TOL:  Your Honor, I understand that it is on

4   the eve of Thanksgiving.  But if I may have, at most, three

5   minutes to make an offer of proof on one piece of evidence and

6   then a couple arguments to make sure any appellate record is

7   clear that I haven't waived the arguments.  I will be brief.

8          THE COURT:  Okay.

9          MR. VAN TOL:  The first thing, your Honor, I'd like to

10  hand up to the Court is a copy of the Kyivstar financials.  And

11  I'd ask the Court to take judicial notice of those financials.

12  They were pulled off the web site for Kyivstar, and they show

13  that in 2006, things looked better at Kyivstar than they were

14  in 2004 and 2005.  So that any claims of financial harm by

15  Telenor should not be credited.

16          That's all I wanted to say about that, your Honor.

17          THE COURT:  Right.  Well, let me say, I've not

18  understood this to be a question of direct dollars and cents.

19  What I understand the argument to be on the part of the

20  defendant is that its ability to function as a corporation is

21  inhibited.  Now, that may or may not show up in the bottom line

22  in the short run.

23          But it's not been my belief that the defendants have

24  argued irreparable harm or dollars and cents harm in the short

25  run as a result of some financial loss; but, rather, that its

6BMVSTOC                          Argument

1   ability to properly function as a corporation is harmed.

2            But I take it, Mr. Sills, you don't deny that these

3   are the numbers?

4            MR. SILLS:  Well, your Honor, I don't represent

5   Kyivstar, but I --

6            THE COURT:  Oh, okay.

7            MR. SILLS:  They are what they are.  The company is

8   operating; does, I believe, have an operating profit.  I don't

9   have any reason to doubt these numbers, although I can't vouch

10  for them either.

11           THE COURT:  They are what they are.  This document can

12  be marked as Plaintiff's Exhibit 1 of this date, and it's part

13  of the record.

14           MR. VAN TOL:  Thank you, your Honor.  Just so it's

15  clear, I'm not trying to waste anyone's time.  On page 26 of

16  Telenor's brief, they do say that Storm's actions are causing

17  financial harm.  That was my sole reason for reading that.

18           THE COURT:  I don't think it's a waste of time.

19           MR. VAN TOL:  Quickly, your Honor --

20           THE COURT:  And, again, financial harm.  Financial

21  harm doesn't necessarily mean a loss.  You could be making

22  money, but you could be making more money.  The numbers are

23  what they are.

24           MR. VAN TOL:  Thank you, your Honor.  And just so the

25  record is clear on what our arguments are, Mr. Sills, in his

6BMVSTOC                         Argument

1    brief, raised Parklane Hosiery and some other collateral

2    estoppel cases.  And I noted them in your Honor's ruling.

3         Just to be clear, Storm is not arguing collateral

4    estoppel.  We didn't below; we're not here.  We're relying on

5    cases like Sea Dragon, which are not collateral estoppel cases,

6    but say there's a ruling before it needs to be recognized.

7         And my last point or next-to-last point is on Sea

8    Dragon, quickly, that case said an allegation of collusion is

9    not enough.  In order for there to be a judgment that's not

10   recognized, there must be a showing of fraud, and we would

11   submit that that was not the case here.

12        Moreover, Sea Dragon was just like this case in that

13   the party there got notice after the fact, could have

14   intervened in the Dutch proceedings to do something, and

15   didn't.  We submit that Telenor Mobile is in exactly that

16   situation.

17        Last point, your Honor, is on the alleged collusive

18   nature of the Ukrainian actions, I note that Storm did appeal.

19   We submitted expert evidence that the defense put on by Storm

20   was not unusual from a Ukrainian point of view.  And in both

21   the court below and on the appellate level, Storm

22   representative mentioned and brought up the fact that there was

23   a New York arbitration going on, asked the Ukrainian court to

24   defer in favor of arbitration; in other words, the same

25   argument Telenor Mobile is making here.

6BMVSTOC                          Argument

1           And thank you, your Honor.  That's all I have.

2           THE COURT:  Okay.  Mr. Sills, I don't think you need

3    to say anything.  If you think you do, I should give you the

4    chance.

5           MR. SILLS:  I don't, your Honor.  I think this is all

6    amply covered in the record.

7           THE COURT:  All right.  Then I think we're done.  I

8    thank you all for being here, and for a very illuminating

9    argument.

10          I must say, finally, perhaps I said it in the ruling

11   that I already made, that in using rather strong language with

12   respect to what I think Storm is up to here, I did not for a

13   moment mean, and I do not mean to cast any aspersion whatever

14   on the conduct of counsel.

15          I think that plaintiff's counsel have made legitimate

16   arguments in this Court with respect to them the best they

17   could with respect to what their client's interests are.  And I

18   don't believe that counsel has been anything less than

19   professional and candid with the Court.

20          But I do believe that the overall strategy here being

21   pursued by the plaintiff is one that is a strategy of a delay

22   and evasion of the arbitration proceedings, and it's not

23   something that I have been persuaded is legitimate or is a

24   basis for interfering with the arbitration panel at this time.

25          But I want to make very clear that I have no -- I

1    intend no criticism of counsel.   I don't believe any criticism

2    of counsel would be justified.

3            All right.   Thank you very much.

4            MR. VAN TOL:   Thank you, your Honor.

5            MR. SILLS:   Thank you, Judge.

6                                *    *    *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25