# EXHIBIT D



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NY 10103-0001
tel 212-506-5000
fax 212-506-5151
WWW.ORRICK.COM

October 25, 2007

Robert L. Sills
(212) 506-5110
rsills@orrick.com

*BY HAND*

Hon. Gerard E. Lynch
United States District Judge for
 the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 910
New York, New York 10007-1581

Telenor Mobile Communications AS v. Storm LLC
07-CV-6929 (GEL) (DF)

Dear Judge Lynch:

On behalf of petitioner Telenor Mobile Communications AS ("Telenor Mobile"), I write in response to the letter, dated October 23, 2007 (the "October 23 Letter"), submitted on behalf of respondent Storm LLC ("Storm"), concerning the arbitration award, dated July 2, 2007 (the "Award"), that is the subject matter of this proceeding.[1]  On August 1, 2007, Telenor Mobile moved to confirm the arbitration award.  On August 16, 2007, Storm cross-moved to vacate the Award.  Both motions were fully briefed by September 12, 2007, and remain sub judice.

The October 23 Letter attaches two orders of Ukrainian courts, the first dated October 5, 2007, purporting to "refuse[ ] to recognize" the Award, referred to by Storm as the "Pechersk Ruling," and an order of another Ukrainian court, dated October 10, 2007, referred to as the "Shevchenkivskiy Ruling," purporting to "invalidate" efforts by Storm and its corporate parents to comply with the Award.  As set forth below, both rulings are legally irrelevant in this proceeding, were obtained in a manner that could be described, at best, as highly irregular, and are the latest chapters in Storm's campaign of vexatious litigation in the Ukrainian courts.

---

[1]  Although the Award is dated July 2, 2007, its issuance was delayed until August 1, 2007 by the failure of Storm to pay fees owed to the arbitrator it had nominated, and to the chairman.



ORRICK

Hon. Gerard E. Lynch
October 25, 2007
Page 2

### 1.   The Pechersk Ruling Did Not Result From a Proceeding on Notice and Is Legally Irrelevant Here

Storm did not annex to the October 23 Letter a copy of the application that led to the Perchersk Ruling. However, Telenor Mobile has obtained a copy of that application from the court files in Ukraine. A copy of that application, in Ukrainian, is attached to this letter as Exhibit A, and an English translation is attached as Exhibit B.[2] Copies of Storm's application for an expedited hearing and the order granting it are attached as Exhibit C, and English translations of those documents are attached as Exhibit D.

Storm's application to the Ukrainian court was filed on August 22, 2007. As an initial matter, Storm should have immediately disclosed to this Court and to Telenor Mobile that it had commenced an action in Ukraine concerning the same subject matter as this proceeding. Its failure to do so for two months is inexcusable, and the claim in the October 23 Letter that Storm has finally revealed the existence of its latest Ukrainian litigation "in the interest of full disclosure" is, to say the least, ironic.

Moreover, the assertion that notice was provided to Telenor Mobile of Storm's latest Ukrainian litigation is simply wrong. The October 23 Letter provides the Court with Ukrainian documents purporting to show notice to Telenor Mobile, without any English translation. English translations of those purported notices prepared by Telenor Mobile are attached to this letter as Exhibit E.

The first notice purports to show delivery by mail on August 31, 2007 to 19 Khreschatyk, Kyiv. That is not Telenor Mobile's Kyiv address.[3] Rather, it is the address of a "business center" serving a number of firms; at one time, Telenor Mobile's representative office in Ukraine was located in that facility. A nearly identical purported notice is dated October 1, 2007, the only difference being that it is addressed to 19a (rather than 19) Khreschatyk. No claim is made that any notice was provided to Telenor Mobile at its current business address in Kyiv, at its offices in Norway (whose address is set out in the caption of Storm's application to the

---

[2] Storm's papers before the Ukrainian court state that it "applies to the court for recognition of the award." (Exh. B at 3). However, Storm's papers go on to argue against the relief it purportedly sought.

[3] Telenor maintains a web site regarding its Ukrainian business that clearly shows its current address. Copies of the first and contact pages of that web site, available in Ukrainian at http://www.telenor.com/ukraine/ur and in English at http://www.telenor.com/ukraine/index2.shtml, are attached as Exhibit F.



ORRICK

Hon. Gerard E. Lynch
October 25, 2007
Page 3

Ukrainian court), or to its lawyers here or in Ukraine. No claim is made by Storm that a copy of the Pechersk Ruling was ever sent to Telenor Mobile.

Both notices are signed by an individual named "Kovalenko," without any first name. I understand that Telenor Mobile's representative office in Ukraine does not, and did not, have an employee named "Kovalenko." Rather, as the form indicates, that is the signature of a postal employee who allegedly delivered the notices to Telenor's former address. Even if a notice was delivered to Telenor's former address, neither notice attached to the October 23 Letter ever reached Telenor Mobile. I note that Storm and its affiliates have a history of proceeding without notice to Telenor Mobile in their various Ukrainian litigations.[4] See Storm, LLC v. Telenor Mobile Communications AS, 2006 WL 3735657, at *10 (S.D.N.Y. Dec. 15, 2006) (the "Preliminary Injunction Order").

Moreover, even had the Pechersk Ruling been the result of an actual litigated proceeding on notice, it would be irrelevant to this matter. Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), reprinted following 9 U.S.C. § 201, which governs here, the only court with authority to vacate an international arbitration award is one at the seat of arbitration, referred to as the "primary jurisdiction." See Kahara Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, at n.1 (2d Cir. Sept. 7, 2007); Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997), cert. denied, 522 U.S. 1111 (1998). All other jurisdictions, referred to as "secondary jurisdictions," are limited to entertaining an application to enforce the award, and an order refusing enforcement can only be granted upon one of the grounds specified in the New York Convention. Accordingly, the Perchesk Ruling, which is, in effect an order purporting to vacate the Award, granted on the motion of the losing party in the underlying arbitration, resulted from a proceeding brought in violation of the New York Convention that should not even have been entertained.[5]

---

[4] The first notice to Telenor Mobile of the Pechersk Ruling came during the afternoon of October 23 (Moscow time) when a Russian journalist telephoned the communications director of Telenor Russia AS, an affiliate of Telenor Mobile, and asked for comment; when it turned out that Telenor had no knowledge of the ruling, the journalist provided Telenor with a copy of the Pechersk Ruling earlier emailed to that journalist by Altimo. Later that day, Storm itself issued a press release concerning the Pechersk Ruling, a copy of which is attached as Exhibit G, together with an English translation.

[5] Awareness of that rule is presumably the basis upon which Storm described its Ukrainian attack on the Award as a motion to confirm. This is not the first time in this dispute that Storm has pursued Ukrainian litigation in hope of losing. See Preliminary Injunction Order at *11.



ORRICK

Hon. Gerard E. Lynch
October 25, 2007
Page 4

Moreover, any order by a court of a secondary jurisdiction refusing enforcement is limited in its territorial effect to that court's national jurisdiction. See Kahara Bodas Co. v. Pertamina, 364 F.3d 274, 287 (5th Cir. 2004) ("The New York Convention provides a carefully structured framework for the review and enforcement of international arbitral awards. Only a court in a country with primary jurisdiction over an arbitral award may annul that award. Courts in other countries have secondary jurisdiction; a court in a country with secondary jurisdiction is limited to deciding whether the award may be enforced in that country.") (citation omitted). Accordingly, even had the Perchesk Ruling resulted from a proper proceeding on notice, it could have effect only in Ukraine, and would have no bearing on the motion and cross-motion before this Court.

With regard to Storm's claim that the Pechersk Ruling shows that the Award will prove unenforceable in Ukraine, there has never been an actual litigated case in Ukraine that has so held, as this Court previously observed in the Preliminary Injunction Order. See 2006 WL 3735657, at *12 (S.D.N.Y. Dec. 15, 2006). Storm contractually submitted itself to the jurisdiction of this Court, and a judgment based on the Award – which grants only specific relief – can be enforced in personam here. Storm has never asserted that it will not obey an order of this Court, and there are ample means to enforce any such judgment against Storm and its corporate affiliates, regardless of the rulings of the Ukrainian courts. See Preliminary Injunction Order at *12, *14.

## 2. The Shevchenkivskiy Ruling is Collusive and Irrelevant

The second order attached to the October 23 Letter, the "Shevchenkivskiy Ruling," has even less relevance here. According to that ruling, Alpren and Hardlake, Storm's two corporate parents, both of which are wholly-owned by Altimo, supposedly attended a meeting to implement changes to Storm's charter in order to comply with a portion of the Award.[6] Storm's General Director, an Altimo executive named Vadim Klymenko (who also signed Storm's application to the Pechersk court seeking recognition of the Award), then brought another case in a Ukrainian court against Alpren, Hardlake and Storm itself to invalidate those actions.[7] In a remarkably convoluted opinion, the Ukrainian court granted the relief sought by Mr. Klymenko against the company of which he is General Director, and "invalidated" the supposed efforts of Storm, Hardlake and Alpren to comply with the Shareholders Agreement and the Award.

---

[6] Meetings of the Kyivstar shareholders were scheduled for October 1 in order to consider the amendments to the charter ordered in the Award. Despite the current claim that Storm was attempting to comply with the Award until halted by the Shevchenkivskiy Ruling on October 10, Storm boycotted the October 1 meetings.

[7] Mr. Klymenko's various roles are described in the Preliminary Injunction Order.



ORRICK

Hon. Gerard E. Lynch
October 25, 2007
Page 5

As this Court found in the Preliminary Injunction Order, Alpren and Storm are wholly-owned by Altimo, and Alpren and Storm are shell companies acting at Altimo's direction.[8]  Mr. Klymenko is a director of Altimo, as well as General Director of Storm, whose duties include the supervision of litigation by Altimo's affiliates in the Ukrainian courts.  It is evident that the Shevchenkivskiy Ruling is only the latest example of Storm's practice of engaging in collusive litigation with itself, and then attempting to use the results of such proceedings to foreclose or impair Telenor Mobile's access to the forums in which Storm and Telenor Mobile agreed any dispute would be heard.  All such previous efforts were rejected by the arbitrators and this Court, as this one should be.

\*    \*    \*

The revival of Storm's campaign of abusive litigation in the Ukrainian courts is nothing more than an effort by Storm and its affiliates to delay confirmation of the Award and buy time for Storm to avoid its contractual obligations.  Indeed, the proceeding resulting in the Shevchenkivskiy Ruling is clearly in violation of the specific relief granted in Paragraphs 3, 4 and 5 of the Award, and would be punishable as a contempt had a judgment based on the Award been in effect.  Telenor Mobile respectfully submits that, under those circumstances, a prompt resolution of the pending motions will serve the ends of justice.  We are, of course, available at the Court's convenience for a conference or for oral argument should Your Honor deem it appropriate.

Respectfully,

Robert L. Sills

Robert L. Sills

Copy (by email) to
    Pieter Van Tol, Esq.

---

[8] Hardlake is a Cyprus shell company structured identically to Alpren, except for its 50.1% interest in Storm, as compared to Alpren's 49.9% interest.