# EXHIBIT N

# Lovells

Lovells LLP
590 Madison Avenue
New York NY 10022
Tel: +1 212 909 0600
Fax: +1 212 909 0660

December 3, 2007

**By e-mail**

Our ref NYGSZ/.127506
Matter ref V2336/00016

Direct line (212) 909-0661
pieter.vantol@lovells.com
Direct fax (212) 909-0660

Robert L. Sills, Esq.
Orrick Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, New York 10103-0001

RE: *TELENOR MOBILE COMMUNICATIONS AS V. STORM, LLC*, NO. 07 CV 6929 (GEL)

Dear Bob:

We write in response to your letter of November 27, 2007 (the "November 27 Letter") and in further response to the letter dated November 9, 2007 (the "November 9 Letter") from Messrs. Korsaeth and Halvorsen of Telenor Mobile Communications AS ("Telenor Mobile") to Mr. Klymenko of Storm LLC ("Storm"), who already responded to the November 9 Letter by letter dated November 15, 2007 (the "November 15 Letter").[1]

As an initial matter, we note that Storm filed, on November 28, 2007, an application with the United States Court of Appeals for the Second Circuit seeking a stay, pending appeal, of the November 2, 2007 Order and Opinion ("November 2 Order") by Judge Lynch confirming the Final Award. On November 29, 2007, the Court of Appeals granted a temporary stay of the November 2 Order until there is a resolution of Storm's motion for a stay pending appeal. Under the circumstances, Storm is not under any present obligation to comply with any portion of the Final Award.[2]

Nevertheless, we are writing to advise you of steps that have been taken to provisionally comply with the Final Award. Mr. Klymenko noted in the November 15 Letter that Storm had become aware of discussions regarding the sale of certain interests in the allegedly competing companies, Astelit LLC ("Astelit") and Ukrainian High Technologies Ltd. ("UHT"). (November 15 Letter at 2.) It is our understanding that the discussions regarding Astelit recently resulted in a transaction with Nadash International Holdings, Inc. ("Nadash"), which is a subsidiary of Visor Capital, an

---

[1] Any capitalized terms that are not defined in this letter shall have the same meaning as in the November 9 Letter and the November 15 Letter.

[2] In the November 27 Letter, you have again argued that the time to comply with the Final Award runs from the date of its issuance. However, you still have not cited any cases rebutting the well-settled rule that arbitral awards are not self-executing. Indeed, the fact that Telenor Mobile felt compelled to move before Judge Lynch for confirmation of the Final Award demonstrates that awards cannot be enforced absent final court confirmation.

Lovells LLP is a limited liability partnership registered in England and Wales with registered number OC323639. Registered office and principal place of business Atlantic House, Holborn Viaduct, London EC1A 2FG. The word 'partner' is used to refer to a member of Lovells LLP or an employee or consultant with equivalent standing and qualifications.

Lovells LLP and its affiliated businesses have offices in: Alicante Amsterdam Beijing Brussels Chicago Dubai Dusseldorf Frankfurt Hamburg Ho Chi Minh City Hong Kong London Madrid Milan Moscow Munich New York Paris Prague Rome Shanghai Singapore Tokyo Warsaw   Associated offices Budapest Zagreb
Lawyers(USA) Solicitors Rechtsanwalte Avocats Advocaten Notarissen Avvocati Abogados

Robert L. Sills, Esq.                                           - 2 -                                           December 3, 2007

investment bank, and is not affiliated with the Alfa Group ("Alfa"). There is also an agreement in place for the sale of the UHT interest to Intec Holding Limited ("Intec"), which is a private company investing in telecom assets in the CIS and is also not affiliated with Alfa. Those transactions are described below and the agreements concerning the Nadash transaction will be publicly disclosed shortly.

We must emphasize, at the outset, that the Astelit and UHT transactions represent a good-faith effort to comply with the Final Award, but they are under a full reservation of rights and without prejudice to any challenge to the Award, including Storm's pending appeal.[3]

    a)    **Astelit Transaction**

In the Final Award, the Tribunal held that Storm had violated the non-competition provisions in Section 6.02 of the Kyivstar Shareholders Agreement dated January 30, 2004 ("KSA") because "Alfa" allegedly owns a 13.2% interest in "Turkcell," which, the Tribunal stated, "maintains a majority stake in Astelit." (Award at 59.) In addition to not defining "Alfa" or "Turkcell," the Final Award does not fully describe the various interests of the companies within Alfa.

Alfa has an indirect interest in Astelit as follows. Alfa (through Alfa Finance Holdings S.A. ("AFH")) is the 100% legal owner of Alfa Telecom Turkey Ltd. ("ATTL"), which is currently the registered owner of 49% of the shares of Cukurova Telecom Holdings Limited ("CTH"), which in turn corresponds to an indirect ownership of approximately 7.2% of Astelit (on a "look through" basis).[4] Because ATTL is an indirect 100% subsidiary of Alfa, the ATTL interest also corresponds to a 7.2% indirect ownership of Astelit for Alfa.

In a Sale and Purchase Agreement dated November 29, 2007 between AFH and Nadash (the "SPA"), AFH agreed to sell 50% of the shares in ATTL to Nadash on the "Completion Date" (which is the 50th business day after the execution of the SPA) in exchange for a purchase price of $20 million. This sale, upon completion, would reduce Alfa's indirect ownership interest in Astelit by 50%, from 7.2% to 3.6%, which is well below the 5% threshold set forth in Section 6.02 of the Shareholders Agreement. Moreover, as a result of the Nadash transaction, ATTL would cease to be a "Controlled Affiliate" of Storm under the definition of that term in the Shareholders Agreement (assuming, for purposes of argument, that ATTL may be categorized as such). Section 1.01 of the Shareholders Agreement defines "Controlled Affiliate" as an "Affiliate" of a company in which that company owns more than 50%. Thus, upon completion of the transaction, none of Storm's affiliates would own more than 50% of ATTL or more than 5% of Astelit, respectively.[5]

---

[3]    These transactions are also without prejudice to the assertion by Altimo, Alpren and Hardlake that they are not bound by the Final Award or November 2 Order, contrary to your arguments in the November 27 Letter. (See Nov. 27 Letter at 2.) Although this firm does not represent the foregoing entities in this action, we note that the December 15, 2007 order of Judge Lynch on which you rely so heavily is currently on appeal.

[4]    CTH owns a 52.91% interest in Turkcell Holdings, which owns 51% of Turkcell Iletsim Hizmetleri A.S. ("Turkcell"). Turkcell indirectly owns 54.2% of Astelit. The 7.2% figure is derived by multiplying ATTL's 49% interest in CTH times CTH's 52.91% interest in Turkcell Holdings times Turkcell Holdings' 51% interest in Turkcell times Turkcell's indirect 54.2% interest in Astelit.

[5]    Because the purpose of the SPA is to reduce the interest in Astelit, in accordance with the Final Award (but without prejudice to Storm's right to challenge the Award), the SPA is contingent upon the existence of a confirmed and enforceable Final Award. Thus, if the Court of Appeals grants the stay that

Robert L. Sills, Esq.                              - 3 -                              December 3, 2007

Because the completion of the Nadash transaction would result in a 50-50 ownership of the shares in ATTL, the parties and ATTL shall, on closing, enter into a Shareholders Agreement (the "SHA") to deal with corporate governance issues that could arise from the sale. Among other things, the SHA sets forth the procedure for dealing with deadlock situations at ATTL.

The SHA, like the SPA, also includes provisions that relate to legal developments and contingencies that could affect the Final Award or the Nadash transaction. The SHA gives Alfa a "call" option to re-purchase the shares sold to Nadash, but only under a limited set of circumstances. Alfa may exercise the option if a court or tribunal rules that Storm must take further steps, in addition to the Nadash transaction, in order to comply with the Final Award. Alfa may also exercise the option if it determines that such an exercise would not violate the KSA (which, for example, would be the case if the Court of Appeals were to reverse the November 2 Order). Alfa further has the right to exercise the option after the second anniversary of the SHA; if, however, Alfa's exercise would violate the KSA, Telenor Mobile would have the right to argue that a breach of the KSA has occurred. Finally, Alfa may exercise the option if a court determines that ATTL legally and beneficially owns 100% of CTH, since such a finding would increase the interest in Astelit and require a new transaction (assuming the Final Award is still in place).[6] Nadash has a parallel "put option" under the SHA, but it may only be exercised after Nadash receives a legal opinion stating that the exercise of the put option would not violate the KSA.

As noted above, the definition of a Controlled Affiliate in the KSA turns on the ownership interest in a company. However, in an abundance of caution and to avoid any doubt, the SHA makes it clear that Alfa's economic interest in Astelit will also be below the 5% threshold and any economic interest in excess of 5% will be transferred to Nadash. The SHA provides that any distribution of profits paid to ATTL will be reduced by an amount sufficient to bring ATTL's (and, hence, Alfa's) economic interest in Astelit below 5%.

    **b)**     **UHT Transaction**

On November 29, 2007, Alfa's interest in UHT was reduced to zero when Russian Technologies, a private equity fund controlled by Alfa, agreed to sell its entire stake in UHT to Intec, which, as noted above, is unrelated to Alfa. The closing of the UHT transaction is expected to take place in about a month.

*　*　*　*　*

We also have responded below to the other points raised in the November 27 Letter in the order they were made:

1.    The November 27 Letter refers to the injunctions in the Ukrainian proceedings relating to the Ernst & Young agreements (the "E & Y Agreements"). (Nov. 27 Letter at 2.) However, as

---

Storm has requested, the Completion Date will be delayed until Storm's appeal is finally decided. (For the same reason, the SPA is also contingent upon the denial of a stay by the Court of Appeals.) Moreover, the SPA ceases to have effect if a court or arbitration tribunal rules that Storm must take further steps to comply with the Astelit divestiture order.

[6]    The amount of ATTL's interest in CTH is currently the subject of court proceedings in the British Virgin Islands.

Robert L. Sills, Esq.                              - 4 -                              December 3, 2007

Telenor Mobile noted in a press release issued on November 26, 2007, there are no longer any injunctions in place regarding the E & Y Agreements.

Your letter also refers to the "Alpren Action," which was pending in the Kyiv City Commercial Court. We have learned that, on September 3, 2007, Alpren filed an application for termination of those proceedings with the State Executive Service of Ukraine ("SES"). On September 4, 2007, Alpren filed for withdrawal of the claim and its application for interim measures. The Kyiv City Commercial Court accepted Alpren's withdrawal and dismissed the case in a ruling issued on November 23, 2007.[7]

2.  You state that the Shevchenskivskiy Action is blocking compliance with the "Award and Order" and that Mr. Klymenko may be held in contempt as a result of the Ukrainian proceeding. (See id. at 2-3.) As you know, the Shevchenskivskiy Action was filed before the November 2 Order was issued; Storm had no obligation to comply with the Final Award before the confirmation order because the Award is not self-executing. Moreover, any contempt proceedings against Mr. Klymenko would be premature in light of the recent stay issued by the Court of Appeals. Indeed, Storm's compliance with the corporate governance provisions of the Final Award would directly violate several Ukrainian court orders, which would expose it to civil and criminal sanctions.[8]

3.  The comments in paragraph 2 above apply equal force to your allegation that Award and Order "require Storm to attend and participate in Kyivstar shareholders meetings." (Id. at 3.)

4.  You contend that the divestiture of the Astelit and UHT interests had to take place on October 30, 2007, which is 120 days after July 2, 2007, i.e., the date of the Final Award. (Id.) Because the parties did not know the terms of the Final Award until August 1, 2007, when the Tribunal issued the Award, the alleged date for compliance cannot run from July 2. The Astelit and UHT agreements described above were signed on November 29, 2007, which is 120 days from August 1. The timing of these transactions is not an admission that Storm or its affiliates were required to comply by November 29. Instead, it reflects a view that the earliest arguable date for compliance with the divestiture order was November 29.

Finally, as with the previous letters, this letter is without prejudice to any and all of Storm's rights pursuant to any applicable law or contract and it is sent under a full reservation of rights.

Very truly yours,

*Pieter Van Tol /GSZ*

Pieter Van Tol

---

[7]  With respect to the court case in the Court of Krasny Luch, Alpren filed an application for termination of proceedings with the SES on September 3, 2007 and received a response on September 9, 2007 indicating that the execution proceedings had been terminated. On September 5, 2007, Alpren filed for withdrawal of the claim, the application for interim measures and the appeal application. The Court of Appeal of Lugansk Region admitted Alpren's withdrawal and dismissed the case in a ruling issued on September 13, 2007.

[8]  Even in the absence of a stay, there are several reasons why the actions of Storm and Mr. Klymenko do not warrant a finding of contempt. However, under the circumstances, a further discussion of the issues is not necessary here.

Robert L. Sills, Esq.	- 5 -	December 3, 2007

cc:  Altimo Holdings & Investments Limited
     Alpren Limited
     Hardlake Limited