Robert L. Sills (RS 8896)
Jay K. Musoff (JM 8716)
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Attorneys for Petitioner

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :
**TELENOR MOBILE COMMUNICATIONS AS,**                        :
                                                             :
              Petitioner,  :
                                                             :
  -against-                                             :
                                                             :       07 Civ. 6929 (GEL)
**STORM LLC,**                                               :
                                                             :       ECF Case
              Respondent,  :
                                                             :
  -and-                                                  :       **DECLARATION OF**
                                                             :       **PETER S. O'DRISCOLL**
**ALTIMO HOLDINGS & INVESTMENTS
LIMITED, HARDLAKE LIMITED AND ALPREN** :
**LIMITED,**
                                                             :
              Additional Contemnors. :
                                                             :
------------------------------------------------------------ x

      PETER S. O'DRISCOLL declares the following to be true:

      1.    I am a member of the bar of the State of New York and of the firm of Orrick, Herrington & Sutcliffe LLP, attorneys for Petitioner Telenor Mobile Communications AS ("Telenor Mobile" or "Petitioner"). I make this declaration pursuant to 28 U.S.C. § 1746 in support of Telenor Mobile's motion to have Storm LLC ("Storm") and Storm's alter egos,

Altimo Holdings & Investments Limited ("Altimo"), Alpren Limited ("Alpren") and Hardlake Limited ("Hardlake" and, together with Storm, Altimo and Alpren, collectively, the "Altimo Entities") held in contempt of this Court's November 2, 2007 Opinion and Order (the "November 2 Order") confirming the Final Award in the arbitration between Telenor Mobile and Storm, issued on August 1, 2007 (the "Final Award"). As counsel for Telenor Mobile, I am familiar with the facts set forth in this declaration.

    2.  On December 3, 2007, Altimo issued a press release headed "Altimo complies with the NY Arbitration Award; urges Telenor to end legal battles around Kyivstar". In that press release (the "Altimo Press Release"), Altimo stated, <u>inter alia</u>, that:

> 1) All previous claims submitted by Altimo subsidiaries to the Ukrainian courts have been withdrawn.
>
> 2) Alfa Group's stake in Ukrainian High Technologies shall be reduced to zero pursuant to a share purchase agreement executed last Thursday. Closing of this agreement is expected to occur within a month or so. Russian Technologies, a private equity fund controlled by Alfa Group, has agreed to sell its entire stake to Intec Holding Limited, a private company investing in the telecom assets in CIS;
>
> 3) Alfa's indirect voting and economic stake in Astelit, the Ukrainian mobile provider, has been reduced to the level (sub 5%) permitted under the Kyivstar shareholders agreement. A share purchase agreement has been signed with Visor Group, a Kazakhstan based private investment conglomerate, on 29 November 2007 in relation to the sale of the remaining stake (more than 2%) in Astelit;
>
> 4) Since the Award was issued in August, <u>Altimo has been clearly and persistently instructing Storm, its Ukrainian affiliate and the direct stakeholder in Kyivstar, to attend all shareholders' meetings convened for Kyivstar</u>. We recognize that, being a Ukrainian company, Storm has difficulties navigating between clear instructions from its shareholders and orders from the Ukrainian courts for fear of being found acting in contempt of court.

(emphasis added). A true and correct copy of the Altimo Press Release is attached hereto as Exhibit A.

3. Having worked on transactions in the former Soviet Union since 1992, I have learned that, for tax and other reasons, it is not uncommon for companies purchasing shares in Ukrainian companies to be incorporated in Russia, the British Virgin Islands or Cyprus. Accordingly, I directed a legal assistant under my supervision at Orrick's Moscow office and Telenor Mobile's counsel in the British Virgin Islands and Cyprus to search the registers of companies in those jurisdictions for companies bearing the name or names similar to "Intec Holding Limited", the company referred to in the Altimo Press Release. The closest match was found in Cyprus. A true and correct copy of an extract from the records of the Registrar of Companies in Cyprus with respect to a company named "Intec Holdings Limited" is attached hereto as Exhibit B.

4. The Altimo Press Release further describes the seller of "Alfa Group's stake in Ukrainian High Technologies" as "Russian Technologies, a private equity fund controlled by Alfa Group." The Managing Partner of the Russian Technologies Venture Fund is Mikhail Gamzin, who is also a member of the Supervisory Board of the Alfa Group Consortium (the "Alfa Group"). Mr. Gamzin's biography on the Alfa Group's website states that "[p]rior to forming Russian Technologies, Mr. Gamzin served as Chairman of the Board of Directors of Intec Group, a sugar and grain business which in 2001 merged with Alfa Group's sugar business to create United Food Company." A true and correct copy of Mr. Gamzin's biography, as displayed on the Alfa Group's website is attached hereto as Exhibit C.

5. Mr. Gamzin's biography on the Russian Technologies Venture Fund's website is more expansive, stating:

3

> In 1999 Mr. Gamzin founded Intec Group which invested in sugar and grain businesses in southern Russia. In 2000[,] Intec Group merged its business with Alfa Group's Kubanskhar to create United Food Company (UFC) – one of the leading sugar and grain producers in Russia with an annual turnover of $100 million and 10 thousand employees. Mr.Gamzin headed the company and joined the Supervisory Board of Directors of Alfa Group . . . In 2003 Mr.Gamzin founded Russian Technologies with investments from Alfa Group and Intec Group.

A true and correct copy of Mr. Gamzin's biography taken from the Russian Technologies Venture Fund's website is attached hereto as Exhibit D.

6. Notwithstanding the statements in the Altimo Press Release referring to a sale of Astelit, on December 4, 2007, Alfa Telecom Turkey Limited ("ATTL"), Alfa Finance Holdings S.A. ("Alfa Finance"), OOO "Altimo" ("Altimo Russia"), Altimo, CTF Holdings Limited ("CTF") and Crown Finance Foundation ("Crown") filed with the Securities and Exchange Commission (the "SEC") Amendment No. 2 to their filing on Schedule 13D in relation to Turkcell Iletsim Hizmetleri A.S. ("Turkcell"). That amendment ("Amendment No. 2") describes the purported sale by Alfa Finance of 50% of the shares of ATTL, the vehicle through which Alfa Group holds its interest in Turkcell (the "Transaction"), to Nadash International Holdings Inc. ("Nadash"), a British Virgin Islands company. A true and correct copy of Amendment No. 2 (without its exhibits) is attached hereto as Exhibit E.

7. The description of the purpose of the Transaction contained in Item 4 of Amendment No. 2 states, *inter alia*, as follows:

> The obligation of Alfa Finance to sell 50% of the shares of Alfa Telecom Turkey Limited to Nadash is conditional on certain conditions precedent set out in the Sale and Purchase Agreement. The Sale and Purchase Agreement contemplates that if and when closing of the sale and purchase of the shares of Alfa Telecom Turkey takes place, the subject shares will be transferred to an as yet unnamed escrow agent that will hold legal title to the shares on behalf of Nadash, which will hold beneficial title to the shares . . . The ATT Shareholders Agreement also provides that

> Nadash's right to receive dividends from Alfa Telecom Turkey will be limited to the extent that Astelit LLC ("Astelit"), a Ukrainian company and an indirect, majority-owned subsidiary of the Issuer pays a dividend to its shareholders . . . Alfa Finance will have an option to repurchase the 50% of the shares of Alfa Telecom Turkey held by Nadash. Likewise, under certain circumstance set out in the ATT Shareholders Agreement, Nadash will have an option to require Alfa Finance to repurchase the 50% of the shares of Alfa Telecom Turkey held by Nadash.

8. Altimo holds its interest in Turkcell indirectly through a series of holding companies in which unrelated third parties also hold shares. According to Item 5 (Interest in Securities of the Issuer) of Amendment No. 2, ATTL owns 49% of the issued and outstanding share capital of Cukurova Telecom Holdings Limited, which, in turn, owns 52.91% of Turkcell Holding A.S. Item 5 of Amendment No. 2 states that Turkcell Holding A.S. owns 1,122,000,000.238 shares of Turkcell, or 51% of Turkcell's issued and outstanding shares. This means that Altimo owed or owns an approximate 13.22% stake in Turkcell. Altimo now states on its website that it "owns 6.6% of Turkcell," which presumably is intended to refer to the fact that it has agreed to transfer an indirect 6.6% interest in Turkcell to Nadash. A screenshot of the relevant page from Altimo's website is attached hereto as Exhibit F.

9. As of the date of this declaration, Turkcell has a market capitalization of approximately $20.17 billion, which means that the market value of a 6.6% stake in Turkcell is approximately $1.33 billion. A screenshot of the relevant page from the Yahoo! Finance website showing Turkcell's market capitalization as of the date of this declaration is attached hereto as Exhibit G.

10. The cover page of the Sale and Purchase Agreement dated November 29, 2007 between Alfa Finance and Nadash (the "Sale and Purchase Agreement") bears the name and London address of Lovells LLP, counsel to Storm. The recitals to the Sale and Purchase Agreement state:

5

> On 2 November 2007, a decision of the United States District Court for the Southern District of New York confirmed the final decision and an arbitration between Telenor Mobile Communications A.S. ("Telenor") and Storm LLC ("Storm") in which the arbitration tribunal deemed the Seller or companies related to the Seller to be an affiliate of Storm under the terms of a shareholders agreement between Telenor and Storm. Without prejudice to any rights that Storm may have to challenge or appeal the decision of the United States District Court for the Southern District of New York and/or challenge the decision in the arbitration, the Seller is by this transaction reducing the size of its indirect shareholding in Astelit.

A true and correct copy of the Sale and Purchase Agreement in the form attached as Exhibit 99.B to Amendment No. 2 is attached hereto as Exhibit H.

11. Notwithstanding the approximately $1.51 billion market value of ATTL's 6.6% stake in Turkcell, the purchase price for 50% of the shares of ATTL is specified in clause 1.1 of the Sale and Purchase Agreement as $20 million.

12. Alfa Finance's obligation to complete the Transaction is conditioned on, among other things, denial by the Court of Appeals of Storm's application for a stay of this Court's November 2 Order and Alfa Finance, ATTL, the escrow agent and Nadash entering into a Shareholders' Agreement in the form attached as Schedule 1 to the Sale and Purchase Agreement (the "ATTL Shareholders Agreement"). Clause 2 of the Sale and Purchase Agreement is headed "Conditions Precedent", and states:

> The agreement to sell and buy the Shares is conditional on:
> ... .(b) the denial, by the United States Court of Appeals for the Second Circuit, of any application by Storm for a stay of the enforcement, pending appeal, of the 2 November 2007 decision by the United States District Court for the Southern District of New York confirming the Arbitration Award;
>
> (c) no court or arbitration tribunal having ruled that Storm remains obliged to take further steps in order to comply with the Arbitration Award notwithstanding the Transaction;
>
> (d) the Parties and the Escrow Agent entering into an escrow

> agreement in a form satisfactory to all the Parties appointing the Escrow Agent to hold the legal title to the Shares and signing the Shareholders' Agreement with such Escrow Agent as a party to it with only those changes to the Shareholders' Agreement as such Escrow Agent may reasonably request prior to Completion . . . .

(emphasis added).

13. "Completion Date" is defined in clause 1.1 of the Sale and Purchase Agreement as:

> the date on which Completion must occur as agreed by the Parties and which at the latest must be the 50th Business Day following the date of execution of this Agreement unless the Seller notifies the Purchaser as required by clause 12 that the United States Court of Appeals for the Second Circuit has granted a stay of enforcement of the 2 November 2007 decision of the United States District Court for the Southern District of New York confirming the Arbitration Award, pending Storm's appeal from that decision, in which case Completion shall take place within 30 Business Days of a final unappealable decision on Storm's appeal.

The 50th Business Day (as such term is defined in the Sale and Purchase Agreement) following November 29, 2007, the date of execution of the Sale and Purchase Agreement, is on or about February 13, 2008.

14. On December 31, 2007, Nadash and its parent company, Visor Investment Services Limited ("Visor"), filed with the SEC a Schedule 13D concerning Nadash's entry into the Sale and Purchase Agreement and impending acquisition of 50% of ATTL and its interest in Turkcell (the "Nadash 13D"). A true and correct copy of the Nadash 13D is attached hereto as Exhibit I.

15. The cover page of the Nadash 13D indicates that December 20, 2007 was the date of the event that required the filing of the Nadash 13D with the SEC; however, the Nadash 13D does not describe that event. Items 4, 5 and 6 of the Nadash 13D refer to the Sale and Purchase Agreement and the ATTL Shareholders Agreement, but make clear that the closing

of the purchase by Nadash of 50% of the shares of ATTL under the Sale and Purchase Agreement has not yet occurred.

16. Visor is a Kazakh investment company that has been described in the press as a "long-standing partner" of Altimo. A true and correct copy of a press report containing such description is attached hereto as Exhibit J. I am aware that Altimo and affiliates of Visor, including Nikolay Varenko, who is identified in the Nadash 13D as a "shareholder[] who may be deemed to control Visor", were actively involved in the disputed acquisition of Bitel LLC, a Kyrgyz mobile operator, and that there is ongoing litigation between affiliates of Mobile TeleSystems who claim to be the rightful owners of Bitel and its assets, and Altimo, Visor and Mr. Varenko.

17. Although Telenor Mobile's Ukrainian counsel was unable to obtain and was prevented from reviewing the court files related to the decree of the Kyiv Region Commercial Court in Case No. 19/530-07 initiated by EC Venture Capital S.A. against Alpren (the "EC Order") and although we have not been able to obtain a copy, we have learned that the sale and purchase agreement that is the subject of the EC Order is an Ownership Interest Purchase Agreement dated July 13, 2004 that is expressly governed by the laws of the State of New York and provides for the resolution of disputes in the federal or state courts of New York.

18. Attached hereto as Exhibit K is a true and correct copy of an article from Kommersant Daily entitled "Leonid Kuchma's Mobile Connections Arrested in Germany," dated August 30, 2005, which describes the alleged seizure of EC Venture's bank accounts by German and Austrian law enforcement agencies.

19. Attached hereto as Exhibit L is a true and correct copy of an article from Ukrainian Weekly entitled "Lazarenko protected money from president, says banker," dated

April 4, 2004, which describes the testimony of Mr. André Walkowicz, the sole director and former liquidator of EC Venture, in the money laundering trial of Pavlo Lazarenko, the former Prime Minister of Ukraine, in the United States District Court's for the Northern District of California.

20. Attached hereto as Exhibit M is a true and correct copy of an article from the Financial Times entitled "Altimo has doubts on Western Alliances", dated December 20, 2007, which contains an interview with Alexey Reznikovich, the Chief Executive Officer of Altimo.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 22nd, 2008 at New York, New York.

_____
Peter S. O'Driscoll