Robert L. Sills (RS 8896)
Jay K. Musoff (JM 8716)
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Attorneys for Petitioner

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
:
**TELENOR MOBILE COMMUNICATIONS AS,**
:
                Petitioner,
:
  -against-
:        07 Civ. 6929 (GEL)
**STORM LLC,**
:        ECF Case
                Respondent,
:
  -and-
:        **DECLARATION OF**
                                                      **OLEKSIY DIDKOVSKIY**
**ALTIMO HOLDINGS & INVESTMENTS**
**LIMITED, HARDLAKE LIMITED AND ALPREN** :
**LIMITED,**
:
                Additional Contemnors.
------------------------------------------------------------------ x

    I, **OLEKSIY DIDKOVSKIY**, declare the following to be true:

    1.    I am a member of the bar of Ukraine and of Shevchenko, Didkovskiy & Partners law firm, located in Kyiv, Ukraine. I serve as Ukrainian counsel to Telenor Mobile Communications AS ("Telenor Mobile"), and make this declaration at the request of Telenor Mobile and pursuant to 28 U.S.C. § 1746 in support of Telenor Mobile's motion to have Storm LLC ("Storm") and Storm's alter egos, Altimo Holdings & Investments Limited ("Altimo"), Alpren Limited ("Alpren") and Hardlake Limited ("Hardlake" and, together with Storm, Altimo

and Alpren, collectively, the "Altimo Entities"), held in contempt of this Court's November 2, 2007 Opinion and Order (the "November 2 Order") confirming the Final Award in the arbitration between Telenor Mobile and Storm, issued on August 1, 2007 (the "Final Award").

2. From my review of this case and my understanding of the requirements of the Final Award, it is my understanding that Storm and the Altimo Entities have failed to comply with the Final Award and the November 2 Order.

**Storm Has Failed to Attend General Meetings of Kyivstar Shareholders**

3. I have attended all General Meetings of the Shareholders ("GMSs") and Extraordinary GMSs ("EGMSs") of Closed Joint Stock Company "Kyivstar G.S.M." ("Kyivstar") convened during the period from April 2005 until the date of this declaration.

4. The Final Award requires Storm to attend and participate in all Kyivstar GMSs and EGMSs. After issuance of the Final Award, at Telenor's request, Kyivstar scheduled seven EGMSs, none of which Storm has attended. Those EGMSs took place on: (1) October 1, 2007 at 10:00 a.m.; (2) October 1, 2007 at 2 p.m.; (3) November 1, 2007 at 10:00 a.m.; (4) November 1, 2007 at 4 p.m.; (5) November 23, 2007 at 10 a.m.; (6) December 3, 2007 at 10:00 a.m.; and (7) January 18, 2008 at 10:00 a.m. Attached hereto as Exhibits A-G are true and correct copies of the registration lists for all EGMSs convened since August 1, 2007, in English and Ukrainian.

5. I have been informed by Kyivstar that proper written personal notices of all Kyivstar EGMSs convened in 2007 and to date in 2008 were sent by Kyivstar to Storm and Telenor Mobile in their capacity as shareholders of Kyivstar. Attached hereto as Exhibits H-N are true and correct copies of such personal notices announcing all EGMSs convened in 2007 and to date in 2008, in English and Ukrainian.

6. Public notices of such EGMSs were also published in both the official and

local press in Ukraine. Attached hereto as Exhibits O-S are true and correct copies of the public notices published in the official and local press for the EGMSs scheduled for October 1, November 1, November 23, December 3, 2007 and January 18, 2008, together with English translations thereof.

7. I was present at each GMS and EGMS convened during the period from April 2005 until the date of this declaration and personally observed that Storm and its representatives were not in attendance.

**The Altimo Entities and Storm Have Failed to Create the Required Storm Affiliated Companies**

8. In order to bring Kyivstar's Charter in compliance with the December 22, 2005 Order of the Higher Commercial Court of Ukraine, the Final Award ordered Storm to transfer "at least one of its Kyivstar shares to three newly-formed affiliated companies so that it is in a position to designate and nominate a total of four candidates for election to the Kyivstar Board of Directors" and to execute and deliver an endorsement in accordance with Sections 4.02(b) and 4.09 of the Shareholders Agreement dated January 30, 2004 (the "Shareholders Agreement") between and among Telenor Mobile, Storm and Kyivstar.

9. During the period between November 2, 2007 and the date of this declaration, associates of our firm working under my supervision have attempted to search the public records with respect to Storm to determine whether Storm and the Altimo Entities have formed in Ukraine the affiliate companies required to be formed by the Final Award.

10. In Ukraine, there are two public registers containing information on legal entities and their founders (participants): the Unified State Register of Legal Entities and Individual Entrepreneurs ("Register 1") and the Unified State Register of Enterprises and Organizations of Ukraine ("Register 2").

11. Under Ukrainian law, the information contained in Register 1 is recognized as accurate. However, it is not possible to search Register 1 for Storm's affiliated companies registered in Ukraine unless the searcher has information with respect to the identification codes of such companies and/or their names. As we had no such information in respect of Storm's affiliated companies, we could not make a search of Register 1 concerning such companies. A public search can be made of Register 2 for those companies in which Storm is a founder; however, Ukrainian law does not guarantee that the information contained in Register 2 is accurate; further, the information provided from Register 2 can be up to one month old.

12. Associates under my supervision filed a request for information held in Register 2 concerning entities in which Storm is a founder. On January 10, 2008, in response to our search request, we received a letter dated January 9, 2008 from the City of Kyiv branch of the State Statistics Committee of Ukraine notifying us that the only company in which Storm is a founder is Kyivstar. Attached hereto as Exhibit T is a true and correct copy of the letter from the City of Kyiv branch of the State Statistics Committee of Ukraine, together with its English translation.

13. In order for us to commence and complete an accurate and complete search in Register 1 in respect of Storm's subsidiaries or affiliates, Storm must divulge the names and identification codes of any affiliated companies it has created. At present, neither we nor Telenor Mobile are aware of such names and identification codes.

**The Altimo Entities and Storm Have Continued to Litigate and Failed to Adequately Withdraw the Litigations Already Pending in the Ukrainian Courts**

14. In the Final Award, the arbitral tribunal (the "Tribunal") enjoined Storm, and anyone acting in concert with it, "from the commencement or prosecution of any and all

court actions concerning any disputes or controversies under, relating to, or in connection with, any obligations described in the Shareholders Agreement, including all of the <u>existing</u> litigations currently pending in the Ukraine . . ." (emphasis added).

15. Under Ukrainian law, a court has the option of leaving a claim "without consideration" in certain cases. If a court has done so, the claimant may resubmit the claim to the court after curing the deficiencies that have caused the claim to be "left without consideration". In contrast, if a case is withdrawn by the claimant, and the court has accepted such withdrawal and terminated proceedings in the case, the claimant is not permitted to bring another claim against the respondent with the same parties, concerning the same subject matter and on the same grounds.

16. During the period between November 30, 2007 and the date of this declaration, associates of our firm working under my supervision reviewed the records of, and/or where they were not permitted to review records, made inquiries with, relevant courts in Ukraine to determine the status of the various actions commenced by Storm, Alpren and other affiliates of Storm and the Altimo Entities. In particular, the associates working under my supervision inquired as to whether any such actions were ongoing in the Ukrainian courts, or had been "left without consideration", or had been withdrawn. As described below, several of the cases commenced by Storm and the Altimo Entities have not been withdrawn.

17. Case No. 2-0-191/05 was a fact-finding proceeding in response to a petition filed by Pavel Kulikov, an Alfa Group executive, with Storm as an interested party, in the Moskovsky District Court of the City of Kharkiv. The court issued a decision in that case on November 3, 2005 (the "Moskovsky Court Decision"). According to a letter of the Kharkiv Region Court of Appeals No. 01-11/98 dated June 25, 2007, the case was sent to the Supreme

Court of Ukraine on April 5, 2007 for consideration of a cassation appeal filed by Mr. Kulikov. The registry of the Supreme Court of Ukraine orally informed an associate of our firm that the case file had been sent to the Lugansk Region Court of Appeals on November 11, 2007 for consideration of Mr. Kulikov's cassation appeal. Attached hereto as Exhibit U is a true and correct copy of the Moskovsky Court Decision, together with an English translation thereof. On January 21, 2008, the registry of Lugansk Region Court of Appeals orally confirmed to an associate of our law firm that it had received from the Supreme Court of Ukraine the case file concerning the Moskovsky Court Decision, but noted that that a hearing of the case had not yet been scheduled.

    18.  Case No. 40/37 was initiated by a claim filed by Storm against Limited Liability Company "Ernst & Young Audit Services" and Limited Liability Company "Ernst & Young" (collectively, the "Ernst & Young Entities") in the Kyiv City Commercial Court. This case has not been withdrawn by Storm. Instead, Storm's representatives failed to attend two hearings scheduled for September 4, 2007 and October 9, 2007 and failed to provide the documents requested by the court. Therefore, on October 9, 2007, the Kyiv City Commercial Court left Storm's claim without consideration. The Kyiv City Commercial Court registry orally informed an associate of our law firm on January 21, 2008 that Storm has not filed an appeal or a cassation appeal from the decree of the Kyiv City Commercial Court dated October 9, 2007. Attached hereto as Exhibit V is a true and correct copy of the Decree issued by the Kyiv City Commercial Court in Case No. 40/37 on October 9, 2007, together with an English translation thereof.

    19.  Based on a letter from the Kyiv City Court of Appeals No. 144 dated June 22, 2007, we learned that Case No. 2-5613/06, initiated by Alpren against Vadim Klymenko in

the Golosiyivsky District Court of the City of Kyiv (the "Golosiyivsky Court"), has also been left without consideration. True and correct copies of the decree of the Golosiyivsky Court of December 1, 2006 and the letter from the Kyiv City Court of Appeals No. 144 dated June 22, 2007 are attached hereto as Exhibit W, together with English translations thereof. As such letter confirms, although the Golosiyivsky Court lifted the injunctive relief given to Alpren, it left Alpren's statement of claim without consideration based on a petition by Alpren's representative. We do not have a copy of the decree issued by the Golosiyivsky Court to that effect.

20.   On November 29, 2007, Case No. 19/530-07 was initiated in response to a petition filed by EC Venture Capital S.A. ("EC Venture") against Alpren, with Storm as a "respondent's side" party. EC Venture is a former participant (shareholder) in Storm, who, in 2004, purportedly sold an interest in Storm to Alpren.

21.   On November 29, 2007, the same day it filed its petition, EC Venture obtained a decree from the Kyiv Region Commercial Court (the "EC Venture Order") enjoining Storm, as well as its governing bodies, officials and officers, from "taking any actions, including making decisions, entering into any transactions, issuing powers of attorney on behalf of . . . Storm. . . , holding general meetings of participants of . . . Storm. . . , participating in general meetings of a company, whose shares belong to . . . Storm. . . ", and attached Storm's assets. Attached hereto as Exhibit X is a true and correct copy of the EC Venture Order, together with its English translation.

22.   During the course of our research into the litigations being pursued by Storm and its affiliates in various Ukrainian courts, we were unable to obtain and were prevented from reviewing the court files related to the EC Venture Order. However, we were informed by court personnel that a hearing in the case was held on December 17, 2007, and that no party or

its counsel appeared at that hearing; that a further hearing is scheduled for January 28, 2008; and that neither Alpren nor Storm has filed any appeal in the case.

23. According to the EC Venture Order, EC Venture supports its claims with the statement that the agreement with respect to the sale and purchase of the equity interest in Storm as of July 13, 2004 (the "Contract of Sale"), where it concerns the sale to Alpren of EC Venture's equity interest in Storm, is in conflict with the provisions of Ukrainian law, and, specifically, that the agreement is not written in Ukrainian and, therefore, should be invalidated. Based on my experience in international transactions, it is uncommon for contracts between two non-Ukrainian parties to be governed by Ukrainian law. Where a contract is between two non-Ukrainian parties and is governed by foreign law, there is no requirement under Ukrainian law that such a contract be written in Ukrainian in order to be validly executed and enforceable.

24. It further appears that the applicable statute of limitations for the claim purportedly raised by EC Venture is three years following execution of the relevant agreement – in this case, the Contract of Sale, which apparently is dated July 13, 2004 – so that EC Venture's claim was time-barred after July 13, 2007. It appears that neither Alpren nor Storm have raised this obvious defense.

25. In restraining corporate action by Storm, the EC Venture Order goes far beyond the framework for injunctive relief envisaged by Ukrainian law, because the injunction is not related to the subject matter of the dispute (invalidation of the Contract of Sale) and it does not serve to ensure enforcement of a prospective court decision, in this case, the decision recognizing the Contract of Sale between EC Venture and Alpren as null and void. Telenor Mobile is not a party to the EC Venture case, and was not informed of its commencement by any party or by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of January, 2008 at Kyiv, Ukraine.

_____
OLEKSIY DIDKOVSKIY