# Exhibit D



THE COMPANIES LAW, CAP. 113

PRIVATE COMPANY LIMITED

BY SHARES

MEMORANDUM

AND

ARTICLES OF ASSOCIATION

OF

# HARDLAKE LIMITED

Incorporated on the ............day of......................... 2005

Certificate No. ...........

THE COMPANIES LAW (CAP. 113)

PRIVATE COMPANY LIMITED BY SHARES

MEMORANDUM OF ASSOCIATION

# HARDLAKE LIMITED

1. The name of the Company is:-
   **HARDLAKE LIMITED**
2. The registered office of the Company will be situated in Cyprus.
3. The objects for which the Company is established are:-

(1) To carry on either alone or jointly with others anywhere in the world the business of an investment company (including that of an invetment trust company) and to acquire by original subscription, contract, purchase, exchange or otherwise and either in the name of the company or in that of any nominee and to possess, exploit, charge, exchange, hold, sell or otherwise in any other manner alienate on any terms, any shares, stocks, debentures, debenture stock, bonds, notes, obligation and securities whatsoever issued or guaranteed by any government, sovereign ruler, natural or legal person, partnership, public body or authority supreme, dependent, municipal, local, or otherwise wherever situate and whether they are fully paid or not and subject to any terms that may be deemed proper, and, to acquire, possess, exploit, sell or otherwise alienate or charge, on any terms which may be deemed proper, the whole or part of the interest in any business or undertaking, any letters patent, brevets d' inventions, concessions, designs, trade marks, copyrights secret processes, licences, inventions, rights and privileges subject to royalty or otherwise whether on an exclusive or non-exclusive or limited basis or otherwise.

(2) To carry out either alone or jointly with others anywhere in the world work or business relating to real estate in general, developing, buying, selling, leasing or subleasing and financing and to acquire by donation, to convey or either through barter of otherwise, or to own, auction and exploit any real estate as well as any business relating to the construction, erection, maintenance, decoration, operation, management and administration of either real estate belonging to the company or others, houses, flats, offices, blocks, hotels, tourist buildings and accommodation, shops, workshops, water reservoirs, roads, buildings or other works of every description and to trade, sell or hire purchase, lease, rent, convey property, mortgage, grant licences or in any way provide all or part of these and carry out all types of land parcelling works, construction and the business of building contractors, mechanics, architects, general managers and all types of construction work.

(3) To carry on either alone or jointly with others anywhere in the world (and whether in a "free zone area", bonded area or elsewhere), the business of manufacturers, processors, dealers, storers, warehousemen, removers, packers, wholesalers, retailers, importers, exporters, suppliers, distributors, consignees, buyers, sellers, resellers of any kind of goods materials merchandises or things of any nature, as well as the business of merchants in general, carriers by any means of transportation, travel or insurance agents, agents on commission or otherwise, forwarding agents, charterers, estate agents and agents in general and to carry on either alone or jointly with others anywhere in the world the business of general and specialised consultants and managers.

(4) To engage, hire and train professional, clerical, manual technical and other staff and workers or the services of all or any of them and in any way and manner acquire, possess, manufacture or assemble any property of any kind or description whatsoever (including any rights over or in connection with such property) and to allocate and make available the aforesaid personnel or services or make the use of such property available on hire purchase, sale, exchange or in any other manner whatsoever, to those requiring or requesting same or who have need of the same or their use and otherwise to utilise same for the benefit or advantage of the Company; to provide or procure the provision by others of every and any service, need, want or requirement of any business nature required by any person, firm or company in or in connection with any business carried on by them.

(5) To carry on any other business or activity which may seem to the Directors capable of being conveniently or advantageously carried on or done in connection with any of the above objects or calculated directly or indirectly to enhance the value of or render more profitable any of the Company's business property or rights.

(6) To purchase, obtain by way of gift, take on lease or sub-lease or in exchange, or otherwise acquire or possess and hold for any estate or interest any lands, buildings, easements, rights, privileges, concessions, permits, licences, stock-in-trade, and movable and immovable property of any kind and description (whether mortgaged charged or not) necessary or convenient for the purposes of or in connection with the Company's business or any branch or department thereof or which may enhance the value of any other property of the Company.

(7) To erect, maintain, work, manage, construct, reconstruct, alter, enlarge, repair, improve, adapt, furnish, decorate, control, pull down, replace any shops, offices, flats, electric or water works, workshops, mills, plants, machinery, warehouses and any other works, buildings, plants, conveniences or structures whatsoever, which the Company may consider desirable for the purposes of its business and to contribute to, subsidize or otherwise assist or take part in the construction, improvement, maintenance, working, management, carrying out or control thereof.

(8) To improve, manage, control, cultivate, develop, exploit, exchange, let on lease or otherwise, mortgage, charge, sell, dispose of, grant as gift, turn to account, grant rights and privileges in respect of, or otherwise deal with all or any part of the property, assets and rights of the Company or in which the Company is interested and to adopt such means of making known and advertising the business and products of the Company as may seem expedient.

(9) To manufacture, repair, import, buy, sell, export, let on hire and generally trade or deal in, any kind of accessories, articles apparatus, plant, machinery, tools, goods, properties, rights or things of any description capable of being used or dealt with by the Company in connection with any of its objects.

(10) To deal in, utilise for building or other purposes, let on lease or sublease or on hire, to assign or grant licence over, charge or mortgage, the whole or any parts of the immovable property belonging to the Company or any rights thereon or in which the Company is interested on such terms as the Company shall determine.

(11) To purchase or otherwise acquire all or any part of the business, assets, property and liabilities of any company, society, partnership or person, formed for all or any part of the purposes within the objects of the Company, or carrying on any business or intending to carry on business which the Company is authorised to carry on, or possessing property suitable for the purposes of the Company and to undertake,

4

conduct and carry on, or liquidate and wind up, any such business and, in consideration for such acquisition, to pay in cash, issue shares, undertake any liabilities or acquire any interest in the vendor's business.

(12) To apply for and take out, purchase or otherwise acquire any designs, trade marks, patents, patent rights or inventions, brevets d'invention, copyright or secret processes, which may be useful for the Company's objects, and to grant licences to use the same.

(13) To pay all costs, charges and expenses incurred or sustained in or about the promotion, formation and establishment of the Company or which the Company shall consider to be in the nature of preliminary expenses or expenses incurred prior to incorporation and with a view to incorporation, including therein professional fees, the cost of advertising, taxes, commissions for underwriting, brokerage, printing and stationery, salaries to employees and other similar expenses and expenses attendant upon the formation and functioning of agencies, local boards or local administration or other bodies, or expenses relating to any business or work carried on or performed prior to incorporation, which the Company decides to take over or continue.

(14) Upon any issue of shares, debentures or any other securities of the Company, to employ brokers, commission agents and underwriters, and to provide for the remuneration of such persons for their services by payment in cash or by the issue of shares, debentures or other securities of the Company, or by the granting of options to take the same, or in any other manner allowed by law.

(15) To borrow, raise money or secure obligations (whether of the Company or any other person) in such manner or such terms as may seem expedient, including the issue of debentures, debenture stock (perpetual or terminable), bonds, mortgages or any other securities, founded or based upon all or any of the property and rights of the Company, including its uncalled capital, or without any such security and upon such terms as to priority or otherwise, as may be thought fit.

(16) To lend and advance money or give credit to any person, firm or company; to guarantee, give guarantees or indemnities for, undertake or otherwise support or secure, either with or without the Company receiving any consideration or advantage and whether by personal covenant or by mortgaging, charging, pledging, assigning or creating of any rights or priorities in favour of any person or in any other manner whatsoever all or part of the undertaking, property, assets, book, debts, rights, choses in action, receivables and revenues present and future and uncalled capital of the Company or by any such methods or by any other means whatsoever, the liabilities, the performance of contracts and obligations of and the payment of any moneys whatsoever (including but not limited to principal, interest and other liabilities or any borrowing or acceptance of credits and capital, and premiums, dividends, costs and expenses on any stocks, shares or securities) by any person, firm or company including, but not limited, to any company which is for the time being the holding company or a subsidiary of or associated or affiliated with the Company or with which the Company has any contractual relations or in which the Company holds any interest or which holds any share or interest in the Company; and otherwise to assist any person or company as may be thought fit.

(17) To draw, execute, issue, accept, make endorse, discount and negotiate bills of exchange, promissory notes, bills of lading, and other negotiable or transferable instruments or securities.

(18) To receive money on deposit, with or without allowances or interest thereon.

(19) To advance and lend money upon such security as may be thought proper, or without any security therefor.

(20) To invest the moneys of the Company not immediately required in such manner, other than in the shares of the Company, as from time to time may be determined by the Directors.

(21) To issue, or guarantee the issue or the payment of interest on, the shares, debentures, debenture stock, or other securities or obligations of any company or association, and to pay or provide for brokerage, commission, and underwriting in respect of any such issue.

(22) To acquire by subscription, purchase or otherwise, and to accept, take, hold, deal in, convert and sell, any kind of shares, stock, debentures or other securities or interests in any other company, society or undertaking whatsoever.

(23) To issue and allot fully or partly paid shares in the capital of the Company or issue debentures or securities in payment or part payment of any movable property purchased or otherwise acquired by the Company or any services rendered to the Company and to remunerate in cash or otherwise any person, firm or company rendering services or grant donations to such persons.

(24) To establish anywhere in the world, branch offices, regional offices, agencies and local boards and to regulate and to discontinue the same.

(25) To provide for the welfare of officers or of persons in the employment of the Company, or former officers or formerly in the employment of the Company or its predecessors in business or officers or employees of any subsidiary or associated or allied company, of the Company, and the wives, widows, dependants and families of such persons, by grants of money, pensions or other payments, (including payments of insurance premia) and to form, subscribe to, or otherwise aid, any trust, fund or scheme for the benefit of such persons, and any benevolent, religious, scientific, national or other institution or object of any kind, which shall have any moral or other claims to support or aid, by the Company by reason of the nature or the locality of its operations or otherwise.

(26) From time to time, to subscribe or contribute to any charitable, benevolent, or useful object of a public character the support of which will, in the opinion of the Company, tend, to increase its repute or popularity among its employees, its customers, or the public.

(27) To enter into and carry into effect any arrangement for joint working in business, union of interests, limiting competition, partnership or for sharing of profits, or for amalgamation, with any other company, partnership or person, carrying on business within the objects of the Company.

(28) To establish, promote and otherwise assist, any company or companies for the purpose of acquiring any of the property or furthering any of the objects of the Company or for any other purpose which may seem directly or indirectly calculated to benefit the Company.

(29) To apply for, promote, and obtain by Law, Order, Regulation, By-Law, or otherwise, concessions, rights, privileges, licences or permits enabling the Company to carry any of its objects into effect, or for effecting any modification of the Company's constitution, or for any other purpose which may seem expedient, and to oppose any proceedings or applications which may, calculated directly or indirectly, to prejudice the Company's interest and to enter into and execute any arrangement with any Government or Authority, supreme, municipal, local or otherwise that may seem conducive to the Company's objects or any of them.

(30) To sell, dispose of, mortgage, charge, grant rights or options or transfer the business, property and undertakings of the Company or any part thereof for any consideration the Company may see fit to accept.

(31) To accept stock or shares in, or the debentures, mortgage debentures or other securities of any other company in payment or part payment for any services rendered or for any sale made to or debt owing from any such company.

(32) To distribute in specie or otherwise as may be resolved any assets of the Company among its Members and, particularly, the shares, debentures or other securities of any other company belonging to the Company or which the Company may have the power of disposing.

(33) To do all or any of the matters hereby authorised in any part of the world either alone or in conjunction with, or as factors, trustees, principals, sub-contractors or agents for, any other company, firm or person, or by or through any factors, trustees, sub-contractors or agents.

(34) To procure the registration or recognition of the Company in any country or place and to act as secretary, manager, director or treasurer of any other company.

(35) Generally to do all such other things as may appear to the Company to be incidental or conducive to the attainment of the above objects or any of them.

The objects set forth in any sub-clause of this clause shall not be restrictively construed but the widest interpretation shall be given thereto, and they shall not, except when the context expressly so requires, be in any way limited to or restricted by reference to or inference from any other object or objects set forth in such sub-clause or from the terms of any other sub-clause or marginal title or by the name of the Company. None of such sub-clauses or object or objects therein specified or the powers thereby conferred shall be deemed subsidiary or ancillary to the objects or powers mentioned in any other sub-clause, but the Company shall have full power to exercise all or any of the powers and to achieve or to endeavour to achieve all or any of the objects conferred by and provided in any one or more of the said sub-clauses.

4. The liability of the members is limited.

5. The authorised share capital of the Company is CYP1.000 divided into 1 000 (one thousand) shares of CYP 1.- each with power to issue any of the shares in the capital, original or increased, with or subject to any preferential, special or qualified rights or conditions as regards dividends, repayment of capital, voting or otherwise.

*[handwritten margin note: It has b/ increased to know with ordina resolution See R9]*

WE, whose names and addresses are subscribed, are desirous of being formed into a Company in pursuance of this memorandum of association, and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.

| NAMES, ADDRESSES AND DESCRIPTION OF SUBSCRIBERS | Number of shares taken by each Subscriber |
|---|---|
| ABACUS (CYPRUS) LIMITED<br><br>..........................................<br>Limited Liability Company<br>Elenion Building<br>2st floor<br>5 Themistocles Dervis Street<br>Nicosia – Cyprus<br>Registration No. 14003 | 1000 Shares |

Dated this the 7. day of July 2005

Witness to the above signatures:

GEORGIA KAPSALI
Private employee
Elenion Building, 2nd floor
5 Th Dervis Street
1066 Nicosia, Cyprus

THE COMPANIES LAW, CAP. 113

PRIVATE COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION

OF

# HARDLAKE LIMITED

INTERPRETATION

1. In these Regulations :

" Cyprus" means the Republic of Cyprus.

"the Law" means the Companies Law, Cap. 113 or any Law substituting or amending same.

"the seal" means the common seal of the Company.

"the secretary" means any person appointed to perform the duties of the secretary of the Company. *[handwritten: Altered by Sp Res dated 27/1/00 see P(5) Amended by sp res dated 2/5/07 see R(7)]*

Expressions referring to writing shall, unless the contrary intention appears, be construed as including references to printing, lithography, photography, and other modes of representing or reproducing words in a visible form.

Unless the context otherwise requires, words or expressions contained in these Regulations shall bear the same meaning as in the Law or any statutory modification thereof in force at the date at which these Regulations become binding on the Company.

TABLE "A" EXCLUDED

2. The Regulations contained in Table "A" in the First Schedule to the Law shall not apply except so far as the same are repeated or contained in these Regulations.

PRELIMINARY

3. The Company is a private Company and accordingly:

(a) The right to transfer shares is restricted in the manner hereinafter prescribed.

(b) The number of Members of the Company (exclusive of persons who are in the employment of the Company and of persons who, having been formerly in the employment of the Company, were, while in such employment, and have continued after the termination of such employment, to be Members of the Company) is limited to fifty. Provided that where two or more persons hold one or more shares in the

Company jointly they shall for the purpose of this Regulation be treated as a single Member.

(c) Any invitation to the public to subscribe for any shares or debentures of the Company is prohibited.

(d) The Company shall not have power to issue share warrants to bearer.

(e) At all times where the Company shall have only one Member the following provisions shall apply:

    (i)    The sole Member exercises all the powers of the General Meeting provided, always, that any decisions taken by the said Member in General Meeting are minuted or taken in writing.

    (ii)    Agreements concluded between the sole Member and the Company, are minuted or reduced in writing, unless they relate to day to day transactions of the Company concluded in the ordinary course of business.

## BUSINESS

4. The Company shall pay all preliminary and other expenses and enter into, adopt or carry into effect and take over or continue (with such modifications, if any, as the contracting parties shall agree and the Directors shall approve), any agreement or business or work reached or carried on (as the case might be) prior to incorporation, as the Company may decide.

## SHARE CAPITAL AND VARIATION OF RIGHTS

5. The shares shall be at the disposal of the Directors which may allot or otherwise dispose of them, subject to Regulation 3, and to the provisions of the next following Regulation, to such persons at such times and generally on such terms and conditions as they think proper, and provided that no shares shall be issued at a discount, except as provided by section 56 of the Law.

6. Unless otherwise determined by the Company in General Meeting, any original shares for the time being unissued and not allotted and any new shares from time to time to be created shall, before they are issued, be offered to the Members in proportion, as nearly as may be, to the number of shares held by them. Such offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, will be deemed to be declined, and after the expiration of such time, or on the receipt of an intimation from the person to whom the offer is made that he declines to accept the shares offered, the Company may, subject to these Regulations, dispose of the same in such manner as it thinks most beneficial to the Company. The Company may, in like manner, dispose of any such new or original shares as aforesaid, which, by reason of the proportion borne by them to the number of persons entitled to such offer as aforesaid or by reason of any other difficulty in apportioning the same, cannot in the opinion of the Company be conveniently offered in manner hereinbefore provided.

7. Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any shares in the Company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise, as the Company may from time to time by ordinary resolution determine.

8. Subject to the provisions of section 57 of the Law, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the Company are liable, to be redeemed on such terms and in such manner as the Company before the issue of the shares may by special resolution determine.

9. If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of shares of that class) may, whether or not the Company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of an extraordinary resolution passed at a separate general meeting of the holders of the shares of the class. To every such separate general meeting the provisions of these Regulations relating to General Meetings shall apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

10. The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

11. The Company may exercise the powers of paying commissions conferred by section 52 of the Law, provided that the rate per cent or the amount of the commission paid or agreed to be paid shall be disclosed in the manner required by the said section and the rate of the commission shall not exceed the rate of 10 per cent of the price at which the shares in respect whereof the same is paid are issued or an amount equal to 10 per cent of such price (as the case may be). Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other. The Company may also on any issue of shares pay such brokerage as may be lawful.

12. Except as required by law, no person shall be recognized by the Company as holding any shares upon any trust, and the Company shall not be bound by or be compelled in any way to recognize (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these Regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

13. Every person whose name is entered as a Member in the register of Members shall be entitled without payment to receive within two months after allotment or lodgment of transfer (or within such other period as the conditions of issue shall provide) one certificate for all his shares or several certificates each for one or more of his shares upon payment of 12.5 cents for every certificate after the first or such lesser sum as the Directors shall from time to time determine. Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid up thereon. Provided that in respect of a share or shares held jointly by several persons the Company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

If a share certificate be defaced, lost or destroyed, it may be substituted on payment of a fee of 12.5 cents, or such less sum and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses of the Company for investigating the evidence adduced as the Directors think fit.

15. The Company shall not give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the Company or in its holding company nor shall the Company make a loan for any purpose whatsoever on the security of its shares or those of its holding company, but nothing in this Regulation shall prohibit transactions mentioned in the proviso to section 53(1) of the Law.

## LIEN

16. The Company shall have a first and paramount lien on every share for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share, and the Company shall also have a first and paramount lien on all shares standing registered in the name of a single person for all moneys presently payable by him or his estate to the Company; but the Directors may at any time declare any share to be wholly or in part exempt from the provisions of this Regulation. The Company's lien, if any, on a share shall extend to all dividends payable thereon as well as to any other rights or benefits attached thereto.

17. The Company may sell, in such manner as the Directors think fit, any shares on which the Company has a lien, but no sale shall be made unless a sum in respect of which the lien exists is presently payable, nor until the expiration of fourteen days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the person entitled thereto by reason of his death or bankruptcy.

18. To give effect to any such sale, the Directors may authorise some person to transfer the shares sold to the purchaser thereof. The purchaser shall be registered as the holder of the shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

19. The proceeds of the sale shall be received by the Company and applied in payment of such part of the amount in respect of which the lien exists as is presently payable, and the residue, if any, shall (subject to a like lien for sums not presently payable as existed upon the shares before the sale) be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

20. The Directors may from time to time make calls upon the Members in respect of any moneys unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times, and each Member shall (subject to receiving at least fourteen days' notice specifying the time or times and place of payment) pay to the Company, at the time or times and place so specified, the amount called on his shares. A call may be revoked or postponed as the Directors may determine and the Members shall be accordingly notified.

21. A call shall be deemed to have been made at the time when the Resolution of the Directors authorising the call was passed and may be required to be paid by installments.

22. The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

23. If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest on the sum from the day appointed for payment thereof to the time of actual payment at such rate not exceeding 8 per cent per annum as the Directors may determine, but the Directors shall be at liberty to waive payment of such interest wholly or in part.

24. Any sum which by the terms of issue of a share becomes payable on allotment or at any fixed date, whether on account of the nominal value of the share or by way of premium, shall for the purposes of these Regulations be deemed to be a call duly made and payable on the date on which by the terms of issue the same becomes payable, and in case of non-payment all relevant provisions of these Regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable by virtue of a call duly made and notified. The Directors may on the issue of shares, differentiate between the holders as to the number of calls, the amount of calls to be paid and the times of payment.

25. The Directors may, if they think fit, receive from any Member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him and upon all or any of the moneys so advanced may (until the same would, but for such advance, become payable) pay interest at such rate not exceeding (unless the Company in General Meeting shall otherwise direct) 5 per cent per annum, as may be agreed upon between the Directors and the Member paying such sum in advance.

## TRANSFER OF SHARES

26. The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of Members in respect thereof.

27. Subject to such of the restrictions of these Regulations as may be applicable, any Member may transfer all or any of his shares by instrument in writing in any usual or common form or any other form which the Directors may approve.

28. The Directors may, in their absolute discretion and without assigning any reason therefor, decline to register the transfer of a share to a person of whom they shall not approve, and they may also decline to register the transfer of a share on which the Company has a lien.

29. The Directors may also decline to recognize any instrument of transfer unless:

(a) a fee of 12.5 cents, or such lesser sum as the Directors may from time to time require, is paid to the Company in respect thereof;

14

(b) the instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the Directors may reasonably require to show the right of the transferor to make the transfer; and

(c) the instrument of transfer is in respect of only one class of shares.

30. If the Directors refuse to register a transfer they shall, within two months after the date on which the transfer was lodged with the Company, send to the transferee notice of the refusal.

31. The registration of transfers may be suspended at such times and for such periods as the Directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty days in any year.

32. The Company shall be entitled to charge a fee not exceeding 12.5 cents on the registration of every probate, letters of administration, certificate of death or marriage, power of attorney, or other instrument.

33. Regulations 26 and 27 shall be read subject to the provisions of Regulation 34.

*Ordered by Sp Res dated 27/1/00 R.S*

34. (a) For the purposes of this Regulation, where any person becomes unconditionally entitled to be registered as the holder of a share he and not the registered holder of such share shall be deemed to be a Member of the Company in respect of that share.

(b) Except as hereinafter provided, no shares in the Company shall be transferred unless and until the rights of pre-emption hereinafter conferred shall have been exhausted.

(c) Every Member who desires to transfer any share or shares (hereinafter called "the Vendor") shall give to the Company notice in writing of such desire (hereinafter called "transfer notice") specifying the number of shares desired to be transferred (the "said shares"). Subject as hereinafter mentioned, a transfer notice shall constitute the Company the Vendor's agent for the sale of the said shares in one or more lots at the discretion of the Directors to the Members other than the Vendor at the price to be agreed upon by the Vendor and the remaining Members of the Company, or, in case of difference or no such agreement within fourteen days from the date of the transfer notice, at the price which the auditor of the Company for the time being shall, by writing under his hand, certify to be in his opinion the fair value thereof as between a willing seller and a willing buyer. A transfer notice may contain a provision that unless all the shares comprised therein are sold by the Company pursuant to this Regulation, none shall be so sold and any such provision shall be binding on the Company.

(d) If the auditor is asked to certify the fair price as aforesaid, the Company shall, as soon as it receives the auditor's certificate, furnish a certified copy thereof to the Vendor and the Vendor shall be entitled, by notice in writing given to the Company within ten days of the service upon him of the said certified copy, to cancel the Company's authority to sell the said shares. The cost of obtaining the certificate shall be borne by the Company unless the Vendor shall give notice of cancellation as aforesaid in which case he shall bear the said cost.

(e) Upon the price being fixed as aforesaid and provided the Vendor shall not give notice of cancellation as aforesaid the Company shall forthwith by notice in writing inform each Member other than the Vendor and other than Members holding employees' shares only of the number and price of the said shares and invite each such Member to apply in writing to the Company within twenty-one days of the date of dispatch of the notice (which date shall be specified therein) for such maximum number of the said shares (being all or any thereof) as he shall specify in such application.

(f) If the said Members shall within the said period of twenty-one days apply for all or (except where the transfer notice provides otherwise) any of the said shares, the Directors shall allocate the said shares (or so many of them as shall be applied for as aforesaid) to or amongst the applicants and in case of competition pro rata (as nearly as possible) according to the number of shares in the Company (other than employees' shares) of which they are registered or unconditionally entitled to be registered as holders, provided that no applicant shall be obliged to take more than the maximum number of shares specified by him as aforesaid; and the Company shall forthwith give notice of such allocations (hereinafter called "an allocation notice") to the Vendor and to the persons to whom the shares have been allocated and shall specify in such notice the place and time (being no earlier than fourteen and not later than twenty-eight days after the date of the notice) at which the sale of the shares so allocated shall be completed.

(g) The Vendor shall be bound to transfer the shares comprised in an allocation notice to the purchasers named therein at the time and place therein specified; and if he shall fail to do so, the chairman of the Company or some other person appointed by the Directors shall be deemed to have been appointed attorney of the Vendor with full power to execute, complete and deliver, in the name and on behalf of the Vendor, transfers of the shares to the purchasers thereof against payment of the price to the Company. On payment of the price to the Company the purchaser shall be deemed to have obtained a good quittance for such payment and on execution and delivery of the transfer the purchaser shall be entitled to insist upon his name being entered in the register of Members as the holder by transfer of the shares. The Company shall forthwith pay the price into a separate bank account in the Company's name and shall hold such price in trust for the Vendor.

(h) During the six months following the expiry of the said period of twenty-one days referred to in paragraph (e) of this Regulation, the Vendor shall be at liberty, (subject nevertheless to the provisions of Regulation 28) to transfer to any person and at any price (not being less than the price fixed under paragraph (c) of this Regulation) any share not allocated by the Directors in an allocation notice. Provided that, if the Vendor stipulated in his transfer notice that unless all the shares comprised therein were sold pursuant to this Regulation, none should be sold, the Vendor shall not be entitled, save with the written consent of all the other Members of the Company, to sell hereunder only some of the shares comprised in his transfer notice.

(i) Any share may be transferred by a Member to the spouse, child or remote issue or parent, brother or sister of that Member or to a company beneficially owned or controlled by such Member and any share of a deceased Member may be transferred by his personal representatives to any widow, widower, child or remote issue or parent, brother or sister of such deceased Member and shares standing in the name of the trustees of any deceased Member may be transferred upon any change of trustees to the trustees for the time being of such will; and where the Member is a body corporate any share may be transferred by such Member to its subsidiary or

16

holding company or to a company controlled by such holding company. The rights of pre-emption hereinbefore conferred in this Regulation shall not arise on the occasion of any such transfer or transfers as aforesaid and Regulation 28 shall be read subject to this paragraph.

## TRANSMISSION OF SHARES

35. In case of the death of a Member, the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognized by the Company as having any title to his interest in the shares; but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

36. Any person becoming entitled to a share in consequence of the death or bankruptcy of a Member may, upon such evidence being produced as may from time to time properly be required by the Directors and subject as hereinafter provided, elect either to be registered himself as holder of the share or to have some person nominated by him registered as the transferee thereof, but the Directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that Member before his death or bankruptcy, as the case may be.

37. If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the Company a notice in writing signed by him stating that he so elects. If he shall elect to have another person registered, he shall testify his election by executing to that person a transfer of the share. All the limitations, restrictions and provisions of these Regulations relating to the right to transfer and the registration of transfers of shares shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the Member had not occurred and the notice or transfer was a transfer signed by that Member.

38. A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a Member in respect of the share, be entitled in respect of it to exercise any right conferred by Membership in relation to meetings of the Company.

Provided always that the Directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days, the Directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of the notice have been complied with.

## FORFEITURE OF SHARES

39. If a Member fails to pay any call or installment of a call on the day appointed for payment thereof, the Directors may, at any time thereafter during such time as any part of the call or installment remains unpaid, serve a notice on him requiring payment of so much of the call or installment as is unpaid, together with any interest which may have accrued.

40. The notice shall name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed, the shares in respect of which the call was made will be liable to be forfeited.

41. If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the Directors to that effect.

42. A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the Directors think fit, and at any time before a sale or disposition the forfeiture may be canceled on such terms as the Directors think fit.

43. A person whose shares have been forfeited shall cease to be a Member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the Company all moneys which, at the date of forfeiture, were payable by him to the Company in respect of the shares, but his liability shall cease if and when the Company shall have received payment in full of all such moneys in respect of the shares.

44. A statutory declaration in writing that the declarant is a Director or the secretary of the Company, and that a share in the Company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share. The Company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

45. The provisions of these Regulations as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the shares or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## CONVERSION OF SHARES INTO STOCK

46. The Company may by ordinary Resolution convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

47. The holders of stock may transfer the same, or any part thereof, in the same manner, and subject to the same Regulations, as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstance admit; and the Directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

48. The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the Company and other matters as if they held the shares from which the stock arose, but no such privilege or advantage (except participation in the dividends and profits of the Company and in the assets on winding up) shall be conferred by an

stock which would not, if existing in shares, have conferred that privilege
...age.

Such of the Regulations of the Company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

## ALTERATION OF CAPITAL

*Ordered by Sp Res dated 27/1/00 P15*

50. The Company may from time to time by ordinary resolution increase the share capital by such sum, to be divided into shares of such amount, as the Resolution shall prescribe.

51. The Company may by ordinary resolution: *Ordered by Sp Res dated 27/1/00 R1\~*

(a) consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b) subdivide its existing shares, or any of them, into shares of smaller amount than is fixed by the memorandum of association subject, nevertheless, to the provisions of section 60 (1) (d) of the Law;

(c) cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

52. The Company may by special resolution reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with, and subject to, any incident authorised, and consent required, by law.

## GENERAL MEETINGS

53. The Company shall in each year hold a General Meeting as its Annual General Meeting in addition to any other Meetings in that year, and shall specify the Meeting as such in the notices calling it, and not more than fifteen months shall elapse between the date of one Annual General Meeting of the Company and that of the next.

Provided that so long as the Company holds its first Annual General Meeting within eighteen months of its incorporation, it need not hold it in the year of its incorporation or in the following year. The Annual General Meeting shall be held at such time and place as the Directors shall appoint.

54. All General Meetings other than Annual General Meetings shall be called Extraordinary General Meetings.

55. The Directors may, whenever they think fit, convene an Extraordinary General Meeting, and Extraordinary General Meetings shall also be convened on such requisition, or, in default, may be convened by such requisitionists, as provided by section 126 of the Law. If at any time there are not within Cyprus sufficient Directors capable of acting to form a quorum, any Director or any two Members of the Company may convene an Extraordinary General Meeting in the same manner as nearly as possible as that in which meetings may be convened by the Directors.

## NOTICE OF GENERAL MEETINGS

56. An Annual General Meeting and a Meeting called for the passing of a special resolution shall be called by twenty-one days' notice in writing at the least, and a Meeting of the Company other than an Annual General Meeting or a Meeting for the passing of a special resolution shall be called by fourteen days' notice in writing at the least. The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given, and shall specify the place, the date and the hour of the meeting and, in case of special business, the general nature of that business and shall be given in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the Company in general meetings to such persons as are, under the Regulations of the Company, entitled to receive such notices from the Company.

Provided that a Meeting of the Company shall, notwithstanding that it is called by shorter notice than that specified in this Regulation, be deemed to have been duly called if it is so agreed:

(a) in the case of a Meeting called as the Annual General Meeting, by all the Members entitled to attend and vote thereat; and

(b) in the case of any other Meeting, by majority in number of the Members having a right to attend and vote at the Meeting, being a majority together holding not less than 95 per cent in nominal value of the shares giving that right.

57. The accidental omission to give notice of a Meeting to, or the non-receipt of notice of a Meeting by, any person entitled to receive notice, shall not invalidate the proceedings at that Meeting.

## PROCEEDINGS AT GENERAL MEETINGS

58. All business shall be deemed special that is transacted at an Extraordinary General Meeting, and also all that is transacted at an Annual General Meeting, with the exception of declaring a dividend, the consideration of the accounts, balance sheets and the reports of the Directors and auditors, the election of Directors in the place of those retiring and the appointment of, and the fixing of the remuneration of, the auditors.

59. No business shall be transacted at any General Meeting unless a quorum of Members is present at the time when the Meeting proceeds to business; save as herein otherwise provided, two Members present in person or by proxy shall be a quorum. At all times when the Company has one and only Member, one Member present in person or by proxy shall be a quorum.

60. If within half an hour from the time appointed for the Meeting a quorum is not present, the Meeting, if convened upon the requisition of Members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place or to such other day and at such other time and place as the Directors may determine, and if at the adjourned Meeting a quorum is not present within half an hour from the time appointed for the Meeting, the Members present shall be a quorum.