UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
:
TELENOR MOBILE COMMUNICATIONS AS,           :
:
                Petitioner,          :
:           07 Civ. 6929 (GEL)
  -v.-           :
:
STORM LLC,           :           **OPINION AND ORDER**
:
                Respondent,           :
:
ALTIMO HOLDINGS & INVESTMENTS,           :
LIMITED, ALPREN LIMITED, and HARDLAKE   :
LIMITED,           :
:
                Additional Contemnors.           :
:
----------------------------------------------------------------x

Robert L. Sills and Jay K. Musoff, Orrick,
Herrington & Sutcliffe LLP New York, NY,
for petitioner.

Pieter Van Tol, Gonzalo S. Zeballos, and Eric Z.
Chang, Lovells LLP, New York, NY, for respondent.

Ronald S. Rolfe, Cravath, Swaine & Moore LLP,
New York, NY, for additional contemnors.

GERARD E. LYNCH, District Judge:

      On November 2, 2007, this Court entered an order enforcing an arbitration award that directed respondent Storm LLC ("Storm") and its affiliates Altimo Holdings & Investments Limited ("Altimo"), Alpren Limited ("Alpren") and Hardlake Limited ("Hardlake") (collectively, the "Altimo Entities" and, together with Storm, collectively the "respondents") to comply with certain corporate governance provisions contained in a contract between Storm and Telenor Mobile Communications AS ("Telenor") for the operation of the Ukrainian

telecommunications company Kyivstar, and to divest their holdings in competing businesses. Telenor Mobile Communications AS v. Storm LLC, 524 F. Supp.2d 332 (S.D.N.Y. 2007). Almost exactly a year later, on November 19, 2008, the Court granted Telenor's motion to hold respondents in contempt of this Court's earlier orders. Telenor Mobile Communications AS v. Storm LLC, 587 F. Supp.2d 594 (S.D.N.Y. 2008). Specifically, the Court ruled that respondents were in contempt of the Court's orders with respect to the corporate governance provisions, because they had willfully and contumaciously failed to comply with those orders. The Court rejected respondents' contention that they were unable to comply due to various foreign litigations. With respect to the divestiture provisions of the order, the Court declined to hold respondents in contempt. Although finding it "plain that Storm is not in compliance with the Divestiture Provision [of the arbitration award] and this Court's Order" enforcing it, 587 F. Supp.2d at 618, the Court found that respondents had put forth "colorable" arguments that, while "in no way suggest[ing] a more general good faith effort to comply with the Final Award," warranted restraint with respect to the contempt sanction. Id. Having unambiguously and emphatically rejected respondents' arguments that it had properly divested its competing interests, the Court ordered Storm "yet again to comply promptly and conclusively with [the divestiture] provisions" of the arbitration award. Id. Finally, "because Storm's and the Altimo Entities' non-compliance with the Court's order has been willful," the Court directed that "Telenor shall recover the attorneys' fees and disbursements it has incurred in this contempt proceeding." Id. at 621.

Telenor has now filed documentation in support of its motion for $2,487,853.24 in fees and disbursements. Storm does not contest the propriety of the Court's prior order awarding

fees. It does, however, dispute the amount of fees requested. Storm objects first, that Telenor should not be permitted to recover fees for the portion of the litigation related to the divestiture provisions, since respondents were not ultimately held in contempt with respect to those provisions, and second, that various aspects of the fees charged by Telenor's lawyers are unreasonable. Storm's arguments are without merit, and Telenor's application will be granted in full.[1]

At the outset, it should be noted that Storm's position displays considerable chutzpah. The Court's contempt opinion, as well as the arbitration award and the Court's opinion confirming it, detail a determined effort on the part of Storm and its affiliated entities to frustrate their contractual obligations to Telenor, by willful noncompliance, subversion of the arbitration process, collusive litigations in Ukraine, and outright defiance of the arbitrators' award and this Court's orders. This scorched earth policy has required Telenor to investigate facts and retain lawyers and experts literally around the world in an effort to enforce its rights.[2] While the amount of fees sought by Telenor as the legal costs attendant on a contempt application may stagger the uninitiated, it should be noted first, that the stakes of this dispute are extremely high, as the contemnors' actions have "paralyzed" Kyivstar, "a multi-billion dollar enterprise" and prevented the disbursement to Telenor of "hundreds of millions of dollars in potential dividends," and second, that the respondents have shown their willingness to incur significant

---

[1] Although all respondents join in these arguments, only Storm has substantively briefed the issues; the Altimo Entities simply associate themselves with the positions taken by Storm. Accordingly, in addressing the arguments, the Court will for the most part refer to "Storm" instead of "respondents."

[2] It is not clear that these efforts have yet proven successful; a further round of contempt applications is pending before this Court.

costs "– including foregoing hundreds of millions in potential dividends and prepayment of a $200 million loan – in order to avoid their legal obligations." Id. at 621.  Storm's determination to spare no expense to frustrate Telenor's exercise of its contractual rights has dramatically increased the costs of these proceedings, and the stakes involved make it unsurprising that Telenor has been prepared to pay the price of litigating in a manner that similarly spared no expense in terms of care and thoroughness.

Moreover, it must also be noted that Telenor, a highly sophisticated business entity, has without complaint paid the bills that Storm now contends are unreasonable.  The parties dispute the extent to which this history of payment creates a presumption that the fees are reasonable.  But regardless of the precise legal effect of this factor, it is surely of some significance that Telenor has been willing to incur these fees.  This is not a case in which Telenor can have assumed that it was litigating on Storm's ticket.  The contempt application, like every other aspect of this case, was vigorously contested by Storm and its affiliates, and Telenor's willingness to incur the costs must primarily have been based on what it believed was necessary and proper in an effort to prosecute its case.  Storm may now blithely deride Telenor's efforts and expense incurred gathering documents from several countries in order to trace the connections among the various entities behind Storm, but had Telenor not done so, Storm would have had every right to question any unsupported factual assertion made by Telenor, and in light of the history of the litigation between the parties, Telenor could have reasonably assumed that Storm would not hesitate to take advantage of any flaw in Telenor's presentation.

Finally, Storm's complaints of overstaffing and duplication of effort ring hollow.  Some of these complaints are incorrect on their face – Storm cannot complain that Telenor brought the

Ukrainian attorney Didkovskiy to a hearing, when Didkovskiy was both a critical witness at the proceeding as well as Telenor's key consultant on Ukrainian law, nor can it complain that a technical support person operated a computer during the hearing, when the computerized display of documents was a significant and useful part of the presentation of evidence. But more broadly, this Court has observed every proceeding in this case, and has noted no disparity between the parties in their staffing of the matter. Respondents have chosen to litigate the case in the same way as Telenor, further attesting to the broad reasonableness of Telenor's counsel's approach to handling the case, in the context of its significance, complexity and difficulty.[3]

Turning to the specific grounds of Storm's complaint, the argument that Telenor should not recover for costs attributable to litigating the divestiture issues is without merit. A court has discretion to award a party full attorneys' fees incurred in a proceeding, even if the party did not obtain all the relief that it sought. See Hensley v. Eckerhart, 461 U.S. 424, 435 n.11 (1983). Here, Telenor's arguments concerning Storm's failures to comply with the corporate governance and divestiture provisions were closely intertwined, and the alleged failures of compliance were mutually reinforcing in demonstrating a pattern of willful violation of the Court's order.

---

[3] Notably, Storm and the other respondents have not chosen to disclose, in connection with their claims of overcharging by Telenor's counsel, how much they have spent on attorneys – information that would surely have been provided if Storm were able credibly to maintain that its own example demonstrates how economically the case could have been litigated. Moreover, even if respondents had spent considerably less on the litigation than Telenor, the comparison would not necessarily be apt. Telenor was put to the expense of hiring attorneys around the globe to develop evidence regarding the collusive litigations conducted by Storm and its allies. Presumably Storm's American counsel were not involved in the corresponding efforts to conduct those fights, and the lawyers involved in them would presumably not have been paid through the American lawyers. Thus, the legal bills of respondents' American counsel could be expected to be considerably lower than those of Telenor's American lawyers, even if both sides were litigating at the same general level of expense.

Moreover, the fact that the Court did not impose a contempt remedy in connection with the divestiture provisions does not mean that Telenor was unsuccessful as to that branch of its motion. The Court firmly rejected essentially all of Storm's arguments that it had in fact complied with these provisions, and ordered Storm in no uncertain terms to comply forthwith. That order achieved the bulk of the relief Telenor requested, and constituted a resounding failure for Storm's defense of its actions. The Court's finding that Storm was in willful contempt in connection with the corporate governance provisions, and the imposition of significant escalating fines to put an end to that contempt, coupled with the parallel finding that Storm had not complied with the divestiture provision either, and the resulting order to comply, meant that the contempt proceeding as a whole was a success for Telenor. While the Court did not find that Storm was in willful contempt of every portion of its earlier order, the fact remains that Storm's relentless resistance to do what it was ordered to do required Telenor to mount an expensive, and ultimately successful, contempt proceeding. It is entirely appropriate that the burden of that expense fall on Storm, not on Telenor.[4]

Storm next presents a grab-bag of complaints about the particular billings made by Telenor's counsel. First, Storm argues that Telenor should recover nothing for expenses incurred after the contempt order was entered. This argument is without merit. Telenor is entitled to recover the fees it reasonably incurred in pursuing the contempt motion. The parties'

---

[4] The Court does not rely on Telenor's argument that the Court has already directed that it recover all of "the attorneys' fees and disbursements it has *incurred in this contempt proceeding*," 587 F. Supp.2d at 621, and "its reasonable attorneys' fees and costs *in connection with its motion for contempt*," id. at 622 (emphases added). Those formulations were crafted without the benefit of Storm's argument that the Court should limit its order. If the prior mandate was overbroad, the Court would be obliged to correct it. The Court has therefore considered Storm's arguments for a narrower award of fees, and rejects them on the merits.

sparring over the precise contours of the relief granted that followed entry the of that order is well within the purview of that entitlement.[5]

Next, Storm attempts to fly-speck the hours spent on various litigation tasks. The effort is singularly unpersuasive. As noted already, the claims of overstaffing are mostly red herrings. In the proceedings observed by the Court, there was no meaningful difference between the phalanxes of lawyers brought to Court by the two sides to this litigation, and Telenor documents at least one instance in which the same was true in proceedings, such as depositions, conducted away from the Court. (Sills Aff. Ex. A (respondents' six attorneys to Storm's three present at deposition).) Using several partners or senior associates in connection with drafting briefs and compiling exhibits in high-stakes, high-pressure, high-speed litigation is neither unusual nor inappropriate. Moreover, at many of the proceedings, the presence of additional counsel with expertise in foreign law was required. The overstaffing charges are essentially without merit.

Storm also argues that "block-billing" and other abuses make it difficult to decide whether all of the bills charged were in fact attributable to the contempt proceeding, rather than to other parallel aspects of the litigation between these parties. No lawyer's time sheets are ever perfect, and questions can be raised about any submission of this kind. Still, it is notable that Storm's effort to identify errors or excesses in the roughly 3500 hours billed by Telenor's counsel results in a chart that lists only some 100 hours of contested attorney time. (D Br. 21-

---

[5] Storm's argument that Telenor cannot recover these expenses simply because they were incurred after the Court's order awarding fees is, like the parallel argument by Telenor rejected in the previous footnote, more sophistical than substantive. The decretal language in fact is broad enough to encompass any fees "incurred by Telenor in connection with its contempt application." Id. at 622. And even if it were not, there is no substantive reason why the Court could not and should not modify its language to reflect Telenor's entitlement to all fees incurred in connection with the motion.

22.) Moreover, the vast bulk of *that* time – more than 80% of it, in fact – does not clearly constitute errors or excesses at all.[6]

Finally, Storm argues that further documentation is required for the payments made to foreign lawyers by Telenor's American counsel. This argument is also without merit. It is reasonable to hold U.S. lawyers to the standards of billing practice customary in this country, and this Court has done that with respect to the attorneys' fees charged by Telenor's counsel. In this sort of multinational litigation, however, it is often necessary to retain foreign lawyers, both to pursue adjunct investigations in other jurisdictions and to serve as expert witnesses with respect to foreign law. Storm does not seriously dispute the legitimacy or necessity of Telenor's retention of these foreign professionals. Where such foreign consultants are retained by an American law firm, it is not inappropriate to charge the client for these amounts as expenses or disbursements, much as expert witness fees or other costs of litigation. It is not necessary or appropriate for this Court to require Ukrainian or Swiss or Cypriot or British Virgin Islands counsel to conform to the billing practices of New York law firms. Other than criticizing the generality of the foreign lawyers' bills, Storm makes no effort to demonstrate that the fees charged were excessive for the work that needed to be done.

In cases of this kind, courts may be tempted simply to make a percentage reduction in the fees charged, to account for the general tendency of human beings keeping track of their own time for billing purposes to construe the time spent in the manner most generous to themselves,

---

[6] According to Storm, about 90 hours of the time it regards as erroneously attributed to the contempt litigation consists of "[d]uplicate entries; very similar description[s] given for [two or three] separate narrative entries in the same day." (D. Br. 21-22.) Lawyers often spend different periods of the day working on similar tasks, and there is no reason to assume that multiple entries reflecting similar work constitute duplicate or erroneous entries.

have been earned. That approach is particularly tempting, and perhaps appropriate, in cases in which lawyers anticipate that whatever fees they will ultimately receive, if any, will be paid from a common fund or from an adversary, and thus may bill more freely than when the bills are to be presented to a paying client. This matter is not of that kind, however. As the Court noted above, the bills charged here were originally charged to a sophisticated business client, which ultimately paid them, presumably after careful review by its general counsel or other senior business executives, without any expectation of reimbursement.

Upon review of the fees in this case, there is simply no basis for the meat-ax reductions argued for by Storm, or indeed for any reductions beyond the equivalent of rounding errors that would take more effort by the parties to litigate and the Court to resolve than the amounts are worth. This matter has been expensively litigated, in part because it is a high-stakes, complex, protracted, multi-national litigation, but also in part because Storm and its allies have made it so by their tactics. The fees paid by Telenor, for which it seeks reimbursement, were reasonably incurred in the pursuit of litigation of this nature, and they will be awarded in their entirety.

## CONCLUSION

Attorneys' fees and costs in the amount of $2,487,853.24 are awarded to Telenor against all respondents, jointly and severally.

SO ORDERED.

Dated: New York, New York
       March 6, 2009

/s/ Gerard E. Lynch
GERARD E. LYNCH
United States District Judge