UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
TELENOR MOBILE COMMUNICATIONS AS,    :
:
Petitioner,                :
:
-v.-                                 :
:
STORM LLC,                           :
:
Respondent,             :
:
ALTIMO HOLDINGS & INVESTMENTS,       :
LIMITED, ALPREN LIMITED, and HARDLAKE :
LIMITED,                             :
:
Additional Contemnors.     :
:
-------------------------------------------------------------x



07 Civ. 6929 (GEL)

**OPINION AND ORDER**

Robert L. Sills and Jay K. Musoff, Orrick,
Herrington & Sutcliffe LLP New York, NY,
for petitioner.

Pieter Van Tol and Eric D. Statman, Lovells LLP,
New York, NY, for respondent.

Ronald S. Rolfe and Tara Tune, Cravath,
Swaine & Moore LLP, New York, NY,
for additional contemnors.

GERARD E. LYNCH, District Judge:

        In what is hopefully the last act of this long-running dispute, petitioner Telenor Mobile

Communications AS ("Telenor") seeks an award of costs and attorneys' fees from respondent

Storm LLC and its alter-egos Altimo Holdings & Investments, Limited, Alpren Limited, and

Hardlake Limited (collectively "the Altimo Entities," and together with Storm, collectively

"respondents"). The fees will be granted in substantially the amount sought.

It is unnecessary to recite the full history of this action, in which Storm and the Altimo Entities have persisted for a period of years in ignoring their contractual obligations, the rulings of arbitrators by whose decisions they had agreed to be bound, and the orders of this Court. The parties are familiar with those facts, and reviewing courts and interested members of the public have easy access to this Court's numerous opinions and orders dealing with the matter. The issue currently before the Court concerns Telenor's application for attorneys' fees resulting from its finally successful effort to enforce the arbitration award, by seeking and obtaining a *second* finding that the respondents were in contempt of this Court's orders, spurring the Court to impose severely coercive fines, which at long last convinced respondents to comply. In yet again resisting Telenor's eminently justified application for a fee award, respondents make a number of unpersuasive arguments.

Several of these arguments share the common feature of ignoring respondents' repeated and ingenious efforts to avoid compliance, and narrowly parsing the proceedings before this Court in order to hive off particular aspects of the litigation as unrelated to the contempt adjudication – as if the entire history of this proceeding were not a single effort on the part of Telenor to enforce straightforward legal obligations of respondents, occasioned entirely by respondents' bad faith – and eventually contumacious – resistance to those obligations.

Thus, respondents begin by arguing that Telenor's motion is untimely, because it was not made within 14 days of the second contempt finding. But this Court's Order of March 11, holding respondents yet again in contempt and imposing coercive fines as a sanction, was hardly the end of the matter. Although following the adjudication of contempt respondents finally begun to take steps towards compliance, they in fact remained in contempt for weeks, with heavy fines accruing, while the parties continued for a considerable period to engage in further

2

jousting before the Court, and in private negotiations, before respondents belatedly brought themselves into compliance with the Court's orders. The contempt proceeding thus only ended with the Court's disposition on April 27, at which time the Court found that respondents had finally purged themselves of contempt and complied with the Court's Orders, and, accordingly, pursuant to a previous agreement between the parties and the Court, remitted all accrued contempt fines. Telenor timely submitted its fee application within 14 days of the conclusion of the contempt proceeding, as required by Rule 54(d)(2)(B), Fed. R. Civ. P.[1]

Respondents' argument that certain portions of the fees expended by Telenor are not recoverable is without merit for similar reasons. The finding of contempt on March 11 hardly brought the contempt application to a successful conclusion, nor did it render Telenor's further efforts uncompensable, as respondents blandly contend. The second contempt proceeding flowed directly from respondents' failure to comply with orders entered by the Court as part of its first contempt finding, and respondents' initial response to the second finding was incomplete. Telenor is entitled to recover the fees it reasonably incurred in pursuing the contempt motion to its completion, and its ongoing efforts through the time when respondents were finally found to be in compliance are unquestionably part and parcel of the application for contempt. When brought against a recalcitrant and defiant opponent, alas, a contempt proceeding is not brought to a successful termination simply by an adjudication of contempt. As this case shows, further remedies are often necessary to secure compliance. It would ill serve the

---

[1] In any event, it should be noted that respondents were at all times on notice of Telenor's application for attorneys' fees. Telenor sought an award of fees in its initial motion for contempt (Dkt. #109 at 19); the Court granted that relief in its March 11 Order (3/11/09 Order ¶ 8); and the Court reiterated, at a later conference dealing with the possible remission of accrued fines if respondents ultimately complied with the Court's orders and purged itself of contempt, that Telenor's fees would be paid (3/31/09 Hr'g Tr. 17).

3

purposes of awarding attorneys' fees in contempt proceeding to tell the prevailing party that it can be reimbursed for fees expended in securing a finding of contempt, but not for the additional efforts required to assure that its defiant adversary is not erroneously permitted to escape compliance by incomplete gestures or misleading claims that it has purged itself.

Nor should respondents be permitted to escape their obligations by artificially distinguishing strands of the relief sought by Telenor in its contempt application, which was broadly, not narrowly, successful and wholly focused on the singular goal of securing respondents' compliance with the Court's orders. The Court found respondents in contempt of the Court's previous orders and imposed coercive fines attached to respondents' obligations on a range of issues, each of which was intrinsically linked to the Court's effort to ensure respondents' ultimate compliance with the Court's orders, which to date they had steadfastly resisted. (3/11/09 Hr'g Tr. 9-10; see also 3/11/09 Order ¶¶ 2-7.) While not every aspect of the March 11 order had a finding of contempt attached to it, once again, "the fact remains that Storm's relentless resistance to do what it was ordered to do required Telenor to mount an expensive, and ultimately successful, contempt proceeding." Telenor Mobile Commc'ns AS v. Storm LLC, 07 Civ. 6929, 2009 WL 585968, at *3 (S.D.N.Y. Mar. 9, 2009). As the Court held in awarding attorneys' fees in connection with Telenor's first contempt application, an award of "full attorneys' fees incurred in a proceeding" is appropriate even absent a finding of contempt on every issue where, as here, respondents' "failures to comply . . . were closely intertwined" and "mutually reinforcing in demonstrating a pattern of willful violation of the Court's order." Telenor, 2009 WL 585968, at *3. The interrelated nature of the various provisions of the March 11 Order cannot be disputed, and indeed, was reiterated time and again throughout the course of this second contempt proceeding. (E.g., 4/28/09 Order at 1-2; 3/12/09 Order at 2.)

Only one of respondents' arguments merits serious consideration. Respondents argue that the $411,927.95 sought by Telenor for attorneys' fees is excessive.[2] A claim for fees approaching half a million dollars for roughly two months of litigation on a single motion certainly calls for close scrutiny, and the Court is obliged to consider the bills carefully to make sure that the fees sought are reasonable. A review of the bills, however, reveals that, with one trivial exception, the award sought here is indeed reasonable.

Tellingly, respondents, who have had full access to the billing records and every incentive to identify excessive hours, provide only the most general arguments in support of their objections. With the exception of identifying a single line in the bills for work unrelated to the contempt proceedings (a charge Telenor does not refute), amounting to a minuscule percentage of the overall fees,[3] respondents point to no specific instances of unnecessary projects undertaken. Rather, for the most part, respondents argue merely that the firms representing Telenor relied too heavily on partners to do the sophisticated briefing on this motion.[4] As this Court has previously noted in connection with this case, the nature of the matter tends to account

---

[2] Respondents do not challenge the appropriateness of any of the $67,058.42 in disbursements for which Telenor seeks reimbursement.

[3] On March 7, 2009, attorney Jay Musoff spent a total of 8.5 hours performing 4 separate tasks, only one of which appears unrelated to the contempt proceedings. (O'Driscoll Decl. Ex. A.) In the absence of any superior mechanism to segregate the time spent on these tasks, the most sensible result is to apportion them equally (particularly as the three uncontested tasks do not appear menial). Thus, 2.125 hours of Musoff's time will be disallowed in the ultimate fee award, which, at Musoff's billing rate, and taking into account the 10% discount Telenor's counsel provides to Telenor, this apparently erroneous entry equates to $1443.94 in fees.

[4] Claims of overbilling by large firms usually take the opposite tack. Even at the awe-inspiring hourly rates of partners in major American law firms, the amount that can be billed by one or two partners working full time is inherently limited. The wealth of such partners, and the moans of clients saddled with large legal bills, typically derive from leveraging the hours of armies of associates.

for the high fees, and the amounts at stake explain the parties' willingness to incur them.[5] The

complexity of the transactions and their international nature require extensive factual

investigation and costly transnational consultations.  See Telenor, 2009 WL 585968, at *2.  And

the amounts at stake for both sides are enormous.  As Telenor correctly points out, and as this

Court has previously noted, respondents' actions "effectively paralyzed a multi-billion dollar

company."  (P. Mem. 10); accord, Telenor, 2009 WL 585968, at *2.  The contempt fines accrued

by respondents alone amounted to millions of dollars.  In this context, the work expended and

fees charged by Telenor's lawyers come into perspective as fully reasonable.[6]  As in the past,

while insisting that Telenor's fees were excessive, respondents conspicuously fail to argue that

the fees charged to Telenor are out of proportion to whatever respondents themselves spent in

their meritless opposition to the contempt application.

Finally, the Altimo Entities renew their claim that they are not in fact alter egos of Storm

and should not be held liable for any fee award.  As is clear from the brief, this argument is made

only to preserve a point long since rejected by this Court.  Accordingly, there is no need to say

more than that the Court adheres to its prior finding in this regard, and that the Altimo Entities'

persistence tends to corroborate the importance of awarding fees not only against the shell entity

---

[5] Along these lines, the parties dispute the extent to which Telenor's payment of the bills in question is in itself evidence of the reasonableness of the amount.  Although the Court has previously ascribed "some significance" to the fact of Telenor's payment of the fees charged, Telenor, 2009 WL 585968, at *2, whether or not Telenor has paid the amounts it now seeks does not factor into the Court's judgment that these fees are reasonable in this instance for the simple reason that there has been no clear indication that Telenor has, in fact, yet paid them.

[6] It should also be pointed out that Telenor's conduct in this matter has been characterized by good faith, and not marked by excess in any way.  For example, Telenor willingly agreed to the remission of the hefty contempt fines, pointing out that its interest was in "compliance not payment."  (3/31/09 Hr'g Tr. 17.)

Storm, but against the parties who have directed the campaign of obstruction, who alone have the resources to pay the judgment, and whose liability for the escalating contempt fines undoubtedly was responsible for bringing respondents, at long last, into compliance with their legal obligations.

For the foregoing reasons, Telenor's application for attorney's fees in the amount of $411,927.95 and disbursements in the amount of $67,058.42 is granted in its entirety, with the limited exception of the $1443.94 apparently erroneously assessed to this aspect of the parties' dispute. The resulting total award is $477,542.43.

SO ORDERED.

Dated: New York, New York
     July 20, 2009

GERARD E. LYNCH
United States District Judge

7